WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------------x
In re                                          :   Chapter 11
                                               :
FAIRWAY GROUP HOLDINGS CORP., et al.,          :   Case No. 20-[_____] (___)
                                               :
                    Debtor.¹                    :   (Joint Administration Pending)
------------------------------------------------------------------------x
```

**MOTION OF DEBTORS FOR AUTHORITY TO (I) PAY PREPETITION
CLAIMS OF SHIPPERS AND MISCELLANEOUS LIEN CLAIMANTS,
(II) CONFIRM ADMINISTRATIVE EXPENSE PRIORITY OF UNDISPUTED
COMMENCEMENT DATE ORDERS AND SATISFY SUCH OBLIGATIONS IN THE
ORDINARY COURSE OF BUSINESS, AND (III) PAY PACA/PASA CLAIMS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Fairway Group Holdings Corp. (2788); Fairway Group Acquisition Company (2860); Fairway Bakery LLC (4129); Fairway Broadway LLC (8591); Fairway Chelsea LLC (0288); Fairway Construction Group, LLC (2741); Fairway Douglaston LLC (2650); Fairway East 86th Street LLC (3822); Fairway eCommerce LLC (3081); Fairway Georgetowne LLC (9609); Fairway Greenwich Street LLC (6422); Fairway Group Central Services LLC (7843); Fairway Group Plainview LLC (8643); Fairway Hudson Yards LLC (9331); Fairway Kips Bay LLC (0791); Fairway Nanuet LLC (9240); Fairway Paramus LLC (3338); Fairway Pelham LLC (3119); Fairway Pelham Wines & Spirits LLC (3141); Fairway Red Hook LLC (8813); Fairway Stamford LLC (0738); Fairway Stamford Wines & Spirits LLC (3021); Fairway Staten Island LLC (1732); Fairway Uptown LLC (8719); Fairway Westbury LLC (6240); and Fairway Woodland Park LLC (9544). The location of the Debtors' corporate headquarters is 2284 12th Avenue, New York, New York 10027. Fairway Community Foundation Inc., a charitable organization, owned by Fairway Group Holdings Corp., is not a debtor in these proceedings. Fairway Community Foundation Inc., a charitable organization, owned by Fairway Group Holdings Corp., is not a debtor in these proceedings.

Fairway Group Holdings Corp. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

## Background

1.     On the date hereof (the "**Commencement Date**"), the Debtors each commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").   The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.     The Debtors commenced these chapter 11 cases with the support of an ad hoc group of Prepetition Lenders (the "**Ad Hoc Group**") holding over 91% of all outstanding obligations of the Debtors under the Prepetition Credit Agreement (and in excess of 66.67% of each tranche of debt thereunder).   On January 22, 2020, the Debtors executed a restructuring support agreement (the "**RSA**") with members of the Ad Hoc Group, pursuant to which the members of the Ad Hoc Group agreed to support a chapter 11 plan.   The Ad Hoc Group also supports the Debtors' marketing and sale process for all or substantially all of their assets, and has committed to provide the Debtors with up to $25 million of debtor-in-possession financing to finance these chapter 11 cases and the sale process.

2

4.     Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the declarations of Michael Nowlan and Abel Porter pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, each sworn to on the date hereof (together, the "**First Day Declarations**"),[2] which have been filed with the Court contemporaneously herewith and are incorporated by reference herein.

## Jurisdiction

5.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).   This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

6.     By this Motion, pursuant to sections 105(a), 363 and 503 of the Bankruptcy Code, the Debtors request approval of interim and final orders (i) authorizing, but not directing them, to pay (a) Shipping Charges, (b) Miscellaneous Lien Claims, (c) certain amounts in connection with Commencement Date Orders to suppliers, and (d) PACA/PASA Claims (each as defined below) and (ii) granting related relief, in each case subject to the Debtors' debtor-in-possession financing facility and the interim and final orders with respect thereto (the "**DIP Orders**").[3]

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declarations.

