## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| FAIRWAY GROUP HOLDINGS CORP., *et al.,* | Case No. 20-10161 (JLG) |
| Debtors.[1] | Jointly Administered |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507: (A) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING AND USE CASH COLLATERAL; (B) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (C) GRANTING ADEQUATE PROTECTION; (D) MODIFYING AUTOMATIC STAY; (E) SCHEDULING A FINAL HEARING; AND (F) GRANTING RELATED RELIEF**

Upon the motion, dated January 23, 2020 (the "<u>DIP Motion</u>")[2] of Fairway Group Holdings Corp. and its debtor affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>"), seeking entry of the Interim Order (as defined herein) and a final order (this "<u>Final Order</u>") and a Final Order (as defined herein) pursuant to Sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "<u>Local Rules</u>"), among other things:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Fairway Group Holdings Corp. (2788); Fairway Group Acquisition Company (2860); Fairway Bakery LLC (4129); Fairway Broadway LLC (8591); Fairway Chelsea LLC (0288); Fairway Construction Group, LLC (2741); Fairway Douglaston LLC (2650); Fairway East 86th Street LLC (3822); Fairway eCommerce LLC (3081); Fairway Georgetowne LLC (9609); Fairway Greenwich Street LLC (6422); Fairway Group Central Services LLC (7843); Fairway Group Plainview LLC (8643); Fairway Hudson Yards LLC (9331); Fairway Kips Bay LLC (0791); FN Store LLC (9240); Fairway Paramus LLC (3338); Fairway Pelham LLC (3119); Fairway Pelham Wines & Spirits LLC (3141); Fairway Red Hook LLC (8813); Fairway Stamford LLC (0738); Fairway Stamford Wines & Spirits LLC (3021); Fairway Staten Island LLC (1732); Fairway Uptown LLC (8719); Fairway Westbury LLC (6240); and Fairway Woodland Park LLC (9544).  The location of the Debtors' corporate headquarters is 2284 12th Avenue, New York, New York 10027.  Fairway Community Foundation Inc., a charitable organization, owned by Fairway Group Holdings Corp., is not a debtor in these proceedings.

[2] Capitalized terms used but not defined herein have the meanings given to them in the DIP Motion or the DIP Credit Agreement (as defined herein), as applicable.

(i)      authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis consisting of a senior secured superpriority term credit facility (the "DIP Facility" and, the financial institutions party thereto from time to time as lenders, as provided in the DIP Credit Agreement, the "DIP Lenders"), comprised of (a) a new money multiple draw term loan facility in an aggregate principal amount of $20.0 million (the "New Money DIP Facility" and, the new money loans made thereunder, the "New Money DIP Loans"); (b) a new money delayed draw credit facility in an aggregate principal amount of $5.0 million (the "New Money Delayed Draw DIP Facility," and, the loans available thereunder, the "New Money Delayed Draw DIP Loans"); and (c) in connection with the funding of any New Money DIP Loans, a roll up loan facility (the "Roll-Up DIP Facility"), pursuant to which the DIP Lenders shall be deemed to make loans under the Roll-Up DIP Facility (such loans, the "Roll-Up DIP Loans" and, together with the New Money DIP Loans and the New Money Delayed Draw DIP Loans, the "DIP Loans") in an aggregate principal amount equal to the Debtors' outstanding obligations under the Super Senior Credit Facilities held by the DIP Lenders, which Roll-Up DIP Loans shall be deemed used to satisfy and discharge such obligations, pursuant to the terms and conditions of that certain *Superpriority Secured Debtor-in-Possession Credit Agreement*, dated as of January 28, 2020 (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments, and amendments executed and delivered in connection therewith, the "DIP Documents"), by and among Fairway Group Acquisition Company ("Borrower") and the other "Loan Parties" party thereto (the Borrower and the other "Loan Parties," which are, in each case, the Debtors in these Chapter 11 Cases, collectively, the "DIP Parties"), the DIP Lenders, and Ankura Trust Company, LLC

("Ankura"), as administrative agent and collateral agent (in such capacity, the "DIP Agent") for and on behalf of itself and the DIP Lenders;

(ii)     authorizing the Debtors party thereto to execute and deliver the DIP Credit Agreement and any other agreements and documents related thereto and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)     authorizing the Debtors to enter into the DIP Facility and to incur all obligations owing thereunder and under the DIP Documents to the DIP Agent and DIP Lenders (collectively, including all "Obligations" as described in the DIP Credit Agreement, the "DIP Obligations") and granting on a final basis the DIP Agent and DIP Lenders allowed superpriority administrative expense claim status in each of the Chapter 11 Cases and in any Successor Case (as defined herein), subject to the Carve Out (as defined herein);

(iv)     granting to the DIP Agent on a final basis, for the benefit of itself and the DIP Lenders, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "cash collateral" as defined in Section 363(a) of the Bankruptcy Code ("Cash Collateral"), which liens shall have the priorities set forth herein and shall be subject to the Carve Out;

(v)     authorizing the Debtors on a final basis to use any Cash Collateral in which the Prepetition Secured Parties have an interest, as well as the proceeds of the DIP Facility, in each case in accordance with the Interim Order, this Final Order, and the DIP Documents, including in accordance with the Budget (subject to Permitted Variances) as required herein;

(vi)     authorizing and directing the Debtors on a final basis to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, commitment fees, closing fees, structuring fees, administrative

agent's fees, and the reasonable fees and disbursements of the DIP Agent's and the DIP Lenders' respective attorneys, advisors, accountants, and other consultants, in each case, as and to the extent provided in, and in accordance with, the applicable DIP Documents, the Interim Order, and this Final Order;

(vii)    authorizing the Debtors on a final basis to use the Prepetition Collateral (as defined herein), including the Cash Collateral of the Prepetition Secured Parties under the Prepetition Documents (each as defined herein) and providing adequate protection to the Prepetition Secured Parties solely to the extent of any Diminution in Value (as defined herein) of their respective interests in the Prepetition Collateral, including the Cash Collateral; and

(viii)    modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents, the Interim Order, and this Final Order and to provide for the immediate effectiveness of this Final Order.

The Court having considered the DIP Motion, the exhibits attached thereto, the Declaration of Mark Hootnick pursuant to Rule 1007-2 of the Local Rules, the DIP Documents, the First Day Declarations, and the evidence submitted and arguments made at the interim hearing (the "Interim Hearing") and the final hearing held on February 20, 2020 (the "Final Hearing"); and the Court having entered after the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507: (A) Authorizing the Debtors to Obtain Postpetition Financing and Use Cash Collateral, (B) Granting Liens and Providing Superpriority Administrative Expense Status; (C) Granting Adequate Protection; (D) Modifying Automatic Stay; (E) Scheduling a Final Hearing; and (F) Granting Related Relief* [Docket No. 78] (the "Interim Order") authorizing the Debtors to borrow up to $15.0 million in New Money DIP Loans as provided therein;  and notice of the Final Hearing

having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Final Hearing having been held and concluded; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    **Petition Date**.  On January 23, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").

B.    **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

C.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

This Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and proceedings with respect to the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

       **D.**    <u>**Committee Formation**</u>.  On February 4, 2020, the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to Section 1102 of the Bankruptcy Code (the "<u>Committee</u>").

       **E.**    <u>**Notice**</u>.  Proper, timely, adequate, and sufficient notice of the Final Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Final Hearing or of the entry of this Final Order shall be required.

       **F.**    <u>**Debtors' Stipulations**</u>.   After consultation with their attorneys and financial advisors, and subject and without prejudice to the rights of parties in interest, including the Committee or any other statutory committee that may be appointed in the Chapter 11 Cases, as set forth in paragraph 37 herein, the Debtors, on their own behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(iv) below are referred to herein, collectively, as the "<u>Debtors' Stipulations</u>"):

       (i)    *Prepetition Credit Agreement*.  Pursuant to that certain Super Senior Credit Agreement, dated as of August 28, 2018 (as amended, restated, supplemented, or otherwise modified from time to time, including by that certain First Amendment to Super Senior Credit Agreement, dated as of July 29, 2019, by that certain Second Amendment to and Extension under Super Senior Credit Agreement, dated as of August 28, 2019, and by that certain Third Amendment and Limited Waiver to Super Senior Credit Agreement, dated as of October 7, 2019, and waived

by that Limited Waiver to Super Senior Credit Agreement, dated as of January 8, 2020, the "Prepetition Credit Agreement," together with any Loan Document (as defined in the Prepetition Credit Agreement) and any other agreement or document related to or evidencing the loans and obligations thereunder executed or delivered in connection therewith, each as amended, restated, supplemented, waived, or otherwise modified from time to time, the "Prepetition Documents") among (a) Fairway Group Holdings Corp. ("Holdings"); (b) Borrower; (c) Ankura Trust Company, LLC, as administrative agent and collateral agent (the "Prepetition Agent"); and (e) the lenders from time to time party thereto (the "Prepetition Lenders" and, together with the Prepetition Agent, the "Prepetition Secured Parties"), the Prepetition Lenders provided term loans to the Borrower and Holdings pursuant to the Prepetition Documents;

(ii)     *Prepetition Obligations*.    Under the Prepetition Credit Agreement, the Prepetition Lenders provided to the Debtors party thereto commitments in respect of term loans in the aggregate principal amount of up to $227,100,000 (collectively, together with any accrued and unpaid interest, fees, expenses, and disbursements (including, without limitation, any accrued and unpaid attorneys' fees, and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' (as defined therein) obligations under the Prepetition Documents, including all "Obligations" as defined in the Prepetition Credit Agreement, the "Prepetition Obligations").

