**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                        :
In re                                   :    **Chapter 11**
                                        :
**FAIRWAY GROUP HOLDINGS CORP.**, *et al.*,   :    **Case No. 20-10161 (JLG)**
                                        :
        Debtors.[1]                     :    **(Jointly Administered)**
                                        :    **(ECF No. 21)**
-------------------------------------------------------------X

### ORDER (I) APPROVING (A) BIDDING PROCEDURES FOR SALES OF DEBTORS' ASSETS, (B) STALKING HORSE BID PROTECTIONS, (C) FORM AND MANNER OF NOTICE OF SALES, AUCTIONS, AND SALE HEARINGS, AND (D) ASSUMPTION AND ASSIGNMENT PROCEDURES AND FORM AND MANNER OF NOTICE OF ASSUMPTION AND ASSIGNMENT; (II) AUTHORIZING DESIGNATION OF ADDITIONAL STALKING HORSE BIDDERS; (III) SCHEDULING AUCTIONS AND SALE HEARINGS; AND (IV) GRANTING RELATED RELIEF

Upon the motion, dated January 23, 2020 (ECF No. 21) (the "**Motion**"),[2] of

Fairway Group Holdings Corp. and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105, 363, 365,

503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002,

6004, 6006, and 9014, for entry of orders (i)(a) approving the bidding procedures attached hereto

as **Exhibit 1** (the "**Bidding Procedures**"), in connection with the sale of substantially all of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Fairway Group Holdings Corp. (2788); Fairway Group Acquisition Company (2860); Fairway Bakery LLC (4129); Fairway Broadway LLC (8591); Fairway Chelsea LLC (0288); Fairway Construction Group, LLC (2741); Fairway Douglaston LLC (2650); Fairway East 86th Street LLC (3822); Fairway eCommerce LLC (3081); Fairway Georgetowne LLC (9609); Fairway Greenwich Street LLC (6422); Fairway Group Central Services LLC (7843); Fairway Group Plainview LLC (8643); Fairway Hudson Yards LLC (9331); Fairway Kips Bay LLC (0791); FN Store LLC (9240); Fairway Paramus LLC (3338); Fairway Pelham LLC (3119); Fairway Pelham Wines & Spirits LLC (3141); Fairway Red Hook LLC (8813); Fairway Stamford LLC (0738); Fairway Stamford Wines & Spirits LLC (3021); Fairway Staten Island LLC (1732); Fairway Uptown LLC (8719); Fairway Westbury LLC (6240); and Fairway Woodland Park LLC (9544). The location of the Debtors' corporate headquarters is 2284 12th Avenue, New York, New York 10027. Fairway Community Foundation Inc., a charitable organization, owned by Fairway Group Holdings Corp., is not a debtor in these proceedings.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

Debtors' assets (the "**Assets**"), (b) approving the Stalking Horse Bid Protections proposed to be granted to the Stalking Horse Bidder (as defined herein) in accordance with the terms and conditions set forth in the Bidding Procedures and the Stalking Horse Agreement (as defined herein), (c) authorizing the Debtors to designate one or more Additional Stalking Horse Bidders and offer each such Bidder certain Additional Stalking Horse Bid Protections (each as defined herein), (d) scheduling one or more auctions for the Assets (each, an "**Auction**") and one or more hearings for the approval of proposed Sale Transactions (as defined below) (each, a "**Sale Hearing**"), (e) approving form and manner of (1) notice of Auctions, sales of the Assets (each, a "**Sale Transaction**"), and Sale Hearings substantially in the form annexed hereto as **Exhibit 2** (the "**Sale Notice**") and (2) notice to each non-Debtor counterparty (each, a "**Counterparty**") to an executory contract or unexpired non-residential real property lease of the Debtors (each, a "**Proposed Assumed Contract**") that the Debtors propose to assume and assign to a particular Successful Bidder (including the Stalking Horse Bidder or any Additional Stalking Horse Bidder) setting forth the Debtors' calculation of the amount necessary to cure any monetary defaults under such Proposed Assumed Contract (the "**Cure Costs**") and the applicable proposed assignee, substantially in the form attached hereto as **Exhibit 3** (the "**Assumption and Assignment Notice**"), (f) approving the procedures for the assumption and assignment of Contracts and Leases as set forth herein (the "**Assumption and Assignment Procedures**"), including the procedures for determining Cure Costs; and (g) granting related relief; (ii)(a) authorizing the sale of the Assets (the "**Acquired Assets**") in the Stalking Horse Package (as defined herein) free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code, (b) authorizing the assumption and assignment of the Transferred Contracts (as defined herein); and (c) granting related relief, all as more fully set forth in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska,

C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant

to 28 U.S.C. § 157(b) as to which the Bankruptcy Court has the power to enter a final judgment;

and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided to the Notice Parties (as defined in the Motion),

and such notice having been adequate and appropriate under the circumstances, and it appearing

that no other notice need be provided; and the Court having reviewed the Motion; and the Court

having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and upon the

Moses Declaration, filed contemporaneously with the Motion, and the record of the Hearing; and

the Court having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the

best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the

proceedings had before the Court and after due deliberation and sufficient cause appearing

therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT:[3]

  A.  This Court has jurisdiction to hear and determine the Motion and to grant

the relief requested herein with respect to the Bidding and Auction Process (as defined in the

Bidding Procedures) pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant

to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014.

