**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **FAIRWAY GROUP HOLDINGS CORP.**, *et al.*, | : | **Case No. 20-10161 (JLG)** |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------X

SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENT OF FINANCIAL
AFFAIRS FOR

**FAIRWAY GROUP HOLDINGS CORP.**, *et al.*

**CASE NO. 20-10161**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Fairway Group Holdings Corp. (2788); Fairway Group Acquisition Company (2860); Fairway Bakery LLC (4129); Fairway Broadway LLC (8591); Fairway Chelsea LLC (0288); Fairway Construction Group, LLC (2741); Fairway Douglaston LLC (2650); Fairway East 86th Street LLC (3822); Fairway eCommerce LLC (3081); Fairway Georgetowne LLC (9609); Fairway Greenwich Street LLC (6422); Fairway Group Central Services LLC (7843); Fairway Group Plainview LLC (8643); Fairway Hudson Yards LLC (9331); Fairway Kips Bay LLC (0791); FN Store LLC (9240); Fairway Paramus LLC (3338); Fairway Pelham LLC (3119); Fairway Pelham Wines & Spirits LLC (3141); Fairway Red Hook LLC (8813); Fairway Stamford LLC (0738); Fairway Stamford Wines & Spirits LLC (3021); Fairway Staten Island LLC (1732); Fairway Uptown LLC (8719); Fairway Westbury LLC (6240); and Fairway Woodland Park LLC (9544). The location of the Debtors' corporate headquarters is 2284 12th Avenue, New York, New York 10027. Fairway Community Foundation Inc., a charitable organization, owned by Fairway Group Holdings Corp., is not a debtor in these proceedings.

**GLOBAL NOTES AND STATEMENTS OF LIMITATIONS, METHODOLOGY,
AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF
ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

Fairway Group Holdings Corp. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), are filing their respective Schedules of Assets and Liabilities (each, a "**Schedule**," and, collectively, the "**Schedules**") and Statements of Financial Affairs (each, a "**Statement**" or "**SOFA**" and, collectively, the "**Statements**" or "**SOFAs**") in the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") pursuant to section 521 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").[2]

These Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "**Global Notes**") pertain to, are incorporated by reference in, and comprise an integral part of all of the Schedules and Statements. The Global Notes are in addition to the specific notes set forth below with respect to particular Schedules and Statements (the "**Specific Notes**" and, together with the Global Notes, the "**Notes**"). These Global Notes should be referred to, and referenced in connection with, any review of the Schedules and Statements.

The Debtors' management prepared the Schedules and Statements with the assistance of their advisors and other professionals. The Schedules and Statements are unaudited and subject to potential adjustment. In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of preparation. The Debtors' management team and advisors have made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in material changes to the Schedules and Statements and inadvertent errors or omissions may exist. Notwithstanding any such discovery, new information, or errors or omissions, the Debtors do not undertake any obligation or commitment to update the Schedules and Statements.

The Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and Statements as to amount, liability, classification, identity of debtor or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated." Furthermore, nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of any of the Debtors' rights or an admission with respect to their chapter 11 cases.

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Declarations of Michael Nowlan and Abel Porter Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, each sworn and filed on the Commencement Date (ECF Nos. 5 & 25) (the "**First Day Declarations**") or the final order approving the Debtors' debtor-in-possession financing (ECF No. 199) (the "**Final DIP Order**"), as applicable.

WEIL:\97424119\6\44444.0009

**The Schedules, Statements, and Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors.**

1. **Description of the Cases.**  On January 23, 2020 (the "**Commencement Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On January 30, 2020, the Bankruptcy Court entered an order authorizing the joint administration of these cases pursuant to Bankruptcy Rule 1015(b).  On February 4, 2020 the United States Trustee for Region 2 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "**Creditors' Committee**").

2. **Basis of Presentation.** For financial reporting purposes, the Debtors historically prepare consolidated financial statements, which include information for each of the Debtors.  The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on an unconsolidated basis.  These Schedules and Statements, neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("**GAAP**"), nor are they intended to be fully reconciled with the financial statements of each Debtor or the consolidated entities.

   The Debtors attempted to attribute the assets and liabilities and certain required financial information to each particular Debtor entity.  However, because the Debtors' accounting systems, policies, and practices were developed for consolidated reporting purposes, rather than reporting by legal entity, it is possible that not all assets and liabilities have been recorded with the correct legal entity on the Schedules and Statements.

   Given, among other things, the uncertainty surrounding the valuation of certain assets and liabilities, a Debtor may report more assets than liabilities.  Such report shall not constitute an admission that such Debtor was solvent on the Commencement Date or at any time before or after the Commencement Date.  Likewise, a Debtor's reporting more liabilities than assets shall not constitute an admission that such Debtor was insolvent at the Commencement Date or any time before or after the Commencement Date.

3. **Reporting Date.** The Debtors completed a fiscal period close on January 22, 2020 (the "**Reporting Date**").  Unless otherwise noted, the reported asset values in Schedules A and B align with the asset values as of the Reporting Date, and the liability values in Schedules D, E, and F are as of the Commencement Date, adjusted for authorized payments under the First Day Orders (as defined below).

4.   **Current Values.** The assets and liabilities of each Debtor are listed on the basis of the book value of the asset or liability in the respective Debtor's accounting books and records. Unless otherwise noted, the carrying value on the Debtor's books, rather than the current market value, is reflected in the Schedules and Statements.