[3] Contemporaneously herewith, the Debtors have sought authority, but not direction, to pay claims held by certain third-party vendors pursuant to the *Motion of Debtors for (I) Authority to Pay Certain Prepetition Obligations to Critical Vendors, (II) Approval of Related Procedures, and (III) Related Relief* (the "**Critical Vendors Motion**"). Through this Motion, the Debtors do not seek authority to satisfy any prepetition claim that may be paid pursuant to the Critical Vendors Motion.

7.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**").

### The Debtors' Supply Chain and Shippers

8.      In operating fourteen (14) stores (collectively, the "**Supermarkets**"), the Debtors must ensure that the Supermarkets are continuously replenished with a supply of goods including, but not limited to, fresh produce, shelf-stable goods, frozen goods, baked goods, dairy products, cheeses, deli goods, prepared goods, eggs, meats, seafood, floral products, alcoholic beverages and various non-food products (the "**Merchandise**") for sale directly to the Debtors' customers.

9.      The Debtors maintain the flow of Merchandise into their Supermarkets in several ways. Certain suppliers deliver Merchandise directly to the Supermarkets and some deliver to the Debtors' production and distribution center (the "**PDC**").  In limited situations, suppliers' Merchandise is delivered by third-party transporters engaged by Debtors (the "**Shippers**") to the PDC or the Supermarkets.

10.     In the event that the Debtors fail to reimburse the Shippers for charges incurred in connection with the transport of Merchandise, various state laws permit the Shippers to assert statutory liens against Merchandise in their possession that is the subject of any delinquent charges, securing such charges and potentially blocking the Debtors' access to Merchandise.

11.     Thus, to maintain access to Merchandise that is essential to the continued viability of the Debtors' retail operations and preserve the value of the Merchandise, subject to the terms of the Debtors' debtor-in-possession financing facility in accordance with the DIP Orders, including, without limitation, the Budget under, and as defined in, the DIP Orders, the

WEIL:\97352174\1\44444.0008

Debtors seek authority to honor outstanding invoices related to the shipping services provided to the Debtors prior to the Commencement Date (collectively, the "**Shipping Charges**").

12.     The Debtors estimate that, as of the Commencement Date, there are approximately $150,000 of Shipping Charges outstanding and an additional approximate $400,000 that will come due and owing within the first thirty (30) days of the chapter 11 cases. The Debtors will include a summary of any Shipping Charges paid pursuant to the relief requested herein in the Critical Vendor Matrix (as defined in the Critical Vendors Motion).

### Miscellaneous Lien Claimants

13.     The Debtors regularly make improvements and repairs to their property (including the Supermarkets and the PDC owned by the Company) and the equipment that the Debtors use in the operation of their business, including refrigeration equipment, electrical systems, plumbing, elevator and escalator systems, and various types of food service equipment. To do so, the Debtors contract with a number of third parties (collectively, the "**Miscellaneous Lien Claimants**" and, together with the Shippers, the "**Lien Claimants**") along with certain subcontractors (collectively, the "**Subcontractors**") to the Miscellaneous Lien Claimants.[4]

14.     Absent payment of their prepetition claims, the Miscellaneous Lien Claimants could potentially assert liens under applicable law, including mechanic's liens, artisan's liens, and materialman's liens against the Debtors' property for amounts the Debtors owe to these third parties (collectively, the "**Miscellaneous Lien Claims**" and together with the Shipping Charges, the "**Lien Claims**"). For example, the Debtors spend an average of approximately $70,000 per month on maintenance costs related to refrigeration equipment, all of

---

[4] Nothing contained herein is intended to be or shall be construed as an approval or assumption of the contracts between the Debtors and the Miscellaneous Lien Claimants, or any other agreement, contract, program, policy, or lease, under section 365 of the Bankruptcy Code.

which is subject to mechanics liens in the event of non-payment by the Debtors.  In total, the

Debtors pay approximately $450,000 to $500,000 in Miscellaneous Lien Claims per month.