(iii)    *Prepetition Liens and Prepetition Collateral.*  As more fully set forth in the Prepetition Documents, prior to the Petition Date, pursuant to that certain Super Senior Guarantee and Collateral Agreement, dated as of August 28, 2018, as amended, restated, supplemented, or

otherwise modified from time to time prior to the date hereof, Holdings and certain subsidiaries of Holdings (together with the Borrower and Holdings, collectively, the "Prepetition Loan Parties") jointly and severally guaranteed all of the Prepetition Obligations, and each Prepetition Loan Party granted to the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, a lien on and security in all of its right, title, and interest in (collectively, the "Prepetition Liens") substantially all of its assets (the "Prepetition Collateral"), subject to certain customary exclusions;

(iv)    *Validity, Perfection, and Priority of Prepetition Liens and Prepetition Obligations*.  As of the Petition Date, (a) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Documents and any other lien arising as a matter of law (in each case, to the extent that such existing liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Liens as of the Petition Date or were valid non-avoidable senior liens that are perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, the "Permitted Liens");[4] (b) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Loan Parties enforceable in accordance with the terms of the respective Prepetition Documents; (d) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including,

---

[4] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest, including, but not limited to, the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or the Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Lien. The right of a seller of goods to reclaim such goods under Section 546(c) of the Bankruptcy Code is not a Permitted Lien and is expressly subject to the Prepetition Liens and DIP Liens.

without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state-law equivalents or actions for recovery or disgorgement, against any of the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, consultants, directors, and employees arising out of, based upon, or related to the Prepetition Credit Documents; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Obligations; and (g) the Prepetition Obligations constitute allowed, secured claims within the meaning of Sections 502 and 506 of the Bankruptcy Code.

(a)    *Release*.  Subject to paragraph 37, the Debtors hereby stipulate and agree that they forever and irrevocably release, discharge, and acquit the DIP Agent, the Prepetition Secured Parties, all former, current, and future DIP Lenders, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, professionals, directors, employees, advisors, consultants, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns, each solely in their capacities as such (and not, for the avoidance of doubt, in their capacities as holders of equity interests in any of the Debtors) (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever relating to, as applicable, the DIP Facility, the DIP Documents, the Prepetition Documents and/or the transactions

contemplated hereunder or thereunder arising before the entry of this Final Order, including (x) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the liens or claims of the Prepetition Agent, the Prepetition Secured Parties, the DIP Agent, and the DIP Lenders.  The Debtors further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations that the Debtors may now have or may claim to have against the Releasees, arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to this Court entering this Final Order.

G.    **Cash Collateral**.  All of the Prepetition Loan Parties' cash, including any cash in deposit accounts, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

H.    **Findings Regarding Postpetition Financing**

(i)    *Request for Postpetition Financing*.  The Debtors seek authority on a final basis to continue to (a) borrow under the DIP Facility on the terms described herein and in the DIP Documents and (b) use Cash Collateral on the terms described herein to administer their Chapter 11 Cases and fund their operations.

(ii)    *Priming of the Prepetition Liens*.  The priming of the Prepetition Liens of the Prepetition Secured Parties on the Prepetition Collateral under Section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility, as authorized by the Interim Order and this Final Order, and as further described below, will enable the Debtors to continue borrowing under the DIP Facility and to continue to operate their businesses to the benefit of their estates and creditors.  The Prepetition Secured Parties are each entitled to receive adequate protection as set

forth in the Interim Order and this Final Order pursuant to Sections 361, 363, and 364 of the Bankruptcy Code ("Adequate Protection"), to the extent of any diminution in value resulting from, among other things, the Debtors' use, sale, or lease of Cash Collateral and other Prepetition Collateral, the subordination to the Carve Out (as defined herein), the priming (to the extent provided for herein) of the Prepetition Liens by the DIP Liens (as defined herein), and the imposition of the automatic stay ("Diminution in Value") of each of their respective interests in the Prepetition Collateral (including Cash Collateral). All rights of the Committee and any other parties in interest are preserved to challenge whether any Diminution in Value has occurred during the course of these cases.

(iii)    *Need for Postpetition Financing and Use of Cash Collateral*. The Debtors continue to have an immediate and critical need to use Cash Collateral and to obtain credit pursuant to the DIP Facility in order to, among other things, enable the orderly continuation of their operations and to administer these Chapter 11 Cases. The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and to otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties in interest. The Debtors do not have sufficient available sources of working capital and/or financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms*. The DIP Facility is the best source of debtor-in-possession financing available to the Debtors. Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than

the DIP Facility.  The Debtors are unable to obtain unsecured credit allowable under Bankruptcy

Code Section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain

(a) unsecured credit having priority over that of administrative expenses of the kind specified in

Sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on

property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured

solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing

on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit

of itself and the DIP Lenders, (1) perfected security interests in and liens on (each as provided

herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in

paragraph 5 hereof, (2) superpriority claims and liens, and (3) the other protections set forth in this

Final Order.

        (v)     *Use of Cash Collateral and Proceeds of the DIP Facility*.  As a condition to

the Debtors' entry into the DIP Documents, the extensions of credit under the DIP Facility, and the

authorization to use Prepetition Collateral, including Cash Collateral, the DIP Agent, the DIP

Lenders, and the Prepetition Secured Parties required, and the Debtors agreed, that Cash Collateral

and the proceeds of the DIP Facility shall be used, in each case, in a manner consistent with the

terms and conditions of this Final Order and the DIP Documents and in accordance with the budget

(as the same may be modified from time to time consistent with the terms of the DIP Documents

and subject to such variances as permitted in the DIP Credit Agreement, the "<u>Budget</u>")[5] and as

otherwise provided in this Final Order and the DIP Documents, for (a) working capital; (b) other

general corporate purposes of the Debtors; (c) permitted payments of the costs of administration

of the Chapter 11 Cases (including professional fees and expenses of the Debtors' professionals

---

[5] A copy of the initial Budget is attached hereto as **Exhibit 2**.

and professionals retained by the Committee); (d) payment of such prepetition expenses as consented to by the DIP Agent (acting at the direction of DIP Lenders holding more than fifty percent (50%) of the outstanding loans and commitments under the DIP Facility, which shall include both Brigade Capital Management ("Brigade") and Special Situations Investing Group ("SSIG") for so long as such institutions and/or their affiliates are DIP Lenders (the "Requisite DIP Lenders")) and as approved by the Court; (e) payment of interest, fees, and expenses (including, without limitation, legal and other professionals' fees and expenses of the DIP Agent and the DIP Lenders owed under the DIP Documents); (f) payment of certain adequate protection amounts to the Prepetition Secured Parties, as set forth in paragraph 16 hereof; (g) payment of the Carve Out (which shall be in accordance with paragraph 34 of this Final Order); and (h) such other uses set forth in the Budget and permitted by the DIP Credit Agreement.

(vi)    *Application of Proceeds of Collateral*.  As a condition to entry into the DIP Credit Agreement, the extension of credit under the DIP Facility and authorization to use Cash Collateral, the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders agreed that, as of and commencing on the date of the Interim Order, the Debtors shall apply the proceeds of DIP Collateral in accordance with the Interim Order, this Final Order, and the DIP Documents.

*(vii)    Roll-up Loans*. Upon entry of this Final Order, without any further action by the Debtors or any other party, the DIP Lenders shall be deemed to make Roll-Up DIP Loans in an aggregate principal amount equal to the Debtors' outstanding obligations under the Super Senior Credit Facilities held by the DIP Lender as of the date hereof, which Roll-Up DIP Loans shall be used to satisfy and discharge such obligations pursuant to the terms and conditions of the DIP Credit Agreement.  The conversion (or "roll-up") is hereby authorized as compensation for,

in consideration for, and solely on account of, the agreement of Prepetition Lenders to fund the New Money DIP Loans and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Obligations.  The Prepetition Lenders would not have otherwise consented to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Agent and DIP Lenders would not be willing to continue providing the New Money DIP Loans without the inclusion of the Roll-Up DIP Loans in the DIP Obligations.  Because the Roll-Up DIP Loans are subject to the reservation of rights in paragraph 37, they will not prejudice the right of any party in interest.

       **I.**      **Adequate Protection**.  The Prepetition Agent and the Prepetition Secured Parties are entitled to receive Adequate Protection to the extent of any aggregate Diminution in Value of their respective interests in the Prepetition Collateral.  Pursuant to Sections 361, 363, and 507(b) of the Bankruptcy Code, as Adequate Protection, subject in all respects to the Carve Out (as defined herein), the Prepetition Secured Parties received and will continue to receive (i) solely to the extent of any Diminution in Value of their interests in the Prepetition Collateral, adequate protection liens and superpriority claims, as more fully set forth in paragraphs 13–16 herein, and (ii) current payment of reasonable and documented fees and expenses of the Prepetition Agent and the Ad Hoc Group (including without limitation, legal and other professionals' fees and expenses of the Prepetition Agent and the Ad Hoc Group,  whether arising before or after the Petition Date).

       **J.**      **Sections 506(c) and  552(b)**.  In light of (i) the DIP Agent's and DIP Lenders' agreement that their liens and superpriority claims shall be subject to the Carve Out and (ii) the Prepetition Agent and Prepetition Lenders' agreement that their respective liens and claims, including any adequate protection liens and claims, shall be subject to the Carve Out and subordinate to the DIP Liens, (a) the Prepetition Secured Parties are entitled to a waiver of any

"equities of the case" exception under Section 552(b) of the Bankruptcy Code and (b) the DIP

Agent, DIP Lenders, and Prepetition Secured Parties are each entitled to a waiver of the provisions

of Section 506(c) of the Bankruptcy Code to the extent set forth herein.

K.    **Good Faith of the DIP Agent and DIP Lenders**.

(i)    *Willingness to Provide Financing*.    The DIP Lenders have indicated a

willingness to provide and to continue to provide the DIP Facility to the Debtors subject to (a) entry

of this Final Order; (b) final approval of the terms and conditions of the DIP Facility and the DIP

Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d)

findings by this Court that the DIP Facility is essential to the Debtors' estates, that the DIP Agent

and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith,

and that the DIP Agent's and DIP Lenders' DIP Superpriority Claims and DIP Liens, and other

protections granted pursuant to this Final Order and the DIP Documents will have the protections

provided by Section 364(e) of the Bankruptcy Code.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.    The terms

and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid

thereunder, (a) are fair, reasonable, and the best available to the Debtors under the circumstances;

(b) are appropriate for secured financing to debtors in possession; (c) reflect the Debtors' exercise

of prudent business judgment consistent with their fiduciary duties; and (d) are supported by

reasonably equivalent value and consideration.    The terms and conditions of the DIP Facility and

the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors,

DIP Agent, DIP Lenders, and the Prepetition Secured Parties, with the assistance and counsel of

their respective advisors.    Use of Cash Collateral and credit to be extended under the DIP Facility

shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP

Agent, DIP Lenders, and the Prepetition Secured Parties within the meaning of Section 364(e) of the Bankruptcy Code.