C.      Good and sufficient notice of the Motion, the Bidding and Auction Process, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein and in the Bidding Procedures.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

D.      The Debtors and their advisors, including PJ Solomon, L.P., engaged in a robust and extensive marketing and sale process before and after the Commencement Date, over a period of more than eight (8) months, to solicit and develop the highest or best offer for all of their store locations, production and distribution center, inventory, intellectual property, and other assets.

E.      The Bidding Procedures are fair, reasonable, and appropriate, and are designed to maximize the value of the Assets.

F.      The Assumption and Assignment Procedures are fair, reasonable, and appropriate, and comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

G.      The Stalking Horse Bid as reflected in the Stalking Horse Agreement represents the highest or best offer the Debtors have received to purchase the Acquired Assets included in the Stalking Horse Bid (the "**Stalking Horse Package**"), in accordance with the Bidding Procedures, and the Ad Hoc Group has consented to the sale to the Stalking Horse pursuant to the Stalking Horse Agreement.

H.      Village Super Market, Inc. shall act as the stalking horse bidder (the "**Stalking Horse Bidder**" and, its bid, the "**Stalking Horse Bid**") pursuant to that certain Asset Purchase Agreement, dated as of January 22, 2020, by and between certain of the Debtors, as Sellers, and the Stalking Horse Bidder, as Buyer, substantially in the form attached to the Motion as **<u>Exhibit C</u>** (as may be amended, supplemented, or otherwise modified by the parties thereto, the "**Stalking Horse Agreement**"), and the Stalking Horse Bid shall be subject to higher or better offers in accordance with the Bidding Procedures.

I.      Pursuit of the Stalking Horse Bidder as a "stalking-horse" and its Stalking Horse Agreement as a "stalking-horse" sale agreement is in the best interests of the Debtors and the Debtors' estates and creditors, and it reflects a sound exercise of the Debtors' business judgment.  The Stalking Horse Agreement provides the Debtors with the opportunity to sell the Acquired Assets in order to preserve and realize their going concern value.  The Stalking Horse Agreement will enable the Debtors to continue their operations, preserve jobs, minimize disruption to the Debtors' business, and secure a fair and adequate baseline price for the Acquired Assets at the Auctions, if any, for the Stalking Horse Package and, accordingly, will provide a clear benefit to the Debtors' estates, their creditors, and all other parties in interest.

J.      The Stalking Horse Bid Protections, including, but not limited to, the Termination Payment (as defined in the Stalking Horse Agreement), (i) have been negotiated by the Stalking Horse Bidder and the Debtors and their respective advisors at arm's-length and in good faith and (ii) are necessary to ensure that the Stalking Horse Bidder will continue to pursue its Stalking Horse Agreement and the Sale Transaction contemplated thereby.  The Termination Payment, to the extent payable under the Stalking Horse Agreement, (a)(x) is an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b)

of the Bankruptcy Code, (y) shall be treated as an allowed administrative expense claim against the Debtors' estates pursuant to sections 105(a), 503(b), and 507(a)(2) of the Bankruptcy Code, and (z) shall be included in the Carve-Out (as defined in the DIP Orders); (b) is commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Bidder; and (c) is fair, reasonable, and appropriate, including in light of the size and nature of the Sale Transaction, the necessity to announce a sale transaction for the Acquired Assets, and the efforts that have been and will be expended by the Stalking Horse Bidder. The Stalking Horse Bid Protections are a material inducement for, and condition of, the Stalking Horse Bidder's execution of the Stalking Horse Agreement. Unless it is assured that the Bid Protections will be available, the Stalking Horse Bidder is unwilling to remain obligated to consummate the Sale Transaction or otherwise be bound under the Stalking Horse Agreement (including the obligations to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Bidding Procedures).

K.      The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures, (ii) the Assumption and Assignment Procedures, (iii) the Stalking Horse Bid Protections, and (iv) the form and manner of notice of the Auctions and the Sale Hearings for the Sale Transactions.

L.      The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between the Stalking Horse Bidder and the Debtors. The Stalking Horse Bidder and its counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the Stalking Horse Bidder's negotiation of the Stalking Horse Bid Protections and the Bidding

Procedures and the Stalking Horse Bidder's negotiation and entry into the Stalking Horse Agreement.

M.      Good and sufficient business reasons exist for the Court to authorize the Debtors to designate Additional Stalking Horse Bidders and enter into Additional Stalking Horse Agreements, in each case, in accordance with the terms of this Order and the Bidding Procedures.

N.      The Assumption and Assignment Procedures, including notice of proposed Cure Costs, are reasonable and appropriate and consistent with section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures have been tailored to provide adequate opportunity for all non-Debtor Counterparties to the Transferred Contracts and other Proposed Assumed Contracts to raise any objections to the proposed assumption and assignment or to the Cure Costs.

O.      The Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Assumption and Assignment Procedures, the Auctions, the Sale Hearings, and the Sale Transactions (including the sale of the Acquired Assets as set forth under the Stalking Horse Agreement) free and clear of any liens, claims, encumbrances, or interests pursuant to section 363(f) of the Bankruptcy Code) (with such liens, claims, encumbrances, or interests attaching to the proceeds of any such sale), and any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion, the Sale Transactions, or the assumption and assignment of the Transferred Contracts except as expressly required herein.

P.      Nothing contained herein shall prejudice or impair the right to Credit Bid, as set forth in the Bidding Procedures (and subject to the terms of the Prepetition Credit Agreement (and any other "Loan Documents" as such term is defined therein)), of (i) Ankura Trust Company,

LLC, as administrative agent and collateral agent under the Prepetition Credit Agreement, (ii) the

Prepetition Secured Lenders under the Prepetition Credit Agreement, and (iii) the DIP Lenders, on

such assets that are subject to their respective liens in their respective priorities.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, hereby are overruled and denied on the merits with prejudice.