5.   **Consolidated Entity Accounts Payable and Disbursement Systems.** As described in the Cash Management Motion,[3] the Debtors utilize an integrated, centralized cash management system, in the ordinary course of business, to collect, concentrate, and disburse funds generated by their operations (the "**Cash Management System**"). The Debtors maintain a consolidated accounts payable and disbursements system to pay operating and administrative expenses through various disbursement accounts.

In the ordinary course of business, the Debtors maintain business relationships among each other, which result in intercompany receivables and payables (the "**Intercompany Claims**") arising from intercompany transactions (the "**Intercompany Transactions**"). As set forth more fully in the Cash Management Motion, the primary Intercompany Transactions giving rise to Intercompany Claims are cash receipts activities, disbursement activities, inventory purchases, and expense allocations. Intercompany Claims are not settled by actual transfers of cash among the Debtors. Instead, the Debtors track all Intercompany Transactions in their accounting system, which concurrently are recorded on the applicable Debtors' balance sheets. The Debtors' accounting system requires that all general-ledger entries be balanced at the legal-entity level, however the Debtors have not reported intercompany balances among the Debtors in the Schedules and Statements.

6.   **Accuracy**. The financial information disclosed herein was not prepared in accordance with federal or state securities laws or other applicable non-bankruptcy law or in lieu of complying with any periodic reporting requirements thereunder. Persons and entities trading in or otherwise purchasing, selling, or transferring the claims against or equity interests in the Debtors should evaluate this financial information in light of the purposes for which it was prepared. The Debtors are not liable for and undertake no responsibility to indicate variations from securities laws or for any evaluations of the Debtors based on this financial information or any other information.

7.   **Net Book Value of Assets.** In many instances, current market valuations are not maintained by or readily available to the Debtors. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtors to obtain current market valuations for all assets. As such, wherever possible, unless otherwise indicated, net book values as of the Reporting Date are presented. When necessary, the Debtors have indicated that the value of certain assets is "Unknown" or "Undetermined." Amounts ultimately realized may vary materially from net book value (or other value so

---

[3] *Motion of Debtors for Entry of Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System, Bank Accounts, and Business Forms, (B) Implement Changes to the Cash Management System in the Ordinary Course of Business, (C) Continue Intercompany Transactions; (II) Confirming Administrative Expense Priority for Postpetition Intercompany Claims and for Related Relief; and (III) Granting Related Relief* (ECF No. 8) (the "**Cash Management Motion**")

ascribed).  Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the asset values set forth in the Schedules and Statements.  As applicable, fixed assets and leasehold improvement assets that fully have been depreciated or amortized, or were expensed for GAAP accounting purposes, have no net book value, and, therefore, are not included in the Schedules and Statements.

8.    **Currency.** All amounts shown in the Schedules and Statements are in U.S. Dollars.

9.    **Payment of Prepetition Claims Pursuant to First Day Orders.**  Shortly after the commencement of the Debtors' chapter 11 cases, the Bankruptcy Court entered orders (the "**First Day Orders**") authorizing, but not directing, the Debtors to, among other things, pay certain prepetition (a) service fees and charges assessed by the Debtors' banks and debit and credit card companies; (b) claims of warehousemen and miscellaneous lien claimants; (c) certain insurance obligations; (d) obligations to "critical vendors;" (e) customer programs obligations; (f) employee wages, salaries, and related items, including employee benefit programs and independent contractor obligations; (g) taxes and assessments; and (h) amounts held in trust or on a consignment basis where the Debtor has collected on behalf of a third party.  Where the Schedules and Statements list creditors and set forth the Debtors' scheduled amounts attributable to such claims, such scheduled amounts reflect balances owed as of the Commencement Date.  To the extent any adjustments are necessary for any payments made on account of such claims following the commencement of these chapter 11 cases pursuant to the authority granted to the Debtors by the Bankruptcy Court under the First Day Orders, such adjustments have been included in the Schedules and Statements unless otherwise noted on the applicable Schedule or Statement. The Debtors' payments for ordinary course goods and services are processed by Fairway Group Central Services LLC.  Accordingly, amounts owed to ordinary course creditors are presented on Schedules E and F associated with Fairway Group Central Services LLC.  The Debtors reserve the right to update the Schedules and Statements to reflect payments made pursuant to the First Day Orders.

10.    **Other Paid Claims.**  To the extent the Debtors have reached any post-petition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to Bankruptcy Court approval.  To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

11.    **Setoffs.**  The Debtors routinely incur certain setoffs from customers and suppliers in the ordinary course of business.  Setoffs in the ordinary course can result from various items including, but not limited to, pricing discrepancies, customer programs, returns, promotional funding, warranties, refunds, and other disputes between the Debtors and their customers and/or suppliers. These routine setoffs are consistent with the ordinary course of business in the Debtors' industry, and, therefore, can be particularly voluminous, unduly burdensome, and costly for the Debtors to regularly document.  Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and, as such,

are excluded from the Schedules and Statements.  Any setoff of a prepetition debt to be applied against the Debtors must comply with the Bankruptcy Code.