15.     Pursuant to section 362(b)(3) of the Bankruptcy Code, the act of

perfecting such a lien, to the extent consistent with section 546(b) of the Bankruptcy Code, is

expressly excluded from the automatic stay.[5]

16.     If the Debtors are unable to pay the Miscellaneous Lien Claims, the

Debtors risk losing access to equipment and other property that is critical to the continued

operation of the Supermarkets.   For example, even a short delay in repairs to a single

Supermarket's refrigeration unit could result in lost product worth thousands of dollars and lost

sales of significantly more.   Accordingly, the Debtors seek authority to pay and discharge, on a

case-by-case basis, Miscellaneous Lien Claims that the Debtors believe have created, or could

give rise to, a lien against the Debtors' property or equipment, regardless of whether such

Miscellaneous Lien Claimants have already perfected their interests.[6]   The relief request herein

includes authority to remit such payments to the Lien Claimants for their services as well as to

Lien Claimants on behalf of any of their Subcontractors' work, and to pay the Lien Claimants'

administrative fees, if applicable. The Debtors will include a summary of any Miscellaneous

Lien Claims paid pursuant to the relief requested herein in the Critical Vendor Matrix (as defined

in the Critical Vendors Motion).

17.     The Debtors estimate that there are approximately $500,000 of

Miscellaneous Lien Claims as of the Commencement Date.  The Debtors request, subject to the

---

[5] Under section 546(b), a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection . . . ." 11 U.S.C. § 546(b)(1)(A).

[6] However, to the extent that the Debtors make any payments with respect to a Miscellaneous Lien Claim, no such payment shall be deemed a waiver of the Debtors' rights to challenge the extent, validity, perfection, or possible avoidance of such liens.

terms of the Debtors' debtor-in-possession financing facility in accordance with the DIP Orders,

including, without limitation, the Budget under, and as defined in, the DIP Orders, authorization

to pay any Miscellaneous Lien Claims that come due and payable within thirty (30) days after

the Commencement Date and throughout these chapter 11 cases in the ordinary course of

business.

### Commencement Date Orders

18.     Prior to the Commencement Date, and in the ordinary course of business,

the Debtors ordered Merchandise that will not be delivered until on or after the Commencement

Date (the "**Commencement Date Orders**"). These vendors and suppliers may be concerned

that, because the Debtors' obligations under the Commencement Date Orders arose prior to the

Commencement Date, such obligations will be treated as general unsecured claims in these

Chapter 11 Cases. Accordingly, certain vendors may refuse to provide goods to the Debtors (or

may recall shipments thereof) purchased pursuant to the Commencement Date Orders unless the

Debtors issue substitute purchase orders postpetition or obtain an order of the Court providing

that all undisputed obligations of the Debtors arising from the postpetition delivery of goods

subject to Prepetition Orders are afforded administrative expense priority status under section

503(b) of the Bankruptcy Code.

19.     To prevent any disruption to the Debtors' retail operations, and given that

Merchandise delivered on, within 20 days prior to, and after the Commencement Date is afforded

administrative expense priority under section 503(b) of the Bankruptcy Code, the Debtors seek

an order (a) confirming administrative expense priority under section 503(b) of the Bankruptcy

Code to all undisputed obligations of the Debtors arising from the acceptance of goods subject to

Commencement Date Orders  (subject and junior to the claims, including adequate protection

claims, granted in connection with the Debtors' debtor-in-possession financing facility, in

WEIL:\97352174\1\44444.0008

accordance with the DIP Orders) and (b) authorizing, but not directing, the Debtors to satisfy

such obligations in the ordinary course of business consistent with the parties' customary

practices in effect prior to the Commencement Date and in accordance with the DIP Orders,

including, without limitation, the Budget under, and as defined in, the DIP Orders; *provided,*

*that¸* for the avoidance of doubt, nothing herein shall create, nor is intended to create, any rights

in favor of, or enhance the status of any claim held by, any party.

### **PACA/PASA Claims**

20.     To maintain the goodwill of the Debtors' customer base, which relies on

the Debtors as a primary source of fresh fruits, produce, meats, and poultry, it is critical that the

Debtors preserve the ability to source such Merchandise.