(iii)    *Consent to DIP Financing and Use of Cash Collateral*.  Absent an order of this Court and the provision of Adequate Protection, consent of the Prepetition Secured Parties is required for the Debtors' use of Cash Collateral and other Prepetition Collateral.  The Prepetition Secured Parties have consented, or are deemed pursuant to the Prepetition Documents to have consented, or have not objected to the Debtors' use of Cash Collateral and other Prepetition Collateral or to the Debtors' entry into the DIP Documents in accordance with and subject to the terms and conditions in this Final Order and the DIP Documents.

L.    **Final Hearing**.  Notice of this Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors in accordance with the terms of the Interim Order, whether by facsimile, electronic mail, overnight courier, or hand delivery, to certain parties in interest, including the Notice Parties.  In addition, counsel for the Committee received notice of the Final Hearing and has had sufficient opportunity to review the DIP Motion, the Interim Order, and this Final Order. The Debtors have made reasonable efforts to afford the best notice possible under the circumstances, and no other notice is required in connection with the relief set forth in this Final Order.

Based upon the foregoing findings and conclusions, the DIP Motion, and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.    <u>Final Financing Approved</u>.  The DIP Motion is granted on a final basis.  The DIP Facility, in an amount up to the Final Financing (as defined herein), is authorized and

approved, and the use of Cash Collateral is authorized and approved, in each case, on a final basis and subject to the terms and conditions set forth in the DIP Documents or this Final Order, as applicable. All objections to this Final Order, to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled. This Final Order shall become effective immediately upon its entry.

**DIP Facility Authorization**

2.    <u>Authorization of the DIP Facility</u>. The DIP Facility, including the Roll-Up DIP Loans and the Final Financing, are hereby approved on a final basis. The Debtors are expressly and immediately authorized and empowered on a final basis to continue borrowing under the DIP Facilities and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of the Interim Order, this Final Order, and the DIP Documents and to deliver all instruments, certificates, agreements, and documents that may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by the Interim Order, this Final Order, and the DIP Documents and such acts as shall be necessary or desirable in order to effect the roll up and conversion of the Debtors' outstanding obligations under the Super Senior Credit Facilities held by the DIP Lenders as of the date hereof into Roll-Up DIP Loans. The Debtors are hereby authorized and directed on a final basis to pay, in accordance with the Interim Order and this Final Order, any principal, interest, fees, expenses, and other amounts described in the DIP Documents, the Interim Order, and this Final Order, as such amounts become due and owing, without need to obtain further Court approval (except as otherwise provided herein or in the DIP Documents (including any related fee letters)), subject to and in accordance with the term hereof and thereof, respectively, including, without limitation, any closing fees, commitment fees, structuring fees,

and administrative agent's fees, as well as any reasonable and documented fees and disbursements of the DIP Agent's and the DIP Lenders' professionals, as set forth herein and in the DIP Credit Agreement, whether or not such professional fees and disbursements arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in the Interim Order, this Final Order and the DIP Documents.  All collections and proceeds from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise will be deposited and applied as required by this Final Order and the DIP Documents.  The DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3.    <u>Authorization to Borrow</u>.  In order to prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Final Order through and including the DIP Termination Date (as defined herein), and subject to the terms, conditions, limitations on availability, and reserves set forth in the DIP Documents and this Final Order, the Debtors are hereby authorized to request extensions of credit (in the form of New Money DIP Loans) up to an aggregate outstanding principal amount of not greater than $25.0 million at any one time outstanding under the DIP Facility (the "<u>Final Financing</u>").

4.    <u>DIP Obligations</u>.  The DIP Documents and this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any

other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").  Upon entry of this Final Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent or any of the DIP Lenders under the DIP Documents or this Final Order, including, without limitation, all principal, accrued and unpaid interest, costs, fees, expenses, and other amounts under the DIP Documents and this Final Order.  The DIP Parties shall be jointly and severally liable for the DIP Obligations.  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the DIP Termination Date (as defined herein), except as provided in paragraphs 26 and 30 herein, and subject to the Carve Out requirements in paragraph 34 herein.  No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens (as defined herein) and including, in connection with any Adequate Protection provided to the Prepetition Secured Parties hereunder, subject to paragraph 37 herein) shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law) or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.    DIP Liens.  In order to secure the DIP Obligations (but as to the Roll-Up DIP Loans, subject and without prejudice to the rights of parties in interest, including the Committee or any other statutory committee that may be appointed in the Chapter 11 Cases, as set

forth in paragraph 37 herein), effective immediately upon entry of this Final Order, pursuant to

Sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for

the benefit of itself and the DIP Lenders, was granted upon entry of the Interim Order, and is hereby

granted on a final basis continuing, valid, binding, enforceable, non-avoidable, and automatically

and properly perfected postpetition security interests in and liens on (collectively, the "DIP Liens")

all real and personal property, whether now existing or hereafter arising and wherever located,

tangible and intangible, of, with respect to the DIP Obligations, each of the DIP Parties (the "DIP

Collateral"), including without limitation:    (a) all cash, cash equivalents, deposit accounts,

securities accounts, accounts, other receivables (including credit card receivables), chattel paper,

contract rights, inventory (wherever located), instruments, documents, securities (whether or not

marketable) and investment property (including, without limitation, all of the issued and

outstanding capital stock of each of its subsidiaries), furniture, fixtures, equipment (including

documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights,

patents, license rights, intellectual property, general intangibles (including, for the avoidance of

doubt, payment intangibles), rights to the payment of money (including, without limitation, tax

refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit

rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all

present and future intercompany debt, books and records related to the foregoing, and proceeds of

the foregoing, wherever located, including insurance or other proceeds, (b) all owned real property

interests and all leasehold real property interests and proceeds thereof, and (c) all other property

of the DIP Parties that was not otherwise subject to valid, perfected, enforceable and nonavoidable

liens on the Petition Date.    Notwithstanding the foregoing, the DIP Collateral shall not include

(and the DIP Liens shall not extend to) (i) assets held by the Debtors in trust and (ii) avoidance

actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents (other than actions under section 549 of the Bankruptcy Code) (together, the "Avoidance Actions") or the proceeds thereof.  Nothing herein shall limit, subordinate, or constitute a waiver of any rights and priorities of claimants with statutory trust rights, including those afforded under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a et. seq or the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. §§ 181 et. seq. ("PACA/PASA Trusts"). Notwithstanding the foregoing, or anything to the contrary contained in this Final Order, in the Interim Order, or the DIP Documents, DIP Collateral constituting assets that were in existence on the Petition Date that were not encumbered by the Prepetition Liens shall not secure the Roll-Up DIP Loans.

6.      DIP Lien Priority.  The DIP Liens securing the DIP Obligations (but as to the Roll-Up DIP Loans, subject and without prejudice to the rights of parties in interest, including the Committee or any other statutory committee that may be appointed in the Chapter 11 Cases, as set forth in paragraph 37 herein) are valid, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the DIP Liens shall be subject to the Carve Out and shall otherwise be junior only to Permitted Liens.  Other than as set forth in this Final Order or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case) and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  The DIP Liens shall not be subject to Section 510, 549, or 550 of the Bankruptcy

Code, other than in respect of any Prepetition Obligations that have been satisfied and replaced by Roll-Up DIP Loans pursuant to this Final Order (subject in all respects to the Challenge Deadline and related provisions set forth in paragraph 37). No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7.    <u>Superpriority Claims</u>.    The DIP Agent, on behalf of itself and the DIP Lenders, was granted upon entry of the Interim Order, and is hereby granted on a final basis, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases (a "<u>DIP Superpriority Claim</u>") for all DIP Obligations (but as to the Roll-Up DIP Loans, subject and without prejudice to the rights of parties in interest, including the Committee or any other statutory committee that may be appointed in the Chapter 11 Cases, as set forth in paragraph 37 herein) (a) except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Chapter 11 Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code, and (b) which shall at all times be senior to the rights of the Debtors and their estates and any successor trustee or other estate representative to the extent permitted by law; *provided*, *however*, the proceeds of Avoidance Actions shall only be available to satisfy the DIP Superpriority Claims (other than the Roll-Up DIP Loans) after exhausting recovery from all other

assets.  Notwithstanding anything to the contrary in this Final Order, the DIP Superpriority Claim shall be subject in all respects to the Carve Out.

8.      <u>No Obligation to Extend Credit</u>.  Except as required to fund the Carve Out as set forth in paragraph 34, the DIP Agent and DIP Lenders shall have no obligation to make any loan under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Final Order have been satisfied in full or waived by the DIP Agent (acting at the direction of the Requisite DIP Lenders, as applicable, and in accordance with the terms of the DIP Credit Agreement).

9.      <u>Use of Proceeds of DIP Facility</u>.  From and after the Petition Date, the Debtors shall use proceeds from borrowings under the DIP Facility in accordance with the Budget (subject to Permitted Variances), only for the purposes specifically set forth in this Final Order and the DIP Documents, and in compliance with the terms and conditions in this Final Order and the DIP Documents.

10.      <u>Roll-Up of Loans</u>.  Upon entry of this Final Order, without any further action by the Debtors or any other party, the DIP Lenders shall be deemed to make Roll-Up DIP Loans in an aggregate principal amount equal to the Debtors' outstanding obligations under the Super Senior Credit Facilities held by the DIP Lender as of the date hereof, which Roll-Up DIP Loans shall be used to satisfy and discharge such obligations pursuant to the terms and conditions of the DIP Credit Agreement.  The conversion (or "roll-up") is hereby authorized as compensation for, in consideration for, and solely on account of, the agreement of Prepetition Lenders to fund the New Money DIP Loans and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Obligations.  The Prepetition Lenders would not have otherwise consented to the use of their Cash Collateral or the subordination of their liens to the DIP Liens,

and the DIP Agent and DIP Lenders would not be willing to continue providing the New Money

DIP Loans without the inclusion of the Roll-Up DIP Loans in the DIP Obligations.  Because the

Roll-Up DIP Loans are subject to the reservation of rights in paragraph 37, they will not prejudice

the right of any party in interest.