3.      The Bidding Procedures are hereby approved in their entirety, are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Assets and the Auctions.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

**Stalking Horse Bid Protections**

4.      The Debtors are authorized to enter into the Stalking Horse Agreement, and the Stalking Horse Bid shall be subject to higher or better Qualified Bids, in accordance with the terms and procedures of the Bidding Procedures.

5.      The Stalking Horse Bid Protections are approved in their entirety, including, without limitation, the Termination Payment payable in accordance with, and subject to the terms of, the Stalking Horse Agreement and the Bidding Procedures.  In accordance with the Stalking Horse Agreement, the Stalking Horse Bidder shall be granted the right to a Termination Payment

comprised of a break-up fee in an amount equal to three percent (3%) of the Cash Purchase Price (as such term is defined in the Stalking Horse Agreement).  Except as expressly provided for herein, no other termination payments are authorized or permitted under this Order.

6.    The Debtors are authorized to pay the Termination Payment, to the extent payable under the Stalking Horse Agreement, without further order of the Court.

7.    The Termination Payment, to the extent payable under the Stalking Horse Agreement, shall (a) constitute an allowed administrative expense claim against the Debtors' estates pursuant to sections 105(a), 503(b), and 507(a)(2) of the Bankruptcy Code, (b) be included in the Carve-Out (as defined in the DIP Orders), and (c) be (i) paid in cash from the proceeds of any approved sale or (ii) credited against the purchase price if, after an Auction, the Stalking Horse Bid, as enhanced at the Auction, is the Successful Bid and the sale contemplated by the Stalking Horse Agreement (as enhanced at the Auction) is consummated.

## **Designation of Additional Stalking Horse Bidders**

8.    The Debtors are authorized to, in the exercise of their reasonable business judgment, in consultation with the Consultation Parties, designate one or more Additional Stalking Horse Bidders for one or more of the Assets not included in the Stalking Horse Package and enter into asset purchase agreements with Additional Stalking Horse Bidders (each such agreement, an "**Additional Stalking Horse Agreement**") for the sale of such Assets (each such group of Assets, an "**Additional Stalking Horse Package**"), in each case, in accordance with the terms of this Order and the Bidding Procedures.

9.    Subject to the terms of this Order and the Bidding Procedures, the Debtors are authorized to offer each Additional Stalking Horse Bidder Additional Stalking Horse Bid Protections, including a break-up fee (an "**Additional Termination Payment**"); provided that all Additional Termination Payments must be negotiated by the Debtors, in consultation with the

Consultation Parties (as defined in the Bidding Procedures), and no Additional Termination Payment shall exceed three percent (3%) of the Cash Purchase Price in the applicable Additional Stalking Horse Bid, as set forth in the applicable Additional Stalking Horse Agreement executed by the Debtors.

10.     The Debtors shall include in the Sale Notice the material terms of any Additional Stalking Horse Agreement, including the terms of any Additional Stalking Horse Bid Protections; provided that if the Debtors already have filed with the Court and served on the Sale Notice Parties (as defined in the Motion) the Sale Notice prior to the execution of an Additional Stalking Horse Agreement, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the website maintained by Omni Agent Solutions, the Debtors' claims and noticing agent in these chapter 11 cases, located at www.omniagentsolutions.com/Fairway (the "**Omni Website**"), an addendum to the Sale Notice setting forth the identity of the Additional Stalking Horse Bidder and the material terms of such Additional Stalking Horse Agreement, including the terms of the applicable Additional Stalking Horse Bid Protections and the Proposed Assumed Contracts in the Additional Stalking Horse Package (each, an "**Additional Stalking Horse Notice**").

11.     Objections to the provision of an Additional Termination Payment (each, a "**Bid Protection Objection**") shall (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on the Objection Notice Parties (as defined herein) within seven (7) calendar days after service of the Sale Notice or the applicable Additional Stalking Horse Notice.

12.     If a timely Bid Protection Objection is filed and served with respect to an Additional Stalking Horse Agreement in accordance with the Bidding Procedures, any Additional Termination Payment provided for under such agreement shall not be deemed approved until the Bid Protection Objection is resolved, either by agreement of the objecting party and the Debtors, or by order of the Court resolving such objection and approving the provision of the Additional Termination Payment.

13.     If no timely Bid Protection Objection is filed and served with respect to an Additional Stalking Horse Agreement in accordance with the Bidding Procedures, the Debtors may file with the Court, upon certification of counsel, a proposed order authorizing and approving the Debtors' provision of Additional Stalking Horse Bid Protections, including an Additional Termination Payment, pursuant to the terms and provisions of the applicable Additional Stalking Horse Agreement and the Bidding Procedures, which may be entered without further notice or hearing.

14.     Absent further order of the Court, no person or entity (other than the Stalking Horse Bidder and any applicable Additional Stalking Horse Bidder) shall be entitled to any expense reimbursement or break-up, "topping," termination, or other similar fee or payment by the Debtors for submitting a bid for the Assets, or in any way participating in an Auction or the Debtors' sale process.  The Stalking Horse Bidder is a party in interest in these chapter 11 cases.