12.   **Inventory.** Inventories are valued at cost on the Debtors' balance sheet. Non-perishable inventory is at cost using the retail inventory method.  Perishables, distribution center, and other inventories are stated at cost.  Inventory reserves and adjustments are based on calculations of a sample store physical inventory results, product-mix adjustments, and other inventory reserves on the Debtors' books and records. As such, individual inventory balances reported include inventory reserves.

13.   **Property, plant and equipment.** Owned property, plant and equipment are carried at cost. The costs of additions, improvements and major replacements are capitalized, while maintenance and repairs are charged to expense as incurred.  Depreciation and amortization are calculated on a straight-line basis over the estimated useful lives of the related assets. Equipment is depreciated based on lives varying from three to ten years and leasehold improvements are amortized over the lesser of their estimated useful lives or the remaining available lease terms, up to a maximum life of ten years.  The inventories, property, plant and equipment listed in these Schedules are presented without consideration of any mechanics' or other liens, although the Debtors are not aware of any such liens.

14.   **Debtors' Reservation of Rights.** Nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of rights with respect to these chapter 11 cases, including, but not limited to, the following:

   a.   Any failure to designate a claim listed on the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated."  The Debtors reserve the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on its Schedules as to amount, liability, and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

   b.   The listing of a claim (a) on Schedule D as "secured." (b) on Schedule E as "priority," (c) on Schedule F as "unsecured priority," or (d) listing a contract or lease on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract pursuant to a schedule amendment, claim objection or otherwise.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a security interest has been undertaken.  Except as provided in the Final DIP Order or another order of the Court, the Debtors reserve all rights to dispute and challenge the secured nature or amount of any such creditor's claims or the characterization of the structure of any transaction, or any document or instrument related to such creditor's claim.

   c.   In the ordinary course of their business, the Debtors may lease equipment from certain third-party lessors for use in the daily operation of its business.  Any such

leases are set forth in Schedule G and any current amount due under such leases that were outstanding as of the Commencement Date is listed on Schedule F. The property subject to any of such leases is not reflected in either Schedule A as either owned property or assets of the Debtor nor is such property reflected in the Debtor's Statement of Financial Affairs as property or assets of third parties within the control of the Debtor, but is listed on Schedule B as equipment leased by the Debtors. Nothing in the Schedules is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to any of such issues, including the recharacterization thereof.

d.   The claims of individual creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances or other adjustments due from such creditors to the Debtors. The Debtors reserve all of their rights with regard to such credits, allowances and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

e.   The Debtors' businesses are part of a complex enterprise. Although the Debtors have exercised their reasonable efforts to ensure the accuracy of their Schedules and Statements, they nevertheless may contain errors and omissions. The Debtors hereby reserve all of their rights to dispute the validity, status, and enforceability of any contracts, agreements, and leases set forth on the Schedules and Statements, and to amend and supplement the Schedules and Statements as necessary.

f.   The Debtors further reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on the Schedules and Statements, including, but not limited to, the right to dispute and challenge the characterization or the structure of any transaction, document, and instrument related to a creditor's claim.

g.   Listing a contract or lease on the Schedules and Statements shall not be deemed an admission that such contract is an executory contract, such lease is an unexpired lease, or that either necessarily is a binding, valid, and enforceable contract. The Debtors hereby expressly reserve the right to assert that any contract listed on the Schedules and Statements does not constitute an executory contract within the meaning of section 365 of the Bankruptcy Code, as well as the right to assert that any lease so listed does not constitute an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

15.   **Global Notes Control.** In the event that the Schedules or Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

<u>**Specific Notes with Respect to the Debtors' Schedules of Assets and Liabilities**</u>

1. **Schedules A/B**

   a. **Part 1.** As set forth more fully in the Cash Management Motion, the Debtors fund their operations through a series of disbursement accounts. The Debtors maintain certain of these disbursement accounts as zero-balance accounts, and, therefore, such accounts do not carry a cash balance at the close of each business day. The values assigned to the Debtors' interest in these accounts are net of any disbursements made therefrom as of the close of business on the Reporting Date. Accordingly, due to the timing of account reconciliations and the flow of funds in the Debtors' Cash Management System, the values assigned to the Debtors' interest in these accounts may be listed as negative dollar amounts. Debtors' response to Schedule B3 reflects bank balances as of Commencement Date.

   b. **Part 2.** Certain prepaid or amortized assets are listed in Part 2 in accordance with the Debtors' books and records. These amounts do not necessarily reflect assets the Debtors will be able to collect or realize.

   c. **Part 3.** The Debtors' accounts receivable information includes receivables from the Debtors' customers (e.g. wholesale business), vendors (e.g. rebates), credit card processors, and other parties. The information reflected herein represents the Debtors' accounts receivable as of the Commencement Date. However, the Debtors have not analyzed the accounts receivable greater than 90 days delinquent. As of the Debtors' monthly financial statements for the period ending December 29, 2019, approximately 1.5% of accounts receivable were greater than 90 days delinquent.

   d. **Part 4.** Other than inter-debtor ownership, the Debtors do not hold any investments.

   e. **Part 5.** Part 5 identifies the estimated value of the Debtors' store and warehouse inventories as of the Reporting Date. The Debtors have estimated an amount of lost or damaged inventory and deducted such amount from their inventory balance. The Debtors have estimated the value of inventory purchased in the 20 days prior to the Commencement Date. This estimate is not meant to be an indication of claims allowed under Section 503(b)(9) of the Bankruptcy Code.

   f. **Part 6.** The Debtors do not own or lease any farming and fish-related assets.

   g. **Part 7.** The Debtors have identified owned office furniture, fixtures, and equipment. Actual realizable values may vary significantly relative to net book values as of the Reporting Date.

   h. **Part 8.** The Debtors have exercised their reasonable best efforts to identify all leased and owned vehicles, machinery, fixtures, and equipment. Actual realizable values may vary significantly relative to net book values as of the Reporting Date.

   i. **Part 9.** Part 9 only includes the Debtors' leased real property. The Debtors do not

own any real property.