21.     The Debtors believe that a certain portion of the Merchandise sold in the

Supermarkets may qualify as "perishable agricultural commodit[ies]" under the Perishable

Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a et seq. ("**PACA**").

PACA's definition of "perishable agricultural commodity" generally includes "fresh fruits and

fresh vegetables of every kind and character [whether or not frozen or packed in ice]."

7 U.S.C § 499a(b)(4).   Under PACA, eligible produce suppliers and their agents (the "**PACA**

**Claimants**") are the beneficiaries of a statutory trust (the "**PACA Trust**") in all of the buyer's

perishable agricultural commodity inventory or other derivatives of perishable agricultural

commodities, the products derived therefrom, and the proceeds related to any sale of the

commodities or products (collectively, the "**PACA Trust Assets**").   See 7 U.S.C. § 499e(c)(2).

PACA Trust Assets are preserved as a non-segregated floating trust and may be commingled

with non-trust assets.   PACA Trust Assets are not property of a debtor's estate.   *In re Kornblum*

*& Co.*, 81 F.3d 280, 284 (2d Cir. 1995).

WEIL:\97352174\1\44444.0008

22.     Similarly, certain of the Debtors' suppliers (the "**PASA Claimants**" and, together with the PACA Claimants, the "**PACA/PASA Claimants**") may be eligible to assert claims under the Packers and Stockyards Act of 1921 as amended, 7 U.S.C. § 181 et seq. ("**PASA**"), which prescribes the conditions of operations for businesses dealing in livestock and poultry.  PASA creates a statutory trust (the "**PASA Trust**" and, together with the PACA Trust, the "**Statutory Trusts**") scheme which is virtually identical to PACA in respect of delivery of livestock, meat products and related products, products derived therefrom and the proceeds related to the sale of such commodities or products (collectively, the "**PASA Trust Assets**" and, together with the PACA Trust Assets, the "**Trust Assets**").  See *In re W.L. Bradley Co.*, 75 B.R. 505, 509 (Bankr. E.D. Pa. 1987) ("The Legislative history expressly notes that the [PACA Trust] was modeled on the trust amendment to the Packers and Stockyards Act.").

23.     The PACA/PASA Claimants may be eligible to assert potential claims under the respective statutes for outstanding payments owed on account of applicable Merchandise (collectively, the "**PACA/PASA Claims**").    The Debtors estimate that PACA/PASA Claimants are owed approximately $5.5 million in unpaid amounts as of the Commencement Date. Because the PACA/PASA Claimants may impose a Statutory Trust on certain of the Merchandise and thereby obtain priority ahead of all other secured and unsecured creditors of the Debtors' estates, payment of valid PACA/PASA Claims will not prejudice or affect the amount available for distributions to other creditors of the Debtors.   Accordingly, the Debtors seek authority to pay PACA/PASA Claims in the ordinary course of business, pursuant to the terms of any contracts under which such claims arose, in accordance with the DIP Orders, including, without limitation, the Budget under, and as defined in, the DIP Orders.  The Debtors

WEIL:\97352174\1\44444.0008

will include a summary of any PACA/PASA Claims paid pursuant to the relief requested herein
in the Critical Vendor Matrix (as defined in the Critical Vendors Motion).

**Relief Requested Should Be Granted**

**A.    Payment of Prepetition Lien Claims of Shippers and Miscellaneous Lien Claimants
Is in the Best Interest of the Debtors' Estates and Warranted Under the Doctrine of
Necessity**

24.    The Court may grant the relief requested herein pursuant to section 363 of
the Bankruptcy Code.   Section 363(b) of the Bankruptcy Code provides, in relevant part, that
"[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary
course of business, property of the estate."   11 U.S.C. § 363(b)(1).   Under section 363 of the
Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims if a sound
business purpose exists for doing so. *See In re Ionosphere Clubs, Inc*., 98 B.R. 174, 175 (Bankr.
S.D.N.Y. 1989) (finding that there must be a sound business justification to justify payment of
prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A.