**Authorization to Use Cash Collateral**

11.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions

of this Final Order (including, without limitation, paragraphs 30 and 35 hereof), the DIP Facility,

and the DIP Documents, and in accordance with the Budget (including Permitted Variances), the

Debtors are authorized to use Cash Collateral until the DIP Termination Date.  Nothing in this

Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the

ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting

therefrom, except as permitted in this Final Order, the DIP Facility, the DIP Documents, the

Restructuring Support Agreement (including, but not limited to, the sale transactions contemplated

by the Bid Procedures), and in accordance with the Budget (including Permitted Variances).

12.     <u>Adequate Protection Liens</u>.

(i)     *Prepetition Adequate Protection Liens*.  Pursuant to Sections 361,

363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the

Prepetition Secured Parties in the Prepetition Collateral, solely to the extent against any aggregate

Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Loan Parties

hereby grant (as of the date of entry of the Interim Order) to the Prepetition Agent, on behalf of

itself and the Prepetition Secured Parties, continuing, valid, binding, enforceable and perfected

postpetition security interests in and liens on the DIP Collateral (subject and without prejudice to

the rights of parties in interest, including the Committee or any other statutory committee that may

be appointed in the Chapter 11 Cases, as set forth in paragraph 37 herein) (the "Adequate Protection Liens").

13.     Priority of Adequate Protection Liens.

(i)    The Adequate Protection Liens shall be subject to the Carve Out and shall otherwise be junior only to (1) Permitted Liens and (2) the DIP Liens, and the Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral. For the avoidance of doubt, the Prepetition Agent shall hold the Adequate Protection Liens on behalf of the Prepetition Secured Parties and shall deliver the proceeds and/or other benefits of such Adequate Protection Liens to the Prepetition Secured Parties strictly in accordance with the Prepetition Documents (including any waterfall provision set forth therein) as may be ordered by the Court.

(ii)    Except as provided herein, including, without limitation, with respect to the Carve Out, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of the Chapter 11 Cases or Successor Cases. Subject to the provisions of paragraph 37, the Adequate Protection Liens shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

14.     Adequate Protection Superpriority Claims.

(i)    *Prepetition Superpriority Claims*. As further adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral, solely to the extent of

any Diminution in Value (if any) of their respective interests in the Prepetition Collateral, and

subject in all respects to the Carve Out, the Prepetition Agent, on behalf of itself and the Prepetition

Secured Parties, is hereby granted (as of the date of entry of the Interim Order) as and to the extent

provided by Section 507(b) of the Bankruptcy Code allowed superpriority administrative expense

claims in each of the Chapter 11 Cases and any Successor Cases (subject and without prejudice to

the rights of parties in interest, including the Committee or any other statutory committee that may

be appointed in the Chapter 11 Cases, as set forth in paragraph 37 herein) (the "Adequate

Protection Superpriority Claims"); *provided*, *however*, that the proceeds of Avoidance Actions

shall not be available to satisfy the Adequate Protection Superpriority Claims.

15.    Priority of the Adequate Protection Superpriority Claims.    Except as set

forth herein, subject and without prejudice to the rights of parties in interest, including the

Committee or any other statutory committee that may be appointed in the Chapter 11 Cases, as set

forth in paragraph 37 herein, the Adequate Protection Superpriority Claims shall have priority over

all administrative expense claims and unsecured claims against the Debtors or their estates, now

existing or hereafter arising, of any kind or nature whatsoever, including, without limitation,

administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328,

330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy

Code; *provided*, *however*, that the Adequate Protection Superpriority Claims shall be subject to the

Carve Out and shall be junior to the DIP Superpriority Claim.    The Adequate Protection

Superpriority Claims shall have the same priority between and among the Prepetition Parties as

the claims such parties held prior to the Commencement Date.    For the avoidance of doubt, the

Prepetition Agent shall hold the Adequate Protection Superpriority Claim on behalf of the

Prepetition Secured Parties and shall deliver the proceeds and/or other benefits of such Adequate

Protection Superpriority Claim to the Prepetition Secured Parties strictly in accordance with the Prepetition Documents (including any waterfall provision set forth therein).

16.    Adequate Protection Payments and Protections for Prepetition Secured Parties.  As further adequate protection (the "Adequate Protection Payments"), the Debtors were authorized and directed pursuant to the Interim Order, and continue to be authorized and directed pursuant to this Final Order, to pay in cash (i) current payment in cash of all reasonable and documented (in summary form) prepetition and postpetition fees and expenses payable to the Prepetition Agent under the Prepetition Documents (limited, in the case of counsel, to all reasonable and documented out-of-pocket fees, costs, disbursements, and expenses payable to outside counsel, Davis Polk & Wardwell LLP ("DPW")) and (ii) all reasonable and documented (in summary form) prepetition and postpetition fees and expenses payable to the Ad Hoc Group (limited, in the case of counsel, to all reasonable and documented out-of-pocket fees, costs, disbursements, and expenses payable to outside counsel, King & Spalding LLP ("K&S")).  The payment of the professional fees and expenses set forth in this paragraph 16 shall be made within ten (10) business days (which time period may be extended by the applicable professional) following receipt by the Debtors, the Committee, and the U.S. Trustee (the "Review Period") of an invoice therefor (the "Invoiced Fees") and without the necessity of filing formal fee applications, including as to any amounts arising before or after the Petition Date.  The invoices for such Invoiced Fees shall include the number of hours billed (except for financial advisors or other professionals that are not customarily compensated on an hourly basis), a summary description of services provided, and the aggregate expenses incurred by the applicable professional firm; provided, however, that any such invoice (i) may be limited and/or redacted to protect privileged, confidential, or proprietary information, (ii) shall not be required to contain

individual time detail (*provided* that such invoice shall contain (except for financial advisors or other professionals that are not customarily compensated on an hourly basis) summary data regarding hours worked by each timekeeper for the applicable professional and such timekeepers' hourly rates), and (iii) shall not be required to comply with the U.S. Trustee fee guidelines.  Any objections raised by the Debtors, the U.S. Trustee, or the Committee  with respect to any portion of the Invoiced Fees (the "Disputed Invoiced Fees") must be in writing and state with particularity the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the basis for such objections and must be submitted to the applicable professional within the Review Period. If, after the Review Period, an objection remains unresolved, it may be submitted to the Court for resolution by the objecting party or the applicable professional.  Pending such resolution, the undisputed portion of any Invoiced Fees shall be paid promptly by the Debtors.  Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the Prepetition Secured Parties in connection or with respect to these matters, are hereby approved in full and shall not be subject to avoidance, disgorgement or any similar form of recovery by the Debtors or any other person.

       17.    Adequate Protection Reservation.  Nothing herein shall impair or modify the application of Section 507(b) of the Bankruptcy Code in the event that the Adequate Protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases. The receipt by the Prepetition Secured Parties of the Adequate Protection herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Final Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral

or for additional adequate protection, subject, in all respects, to the terms and limitations of the Prepetition Documents.

18.    <u>Effect of Order on Adequate Protection</u>.  In the event that it is determined by a final order, which order shall not be subject to any appeal, stay, reversal, or vacatur, that (a) no Diminution in Value of any Prepetition Secured Party's respective interests has occurred or (b) such Prepetition Secured Party is determined to be undersecured, then a party in interest shall have the right to assert that payments of Adequate Protection shall be applied toward repayment of the principal amount due under the Prepetition Credit Agreement as is owing to such Prepetition Secured Party.

**<u>Provisions Common to DIP Financing and Use of Cash Collateral</u>**

19.    <u>Amendment of the DIP Documents</u>.  The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if (a) the amendment, modification, or supplement (i) is in accordance with the DIP Documents and (ii) does not prejudice the rights of the Debtors or their estates in any material respect; (b) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification, or supplement is provided to counsel to the Committee, any other statutory committee appointed in the Chapter 11 Cases, and the U.S. Trustee (collectively, the "<u>Notice Parties</u>"); and (c) notice of the amendment, modification or supplement is filed with the Court; *provided*, that neither consent of the Notice Parties nor approval of the Court will be necessary to effectuate any such amendment, modification, or supplement; and *provided*, *further*, that such amendment, modification, or supplement shall be without prejudice to the right of any party in interest to be heard regarding such proposed amendment.

20. <u>Budget Maintenance and Compliance</u>.  The use of borrowings under the

DIP Facility shall be in accordance with the Budget (subject to the Permitted Variances, and except

as otherwise provided under this Final Order) and the terms and conditions set forth in the DIP

Documents and this Final Order; *provided*, that, in the case of fees, costs, and expenses of the DIP

Agent, the Prepetition Agent, the Ad Hoc Group, the Debtors' Professionals, and the Committee's

Professionals, the Debtors shall pay such fees, costs, and expenses in accordance with the DIP

Documents, the Interim Order and this Final Order without being limited by the Budget.  The

Budget and any modification to, or amendment or update of, the Budget shall be subject to the

approval of, and in form and substance acceptable to, the DIP Agent (acting at the direction of the

Requisite DIP Lenders); *provided that* any modification to the Committee's professional fees in

the Budget shall be subject to the approval of the Committee.  The Debtors shall deliver prior

notice to the U.S. Trustee and counsel to the Committee of any modification to, or amendment or

update of, the Budget.

21. <u>Modification of Automatic Stay</u>.  The automatic stay imposed under

Section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the

terms and provisions of this Final Order, including, without limitation, to (a) permit the Debtors to

grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, and Adequate

Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agent,

DIP Lenders, or the Prepetition Agent each may reasonably request to assure the perfection and

priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to

the DIP Agent, DIP Lenders, and Prepetition Secured Parties under the DIP Documents, the DIP

Facility, and this Final Order; and (d) authorize the Debtors to make, and the DIP Agent, the DIP

Lenders, and the Prepetition Secured Parties to retain and apply, payments made in accordance

with the terms of this Final Order, the DIP Documents, and the Prepetition Documents, as applicable.