### Bidding Procedures and Auction

15.     The Bidding Procedures, attached hereto as **Exhibit 1**, are incorporated herein and approved, and shall apply with respect to any bids for, and the auction and sale of, all of the Debtors' Locations and other assets, including the Acquired Assets in the Stalking Horse Package.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

16.     The deadline for submitting Qualified Bids in respect of the Stalking Horse

Package (the "**Stalking Horse Bid Deadline**") is **March 4, 2020 at 4:00 p.m. (Eastern Time)**

and the deadline for submitting Qualified Bids in respect of all other assets (the "**Other Assets**

**Bid Deadline**" and, together with the Stalking Horse Bid Deadline, the "**Bid Deadlines**") is

**March 9, 2020 at 4:00 p.m. (Eastern Time)**; provided that the Debtors shall have the right, after

consulting with the Consultation Parties, to extend the Bid Deadlines for any reason whatsoever,

in their reasonable business judgment, for all or certain Potential Bidders, without further order of

the Court, subject to providing notice to the Stalking Horse, all Potential Bidders, and the

Consultation Parties.  The Debtors shall promptly provide copies of all bids to each of the

Consultation Parties, but in no event later than the next calendar day.  Any party that does not

submit a Qualified Bid by the applicable Bid Deadline in accordance with the Bidding Procedures

will not be allowed to (a) submit any offer after such deadline for the applicable assets or (b)

participate in the Auction for the applicable assets; provided that the foregoing shall not preclude

the Debtors after the applicable Bid Deadline from marketing to any person, or auctioning, or any

parties from bidding on, any Locations or other assets not included in an Auction, including

pursuant to the Store Closing Procedures;[4] provided, further, that to the extent there is no Auction

for the Acquired Assets in the Stalking Horse Bid, the prior proviso shall not be applicable to such

Acquired Assets.

17.     The Stalking Horse Bidder and any Additional Stalking Horse Bidder shall

be considered a Qualified Bidder, and the Stalking Horse Bid and any Additional Stalking Horse

Bid, as reflected in the Stalking Horse Agreement or an Additional Stalking Horse Agreement, as

---

[4] As used herein, "**Store Closing Procedures**" shall have the meaning ascribed to such term in the *Motion of Debtors for (I) Approval of Procedures for Store Closing Sales and (II) Related Relief* (ECF No. 104).

applicable, is a Qualified Bid for all purposes and requirements pursuant to the Bidding Procedures. If the Stalking Horse Bid, as reflected in the Stalking Horse Agreement, is the only Qualified Bid in respect of the assets included in the Stalking Horse Package that is received by the Debtors by the Stalking Horse Bid Deadline, the Debtors shall not conduct an Auction for the Stalking Horse Package, and the Stalking Horse Bidder will be the Successful Bidder for the Stalking Horse Package. If an Additional Stalking Horse Bid is the only Qualified Bid received by the Debtors in respect of the assets included in an Additional Stalking Horse Package by the applicable bid deadline, the Debtors shall not conduct an Auction for such Additional Stalking Horse Package, and the Additional Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the assets included in the Additional Stalking Horse Package.

18.      If, in addition to the Stalking Horse Bid, the Debtors receive at least one Qualified Bid in respect of the Stalking Horse Package by the Stalking Horse Bid Deadline, the Debtors shall conduct an Auction of the Acquired Assets in accordance with the Bidding Procedures.

19.      If, in addition to an Additional Stalking Horse Bid, the Debtors receive at least one Qualified Bid in respect of the applicable Additional Stalking Horse Package by the Other Assets Bid Deadline, the Debtors shall conduct an Auction of the assets in the Additional Stalking Horse Package in accordance with the Bidding Procedures.

20.      The Debtors, after consultation with the Consultation Parties, may also include Assets not included in the Stalking Horse Bid or any Additional Stalking Horse Bid for bidding and sale at an Auction pursuant to the Bidding Procedures.

21.      The Auctions will take place at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 on (a) **March 11, 2020**, with respect to the

Stalking Horse Package, if a Qualified Bid for the Stalking Horse Package other than the Stalking Horse Bid is received, and (b) **March 16, 2020**, with respect to any other Auction Package, if one or more Qualified Bids are received that warrant an Auction in the reasonable business judgment of the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties.

22.    All proceedings of the Auctions shall be conducted openly, and all creditors and other parties in interest shall be permitted to attend; <u>provided</u> <u>that</u> the Debtors may, in their reasonable business judgment, and in consultation with the Consultation Parties, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany Qualified Bidders or other parties in interest at the Auctions.  The proceedings of the Auctions shall be transcribed.

23.    Subject to Paragraph 48 below, each Qualified Bidder (other than the Stalking Horse Bidder) must provide with its bid financial and other information that allows the Debtors, after consultation with the Consultation Parties, to make a reasonable determination as to the Bidder's financial and other capabilities to consummate the Sale Transaction, including, without limitation (and in each case after consultation with the Consultation Parties), such financial and other information setting forth adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code and the Bidder's willingness to perform under any Contracts or Leases that are assumed and assigned to the Bidder, and which may include information of the kinds described in the Bidding Procedures (the "**Adequate Assurance Information**").

24.    Each Qualified Bidder participating in an Auction shall confirm in writing and on the record at the Auction that (a) it has not engaged in any collusion with respect to the

submission of any bid, the bidding, or the Auction and (b) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder.