The Debtors have included in real property, leasehold improvements for items including store fixtures, which were funded and accrued to the balance sheet as of the Reporting Date. These leasehold improvements pertain to stores which the Debtors lease from third parties.

j.  **Part 10**.  Schedules B60 to B65 identify the various trademarks, internet domain names, and licenses owned and maintained by the Debtors.  There are certain unregistered trademarks or copyrights utilized in various marketing materials that are not actively managed or tracked by the Debtors which are not listed.  Certain of the Debtors have limited customer information from loyalty card programs, which contain limited personally identifiable information. Due to the need to protect confidential information and individual privacy, the Debtors have not furnished any customer information on the Schedules. As of the Reporting Date, the Debtors books and records included balances for various intangible assets.

k.  **Part 11.**  The annual net operating loss ("**NOL**") amounts have not been adjusted by the Debtors' effective tax rate.  The NOL carryforward amounts listed were last measured at the end of fiscal year 2019 (March 2019), and do not reflect any reductions for cancellation of debt, or IRS limitations, and thus are not meant to be used as an estimate of the tax attributes that would survive the Chapter 11 cases.

l.  Despite exercising their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules including, but not limited to, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets.  Unless otherwise noted on specific responses, items reported on Schedule B are reported from the Debtors' books and records as of the Reporting Date.  Any amounts reported typically reflect amounts seeking to be recovered and / or costs incurred pursuing causes of action, and may not reflect ultimate recoverable amounts.  The Debtors reserve all of their rights with respect to any claims and causes of action they may have.  Neither these Notes nor the Schedules shall be deemed a waiver of any such claims or causes of action or to prejudice or impair the assertion thereof in any way.

2.  **Schedule D.** The claims listed on Schedule D, as well as the guarantees of those claims listed on Schedule H, arose and were incurred on various dates; a determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, not all such dates are included for each claim.  To the best of the Debtors' knowledge, all claims listed on Schedule D arose, or were incurred before the Commencement Date.  The amounts in Schedule D are consistent with the Debtors' stipulations set forth in the Final DIP Order, which are subject to investigation and challenge by the Creditors' Committee or other parties in interest, all as more fully set forth in the Final DIP Order.

Except as otherwise agreed or stated pursuant to a stipulation, agreed order, or general order entered by the Bankruptcy Court that is or becomes final, including the Final DIP Order, the

Debtors and their estates reserve their right to dispute and challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor and, subject to the foregoing limitations, note as follows: (a) although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken; (b) the Debtors have included the results of UCC lien searches performed prior to the Commencement Date (the reporting of such results, however, shall not be deemed an admission as to the validity or existence of any such lien); (c) the Debtors reserve all rights to dispute and challenge the secured nature of any creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim; and (d) the descriptions provided on Schedule D only are intended to be a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

Certain secured creditors listed on Schedule D also hold equity in the Debtors. Detailed descriptions of the Debtors' prepetition debt structure and descriptions of collateral relating to the bank debt contained on Schedule D are contained in the First Day Declaration.

Except as specifically stated herein, real property lessors, equipment lessors, utility companies, and other parties which may hold security deposits or other security interests have not been listed on Schedule D. The Debtors have listed on Schedule D some, but may not have captured all parties whose claims may be secured through rights of setoff, deposits, or advance payments posted by, or on behalf of, the Debtors, or judgment or statutory lien rights.

3. **Schedule E/F.**
The Debtors have not listed any tax, wage, or wage-related obligations that the Debtors have paid pursuant to First Day Orders on Schedule E. The Debtors reserve their right to dispute or challenge whether creditors listed on Schedule E are entitled to priority claims.

Claims owing to various taxing authorities to which the Debtors potentially may be liable are included on the Debtors' Schedule E. Certain of such claims, however, may be subject to ongoing audits and/or the Debtors otherwise are unable to determine with certainty the amount of the remaining claims listed on Schedule E. Therefore, the Debtors have listed all such claims as unliquidated, pending final resolution of ongoing audits or other outstanding issues.

The Debtors sell gift cards to customers in the normal course of business. The gift cards can be applied by customers toward purchases of groceries in the Debtors' stores. Due to the volume and frequency of gift card sales, the Debtors are not able to identify (i) all of the individual gift card holders, and (ii) the unredeemed value remaining on the individual gift cards. Accordingly, unredeemed gift card claims have not been included in Schedule E.

The Debtors reserve the right to assert that any claim listed on Schedule E does not constitute a priority claim under the Bankruptcy Code.

The Debtors have exercised their reasonable efforts to list all liabilities on Schedule F.