Phillips, Inc*.), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy
Code to allow contractor to pay prepetition claims of suppliers).   The business judgment rule is
satisfied where "the directors of a corporation acted on an informed basis, in good faith and in
the honest belief that the action taken was in the best interests of the company." *See, e.g.*,
*Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*,
147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del.
1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).   Moreover, if "the debtor articulates a
reasonable basis for its business decisions (as distinct from a decision made arbitrarily or
capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of
Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612,
616 (Bankr. S.D.N.Y. 1986) (citations omitted).   Courts in this District consistently have

10

declined to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as such decisions are attributable to any "rational business purpose." *Integrated*, 147 B.R. at 656 (quoting *CRTF Corp. v. Federated Dep't Stores*, 683 F. Supp. 422, 436 (S.D.N.Y. 1988)).

25.    In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 233 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").  Payment of prepetition claims is authorized under section 105(a) of the Bankruptcy Code and the doctrine of necessity when such payment is essential to the continued operation of a debtor's business.  *See, e.g.*, *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991); *CoServ*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the

WEIL:\97352174\1\44444.0008

estate."); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for payment of prepetition claims under doctrine of necessity and noting that the bankruptcy court has "power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11").

26.      This flexible approach is particularly critical where prepetition creditors—here, the Shippers and Miscellaneous Lien Claimants—provide vital services to a debtor that would be unavailable if the debtor did not satisfy its prepetition obligations.  Indeed, paying the Lien Claimants will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption.  The Lien Claimants may be unwilling to release the Merchandise in their possession to which they may be entitled to liens, because releasing possession of the Merchandise may convert their claims against the Debtors from secured to unsecured.  Therefore, unless the Court authorizes the Debtors to pay the Lien Claimants, it is unlikely the Debtors will continue to have access to the Merchandise in the possession of the Lien Claimants.  If the Lien Claimants possess lien rights or have the ability to exercise "self-help" remedies to secure payment of their claims, failure to satisfy the Lien Claimants' claims could have a material adverse effect on the Debtors' retail business operations to the detriment of the Debtors' creditors.

27.      Accordingly, the Debtors submit that the proposed relief with respect to the Lien Claimants' claims is warranted in these chapter 11 cases.

**B.      The Court Should Confirm That Commencement Date Orders Are Administrative Expense Priority Claims and Authorize The Debtors to Pay Such Claims.**

28.      Pursuant to section 503(b) of the Bankruptcy Code, Merchandise delivered on, within 20 days prior to, and after the Commencement Date are entitled to administrative expense priority.  Thus, granting the relief sought herein with respect to the Commencement

Date Orders will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted.  Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Commencement Date Orders to provide certain suppliers with assurance of such administrative priority.  The attendant disruption to the continuous and timely flow of the Merchandise to the Debtors' Supermarkets, and any resulting inability to keep the Supermarkets adequately stocked with Merchandise for the benefit of the Debtors' customers, would damage the Debtors' business reputation, erode the Debtors' customer base and ultimately lead to a loss of revenue, all to the detriment of the Debtors and their creditors.  Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Commencement Date Orders and should authorize the Debtors to pay such orders in the ordinary course of business.

**C.    The Payment of PACA/PASA Claims is in the Best Interests of the Debtors' Businesses and their Estates and Does Not Adversely Affect Any Parties in Interest.**

29.    The prompt and full payment of PACA/PASA Claims should be authorized by the Court.  The disposition of Trust Assets is subject to the jurisdiction of the bankruptcy court.  See Monterey *Mushrooms, Inc. v. Carolina Produce Distribs.*, Inc., 110 B.R. 207, 209 (W.D.N.C. 1990); *Allied Growers Co-Op, Inc. v. United Fruit and Produce Co.*, 86 B.R. 14, 16 (Bankr. D. Conn. 1988).  Assets governed by PACA or PASA, however, do not constitute property of the Debtors' estates.  See *In re Kornblum & Co.*, 81 F.3d 280, 284 (2nd Cir. 1995); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993).  As a result, the distribution of assets to the PACA/PASA Claimants falls outside the priority scheme of the Bankruptcy Code, and the PACA/PASA Claimants holding PACA/PASA Claims are, thus, entitled to payment from the respective Statutory Trust ahead of the Debtors' other creditors.  See, e.g., *In re Magic Rests., Inc.*, 205 F.3d 108, 110 (3d Cir. 2000); *Consumers*

WEIL:\97352174\1\44444.0008

*Produce Co., Inc. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1377-78 (3d Cir. 1994).