22.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Prepetition Adequate Protection Liens or to entitle the DIP Agent, the DIP Lenders, the DIP Obligations, the Prepetition Secured Parties, and the Prepetition Obligations to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent and the Prepetition Agent each are authorized, but not required, to file, subject to the terms and priorities of this Final Order, as they in their respective sole discretion deem necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Prepetition Adequate Protection Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens.  The Debtors, without further consent of any party, are authorized on a final basis to execute and deliver, upon request of the DIP Agent and/or the Prepetition Agent, all such financing statements, mortgages, notices, and other documents as the DIP Agent or the Prepetition Agent may reasonably request.  The DIP Agent and

the Prepetition Agent, each in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument. To the extent that the Prepetition Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition Documents or is listed as loss payee or additional insured under any of the Debtors' insurance policies, the DIP Agent shall also be deemed to be the secured party or mortgagee, as applicable, under such documents or to be the loss payee or additional insured, as applicable. The Prepetition Agent shall serve as agent for the DIP Agent for purposes of perfecting the DIP Agent's liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Final Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

23.    <u>Application of Proceeds of Collateral</u>.  As a condition to the entry of the DIP Documents, the continued extension of credit under the DIP Facility and the continued authorization to use Cash Collateral, the Debtors agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply all net proceeds of DIP Collateral in accordance with the DIP Credit Agreement; *provided* that, for the avoidance of doubt, the amount of net proceeds applied on account of the sale of assets in connection with the Stalking Horse Bid shall be limited in an amount determined by Requisite DIP Lenders in good faith and in consultation with the Debtors and their advisors and the Committee and its advisors to ensure sufficient liquidity to fund the remaining disbursements set forth in the Budget in effect at such time after taking into account the Debtors' (a) cash on hand and (b) anticipated receipts and disbursements; <u>provided</u>, <u>however</u>,

that nothing in this Order shall be deemed (or otherwise interpreted as) a finding or ruling that any such items in the Budget (other than the Carve Out) have a priority senior to the DIP Superpriority Claims or the Adequate Protection Superpriority Claims.   The reduction of any Prepetition Obligations is subject to the preservation of rights provided in paragraph 37 herein.   Protections of Rights of DIP Agent, DIP Lenders and Prepetition Secured Parties.

(a)    Unless the DIP Agent (acting at the direction of the Requisite DIP Lenders) and the Prepetition Agent (acting at the direction of the "Required Lenders" (as such term is defined in the Prepetition Credit Agreement, the "Required Lenders")) shall have provided their prior written consent, or all DIP Obligations have been paid in full in cash and all commitments thereunder are terminated, it shall constitute an Event of Default (as defined herein) if the Debtors seek in any of these Chapter 11 Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following (unless such order provides for the simultaneous satisfaction of such obligations):   (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claim, the Prepetition Liens, the Prepetition Adequate Protection Liens, and/or the Adequate Protection Superpriority Claims; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Final Order; or (iii) any modification of any of the DIP Agent's, the DIP Lenders', or the Prepetition Secured Parties' rights under the Interim DIP Order, this Final Order, the DIP Documents, or the Prepetition Documents with respect any DIP Obligations or Prepetition Obligations (except as expressly contemplated by the Restructuring Support Agreement).

(b)     The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will, until the DIP Termination Date, (i) maintain books, records, and accounts to the extent and as required by the DIP Documents; (ii) reasonably cooperate with, consult with, and provide to the DIP Agent and the DIP Lenders all such information and documents that any or all of the Debtors are obligated (including upon the request by the DIP Agent (acting at the direction of the Requisite DIP Lenders)) to provide under the DIP Documents or the provisions of this Final Order; (iii) upon reasonable advance notice, permit consultants, advisors, and other representatives of each of the DIP Agent (acting at the direction of the Requisite DIP Lenders), the DIP Lenders, the Prepetition Agent (acting at the direction of the Required Lenders), and the Ad Hoc Group to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss and provide advice with respect to their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents and/or the Prepetition Documents; (iv) permit the DIP Agent (acting at the direction of the Requisite DIP Lenders), the DIP Lenders, the Prepetition Agent (acting at the direction of the Required Lenders), and the Ad Hoc Group (without duplication), and their respective consultants, advisors and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets; and (v) upon reasonable advance notice, permit the DIP Agent (acting at the direction of the Requisite DIP Lenders), the DIP Lenders, the Prepetition Agent (acting at the direction of the Required Lenders), and the Ad Hoc Group (without duplication) to conduct, at their reasonable discretion and at the Debtors' cost and

expense, field audits, collateral examinations, liquidation valuations, and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral and Prepetition Collateral.

(c)    Subject to paragraph 37 solely with respect to the Roll-Up DIP Loans, the DIP Agent (acting at the direction of the Requisite DIP Lenders) shall have the right to credit bid up to the full amount of the outstanding DIP Obligations including any accrued interest and expenses, in any sale of DIP Collateral, whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise. Subject to paragraph 37, the Prepetition Agent (acting at the direction of the Required Lenders) shall have the right to credit bid up to the full amount of any remaining Prepetition Obligations in any sale of Prepetition Collateral, whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise, subject, in each case, to the satisfaction of the DIP Obligations, or as otherwise consented to by the DIP Agent (at the direction of the Requisite DIP Lenders).  For the avoidance of doubt, neither the DIP Agent (acting at the direction of the Requisite DIP Lenders) nor the Prepetition Agent (acting at the direction of the Required Lenders) shall have any right to credit bid on any assets constituting the PACA/PASA Trusts or any proceeds thereof.

24.    <u>Cash Collection</u>.  From and after the date of the entry of the Interim Order, except as otherwise set forth in the Interim Order or this Final Order, the Debtors shall maintain a cash management system consistent with prepetition practices and in accordance with the DIP Credit Agreement, including, without limitation, Section 5.03(b) thereof.  Except as otherwise permitted under the DIP Credit Agreement or otherwise agreed to in writing by the DIP Agent (acting at the direction of the Requisite DIP Lenders) and the Prepetition Agent (acting at the direction of Required Lenders), the Debtors shall maintain no accounts except those identified in

the order granting the Cash Management Motion (the "Cash Management Order").  The Debtors and the financial institutions where the Debtors maintain deposit accounts (as identified in the Cash Management Order) are authorized and directed to remit, without offset or deduction, funds in such deposit accounts upon receipt of any direction to that effect from the DIP Agent (acting at the direction of the Requisite DIP Lenders).  The Debtors shall use commercially reasonable efforts to enter into one or more deposit account control agreements with respect to all accounts identified in the Cash Management Order (other than Excluded Accounts) in favor of the DIP Agent for the benefit of the DIP Lenders by no later than three (3) weeks after the Closing Date.

25.    Maintenance of DIP Collateral.  Until (x) the indefeasible payment in full of all DIP Obligations, all Prepetition Obligations, and the termination of the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility or (y) consummation of a Chapter 11 Plan as contemplated under the Restructuring Support Agreement, the Debtors shall (a) insure the DIP Collateral as required under the DIP Facility or the Prepetition Documents, as applicable; (b) maintain the cash management system in effect as of the Petition Date, as modified by this Final Order and the Cash Management Order; and (c) otherwise maintain the DIP Collateral in accordance with the terms of the DIP Documents.

26.    Disposition of DIP Collateral.  Except as contemplated by the Restructuring Support Agreement or the DIP Documents, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or Prepetition Collateral other than in the ordinary course of business without the prior written consent of the DIP Agent (acting at the direction of the Requisite DIP Lenders) and/or the Prepetition Agent (acting at the direction of the Required Lenders) (and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, DIP Lenders, or Prepetition Secured Parties).

27.     <u>DIP Termination Date</u>.  On the DIP Termination Date, except as provided in paragraph 29 and subject to the Carve Out, (a) all DIP Obligations shall be immediately due and payable, (b) all commitments to extend credit under the applicable DIP Facility will terminate (other than as required in paragraph 34 with respect to the Carve Out), and (c) all authority to use Cash Collateral shall cease.  For the purposes of this Final Order, the "DIP Termination Date" shall have the meaning provided in the DIP Credit Agreement.

28.     <u>Events of Default</u>.  Until the DIP Obligations are indefeasibly paid in full (the "<u>DIP Repayment</u>"), the occurrence of any of the following events, unless waived by the DIP Agent (acting at the direction of the Requisite DIP Lenders) in writing and in accordance with the terms of the DIP Credit Agreement, shall constitute an event of default (collectively, the "<u>Events of Default</u>") under this Final Order:  (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order (except where such failure would not adversely affect the DIP Agent and the DIP Lenders), subject to a three (3) day cure period (if such failure is capable of being cured), or (b) the occurrence of any other "Event of Default" under, and as defined in, the DIP Credit Agreement (except for an Event of Default arising under Section 7.01(p)(xxi) therein); provided that the milestones set forth in Section 5.17 of the DIP Credit Agreement are hereby superseded by the milestones set forth on **Exhibit 1** attached hereto.  Upon the occurrence of the DIP Repayment, the foregoing Events of Default may be waived by the Prepetition Agent (acting at the direction of the Required Lenders).