25.     Subject to the rights of the Stalking Horse Bidder under the Stalking Horse Agreement and the rights of any Additional Stalking Horse Bidder under an applicable Additional Stalking Horse Agreement, the Bidding Procedures (including the consultation rights of the Consultation Parties described therein) and this Order, the Debtors shall have the right, as they may reasonably determine to be in the best interests of their estates, to carry out the Bidding Procedures (in consultation with the Consultation Parties), including, without limitation, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is a Baseline Bid (as such terms are defined in the Bidding Procedures); (d) determine which bids are the Successful Bid and Back-Up Bid (as such terms are defined in the Bidding Procedures), each as it relates to the Auction; (e) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (f) adjourn or cancel the Auctions and/or the Sale Hearings in open court without further notice or as provided in the Bidding Procedures; (g) modify the Bidding Procedures consistent with their fiduciary duties and bankruptcy law; and (h) withdraw the Motion at any time with or without prejudice.

26.     The Debtors shall have the right, in their reasonable business judgment, after consulting with the Consultation Parties, in a manner consistent with their fiduciary duties and applicable law, to modify the Bidding Procedures, including (a) waive terms and conditions with respect to any Prospective Bidder; (b) extend the deadlines set forth in the Bidding Procedures; (c) announce at the Auctions modified or additional procedures for conducting the

Auction; and (d) provide reasonable accommodations to the Stalking Horse Bidder and any Additional Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the Bidding and Auction process to promote further bids by such bidders on any Assets (including extending deadlines as may be required for the Stalking Horse Bidder and any applicable Additional Stalking Horse Bidder to comply with any additional filing and review procedures with the Federal Trade Commission in connection with any previous filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976), in each case, to the extent not materially inconsistent with the Bidding Procedures and this Order.  Except as provided in the Stalking Horse Agreement and any Additional Stalking Horse Agreement, nothing in this Order or the Bidding Procedures shall obligate the Debtors to consummate or pursue any transaction with respect to any Asset with a Qualified Bidder.

### Sale Hearings and Sale Objection Deadlines

27.     In accordance with the Bidding Procedures, if: (a) the Stalking Horse Bid is the only Qualified Bid received by the Debtors in respect of the Stalking Horse Package by the Stalking Horse Bid Deadline, the Sale Hearing for the Stalking Horse Package shall be held before the Court on **March 11, 2020**; or (b) if a Qualified Bid other than the Stalking Horse Bid is received by the Debtors in respect of the Stalking Horse Package or a Qualified Bid for Other Assets is received by the Debtors by the Other Assets Bid Deadline, the Sale Hearing for the Stalking Horse Package and/or such Other Assets, as applicable, shall be held on **March 26, 2020**.

28.     Notwithstanding the foregoing paragraph, the Debtors may (after consultation with the Consultation Parties and the Successful Bidders) seek an adjournment of the Sale Hearings, as the Debtors deem appropriate in the exercise of their reasonable business judgment.

29.    Notwithstanding anything to the contrary contained in the Bidding Procedures, in the event that a Successful Bidder does not consummate the proposed Sale Transaction and a Back-Up Bidder has been previously identified, the Debtors shall (a) file and serve a Notice of Intent to Proceed with Back-Up Bid, and (b) schedule a telephonic status conference, which may be expedited, upon reasonable notice under the circumstances (which shall be no less than three (3) business days), at which time a briefing and hearing schedule will be established for those landlords and Counterparties to executory contracts that do not consent to a proposed assumption and assignment to the Back-Up Bidder. Any Back-Up Bidder, as identified in the Notice of Auction Results, shall not be considered or approved at the Sale Hearing to approve the sale of the applicable Auction Package to the Successful Bidder, nor shall affected landlords or other Counterparties be required to object to a sale to the Back-Up Bidder prior to the filing and service of the Notice of Intent to Proceed with Back-Up Bid.

30.    Objections to a proposed Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, encumbrances, and interests pursuant to section 363(f) of the Bankruptcy Code and entry of a Sale Order (each, a "**Sale Objection**") shall (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on (i) proposed counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C. and Sunny Singh, Esq.); (ii) proposed counsel to the Official Committee of Unsecured Creditors in these chapter 11 cases, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017 (Attn: Bradford J. Sandler, Esq. and Robert J. Feinstein, Esq.); (iii) counsel to the Stalking Horse Bidder, Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, New York, NY 10110 (Attn: Paul R. DeFilippo, Esq.);

(iv) counsel to the Ad Hoc Group and DIP Lenders, King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036 (Attn: W. Austin Jowers, Esq., Michael Rupe, Esq., and Michael R. Handler, Esq.); (v) counsel to Ankura Trust Company, LLC, as the Prepetition Agent under the Prepetition Credit Agreement, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn: Christian Fischer, Esq.); and (vi) the Unions, including: (a) United Food and Commercial Workers Local 371, 290 Post Road West, Westport, CT 06881 (Attn: Thomas Wilkinson), (b) United Food and Commercial Workers Local 1262, 1389 Broad Street, Clifton, NJ 07013 (Attn: Harvey Whille), and (c) United Food and Commercial Workers Local 1500, 425 Merrick Avenue, Westbury, NY 11590 (Attn: Robert Newell) (collectively, the "**Objection Notice Parties**") by no later than (x) **March 4, 2020 at 4:00 p.m. (Eastern Time)**, if the Sale Objection is with respect to the sale of the Stalking Horse Package, or the assumption or assignment of an Initial Transferred Contract, to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement; or (y) **seven (7) days after the service of the Additional Stalking Horse Notice, Notice of Auction Results, or Supplemental Assumption and Assignment Notice, as applicable** (other than with respect to Sale Objections to a Back-Up Bid), providing notice of the proposed sale or assumption and assignment to which the Sale Objection relates (or with respect to Cure Objections related to the proposed Cure Cost of a Proposed Assumed Contract, seven (7) days after the service of the first notice including such Cure Cost for such Contract). If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard at the applicable Sale Hearing.