Consistent with Debtors' consolidated operations, all payments are reflected in Schedule F for Fairway Group Central Services LLC. However, such payment liabilities may have been incurred by various other Debtors and the Debtors reserve all rights with respect thereto. Certain creditors listed on Schedule F may owe amounts to the Debtors, and, as such, the Debtors may have valid setoff and recoupment rights with respect to such amounts. The amounts listed on Schedule F may not reflect any such right of setoff or recoupment, and the Debtors reserve all rights to assert the same and to dispute and challenge any setoff and/or recoupment rights that may be asserted against the Debtors by a creditor. Additionally, certain creditors may assert mechanics', materialman's, or other similar liens against the Debtors for amounts listed on Schedule F. The Debtors reserve their right to dispute and challenge the validity, perfection, and immunity from avoidance of any lien purported to be perfected by a creditor listed on Schedule F of any Debtor. In addition, certain claims listed on Schedule F may be entitled to priority under 11 U.S.C. § 503(b)(9).

The Debtors have made reasonable efforts to include all unsecured creditors on Schedule F including, but not limited to, trade creditors, landlords, utilities, consultants, and other service providers; however, the Debtors believe that there are instances where creditors have yet to provide proper invoices for prepetition goods or services. While the Debtors maintain general accruals to account for these liabilities in accordance with GAAP, these amounts are estimates and have not been included on Schedule F.

The Debtors' have historically maintained their accounting books and records on a consolidated basis. As such, the Debtors' have not included any intercompany claim amounts in Schedule F. Pursuant to the *Final Order (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System, Bank Accounts, and Business Forms, (B) Implement Changes to the Cash Management System in the Ordinary Course of Business, and (C) Continue Intercompany Transactions; (II) Confirming Administrative Expense Priority for Postpetition Intercompany Claims, and (III) Granting Relief* (ECF No. 243), beginning with the Commencement Date, the Debtors have maintained records of all intercompany transactions.

The Debtors' accounting system tracks vendors using a number assigned to each vendor and there may be instances in which the same vendor has been assigned multiple vendor numbers. For purposes of Schedule F, the Debtors have not aggregated all claims of such vendors with multiple vendor numbers; rather the Debtors have separately listed the claims of such vendors under each vendor number. Unless otherwise noted, the claims listed on Schedule F are based on the Debtors' books and records as of the Commencement Date.

Schedule F also contains information regarding pending litigation involving the Debtors. In certain instances, the relevant Debtor that is the subject of the litigation is unclear or undetermined. To the extent that litigation involving a particular Debtor has been identified, however, such information is included on that Debtor's Schedule F. The amounts for these potential claims are listed as undetermined and marked as contingent, unliquidated, and disputed in the Schedules.

Schedule F does not include certain balances including deferred liabilities, accruals, or general reserves. Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals primarily represent general estimates

of liabilities and do not represent specific claims as of the Commencement Date. The Debtors have made reasonable efforts to include as contingent, unliquidated and/or disputed the claim of any party not included on the Debtors' open accounts payable that is associated with an account that has receipt not invoiced.

The claims of individual creditors may not reflect credits and/or allowances due from creditors to the applicable Debtor. The Debtors reserve all of their rights with respect to any such credits and/or allowances, including the right to assert objections and/or setoffs or recoupments with respect to same.

The Bankruptcy Court has authorized the Debtors to pay, in their discretion, certain unsecured claims, pursuant to the First Day Orders. To the extent practicable, each Debtor's Schedule F is intended to reflect the balance as of the Commencement Date, adjusted for post-petition payments under some or all of the First Day Orders. Each Debtor's Schedule F will reflect some of the Debtor's payment of certain claims pursuant to these orders, and, to the extent an unsecured claim has been paid or may be paid, it is possible such claim is not included on Schedule F. Certain Debtors may pay additional claims listed on Schedule F during these Chapter 11 cases pursuant to these and other orders of the Bankruptcy Court and the Debtors reserve all of their rights to update Schedule F to reflect such payments or to modify the claims register to account for the satisfaction of such claims. Additionally, Schedule F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that have been, or may be, rejected.

4. **Schedule G.** Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively the "**Agreements**"), review is ongoing and inadvertent errors, omissions or over-inclusion may have occurred. The Debtors may have entered into various other types of Agreements in the ordinary course of their businesses, such as indemnity agreements, supplemental agreements, amendments/letter agreements, and confidentiality agreements which may not be set forth in Schedule G. In addition, as described herein, certain confidential information has been omitted or redacted.

The Debtors have not listed short-term purchase and sales orders because of their large number and transitory nature. Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. Schedule G may be amended at any time to add any omitted Agreements. Likewise, the listing of an Agreement on Schedule G does not constitute an admission that such Agreement is an executory contract or unexpired lease or that such Agreement was in effect on the Commencement Date or is valid or enforceable. The Agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letter and other documents, instruments, and agreements which may not be listed on Schedule G. Executory agreements that are oral in nature have not been included in Schedule G.

Any and all of the Debtors' rights, claims and causes of action with respect to the Agreements listed on Schedule G are hereby reserved and preserved, and as such, the Debtors hereby reserve all of their rights to (i) dispute the validity, status, or enforceability of any Agreements

set forth on Schedule G, (ii) dispute or challenge the characterization of the structure of any transaction, or any document or instrument related to a creditor's claim, including, but not limited to, the Agreements listed on Schedule G and (iii) to amend or supplement such Schedule as necessary.