Accordingly, the requested relief does not prejudice the Debtors' creditors.  In fact, payment

made to PACA/PASA Claimants on account of PACA/PASA Claims is consistent with the intent

of PACA and PASA and, moreover, will inure to the benefit of the Debtors and all parties in

interest by (i) facilitating the continued purchase and receipt of fresh produce and other products

and (ii) avoiding potential disruption to the Debtors' business operations.

30.     Notably, in certain circumstances, shareholders, officers, or directors of a

corporate entity who are in a position to control trust assets but breach the fiduciary duty to

preserve those assets may be held personally liable under PACA or PASA, as applicable.  See

*Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997); see also *Goldman-Hayden

Co. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 350 (5th Cir. 2000).  Thus, to the extent that

any valid obligations arising under PACA or PASA remain unsatisfied by the Debtors, the

Debtors' officers and directors or members may be subject to lawsuits during the pendency of

these chapter 11 cases.  Any such lawsuit (and the ensuing potential liability) would distract the

Debtors and their officers and directors from administering the Debtors' estates and, moreover,

could lead to the assertion of substantial indemnification claims under the Debtors' governing

documents, employment agreements, and applicable laws.

31.     Finally, payment of PACA/PASA Claims will inure to the benefit of the

Debtors' estates by preserving goodwill between the Debtors and certain of the vendors of fresh

produce, meat and poultry products.  Without the relief requested herein, the Debtors could be

subject to numerous claims, adversary proceedings, and motions, including motions by

PACA/PASA Claimants for relief from the automatic stay and/or complaints for injunctive

relief, which would result in the unnecessary expenditure of time, effort, and money by the Debtors.

## Reservation of Rights

32.     Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## The Debtors Have Satisfied Bankruptcy Rule 6003(b)

33.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b).  As described above, payment of the Shipping Charges, Miscellaneous Lien Claims, Commencement Date Orders, and PACA/PASA Claims is integral to the Debtors' operations and is necessary to maintain the Debtors' operations, as well as the confidence and goodwill of the Debtors' customer base. Failure to implement the relief with respect to the Shippers, Miscellaneous Lien Claimants, Commencement Date Orders, and PACA/PASA Claimants during the first 21 days of these

WEIL:\97352174\1\44444.0008

chapter 11 cases will jeopardize value for the Debtors' estates and creditors.  Moreover, it is the

Debtors' business judgment that continuation of their positive relationship with the Shippers,

Miscellaneous Lien Claimants, and PACA/PASA Claimants is imperative to their continued

operations.  Accordingly, the Debtors submit that the relief requested herein is necessary to avoid

immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003(b) is satisfied.

### **Bankruptcy Rules 6004(a) and (h)**

34.    To implement the foregoing successfully, the Debtors request that the

Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the

circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease

of property under Bankruptcy Rule 6004(h).   As explained above and in the First Day

Declarations, the relief requested herein is necessary to avoid immediate and irreparable harm to

the Debtors.   Accordingly, ample cause exists to justify finding that the notice requirements

under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day

stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay

apply.