29.     <u>Rights and Remedies Upon Event of Default</u>. The automatic stay provisions of Section 362 of the Bankruptcy Code shall be modified, upon the Court's entry of an order, to permit the DIP Agent (acting at the direction of the Requisite DIP Lenders) to enforce the DIP Agent's and the DIP Lenders' rights under this Final Order and the DIP Documents in accordance

with this paragraph 29.  Immediately upon the occurrence and during the continuation of an Event

of Default and the giving by the DIP Agent (acting at the direction of the Requisite DIP Lenders)

of seven (7) calendar days' prior written notice (the "Termination Notice" and, such notice period,

the "Remedies Notice Period," provided that such period may be extended by written agreement

between the Debtors and the DIP Agent (acting at the direction of the Requisite DIP Lenders) in

their respective discretion) and settling a proposed form of order for relief from the automatic stay

(the "Remedies Order"), delivered to counsel to the Debtors, with copies to the U.S. Trustee and

counsel to the Committee, subject in all respects to the terms of this Final Order, (a) the DIP Agent

(acting at the direction of the Requisite DIP Lenders) may declare (any such declaration, a

"Termination Declaration") (1) all DIP Obligations owing under the respective DIP Documents to

be immediately due and payable; (2) the termination, reduction or restriction of any further

commitment to extend credit to the Debtors to the extent any such commitment remains under the

respective DIP Facility; (3) termination of the DIP Credit Agreement and the DIP Documents as

to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting

any of the DIP Liens or the DIP Obligations; and (4) that the application of the Carve Out has

occurred through the delivery of the Carve Out Trigger Notice to the Debtors; and (b) the DIP

Agent (acting at the direction of the Requisite DIP Lenders) may declare a termination, reduction,

or restriction on the ability of the Debtors to use Cash Collateral (the date which is the earliest to

occur of any such date a Termination Declaration is delivered and the DIP Termination Date, the

"Termination Date").  Following the DIP Repayment, the Prepetition Agent (acting at the direction

of the Required Lenders) shall be entitled to make a Termination Declaration with respect to the

foregoing clause (a) subclause (4) and clause (b) in accordance with the same procedures set forth

herein.  The Termination Declaration shall be given by electronic mail (or other electronic means)

to counsel to the Debtors, counsel to the Prepetition Agent, counsel to the Committee, and the U.S. Trustee.  Upon termination of the Remedies Notice Period, the DIP Agent (acting at the direction of the Requisite DIP Lenders) shall be entitled to entry of the Remedies Order.  The Remedies Order would entitle the DIP Agent and the DIP Lenders to exercise their rights and remedies in accordance with the respective DIP Documents and this Final Order and to permit the DIP Agent and the DIP Lenders to satisfy the relevant DIP Obligations and DIP Superpriority Claims, subject to and consistent with the Carve Out and this Final Order.  During the Remedies Notice Period, the only basis on which the Debtors and/or the Committee shall be entitled to seek an emergency hearing with respect to the DIP Obligations with the Court during the Remedies Notice Period shall be to contest whether an Event of Default has occurred and/or is continuing, and, upon and after delivery of the Termination Notice, the DIP Agent (on behalf of the Requisite DIP Lenders) consent to such emergency hearing on an expedited basis to consider whether the automatic stay may be lifted so that the DIP Agent and DIP Lenders may exercise all of their respective rights and remedies in respect of the DIP Collateral in accordance with this Final Order and the DIP Documents.  The Debtors shall not be entitled to seek relief under Section 105 of the Bankruptcy Code or otherwise in contravention of any express rights or remedies granted to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties under this Final Order or the DIP Documents. Upon entry of the Remedies Order (and subject to the terms of the Remedies Order), the automatic stay, as to the DIP Agent and the DIP Lenders, shall automatically be terminated, and, subject to the Carve Out in all respects, including the requirements of paragraph 34 hereof, the DIP Agent and the DIP Lenders shall be permitted to exercise all remedies set forth herein, in the DIP Documents and as otherwise available at law without further order of or application or motion to the Court.

30.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order</u>.  The DIP Agent, DIP Lenders, and the Prepetition Secured Parties have acted in good faith in connection with this Final Order and are entitled to rely upon the protections granted herein and by Section 364(e) of the Bankruptcy Code.  Based on the findings set forth in this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties are entitled to the protections provided in Section 364(e) of the Bankruptcy Code.  Any such modification, amendment, or vacatur shall not affect the validity and enforceability of any advances previously made hereunder or any lien, claim, or priority authorized or created hereby.

31.    <u>DIP and Other Expenses</u>.  The Debtors are authorized, on a final basis, to pay all (i) reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements, and expenses of (a) the DIP Agent (including (and limited, in the case of counsel, to)  all reasonable and documented out-of-pocket fees, costs, disbursements, and expenses of the DIP Agent's outside counsel, DPW) and any other professional advisors retained by the DIP Agent at the direction of the Requisite DIP Lenders in their reasonable discretion and (b) the Ad Hoc Group (including (and limited, in the case of counsel, to) all reasonable and documented out-of-pocket fees, costs, disbursements, and expenses of the Ad Hoc Group's outside counsel, K&S) and any other professional advisors retained by the Ad Hoc Group in their reasonable discretion, in the case of each of the foregoing clauses (a) and (b), in connection with the negotiations, preparation, execution, and delivery of the DIP Documents and the funding of all DIP Loans under the DIP Facility, including, without limitation, all due diligence, transportation, computer, duplication,

messenger, audit, insurance, appraisal, valuation, and consultant costs and expenses, and all search,

filing, and recording fees incurred or sustained by the DIP Agent and the Ad Hoc Group and their

counsel and professional advisors in connection with the DIP Facility, the DIP Documents, and the

transactions contemplated thereby, the administration of the DIP Facility, and any amendment or

waiver of any provision of the DIP Documents, and (ii) without duplication, reasonable and

documented (in summary form) out-of-pocket fees, costs, disbursements, and expenses of the DIP

Agent and the Ad Hoc Group (including (and limited, in the case of counsel, to) (x) all reasonable

and documented out-of-pocket fees, costs, disbursements, and expenses of one firm of outside

counsel for the DIP Agent and, to the extent necessary, one firm of local counsel engaged by the

DIP Agent in each relevant jurisdiction, and any successor counsel to such primary counsel and

local counsel and (y) all reasonable and documented out-of-pocket fees, costs, disbursements, and

expenses of one firm of outside counsel for the Ad Hoc Group and, to the extent necessary, one

firm of local counsel engaged by the Ad Hoc Group (in connection with (A) the enforcement of

any rights and remedies under the DIP Documents, (B) the Chapter 11 Cases, including attendance

at all hearings in respect of the Chapter 11 Cases, and (C) defending and prosecuting any actions

or proceedings arising out of or relating to the Prepetition Obligations, the DIP Obligations, the

Liens securing the Prepetition Obligations and the DIP Obligations, or any transaction related to

or arising in connection with the Prepetition Documents, the DIP Credit Agreement, or the other

DIP Documents (in the case of the Prepetition Obligations and the Liens securing the Prepetition

Obligations, to the extent provided in the Prepetition Documents).  For the avoidance of doubt, all

fees, costs, and expenses paid pursuant to this paragraph 31 shall not be duplicative of any fees,

costs, and expenses paid by the Debtors to the Prepetition Secured Parties as Adequate Protection

pursuant to paragraph 16 of this Final Order or the Restructuring Support Agreement.  Any and all

fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the DIP Agent

and the Ad Hoc Group in connection with or with respect to the DIP Facilities are hereby approved

in full and shall not be subject to avoidance, disgorgement or any similar form of recovery by the

Debtors or any other person.

32.    <u>Indemnification</u>.  The Debtors shall indemnify and hold harmless the DIP

Agent and the DIP Lenders in accordance with the terms and conditions of the DIP Credit

Agreement.

33.    <u>Proofs of Claim; Master Proof of Claim</u>.  The DIP Agent, the DIP Lenders,

and the Prepetition Secured Parties will not be required to file proofs of claim in any of the Chapter

11 Cases or Successor Cases for any claim allowed herein.  Notwithstanding any order entered by

the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any

Successor Cases to the contrary, in order to facilitate the processing of claims, to ease the burden

upon the Court, and to reduce an unnecessary expense to the Debtors' estates,  the Prepetition

Agent is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend

and/or supplement, as it sees fit) in the Debtors' lead chapter 11 case *In re Fairway Group Holdings

Corp.*, Case No. 20-10161 (JLG), a master proof of claim on behalf of the Prepetition Secured

Parties on account of any and all of their respective claims arising under the applicable Prepetition

Documents and hereunder (a "<u>Master Proof of Claim</u>") against each of the Debtors.  Upon the

filing of a Master Proof of Claim by the Prepetition Agent, such entity shall be deemed to have

filed a proof of claim in the amount set forth opposite its name therein in respect of its claims

against each of the Debtors of any type or nature whatsoever with respect to the Prepetition

Documents, and the claim of each Prepetition Secured Party (and each of its respective successors

and assigns) named in a Master Proof of Claim shall be treated as if such entity had filed a separate

proof of claim in each of these Chapter 11 Cases. The Master Proof of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this paragraph 33 and the Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases. The Master Proof of Claim shall not be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the Prepetition Secured Parties, which instruments, agreements, or other documents will be provided upon written request to counsel to the Prepetition Agent. Any proofs of claim filed by the Prepetition Agent or any Prepetition Lender shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by the Prepetition Agent or any Prepetition Lender. Any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases shall not apply to any claim of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties.

34.     <u>Carve Out</u>.

(a)     <u>Carve Out</u>. As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under Section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) below); (iii) to the extent allowed at any time,

whether by interim order, procedural order, or otherwise, all accrued and unpaid fees, disbursements, costs and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to Section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee (including expenses of members of the Committee, solely in their capacities as such, but excluding any legal or other professional advisory fees), pursuant to Section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Agent (at the direction of the Requisite DIP Lenders) of a Carve Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; (iv) subject to entry of the Bid Procedures Order, amounts used to pay the Termination Payment and any of Buyer's Damages, as each of those terms are defined in and pursuant to the *Asset Purchase Agreement*, dated January 22, 2020, by and among Holdings and Village Super Market, Inc. (the "Village APA"), provided that such amounts, in the aggregate, shall not exceed three percent (3%) of the Cash Purchase Price, as that term is defined in and in accordance with the Village APA; and (v) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the first business day following delivery by the DIP Agent (at the direction of the Requisite DIP Lenders) of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (at the direction of the Requisite DIP Lenders to the Debtors), their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event

of Default under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Starting with the first full calendar week following the Petition Date, each Estate Professional shall deliver to the Debtors a statement (each such statement, a "Weekly Statement") setting forth a good-faith estimate of the amount of unpaid fees and expenses incurred during the preceding week by such Estate Professional (through Saturday of such week, the "Calculation Date") (the "Estimated Fees and Expenses").  No later than one business day after the delivery of a Carve-Out Trigger Notice, each Estate Professional shall deliver one additional statement to the Debtors setting forth a good-faith estimate of the amount of unpaid fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has already been delivered and concluding on the date of the Carve-Out Trigger Notice, and the Debtors shall transfer such amounts to the Professional Fees Escrow Account (as defined herein).  The Debtors shall on a weekly basis, transfer cash proceeds from the DIP Facility or cash on hand in an amount equal to the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors, which shall be reported to the DIP Agent, or if an estimate is not provided, the total budgeted weekly fees of Estate Professionals for the prior week set forth in the Budget, into a segregated account not subject to the control of the DIP Agent, any DIP Lender, or any Prepetition Secured Party (the "Professional Fees Escrow Account").  The Debtors shall use funds held in the Professional Fees Escrow Account exclusively to pay Professional Fees as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any interim or final orders of the Court; *provided that* when all allowed Professional Fees have been paid in full (regardless of when such Professional Fees are allowed by the Court), any funds

remaining in the Professional Fees Escrow Account shall revert to the Debtors for use in a manner consistent with the DIP Credit Agreement and this Final Order; and *provided further that* the Debtors' obligations to pay allowed Professional Fees shall not be limited or be deemed limited to funds held in the Professional Fees Escrow Account.  Funds transferred to the Professional Fees Escrow Account shall be held in trust for and exclusively available for the payment of any fees and expenses of the Estate Professionals, including with respect to obligations arising out of the Carve-Out (with a reversionary interest to the Debtors of any amount remaining in the Professional Fees Escrow Account after all allowed Professional Fees are satisfied in full).  Funds transferred to the Professional Fees Escrow Account shall not be subject to any liens or claims granted to the DIP Lenders herein or any liens or claims granted as Adequate Protection, shall not constitute DIP Collateral, and shall not constitute Cash Collateral or assets of the Debtors' estates; *provided that* the DIP Collateral shall include the Debtors' reversionary interest in funds held in the Professional Fees Escrow Account, if any, after all allowed Professional Fees are satisfied in full.