## Noticing Procedures

31.     The Sale Notice, substantially in the forms annexed hereto as **Exhibit 2**, are approved, and no other or further notice of the sale of the Assets, the Auctions, the Sale Hearings, or the deadlines for Sale Objections shall be required if the Debtors serve and publish such notice,

including any Additional Stalking Horse Notice, in the manner provided in the Bidding Procedures and this Order.  The Sale Notice contains the type of information required under Bankruptcy Rule 2002 and Local Rule 2002-1, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

32.    Within two (2) business days after entry of this Order, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the Omni Website the Sale Notice, which shall set forth (a) a complete list and general description of the Assets for sale; (b) the date, time, and place of (i) the Auctions and (ii) the Sale Hearings; (c) the deadlines for Sale Objections; and (d) the procedures for filing Sale Objections.

33.    Within five (5) business days after entry of this Order, the Debtors shall cause the contents of the Sale Notice to be published once in the national edition of *USA Today* and once in the *New York Times*.

34.    Within one (1) calendar day after the conclusion of an Auction (or as soon as reasonably practicable thereafter), the Debtors shall file with the Court, serve on the Sale Notice Parties (including each Counterparty to a Proposed Assumed Contract (as defined below) in a Successful Bid and Back-Up Bid), and cause to be published on the Omni Website, a notice containing the results of the Auction (the "**Notice of Auction Results**"), which shall (a) identify the Successful Bidder(s) and Back-Up Bidder(s); (b) list all Proposed Assumed Contracts in the Successful Bid(s) and Back-Up Bid(s), if known; (c) identify any known proposed assignees of Proposed Assumed Contracts (if different from the applicable Successful Bidder); and (d) set forth the deadlines and procedures for filing Sale Objections in response to the Notice of Auction Results.

**Assumption and Assignment Procedures**

35.     The Assumption and Assignment Notice is reasonable, fair, and appropriate, and contains the type of information required under Bankruptcy Rule 2002, Local Rule 2002-1, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and no other or further notice to each Counterparty to all known Contracts and Leases of the Debtors' proposed Cure Costs and, with respect to the Contracts proposed to be assumed and assigned under the Stalking Horse Bid and any other Contracts and Leases proposed to be assigned to any Additional Stalking Horse Bidder or any other Successful Bidder, the proposed assumption and assignment of Contracts and Leases (all such Contracts and Leases, collectively, the "**Proposed Assumed Contracts**"), shall be required if the Debtors file and serve such notice (and the Notice of Auction Results) in accordance with the Assumption and Assignment Procedures and this Order.

36.     The following Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all non-Debtor counterparties, comply in all respects with the Bankruptcy Code, and are approved.

37.     As soon as practicable, but not later than two (2) business days after the entry of this Order, the Debtors shall file with the Court, serve on the Sale Notice Parties, including each applicable Contract Counterparty, and cause to be published on the Omni Website, an initial Assumption and Assignment Notice (the "**Initial Assumption and Assignment Notice**") which shall (a) identify the Transferred Contracts initially designated by the Stalking Horse Bidder for assumption and assignment to the Stalking Horse Bidder (the "**Initial Transferred Contracts**"); (b) list the Debtors' good faith calculation of the Cure Costs with respect to each Initial Transferred Contract; (c) expressly state that assumption or assignment of any Transferred Contact is not guaranteed and is subject to Court approval; (d) direct the non-Debtor Counterparty to relevant

publicly available financial information regarding the Stalking Horse Bidder for purposes of demonstrating adequate assurance of future performance by the Stalking Horse Bidder; (e) prominently display the deadline to file a Cure Objection and an Adequate Assurance Objection (each as hereinafter defined); and (f) prominently display the dates, times, and location of the Sale Hearings.

38.     Pursuant to the terms of the Stalking Horse Agreement, the Stalking Horse Bidder shall have the right, at any time prior to five (5) days prior to the Auction on the Stalking Horse Package, if any, or ten (10) days prior to the Sale Hearing on the Stalking Horse Package if no Auction is held, to designate additional Transferred Contracts for proposed assumption and assignment to the Stalking Horse Bidder (each, a "**Supplemental Contract**") or to remove Contracts from the list of Transferred Contracts from proposed assumption and assignment (each, a "**Removed Contract**").  The Debtors shall use commercially reasonable efforts to, as soon as reasonably practicable after the Buyer's designation of any Supplemental Contracts or any Removed Contracts file with the Court, serve by overnight delivery on all applicable Counterparties, and cause to be published on the Omni Website, a notice of proposed assumption and assignment of the Supplemental Contracts (a "**Supplemental Assumption and Assignment Notice**") and/or removal of the Removed Contracts, which shall (a) expressly state that assumption or assignment of the Supplemental Contracts is not guaranteed and subject to Court approval and removal of the Removed Contracts does not constitute a rejection by the Debtors of such Contract, (b) direct each non-Debtor Counterparty to a Supplemental Contract to relevant publicly available financial information regarding the Stalking Horse Bidder for purposes of demonstrating adequate assurance of future performance by the Stalking Horse Bidder, and (c) prominently display the deadline to file an Adequate Assurance Objection with respect to a Supplemental Contract.