Certain of the Agreements listed on Schedule G may have been entered into on behalf of more than one of the Debtors. Additionally, the specific Debtor obligor(s) to certain of the Agreements could not be specifically ascertained in every circumstance. In such cases, the Debtors have made reasonable efforts to identify the correct Debtors' Schedule G on which to list the agreement and, where a contract party remained uncertain, such Agreements may have been listed on a different Debtor's Schedule G.

5. **Schedule H.** The Debtors are party to various secured debt agreements which were executed by multiple Debtors and other domestic subsidiaries. The obligations of guarantors under prepetition, secured credit agreements are noted on Schedule H for each individual debtor. In the ordinary course of their businesses, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their businesses. Some of these matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Because such claims are listed on each Debtor's Schedule F and SOFA Part 3, as applicable, they have not been set forth individually on Schedule H. Further, the Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements. No claim set forth on the Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors or non-Debtors. The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

**Specific Notes With Respect to the Debtors' Statements of Financial Affairs**

1.    **SOFA 1.** The income stated in the Debtors' response to SOFA 1 is consistent with the consolidated sales disclosed in compliance with GAAP.  The Debtors reported income net of specific adjustments to sales to account for items such as vendor allowances and discounts.  Certain additional adjustments that may result in incremental cash receipts are typically recognized as reductions to cost of goods sold.

The Debtors' fiscal year ends on the Sunday closest to March 31 each year:

FY 2018: Comprised of 52 weeks ending April 1, 2018, consisting of 12 accounting periods.

FY 2019: Comprised of 52 weeks ending March 31, 2019, consisting of 12 accounting periods.

FY 2020 Year to Date: Comprised of 43 weeks plus 3 additional days ending January 22, 2020.

2.    **SOFA 2.** Other income includes activities the Debtors routinely are involved with including, among other things, excess pallet pickup agreements, film/production fees, parking space rental, and ATM commissions.

3.    **SOFA 3.** Certain negative amounts may appear in the Debtors' response to SOFA 3 as a result of ordinary course credits or offsets available to the Debtor at the time of payment.

The payments disclosed in SOFA 3 are based on the dates cash cleared the Debtors' bank accounts with cleared dates from October 25, 2019 to January 22, 2020.

The response to SOFA excludes disbursements or transfers also listed on SOFA 4.

Amounts still owed to creditors will appear on the Schedules of Assets and Liabilities for each of the Debtors.

4.    **SOFA 4.**  The payroll-related amounts shown in response to this question for any salary, bonus or additional compensation, and/or severance payments are gross amounts that do not include reductions for amounts including employee tax or benefit withholdings.   Insider medical, dental, or fringe benefits paid directly by the Debtors have not been included.  To the extent that insiders receive benefits such as car or housing allowances, those payments have been included, as well as expense reimbursements to the extent paid directly to the employee.  The Debtors also issue corporate-paid credit cards and reimburse direct business expenses incurred by the insiders.  Such business expenses have not been included in SOFA 4.

Home addresses for directors, employees, and former employees identified as insiders

have not been included in the Statements for privacy reasons.

Amounts still owed to creditors will appear on the Schedules of Assets and Liabilities for each of the Debtors.

5.   **SOFA 5.** The Debtors occasionally return damaged, unsatisfactory or out of specification goods to vendors in the ordinary course of business. Other than ordinary course items, the Debtors are not aware of any property that has been returned to other parties.

6.   **SOFA 6**. In the ordinary course of business, the Debtors' receive benefits from their trade vendors including but not limited to rebates, promotional allowances, dividends, and contractual sharing of profits and discounts. These Debtor receivables are often settled with the Debtors setting off the receivables against payments to the vendors. In some instances, the amounts are settled in cash. Given the frequency of these transactions, and the burden created in attempting to isolate them from normal course payments, the Debtors have not listed these ordinary course setoffs in SOFA 6.

7.   **SOFA 7.** The actions described in response to SOFA 7 are the responsive proceedings or pending proceedings of which the Debtors are aware. The actions described in SOFA 7 include employee related matters and pending cases against the Debtors, as well as, out of an abundance of caution, certain personal injury claims that the Debtors are aware of but are not yet in a formal legal proceeding.

The Debtors reserve all of their rights and defenses with respect to any and all listed lawsuits and administrative proceedings. The listing of any such suits and proceedings shall not constitute an admission by the Debtors of any liabilities or that the actions or proceedings were correctly filed against the Debtors or any affiliates of the Debtors. The Debtors also reserve their rights to assert that neither the Debtors nor any affiliate of the Debtors is an appropriate party to such actions or proceedings.

8.   **SOFA 9.** The donations and/or charitable contributions listed in response to SOFA 9 represent cash payments made to third parties during the applicable timeframe that were recorded as such within the Debtors books and records. Donations are predominantly associated with Debtors' support of neighborhood schools parent/teacher organizations and community organizations. The Debtors donate goods to certain charitable organizations from time to time. Such donations are not recorded by the Debtors and are not included in response to SOFA 9.

9.   **SOFA 11.** All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code or preparation of a petition in bankruptcy within one year immediately preceding the Commencement Date are listed on the Debtors' response to SOFA 11. Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications and related orders.