### **Notice**

35.    Notice of this Motion has been provided to (i) the Office of the United

States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn:  Greg

Zipes, Esq. and Paul Schwartzberg, Esq.); (ii) the holders of the forty (40) largest unsecured

claims against the Debtors (on a consolidated basis); (iii) counsel to the Ad Hoc Group and

proposed DIP Lenders, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY

10036 (Attn:  W. Austin Jowers, Esq., Michael Rupe, Esq. and Michael R. Handler, Esq.); (iv)

counsel to Ankura Trust Company, LLC, as the Prepetition Agent under the Prepetition Credit

Agreement, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn:

16

Christian Fischer, Esq.); (v) Citizens Bank, N.A., 437 Madison Avenue, 18th Floor, New York, NY 10022 (Attn:  Jamie Salas); (vi) the Internal Revenue Service; and (vii) the United States Attorney's Office for the Southern District of New York (collectively, the "**Notice Parties**"). No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of interim and final orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 23, 2020
        New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

## **Exhibit A**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x

In re                                                                  :    **Chapter 11**
                                                                       :
**FAIRWAY GROUP HOLDINGS CORP.**, *et al.*,                            :    **Case No. 20-[_____] (___)**
                                                                       :
                                     Debtor.[1]                        :    **(Joint Administration Pending)**

-----------------------------------------------------------------------x

### INTERIM ORDER AUTHORIZING DEBTORS TO
### (A) PAY  PREPETITION CLAIMS OF SHIPPERS AND
### MISCELLANEOUS LIEN  CLAIMANTS, (B) CONFIRM
### ADMINISTRATIVE EXPENSE PRIORITY OF UNDISPUTED
### COMMENCEMENT DATE ORDERS AND SATISFY SUCH OBLIGATIONS
### IN THE ORDINARY COURSE OF BUSINESS, AND (C) PAY PACA/PASA CLAIMS

Upon the motion (the "**Motion**")[2] of Fairway Group Holdings Corp. and its

debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**") pursuant to sections 105(a), 363 and 503 of title 11 of the United

States Code (the "**Bankruptcy Code**"), for entry of an interim and final orders authorizing, but

not directing, the Debtors to pay (a) Shipping Charges, (b) Miscellaneous Lien Claims (c)

amounts in connection with Commencement Date Orders to suppliers, and (d) PACA/PASA

Claims, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the

Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Fairway Group Holdings Corp. (2788); Fairway Group Acquisition Company (2860); Fairway Bakery LLC (4129); Fairway Broadway LLC (8591); Fairway Chelsea LLC (0288); Fairway Construction Group, LLC (2741); Fairway Douglaston LLC (2650); Fairway East 86th Street LLC (3822); Fairway eCommerce LLC (3081); Fairway Georgetowne LLC (9609); Fairway Greenwich Street LLC (6422); Fairway Group Central Services LLC (7843); Fairway Group Plainview LLC (8643); Fairway Hudson Yards LLC (9331); Fairway Kips Bay LLC (0791); Fairway Nanuet LLC (9240); Fairway Paramus LLC (3338); Fairway Pelham LLC (3119); Fairway Pelham Wines & Spirits LLC (3141); Fairway Red Hook LLC (8813); Fairway Stamford LLC (0738); Fairway Stamford Wines & Spirits LLC (3021); Fairway Staten Island LLC (1732); Fairway Uptown LLC (8719); Fairway Westbury LLC (6240); and Fairway Woodland Park LLC (9544).  The location of the Debtors' corporate headquarters is 2284 12th Avenue, New York, New York 10027.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declarations.

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the First Day Declarations, filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, to pay the prepetition amounts owed on account of Lien Claims; *provided that*, the Debtors are authorized, but not directed, to pay or honor only amounts or obligations that are or become due and payable as of the Commencement Date or between the Commencement Date and the date that a final order on the Motion is entered, unless otherwise ordered by the Court and *provided further* that the Debtors are not authorized to pay unless the applicable party who has the potential to assert Lien Claims against the Debtors and their property if the Debtors fail to pay for the goods or services

2

rendered has perfected or, in the Debtors' business judgment, is capable of perfecting or may be capable of perfecting in the future, one or more liens in respect of such claim; and *provided further* that such payment shall not be deemed to be a waiver of the Debtors' rights to challenge the extent, validity, perfection or possible avoidance of the related liens and payments.