(c)     <u>Professional Fees Escrow Account</u>.  On the day on which a Carve Out Trigger Notice is given by the DIP Agent (at the direction of the Requisite DIP Lenders) to the Debtors with a copy to counsel to the Committee (the "<u>Carve Out Trigger Notice Date</u>"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor (including any Cash Collateral) to fund the Professional Fees Escrow Account in an amount equal to the then unpaid amounts of Estimated Fees and Expenses to pay unpaid Allowed Professional Fees prior to any and all other claims.  The Debtors also shall deposit and hold in trust in the Professional Fees Escrow Account an amount equal to the Post-Carve Out Trigger Notice Cap, which shall exclusively be used to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap.

(d)    <u>Application of Carve Out Reserves</u>.

(i)    Notwithstanding anything to the contrary in the DIP Documents or this Final Order, following delivery of a Carve Out Trigger Notice, if the DIP Agent (at the direction of the Requisite DIP Lenders) sweeps or forecloses on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors, the DIP Agent shall promptly deposit any cash swept or foreclosed upon after delivery of the Carve Out Trigger Notice (including cash received as a result of the sale or other disposition of assets) into the Professional Fees Escrow Account until it is fully funded.

(ii)    Notwithstanding anything to the contrary in this Final Order, (i) the failure of the Professional Fees Escrow Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out and (ii) in no way shall the Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Professional Fees Escrow Account, or any of the foregoing be construed as a cap or limitation on the amount of Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Documents or the Prepetition Credit Documents, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Obligations.

(e)    <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  The DIP Agent and the DIP Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent or the DIP Lenders, in any way, to directly

pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)    <u>Payment of Allowed Professional Fees Prior to the Carve Out Trigger Notice Date</u>.  Prior to the Carve Out Trigger Notice Date, the Debtors shall be permitted to pay compensation and reimbursement of all Allowed Professional Fees of Estate Professionals, as the same may be due and payable, and such payments shall not reduce the Carve Out.  Upon the receipt of the Carve Out Trigger Notice, the right of the Debtors to pay professional fees using Cash Collateral outside the Carve Out shall terminate and the Debtors shall provide immediate notice to all Professional Persons informing them that such notice was delivered and further advising them that the Debtors' ability to pay such Professional Persons using Cash Collateral is subject to and limited by the Carve Out.  Any payment or reimbursement made prior to the occurrence of the Carve Out Trigger Notice Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(g)    <u>Payment of Carve Out On or After the Carve Out Trigger Notice Date</u>.  Any funding of the Carve Out from draws under the DIP Facility shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Documents, the Bankruptcy Code, and applicable law.

35.    <u>Limitations on Use of DIP Proceeds, Cash Collateral, and Carve Out</u>.  The DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve Out may not be used in connection with (a) preventing, hindering, or delaying any of the DIP Agent's, the DIP Lenders', or the Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral in accordance with this Final Order and the DIP Documents, to the extent that such enforcement or realization upon the DIP Collateral or

Prepetition Collateral is expressly permitted by this Final Order or the DIP Documents; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral in a manner inconsistent with this Final Order, the DIP Documents, or the Restructuring Support Agreement (including sales of assets pursuant to the Bid Procedures); (c) outside the ordinary course of business, using or seeking to use any insurance proceeds constituting DIP Collateral in a manner inconsistent with this Final Order, the DIP Documents, or the Restructuring Support Agreement (including sales of assets pursuant to the Bid Procedures); (d) incurring indebtedness without the prior consent of the DIP Agent (acting at the direction of the Requisite DIP Lenders), except to the extent permitted under the DIP Credit Agreement; (e) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under this Final Order, the DIP Documents, or the Prepetition Documents; (f) objecting to or challenging in any way the DIP Liens, DIP Obligations, Prepetition Liens, Prepetition Secured Obligations, DIP Collateral (including Cash Collateral), or, as the case may be, Prepetition Collateral, or any other claims or liens held by or on behalf of any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, respectively; (g) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state-law equivalents, any so-called "lender liability" claims and causes of action, or actions to recover or disgorge payments, against any of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees, solely in their capacities as such; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Liens, Prepetition Secured Obligations, or any rights or interests of any of the DIP

Agent, the DIP Lenders, or the Prepetition Secured Parties granted under this Final Order or the

DIP Documents; or (i) seeking to subordinate, recharacterize, disallow, or avoid the DIP

Obligations or the Prepetition Secured Obligations; *provided*, *however*, that the Carve Out and

such collateral proceeds and loans under the DIP Documents may be used for allowed fees and

expenses, in an amount not to exceed, $150,000 in the aggregate, incurred solely by the Committee,

in investigating (but not prosecuting or challenging) the validity, enforceability, perfection,

priority, or extent of the Prepetition Liens or Prepetition Claims and any objections or Challenges

that may exist with respect to the Debtors' Stipulations and the Prepetition Lien and Claim Matters

(as defined below) (the "Investigation Budget").  For the avoidance of doubt, nothing in this Final

Order shall prevent the Committee from seeking or obtaining payment and reimbursement of its

professional fees and expenses, including fees and expenses in excess of the Investigation Budget,

from assets or the proceeds thereof that are not subject to the DIP Liens or the Prepetition Liens.

36.    Payment of Compensation.  Nothing herein shall be construed as a consent

to the allowance of any professional fees or expenses of any Professional Person or shall affect the

right of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to object to the

allowance and payment of such fees and expenses.  So long as an unwaived Event of Default has

not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final

order (that has not been vacated or stayed, unless the stay has been vacated) under Sections 328,

330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, in accordance

with this Final Order and the DIP Documents.

37.    Effect of Stipulations on Third Parties.

(a)    *Generally*.  The admissions, stipulations, agreements, releases, and waivers

set forth in the Interim Order and/or this Final Order (collectively, the "Prepetition Lien and Claim

Matters") are and shall be binding on the Debtors, any subsequent trustee, responsible person,

examiner with expanded powers, any other estate representative, and all creditors and parties in

interest and all of their successors in interest and assigns, including, without limitation, the

Committee or any other statutory committee that may be appointed in these cases, unless, and

solely to the extent that, the Committee or any other party in interest with standing and requisite

authority (other than the Debtors, as to which any Challenge (as defined herein) shall be waived,

except as set forth below) (i) has timely filed the appropriate pleadings and timely commenced the

appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including,

without limitation, as required pursuant to Part VII of the Bankruptcy Rules challenging the

Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a

proceeding or other contested matter, a "Challenge") before (A) for the Committee, sixty (60)

calendar days from entry of the Final DIP Order and (B) any other party in interest with the

requisite standing (other than the Debtors), seventy-five (75) calendar days from the entry of the

Final DIP Order (or such longer period as the Court orders for good cause shown before the

expiration of such period) (the "Challenge Deadline"), as such applicable date may be extended in

writing from time to time by the DIP Agent (acting at the direction of the Requisite DIP Lenders)

and the Prepetition Agent (acting at the direction of the Required Lenders), and (ii) this Court

enters judgment in favor of the plaintiff or movant in any such timely and properly commenced

Challenge proceeding and any such judgment has become a final judgment that is not subject to

any further review or appeal.  If the Committee or any other party in interest files a motion for

standing to bring a Challenge by the Challenge Deadline, such Challenge Deadline shall be tolled

pending further order of the Court.  Nothing herein shall limit the Committee's ability to (x) file a

motion in respect of any timely Challenge for which it cannot obtain standing as a matter of law

because the applicable Debtor is a limited liability company (an "<u>LLC Challenge Motion</u>"), and (y) seek pursuant to such LLC Challenge Motion a mechanism by which to prosecute such Challenge. In the event the Committee files an LLC Challenge Motion for which it cannot obtain standing, the expiration of the Challenge Deadline solely for the specific Challenge set forth in the LLC Challenge Motion shall be tolled pending further order of the Court, and applicable parties shall meet and confer with respect to an appropriate process for the prosecution of any such Challenge.

(b)     *Binding Effect*.    To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such Challenge does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, application to, order of, or hearing before this Court, and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Final Order, become binding, conclusive, and final on any person, entity, or party in interest in the Chapter 11 Cases and their successors and assigns, as well as in any Successor Case for all purposes, and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above, except to the extent that any of such Prepetition Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge that is successful as set forth in a final judgment and only as to plaintiffs or movants that have complied with the terms hereof. To the extent any such Challenge proceeding is timely and properly commenced,

the DIP Agent, Prepetition Agent, the Ad Hoc Group, and any other Prepetition Lender or DIP

Lender shall be entitled to, as Adequate Protection, payment of the related costs and expenses,

including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Documents

in defending themselves and the other Prepetition Lenders in any such proceeding.    Further,

notwithstanding the Challenge Deadline, creditors asserting claims pursuant to the Perishable

Agricultural Commodities Act of 1930 or the Packers and Stockyards Act of 1921 shall not be

barred from objecting to any party's attempt to assert claims or liens against assets that constitute

the PACA/PASA Trusts.