39.    The Debtors shall provide notice to Counterparties whose Contracts or Leases are designated for assumption and assignment by any Additional Stalking Horse Bidder, pursuant to the terms of an applicable Additional Stalking Horse Agreement, or by any Successful Bidder, pursuant to the terms of an asset purchase agreement executed by the Debtors and the applicable Successful Bidder, in a manner consistent with the Assumption and Assignment Procedures, this Order, and all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, by no later than five (5) days prior to the applicable Auction, if held, and to the extent known, or otherwise ten (10) days prior to the applicable Sale Hearing.

40.    All objections to any proposed Cure Costs (a "**Cure Objection**") shall (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (c) state, with specificity, the legal and factual bases thereof, including the cure amount the objecting Counterparty believes is required to cure defaults under the relevant Contract or Lease; (d) include any appropriate documentation in support thereof; and (e) be filed with the Court and served on the Objection Notice Parties by the applicable deadline set forth in the applicable notice, which shall be at least seven (7) days after service of such notice (other than with respect to Cure Objections to a Back-Up Bid), or less in the case of a Supplemental Assumption and Assignment Notice to the extent necessary, but in each case no less than three (3) calendar days before the applicable Sale Hearing.

41.    If a timely Cure Objection is received and such objection cannot otherwise be resolved by the parties, such objection shall be heard at the applicable Sale Hearing; provided that a Cure Objection may, at the Debtors' discretion (after consultation with the Stalking Horse Bidder, an Additional Stalking Horse Bidder (if applicable), or, if an Auction is held, the Successful Bidder), be adjourned to a subsequent hearing if, pending resolution of such Cure

Objection (an "**Adjourned Cure Objection**"), the Debtors maintain a cash reserve (a "**Cure Cost Reserve**") equal to the lesser of (a) the amount the objecting Counterparty has asserted to be required to cure the asserted defaults under the applicable Proposed Assumed Contract and (b) such other cash reserve amount as may be ordered by the Court, until a Cure Cost amount is agreed to by the parties or determined by the Court; provided that if the Debtors maintain a letter of credit or similar security deposit for the Debtors' obligations under a Proposed Assumed Contract to a Counterparty asserting a Cure Objection, the Debtors shall not be required to fund a Cure Cost Reserve to the extent of the existing amounts available under such letter of credit or other security deposit maintained by such Counterparty.  Notwithstanding the existence of an Adjourned Cure Objection, the Proposed Assumed Contract may be deemed assumed and assigned to the Stalking Horse Bidder, the Additional Stalking Horse Bidder (if applicable), or, if an Auction is held, the Successful Bidder, as of the applicable Closing Date if the Debtors maintain a Cure Cost Reserve.  Upon resolution of a Cure Objection, the Cure Cost Reserve shall be reduced as appropriate, and any excess available cash shall be applied to the Obligations in accordance with the terms of the DIP Orders.

42.    If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Cure Objection, the Counterparty shall be forever barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract or Lease. The Cure Costs set forth in each Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Contract or Lease under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in the Contract or Lease, or any other document, and the Counterparty shall be forever barred from asserting any

additional cure or other amounts with respect to such Contract or Lease against the Debtors, the Successful Bidder, or the property of any of them.

43.     If the Stalking Horse Bidder is named a Successful Bidder at the applicable Auction, the Notice of Auction of Results served by the Debtors upon Counterparties to any Supplemental Contracts added to the Stalking Horse Bid at such Auction shall direct the non-Debtor Counterparty to relevant publicly available financial information regarding the Stalking Horse Bidder for purposes of demonstrating adequate assurance of future performance by the Stalking Horse Bidder.

44.     In the event the Debtors designate an Additional Stalking Horse Bidder, the Debtors shall use commercially reasonable efforts to, on the date of service of the Sale Notice or applicable Additional Stalking Horse Notice, as the case may be, or as soon as reasonably practicable thereafter, provide or cause to be provided to Counterparties to any known Proposed Assumed Contracts in the applicable Additional Stalking Horse Bid Adequate Assurance Information for the Additional Stalking Horse Bidder.

45.     No later than two (2) days before an Auction, the Debtors shall (a) file and serve on the Sale Notice Parties a notice setting forth the applicable Auction Package(s) and any Baseline Bids and Qualified Bids in respect thereof, and (b) provide or cause to be provided to Counterparties to any Proposed Assumed Contracts under each Qualified Bid for assets in the Auction Package(s) with Adequate Assurance Information for the applicable Qualified Bidder.

46.     If an Additional Stalking Horse Bidder is named a Successful Bidder at the applicable Auction, the Debtors shall, within one (1) calendar day after the conclusion of the Auction (or as soon as reasonably practicable thereafter), provide or cause to be provided to Counterparties to any additional Proposed Assumed Contracts added to the Additional Stalking

Horse Bid at the applicable Auction with Adequate Assurance Information for the Additional

Stalking Horse Bidder, if not already provided.

47.     The Debtors shall, within one (1) calendar day after the conclusion of each

Auction (or as soon as reasonably practicable thereafter), provide or cause to be provided to

Counterparties to the Proposed Assumed Contracts included in each Successful Bid (other than

the Stalking Horse Bid) with Adequate Assurance Information for such Successful Bidder, if not

already provided.