10.    **SOFA 16.** In the ordinary course of business, the Debtors collect customer information from various sources. The Debtors maintain a privacy policy regarding the use of such information, and the policy is accessible to customers on each of the Debtors two websites ([www.fairwaymarket.com](http://www.fairwaymarket.com) and [www.shop.fairwaymarket.com/privacy](http://www.shop.fairwaymarket.com/privacy)) (the "**Websites**"). While applicable to all Debtors, the customer information is listed exclusively on SOFA 16 of Fairway Group Acquisition Company.

11.    **SOFA 17.** The Debtors' have listed the 401(k) plans for which they are plan administrators. Prior to the Commencement Date, the Debtors also contributed to a pension fund associated with the UFCW, and have included such pension fund in response to SOFA 32. Since the Debtors are not responsible for its administration, the UFCW pension fund has not been included in SOFA 17.

12.    **SOFA 21.** In the ordinary course of business, the Debtors' retail locations contain various assets owned by others including, but not limited to, copy machines, vending equipment, and display racks. In addition, in the ordinary course of business, certain stores contain inventory owned by others which is sold in the stores, including, but not limited to, flowers and sushi. The Debtors are not responsible for such inventory and certain property subject to such arrangements may not be included in the Debtors' response to SOFA 21. Additionally, the Debtors may utilize leased property in their ordinary course of business. Therefore, the Debtors may hold property subject to leases listed in Schedule G.

   Further, as described in the *Motion of Debtors for (I) Authority to (A) Maintain Certain Trust Fund Programs, (B) Release Certain Funds Held in Trust, (C) Continue to Perform and Honor Obligations and (II) Related Relief* (ECF No. 14) and the "**Trust Fund Motion**"), in the normal course of business the Debtors collect customer cash on account of certain activities, including sales tax collections. These customer collections are not property of the Debtors and are passed through to the applicable beneficiaries. Since the underlying transactions are described in the Trust Fund Motion, the Debtors' response to SOFA 21 does not itemize such property or funds held in trust.

13.    **SOFA 26.** The Debtors provided financial statements in the ordinary course of business to certain parties for business, statutory, credit, financing and other reasons. Recipients have included regulatory agencies, financial institutions, investment banks, debtholders and their legal and financial advisors. Financial statements have also been provided to other parties as requested, subject to customary non-disclosure requirements.

14.    **SOFA 27.** The Debtors' inventory control procedures require physical inventory counts of each (i) store perishable inventory, (ii) store non-perishable inventory, and (iii) warehouse inventory. Due to the Debtors' extensive store footprint and the specific counting procedures for the different inventory categories, the category-specific counts are done on a staggered basis. Perishable inventory is counted by the Debtors' management for each monthly close period and non-perishable inventory is counted by a third party inventory specialist once per quarter (on varying dates per store). The most recent counts of perishable inventory were taken around December 29, 2019 concurrent with the December monthly closing process. Non-perishable inventory

counts were taken at all locations at varying times over the three months prior to filing.

15.  **SOFA 30.** Any and all known disbursements to insiders of the Debtors, as defined above, have been listed in response to SOFA 4.  The items listed under SOFA 30 incorporate by reference any items listed under SOFA 4, and vice versa.

| Debtor Name | **Fairway Greenwich Street LLC** |
|---|---|
| **United States Bankruptcy Court for the Southern District of New York** | |
| Case number (if known): | **20-10171** |

☐ Check if this is an
amended filing

Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/19

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

**Part 1:    Income**

**1. Gross Revenue from business**

☒ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of Revenue | Gross Revenue (before deductions and exclusions) |
|---|---|---|

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☒ None

| | Description of sources of revenue | Gross Revenue (before deductions and exclusions) |
|---|---|---|

**Part 2:    List Certain Transfers Made Before Filing for Bankruptcy**

**3. Certain payments or transfers to creditors within 90 days before filing this case**

List payments of transfers - including expense reimbursements to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☒ None

| Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|

In re  Fairway Greenwich Street LLC                                               Case No.   20-10171

**4. Payments or other transfers of property made within 1 year before filing  this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

[X] None

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

[X] None

| Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

[X] None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

**Part 3:**    **Legal Actions or Assignments**

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

[X] None

Official Form 207                        **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

In re  Fairway Greenwich Street LLC                                                    Case No.   20-10171

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| | | | |

---

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

[X] None

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| | | |

---

| Part 4: | Certain Gifts and Charitable Contributions |
|---|---|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of gifts to that recipient is less than $1,000**

[X] None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| | | | |

---

| Part 5: | Certain Losses |
|---|---|

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

[X] None

---

Official Form 207          **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

In re  Fairway Greenwich Street LLC

Case No.   20-10171

| Description of the property lost and how the loss occurred | Amount of payments received for the loss | Date of loss | Value of property lost |
|---|---|---|---|
| | If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. List unpaid claims on Official Form 106 A/B (Schedule A/B: Assets - Real and Personal Property). | | |

---

**Part 6:**    **Certain Payments of Transfers**

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

[X] None

| Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| | | | |

---

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

[X] None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|
| | | | |

---

**13. Transfers not already listed on this statement**

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.
Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

[X] None

Official Form 207                    **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