3.     The Debtors, in their sole discretion, shall undertake appropriate efforts to cause the Lien Claimants to acknowledge in writing that payment of their respective claims is conditioned upon such Lien Claimants continuing to supply services to the Debtors on trade terms that, at a minimum, such Lien Claimants provided to the Debtors on a historical basis prior to the Commencement Date, or such other trade practices and programs that are at least as favorable to the Debtors as those in effect during such time, and the Debtors reserve the right to negotiate new trade terms with any Lien Claimants as a condition to payment of any such claim.

4.     The Debtors may condition, in their sole discretion, payment of Lien Claims on the agreement of Lien Claimants to continue supplying goods and services to the Debtors on the same trade terms given to them prior to the Commencement Date or upon new trade terms (to the extent agreed to by the Debtors and the Miscellaneous Lien Claimant, the "**Agreed Terms**").

5.     To the extent a Lien Claimant fails to comply with the Agreed Terms, the Debtors may, in their sole discretion, cause (a) any payment made to such Lien Claimant on account of its asserted lien claim to be deemed to have been in payment of then outstanding postpetition obligations owed to the Lien Claimant and (b) the Lien Claimant shall be required to immediately repay to the Debtors any payment made to it on account of its asserted lien claim to the extent the aggregate amount of such payments exceeds the postpetition obligations then

3

outstanding, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or otherwise.

6.      Neither the Debtors nor any other party in interest concedes that any liens (contractual, common law, statutory or otherwise) satisfied pursuant to this Interim Order are valid, and the Debtors expressly reserve the right to contest the extent, validity or perfection or seek the avoidance of all such liens.

7.      All undisputed amounts relating to Commencement Date Orders are hereby granted postpetition administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code and the Debtors are authorized, but not directed, to pay such amounts in the ordinary course of business consistent with the parties' customary practices in effect prior to the Commencement Date.

8.      The Debtors are hereby authorized, but not directed, to pay PACA/PASA Claims in the ordinary course of business consistent with the parties' customary practices in effect prior to the Commencement Date.

9.      Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider the relief requested in the Motion on a final basis (the "**Final Hearing**").

10.     Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or

4

rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

11.    Notwithstanding anything to the contrary contained herein, any payments made or to be made by the Debtors under this Interim Order, and any authorization contained in this Interim Order, shall be in compliance with, and shall be subject to the DIP Orders approving the Debtors' debtor-in-possession financing facility and/or use of cash collateral, and the documentation in respect of any such debtor-in-possession financing facility, including, without limitation, the Budget under, and as defined in, the DIP Orders.

12.    Except as otherwise set forth herein, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

13.    The requirements of Bankruptcy Rule 6003(b) have been satisfied.

14.    Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

15.    Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

16.    This Interim Order is effective only from the date of entry through the Court's disposition of the Motion on a final basis; *provided* that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

17.    The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

18.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

5

19.    The Final Hearing shall be held on _____, **2020, at _____**

**(Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing,

filed with the Court, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal &

Manges LLP, 767 Fifth Avenue, New York, New York  10153 (Attn:  Ray C. Schrock, P.C. and

Sunny Singh, Esq.); (ii) the Office of the United States Trustee for Region 2, 201 Varick Street,

Suite 1006, New York, NY 10014 (Attn:  Greg Zipes, Esq. and Paul Schwartzberg, Esq.); (iii)

counsel to the Ad Hoc Group and proposed DIP Lenders, King & Spalding LLP, 1185 Avenue of

the Americas, New York, NY 10036 (Attn:  W. Austin Jowers, Esq., Michael Rupe, Esq. and

Michael R. Handler, Esq.); and (iv) counsel to Ankura Trust Company, LLC, as the Prepetition

Agent under the Prepetition Credit Agreement, Davis Polk & Wardwell LLP, 450 Lexington

Avenue, New York, NY 10017 (Attn:  Christian Fischer, Esq.), in each case, so as to be received

no later than **4:00 p.m. (Prevailing Eastern Time) on _____, 2020.**


Dated: _____, 2020
        New York, New York

        _____
        UNITED STATES BANKRUPTCY JUDGE

WEIL:\97352174\1\44444.0008