38.    <u>No Third Party Rights/No Superior Rights of Reclamation</u>.    Except as

explicitly provided for herein, this Final Order does not create any rights for the benefit of any

third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.    In no event

shall any alleged right of reclamation or return (whether asserted under Section 546(c) of the

Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens or the Prepetition

Liens.

39.    <u>Section 506(c) Claims</u>.    Except to the extent of the Carve Out, no costs or

expenses of administration that have been or may be incurred in the Chapter 11 Cases through the

earlier of (x) the DIP Termination Date and (y) the date of the DIP Repayment shall be charged

against the DIP Agent, DIP Lenders, or the Prepetition Secured Parties or any of their respective

claims, the DIP Collateral, or the Prepetition Collateral pursuant to Sections 105 or 506(c) of the

Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the DIP Agent

(acting at the direction of the Requisite DIP Lenders) or the Prepetition Agent (acting at the

direction of the Required Lenders), as applicable, and no such consent shall be implied from any

other action, inaction, or acquiescence by any such agents or lenders.

40.      <u>No Marshaling/Applications of Proceeds</u>.  Except as expressly set forth

herein, the DIP Agent, DIP Lenders, and Prepetition Secured Parties shall not be subject to the

equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP

Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and

applied pursuant to this Final Order and the DIP Documents notwithstanding any other agreement

or provision to the contrary.

41.      <u>Section 552(b)</u>.  The Prepetition Secured Parties shall each be entitled to all

of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case"

exception under Section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured

Parties, with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

42.      <u>Access to DIP Collateral</u>.  Upon expiration of the Remedies Notice Period,

the DIP Agent and the DIP Lenders shall be permitted to (a) access and recover any and all

Collateral and (b) enter onto any leased premises of any Debtor and exercise all of the Debtors'

rights and privileges as lessee under such lease in connection with an orderly liquidation of the

Collateral; *provided*, that in the case of clause (b), the DIP Agent and the DIP Lenders can only

enter upon a leased premises after an Event of Default in accordance with (i) a separate written

agreement by and between the DIP Agent and/or the DIP Lenders, as applicable, and any applicable

landlord, (ii) pre-existing rights of the DIP Agent and/or the DIP Lenders and any applicable

landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) entry

of an order of this Court obtained by motion of the applicable DIP Agent or DIP Lender on such

notice to the landlord as shall be required by this Court*; provided, however*, solely with respect to

rent due to a landlord of any such leased premises, the DIP Agent and/or the DIP Lenders, as

applicable, shall be obligated only to reimburse the Debtors for the payment of rent of the Debtors

that first accrues after delivery of the Termination Declaration in accordance with paragraph 29 herein that that is payable during the period of such occupancy by the DIP Agent and/or the DIP Lenders, as applicable, calculated on a daily per diem basis; *provided*, *further*, that nothing herein shall relieve the Debtors of their obligations pursuant to Section 365(d)(3) of the Bankruptcy Code for the payment of rent that accrues prior to delivery of the Termination Declaration through and including any assumption and/or rejection of any lease.  Nothing herein shall require the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to assume any lease as a condition to the rights afforded in this paragraph.

43.     Limits on Lender Liability.  Nothing in the Interim Order, this Final Order, or in any of the DIP Documents, Prepetition Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the restructuring efforts and the administration of these Chapter 11 Cases.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in the Interim Order, this Final Order the DIP Documents, or the Prepetition Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

44.    <u>Insurance Proceeds and Policies</u>.  Upon the entry of the Final Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Lenders), and the Prepetition Agent (on behalf of the Prepetition Lenders), shall be, and shall be deemed to be on a final basis, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral or the Prepetition Collateral.

45.    <u>Joint and Several Liability</u>.  Nothing in this  Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facility and the DIP Documents.

46.    <u>Rights Preserved</u>.  Except as provided in this Final Order and the DIP Documents, and subject to the obligations and agreements of such parties under the Restructuring Support Agreement, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, (a) the DIP Agent's, DIP Lenders', and Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agent, DIP Lenders, or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code; (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers; or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any rights, claims, or privileges (whether legal, equitable, or otherwise) of any

of the DIP Agent, DIP Lenders, or Prepetition Secured Parties.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the Committee's, or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.  deems appropriate to raise in the Chapter 11 Cases.

47.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agent, DIP Lenders, or Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Documents, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, DIP Lenders, or Prepetition Secured Parties.

48.    <u>Binding Effect of Final Order</u>.  Immediately upon the entry of the Interim Order by this Court, the terms and provisions of this Final Order shall become valid and binding upon, and inure to the benefit of, the Debtors, DIP Agent, DIP Lenders, Prepetition Secured Parties, all other creditors of any of the Debtors, the Committee (or any other court appointed committee) appointed in the Chapter 11 Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case.

49.    <u>No Modification of Final Order</u>.  Until and unless the DIP Obligations and the Prepetition Secured Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly, (a) without the prior written consent of the DIP Agent (acting at the direction

of the Requisite DIP Lenders) or the Prepetition Agent (acting at the direction of the Required Lenders) (i) any modification, stay, vacatur, or amendment to this Final Order or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code), in any of the Chapter 11 Cases or Successor Cases, equal or superior in priority to the DIP Superpriority Claim or Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the DIP Agent (acting at the direction of the Requisite DIP Lenders), any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; or (c) without the prior written consent of the Prepetition Agent (acting at the direction of the Required Lenders), any lien on any of the Prepetition Collateral with priority equal or superior to the Prepetition Liens or Adequate Protection Liens (other than the DIP Liens).  No consent with respect to the foregoing shall be implied by any other action, inaction, or acquiescence of the DIP Agent or the Prepetition Agent, as applicable.

50.     <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Documents and this Final Order, the provisions of this Final Order shall govern and control.

51.     <u>Discharge</u>.    Except as contemplated by the Restructuring Support Agreement, pursuant to a Chapter 11 Plan, the DIP Obligations and the obligations of the Debtors with respect to the Adequate Protection provided hereunder shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless such obligations have been

indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization or the DIP Agent (acting at the direction of the Requisite DIP Lenders) and/or the Prepetition Agent (acting at the direction of the Required Lenders), as applicable, has otherwise agreed in writing.

52.    <u>Citizens Cash Collateral Account</u>.  For the avoidance of doubt, the security interest of Citizens Bank, N.A. ("<u>Citizens Bank</u>") in the business demand deposit account established and maintained with Citizens Bank (x7018) (the "<u>Citizens Cash Collateral Account</u>") pursuant to that certain Continuing Agreement for Standby Letters of Credit dated as of August 22, 2019, between Fairway Group Holdings Corp., Fairway Group Acquisition Corp., and Fairway Group Central Services, LLC, on the one hand, and Citizens Bank, on the other hand (the "<u>Citizens L/C Agreement</u>"), is a Permitted Lien for purposes of the Interim Order, this Final Order, the Prepetition Documents, and the DIP Documents, and is senior in all respects to the DIP Liens, the Adequate Protection Liens, and the Prepetition Liens.  Nothing in this Order authorizes the Debtors to utilize cash in the Citizens Cash Collateral Account for any purpose other than payment of "Service Charges" and "Reimbursement Obligations" to Citizens Bank, as such terms are defined in the Cash Management Order, or requires Citizens Bank to release cash from the Citizens Cash Collateral Account except as and when required by the Citizens L/C Agreement, provided that any cash that is so released to the Debtors from the Citizens Cash Collateral Account may, after such release, be utilized by the Debtors to the extent otherwise provided in this Final Order, the DIP Documents, and other applicable Orders of the Court.  Nothing in this Final Order prohibits or imposes conditions on Citizens Bank's collection of any "Service Charges" or "Reimbursement Obligations" from the Cash Collateral Account, as such terms are defined in the Cash Management Order.

53.     <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in any of the Chapter 11 Cases, (b) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, (c) dismissing any of the Chapter 11 Cases or any Successor Cases, or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections granted to the DIP Agent, DIP Lenders, and Prepetition Secured Parties pursuant to this Final Order and/or the DIP Documents, notwithstanding the entry of any such orders described in clauses (a) through (d) above, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until (i) in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this Final Order, have been indefeasibly paid in full in cash and (ii) in respect of the Prepetition Credit Agreement, all of the Prepetition Obligations pursuant to the Prepetition Documents and this Final Order have been indefeasibly paid in full in cash.  The terms and provisions concerning the indemnification of the DIP Agent and DIP Lenders shall continue in the Chapter 11 Cases, in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the DIP Documents, and/or the indefeasible repayment of the DIP Obligations.

54.     <u>Nunc Pro Tunc Effect of this Final Order</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable nunc pro tunc to the Petition Date immediately upon execution thereof.

55.     <u>Treatment of Disgorged Amount</u>. In the event that (i) the Prepetition Agent

or any of the other Prepetition Secured Parties or (ii) the DIP Agent or any of the DIP Lenders

(solely with respect to payments received on account of the Roll-Up DIP Loans) is ordered by this

Court to disgorge, refund or in any manner repay to any of the Debtors or their estates any amounts

("<u>Disgorged Amounts</u>"), the Disgorged Amounts, unless otherwise ordered by the Court, shall be

placed in a segregated interest bearing account in the control of the Debtors, pending the

disgorgement order becoming a final and non-appealable order or another final, non-appealable

order of a court of competent jurisdiction (for the avoidance of doubt the Court is a court of

competent jurisdiction) regarding the distribution of such Disgorged Amounts (either returning the

Disgorged Amounts to the Prepetition Agent, the other Prepetition Secured Parties, the DIP Agent,

or DIP Lenders (as applicable) or distributing such amounts to the Debtors or the DIP Parties, or

otherwise).

56.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this

Final Order are immediately effective and enforceable upon its entry.

57.     No later than two (2) business days after the date of this Final Order, the

Debtors shall serve a copy of the Final Order on the Notice Parties and shall file a certificate of

service no later than 24 hours after service.

Dated: February 20, 2020
        New York, New York                         /s/ *James L. Garrity, Jr.*
                                                    Honorable James L. Garrity, Jr.
                                                    United States Bankruptcy Judge