48.     The Debtors shall provide or cause to be provided to applicable

Counterparties Adequate Assurance Information on a strictly confidential basis.  Counterparties

shall not use any Adequate Assurance Information for any purpose other than to (a) evaluate

whether adequate assurance requirements under Bankruptcy Code section 365(f)(2) have been

satisfied, and (b) to support any Adequate Assurance Objection filed by the Counterparty; provided

that any Adequate Assurance Objection that discloses confidential, non-public information

included in the Adequate Assurance Information, which shall be expressly identified as non-public

and confidential therein, must be filed with the Court with such confidential, non-public

information redacted, unless disclosure of such confidential, non-public information is authorized

by the Debtors, the Successful Bidder, and any known proposed assignee(s) of the relevant

Contract or Lease (if different from the Successful Bidder), or ordered by the Court.

49.     Any objection to the assumption and assignment of a Proposed Assumed

Contract, including the Transferred Contracts, the subject of which objection is a Successful

Bidder's (including the Stalking Horse Bidder and any Additional Stalking Horse Bidder if

selected as a Successful Bidder) and/or its known proposed assignee's (if different from the

Successful Bidder) proposed form of adequate assurance of future performance with respect to

such Proposed Assumed Contract (an "**Adequate Assurance Objection**"), shall (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (c) state, with specificity, the legal and factual bases thereof; (d) include any appropriate documentation in support thereof; and (e) be filed with the Court and served on the Objection Notice Parties, including the applicable Successful Bidder and any known proposed assignee of such Proposed Assumed Contract (if different from the Successful Bidder) by the applicable deadline set forth in the applicable notice, which shall be at least seven (7) days after the filing of such notice (other than with respect to Adequate Assurance Objections to a Back-Up Bid), or less in the case of a Supplemental Assumption and Assignment Notice to the extent necessary, but in each case no less than three (3) calendar days before the Sale Hearing.

50.    If a timely Adequate Assurance Objection cannot otherwise be resolved by the parties prior to the commencement of the applicable Sale Hearing, such objection and all issues of adequate assurance of future performance with respect to the applicable Proposed Assumed Contract shall be determined by the Court at the Sale Hearing or at a later hearing on a date to be scheduled by the Debtors.

51.    If a Counterparty fails to file with the Court and serve on the Objection Notice Parties, including the applicable Successful Bidder and any known proposed assignee (if different from the Successful Bidder) of the relevant Proposed Assumed Contract, a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any such Adequate Assurance Objection with regard to the Proposed Assumed Contract.  The Successful Bidder and/or its known proposed assignee of the Proposed Assumed Contract or Lease shall be deemed to have provided adequate assurance of future performance with respect to the Proposed Assumed Contract in accordance with Bankruptcy Code section 365(f)(2)(B) notwithstanding

anything to the contrary in the contract or lease or any other document, and the Debtors shall be authorized to assume and assign the applicable Proposed Assumed Contract to the applicable Successful Bidder (or its known proposed assignee) without further notice to any Counterparty or any other party in interest, and without need for further order of the Court, with such assumption and assignment being subject to the terms of the applicable Sale Order.

52.    The Debtors' assumption and assignment of a Proposed Assumed Contract to a Successful Bidder (or to a designee of the Successful Bidder) is subject to Court approval and consummation of a Sale Transaction with the applicable Successful Bidder.  Accordingly, absent the closing of a Sale Transaction, the Proposed Assumed Contract shall not be deemed either assumed or assumed and assigned and shall, in all respects, be subject to further administration under the Bankruptcy Code.

53.    The inclusion of a Contract, Lease, or Cure Costs with respect thereto on an Assumption and Assignment Notice or the Notice of Auction Results shall not constitute or be deemed a determination or admission by the Debtors, the Successful Bidders, or any other party in interest that such Contract or Lease is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code.  The Debtors reserve all of their rights, claims, and causes of action with respect to each Contract and Lease listed on any Assumption and Assignment Notice and Notice of Auction Results.  The Debtors' inclusion of any Contract or Lease on an Assumption and Assignment Notice or Notice of Auction Results shall not be a guarantee that such Contract or Lease ultimately will be assumed or assumed and assigned.  The Initial Assumption and Assignment Notice and any Supplemental Assumption and Assignment Notice or Additional Stalking Horse Sale Notice shall be without prejudice to the Stalking Horse Bidder's or any Additional Stalking Horse Bidder's rights under the Stalking Horse Agreement or the applicable

Additional Stalking Horse Agreement to subsequently (a) exclude a Contract from the list of Proposed Assumed Contracts previously included on such Notice or (b) include additional Proposed Assumed Contracts for assumption and assignment in accordance with the applicable Stalking Horse Agreement.

54.     For the avoidance of doubt, nothing herein shall modify, alter, impair, or otherwise affect any of the provisions of the DIP Order or the DIP Documents, or the rights or remedies of the DIP Agent or the DIP Lenders under the DIP Documents (each as defined in the DIP Order) except with respect to the Acquired Assets.

### Related Relief

55.     All persons and entities (whether or not selected as a Qualified Bidder) that submit a bid for any of the Debtors' Assets during the sale process, including at the Auctions, shall be deemed to have knowingly and voluntarily (a) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auctions, and any Sale Transaction; (b) consented to the entry of a final order by the Court in connection with the Motion or this Order (including any disputes relating to the Bidding and Auction Process, the Auctions, and/or any Sale Transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (c) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

56.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014, or any applicable provisions of the Bankruptcy Rules or the Local Rules or otherwise stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

57.     Prior to mailing and publishing the Sale Notice and the Global Cure Notice, as applicable, the Debtors may fill in any missing dates and other information, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

58.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

59.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: February 20, 2020
      New York, New York

                          /s/ *James L. Garrity, Jr.*
                         THE HONORABLE JAMES L. GARRITY, JR.
                         UNITED STATES BANKRUPTCY JUDGE