In re  Fairway Greenwich Street LLC                                    Case No.   20-10171

| Who received transfer? Address. | Description of property transferred or payments received or debts paid in exchange. | Date transfer was made | Total amount or value |
|---|---|---|---|

---

| Part 7: | Previous Locations |
|---|---|

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

[X] Does not apply

| Address | Dates of occupancy |
|---|---|

---

| Part 8: | Health Care Bankruptcies |
|---|---|

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

[X] No   Go to Part 9.
[ ] Yes.  Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| | Location where patient records are maintained | How are records kept?<br>[ ] Electronically<br>[ ] Paper |

---

| Part 9: | Personally Identifiable Information |
|---|---|

**16. Does the debtor collect and retain personally identifiable information of customers?**

[X] No
[ ] Yes. State the nature of the information collected and retained.    SEE GLOBAL NOTE

Does the debtor have a privacy policy about that information?

[X] No
[ ] Yes.

---

In re  Fairway Greenwich Street LLC                                      Case No.   20-10171

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No   Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

       ☐ No. Go to Part 10.
       ☐ Yes. Fill in below:

       **Name of plan**                                                     **Employer identification number of plan**
       _____                             EIN: _____

       Has the plan been terminated?
       ☐ No
       ☐ Yes

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☒ None

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| | | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other | | |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☒ None

| Depository institution name and address | Names of anyone with access to it. Address | Description of contents | Does debtor still have it? |
|---|---|---|---|
| | | | ☐ No |
| | | | ☐ Yes |

In re  Fairway Greenwich Street LLC                                                    Case No.   20-10171

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☐ None

| Facility name and address | Names of anyone with access to it. Address | Description of contents | Does debtor still have it? |
|---|---|---|---|
| 20.1 Iron Mountain Various Locations | Various Employees | Books & Records | ☐ No ☑ Yes |

---

**Part 11:    Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☒ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|

---

**Part 12:    Details About Environmental Information**

For the purpose of Part 12, the following definitions apply:
 - Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
 - Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
 - Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No
☐ Yes. Provide details below.

In re  Fairway Greenwich Street LLC                                            Case No.   20-10171

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| | | | ☐ Pending |
| | | | ☐ On appeal |
| **Case number** | | | ☐ Concluded |

---

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

---

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

---

**Part 13:    Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☒ None

| Business name and address | Describe the nature of the business | Employer identification number. Dates business existed |
|---|---|---|
| | | |

---

In re  Fairway Greenwich Street LLC                                          Case No.   20-10171

**26. Books, records, and financial statements**
**26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.**

☐ None

| | **Name and address** | **Dates of service** |
|---|---|---|
| 26a.1 | Brad Schneider<br>2284 12th Avenue<br>New York, NY 10027 | From May 2019 to<br>Current |
| 26a.2 | Maureen Page<br>2284 12th Avenue<br>New York, NY 10027 | From January 2018<br>to May 2019 |

**26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.**

☐ None

| | **Name and address** | **Dates of service** |
|---|---|---|
| 26b.1 | Grant Thornton<br>757 Third Ave., 9th Floor<br>New York, NY 10017 | From January 2018<br>to Current |

**26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.**

☐ None

| | **Name and address** | **If any books of account and records are unavailable, explain why** |
|---|---|---|
| 26c.1 | Brad Schneider<br>2284 12th Avenue<br>New York, NY 10027 | |
| 26c.2 | Grant Thornton<br>757 Third Ave., 9th Floor<br>New York, NY 10017 | |

**26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.**

☐ None

| | **Name and address** |
|---|---|
| 26d.1 | See Global Notes |

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes.  Give the details about the two most recent inventories

In re  Fairway Greenwich Street LLC                                                                                Case No.   20-10171

| Name of the person who supervised the taking of the inventory | | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|---|
| Name and address of the person who has possession of inventory records | | | |

---

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| | Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|---|
| 28.1 | Fairway Group Acquisition Company | 2284 12th Avenue New York, NY 10027 | Member | 100% |
| 28.2 | Abel Porter | 2284 12th Avenue New York, NY 10027 | Manager | |

---

**29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| | Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|---|
| 29.1 | Erwin Koenig | 2284 12th Avenue New York, NY 10027 | Manager | |
| 29.2 | Patrick Sheils | 2284 12th Avenue New York, NY 10027 | Manager | |

---

**30. Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No
☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing this value |
|---|---|---|---|
| Relationship to debtor | | | |

---

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No
☑ Yes. Identify below.

| | Name of the parent corporation | Employer identification number of the parent corporation |
|---|---|---|
| 31.1 | Fairway Group Holdings Corp., et al. | 20-5942788 |
| 31.2 | Fairway Group Acquisition Company - New York City only | 20-5942860 |

---

Official Form 207                    **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

In re  Fairway Greenwich Street LLC                                    Case No.   20-10171

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes.  Identify below.

**Name of the pension fund**                    **Employer identification number of the pension fund**

---

| Part 14: | Signature and Declaration |
|---|---|

**WARNING**    Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on.    3/23/2020
                MM / DD / YYYY

/s/ Brad Schneider                                Printed name    Brad Schneider
Signature of individual signing on behalf of the debtor

Position or relationship to the debtor    Chief Financial Officer

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy*  (Official Form 207) attached?**
☑ No
☐ Yes

Official Form 207              **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**