**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                            :
In re                                       :       **Chapter 11**
                                            :
**OLD MARKET GROUP HOLDINGS**               :       **Case No. 20-10161 (JLG)**
**CORP.**, *et al.*,                        :
                                            :
                    Debtors.[1]             :       **(Jointly Administered)**
                                            :
-------------------------------------------------------------x

## JOINT CHAPTER 11 PLAN OF OLD MARKET GROUP HOLDINGS CORP. AND ITS AFFILIATED DEBTORS

**WEIL, GOTSHAL & MANGES LLP**
Ray C. Schrock, P.C.
Sunny Singh
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007


*Attorneys for Debtors*
*and Debtors in Possession*

Dated:  September 24, 2020
          New York, New York

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Old Market Group Holdings Corp. (2788); Old Market Group Acquisition Company (2860); Old Market Bakery LLC (4129); Old Market Broadway LLC (8591); Old Market Chelsea LLC (0288); Old Market Construction Group, LLC (2741); Old Market Douglaston LLC (2650); Old Market East 86th Street LLC (3822); Old Market eCommerce LLC (3081); Old Market Georgetowne LLC (9609); Old Market Greenwich Street LLC (6422); Old Market Central Services LLC (7843); Old Market Group Plainview LLC (8643); Old Market Hudson Yards LLC (9331); Old Market Kips Bay LLC (0791); FN Store LLC (9240); Old Market Paramus LLC (3338); Old Market Pelham LLC (3119); Old Market Pelham Wines & Spirits LLC (3141); Old Market Red Hook LLC (8813); Old Market Stamford LLC (0738); Old Market Stamford Wines & Spirits LLC (3021); Old Market Staten Island LLC (1732); Old Market Uptown LLC (8719); Old Market Westbury LLC (6240); and Old Market Woodland Park LLC (9544).  The location of the Debtors' corporate headquarters is 2284 12th Avenue, New York, New York 10027.  Old Market Community Foundation Inc., a charitable organization, owned by Old Market Group Holdings Corp., is not a debtor in these proceedings.

# Table of Contents

Page

**ARTICLE I**    DEFINITIONS AND INTERPRETATION. .......................................................7

    A.    Definitions.  The following terms shall have the respective meanings specified below: .................................................................................................................7

    B.    Interpretation; Application of Definitions and Rules of Construction............................20

    C.    Reference to Monetary Figures. .....................................................................................20

    D.    Controlling Document. ...................................................................................................20

    E.    Certain Consent Rights....................................................................................................21

**ARTICLE II**    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS..................................21

    2.1.    Administrative Expense Claims. .................................................................................21

    2.2.    Fee Claims. ...................................................................................................................21

    2.3.    Priority Tax Claims. .....................................................................................................22

    2.4.    DIP Claims. ..................................................................................................................22

    2.5.    Restructuring Expenses. ...............................................................................................23

**ARTICLE III**    CLASSIFICATION OF CLAIMS AND INTERESTS. ..........................................23

    3.1.    Classification in General. .............................................................................................23

    3.2.    Grouping of Debtors for Convenience Only. ...............................................................23

    3.3.    Summary of Classification. ..........................................................................................23

    3.4.    Special Provision Governing Unimpaired Claims........................................................24

    3.5.    Elimination of Vacant Classes......................................................................................24

    3.6.    Voting Classes; Presumed Acceptance by Non-Voting Classes. ..................................24

    3.7.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code..................................................................................................................................24

**ARTICLE IV**    TREATMENT OF CLAIMS AND INTERESTS. ...........................................24

    4.1.    Priority Non-Tax Claims (Class 1). ..............................................................................24

    4.2.    Other Secured Claims (Class 2).....................................................................................25

    4.3.    Senior First Out Term Loan Claims (Class 3). ..............................................................25

i

4.4.    Senior Last Out Term Loan Claims (Class 4). ................................................ 26

4.5.    Holdco Loan Claims (Class 5). ...................................................................... 27

4.6.    General Unsecured Claims (Class 6). ............................................................ 27

4.7.    Intercompany Claims (Class 7). .................................................................... 27

4.8.    Intercompany Interests (Class 8). .................................................................. 28

4.9.    Parent Equity Interests (Class 9). .................................................................. 28

4.10.    Subordinated Securities Claims (Class 10) .................................................. 29

**ARTICLE V**    MEANS FOR IMPLEMENTATION. ........................................................ 29

5.1.    No Substantive Consolidation. ...................................................................... 29

5.2.    Incorporation of UFCW Settlement ............................................................. 29

5.3.    Compromise and Settlement of Claims, Interests, and Controversies. ......... 29

5.4.    Sources of Consideration for Plan Distributions. ......................................... 31

5.5.    Reorganized Equity Plan Election Notice ..................................................... 31

5.6.    Reorganization Transaction. ......................................................................... 31

5.7.    Wind Down and Dissolution of the Debtors. ................................................ 33

5.8.    Employee Matters. ........................................................................................ 35

5.9.    Effectuating Documents; Further Transactions. ........................................... 35

5.10.    Securities Law Exemptions. ........................................................................ 36

5.11.    Cancellation of Existing Securities and Agreements. ................................... 36

5.12.    Cancellation of Liens. .................................................................................. 37

5.13.    Subordination Agreements. .......................................................................... 37

5.14.    Nonconsensual Confirmation. ..................................................................... 37

5.15.    Closing of Chapter 11 Cases. ...................................................................... 37

5.16.    Notice of Effective Date. ............................................................................. 37

5.17.    Separability. ................................................................................................ 37

5.18.    GUC Recovery Trust. ................................................................................... 38

ii

**ARTICLE VI**  DISTRIBUTIONS. ............................................................................................. 40

6.1.    Distributions Generally.................................................................................... 40

6.2.    Distribution Record Date................................................................................. 41

6.3.    Date of Distributions....................................................................................... 41

6.4.    Disbursing Agent. ........................................................................................... 41

6.5.    Rights and Powers of Disbursing Agent.......................................................... 42

6.6.    Expenses of Disbursing Agent. ....................................................................... 42

6.7.    No Postpetition Interest on Claims. ................................................................. 42

6.8.    Delivery of Distributions. ............................................................................... 42

6.9.    Distributions after Effective Date. .................................................................. 43

6.10.   Unclaimed Property......................................................................................... 43

6.11.   Time Bar to Cash Payments. ........................................................................... 43

6.12.   Manner of Payment under Plan. ...................................................................... 44

6.13.   Satisfaction of Claims..................................................................................... 44

6.14.   Minimum Cash Distributions. ......................................................................... 44

6.15.   Setoffs and Recoupments. .............................................................................. 44

6.16.   Allocation of Distributions between Principal and Interest............................. 44

6.17.   No Distribution in Excess of Amount of Allowed Claim................................. 44

6.18.   Distributions Free and Clear............................................................................ 44

6.19.   Withholding and Reporting Requirements. ...................................................... 45

**ARTICLE VII** PROCEDURES FOR DISPUTED CLAIMS. ..................................................... 45

7.1.    Objections to Claims. ...................................................................................... 45

7.2.    Resolution of Disputed Administrative Expenses and Disputed Claims........... 46

7.3.    Payments and Distributions with Respect to Disputed Claims......................... 46

7.4.    Distributions after Allowance.......................................................................... 46

7.5.    Disallowance of Claims................................................................................... 46

WEIL:\97629847\2\44444.0009

| | | |
|---|---|---|
| 7.6. | Estimation of Claims. | 46 |
| 7.7. | No Distributions Pending Allowance. | 47 |
| 7.8. | Claim Resolution Procedures Cumulative. | 47 |
| 7.9. | Interest. | 47 |
| 7.10. | Insured Claims. | 47 |

**ARTICLE VIII    EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......... 47

| | | |
|---|---|---|
| 8.1. | General Treatment. | 47 |
| 8.2. | Determination of Assumption Disputes and Deemed Consent. | 48 |
| 8.3. | Rejection Damages Claims. | 49 |
| 8.4. | Insurance Policies. | 49 |
| 8.5. | Intellectual Property Licenses and Agreements. | 50 |
| 8.6. | Tax Agreements. | 50 |
| 8.7. | Assignment. | 50 |
| 8.8. | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 51 |
| 8.9. | Reservation of Rights. | 51 |

**ARTICLE IX    CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE.** .......... 51

| | | |
|---|---|---|
| 9.1. | Conditions Precedent to Confirmation of Plan. | 51 |
| 9.2. | Conditions Precedent to Effective Date. | 52 |
| 9.3. | Waiver of Conditions Precedent. | 52 |
| 9.4. | Effect of Failure of a Condition. | 53 |

**ARTICLE X    EFFECT OF CONFIRMATION OF PLAN.** .......... 53

| | | |
|---|---|---|
| 10.1. | Vesting of Assets. | 53 |
| 10.2. | Binding Effect. | 54 |
| 10.3. | Discharge of Claims and Termination of Interests. | 54 |
| 10.4. | Term of Injunctions or Stays. | 54 |

iv

| | | |
|---|---|---|
| 10.5. | Injunction. | 54 |
| 10.6. | Releases. | 55 |
| 10.7. | Exculpation. | 57 |
| 10.8. | Subordinated Claims. | 57 |
| 10.9. | Retention of Causes of Action/Reservation of Rights. | 57 |
| 10.10. | Solicitation of Plan. | 58 |
| 10.11. | Corporate and Limited Liability Company Action. | 58 |

**ARTICLE XI** RETENTION OF JURISDICTION. ........................................................... 59

| | | |
|---|---|---|
| 11.1. | Retention of Jurisdiction. | 59 |
| 11.2. | Courts of Competent Jurisdiction. | 60 |

**ARTICLE XII** MISCELLANEOUS PROVISIONS ....................................................... 61

| | | |
|---|---|---|
| 12.1. | Payment of Statutory Fees. | 61 |
| 12.2. | Substantial Consummation of the Plan. | 61 |
| 12.3. | Plan Supplement. | 61 |
| 12.4. | Request for Expedited Determination of Taxes. | 61 |
| 12.5. | Exemption from Certain Transfer Taxes. | 61 |
| 12.6. | Amendments. | 62 |
| 12.7. | Effectuating Documents and Further Transactions. | 62 |
| 12.8. | Revocation or Withdrawal of Plan. | 62 |
| 12.9. | Dissolution of Creditors' Committee. | 62 |
| 12.10. | Severability of Plan Provisions. | 63 |
| 12.11. | Governing Law. | 63 |
| 12.12. | Time. | 63 |
| 12.13. | Dates of Actions to Implement the Plan. | 63 |
| 12.14. | Immediate Binding Effect. | 63 |
| 12.15. | Deemed Acts. | 64 |

12.16.    Successor and Assigns................................................................................................. 64

12.17.    Entire Agreement......................................................................................................... 64

12.18.    Exhibits to Plan............................................................................................................ 64

12.19.    Notices.......................................................................................................................... 64

WEIL:\97629847\2\44444.0009

Each of Old Market Group Holdings Corp, Old Market Group Acquisition Company, Old Market Bakery LLC, Old Market Broadway LLC, Old Market Chelsea LLC, Old Market Construction Group, LLC, Old Market Douglaston LLC, Old Market East 86th Street LLC, Old Market eCommerce LLC, Old Market Georgetowne LLC, Old Market Greenwich Street LLC, Old Market Central Services LLC, Old Market Group Plainview LLC, Old Market Hudson Yards LLC, Old Market Kips Bay LLC, FN Store LLC, Old Market Paramus LLC, Old Market Pelham LLC, Old Market Pelham Wines & Spirits LLC, Old Market Red Hook LLC, Old Market Stamford LLC, Old Market Stamford Wines & Spirits LLC, Old Market Staten Island LLC, Old Market Uptown LLC, Old Market Westbury LLC, and Old Market Woodland Park LLC (each, a "**Debtor**" and, collectively, the "**Debtors**") propose the following joint chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Article I.A.

## ARTICLE I    DEFINITIONS AND INTERPRETATION.

A.    **Definitions.** The following terms shall have the respective meanings specified below:

1.1    "***503(b)(9) Claim***" means an Administrative Expense Claim arising under section 503(b)(9) of the Bankruptcy Code.

1.2    "***Accepting Class***" means a Class that votes to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

1.3    "***Administrative Expense Claim***" means any right to payment constituting a cost or expense of administration incurred during the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Commencement Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Fee Claims; (c) Restructuring Expenses; (d) 503(b)(9) Claims; (e) the DIP Claims; and (f) any other such claims expressly provided under the DIP Order.

1.4    "***Affiliates***" means "Affiliates" as such term is defined in section 101(2) of the Bankruptcy Code.

1.5    "***Allowed***" means, with reference to any Claim or Interest, a Claim or Interest (a) arising on or before the Effective Date as to which (i) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (ii) any objection has been determined in favor of the holder of the Claim or Interest by a Final Order; (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors, Reorganized Debtors, Wind Down Estates, GUC Recovery Trustee, or Plan Administrator, as applicable; (c) as to which the liability of the Debtors, Reorganized Debtors, or the Wind Down Estates, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction; or (d) expressly allowed hereunder; provided, however, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) Wind Down Estates, the Reorganized Debtors, and the GUC Recovery Trust, as applicable, shall retain all claims and defenses with respect to Allowed Claims that are Unimpaired pursuant to the Plan.

1.6    "*Amended Organizational Documents*" means the forms of certificates of incorporation, certificates of formation, limited liability company agreements, or other forms of organizational documents and bylaws, as applicable of the Reorganized Debtors.

1.7    "*Asset*" means all of the right, title, and interest of the Debtors in and to property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property).

1.8    "*Assumption Dispute*" means a pending objection relating to assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.9    "*Assumption Schedule*" means the schedule of executory contracts and unexpired leases to be assumed by the Debtors pursuant to the Plan that will be included in the Plan Supplement.

1.10    "*Avoidance Actions*" means any and all actual or potential Causes of Action of the Debtors arising under chapter 5 of the Bankruptcy Code (other than section 542 or section 549 of the Bankruptcy Code) or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance action claims, rights, and causes of action, and commercial tort law, to the extent not previously transferred, sold, assigned, or waived under any prior order of the Bankruptcy Court in these Chapter 11 Cases.

1.11    "*Ballot*" means the form(s) distributed to holders of Impaired Claims entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

1.12    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.13    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the Southern District of New York.

1.14    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.15    "*Business Day*" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.16    "*Cash*" means legal tender of the United States of America.

1.17    "*Causes of Action*" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Commencement Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws).  Causes of Action also includes:

(a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.18    "*Chapter 11 Cases*" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Commencement Date in the Bankruptcy Court.

1.19    "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

1.20    "*Class*" means any group of Claims or Interests classified as set forth in Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.21    "*Commencement Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

1.22    "*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.23    "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.24    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code in form and substance reasonably acceptable to the Requisite Consenting Creditors and the Creditors' Committee.

1.25    "*Consenting Creditors*" means "Consenting Creditors" as defined in the RSA.

1.26    "*Creditors' Committee*" means the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code as set forth in the *Appointment of Official Committee of Unsecured Creditors* (ECF No. 105) filed on February 4, 2020, as may be reconstituted from time to time.

1.27    "*Creditors' Committee Budget*" means the reasonable and documented fees and expenses not to exceed $175,000 per month incurred by the Creditors' Committee's advisors from April 1, 2020 through and including the Effective Date; provided, that any amounts incurred by the Creditors' Committee's advisors in connection with defending against objections to or prosecuting the approval of the Global Settlement or the Plan shall be excluded from such calculation.

1.28    "*Cure Amount*" means the payment of Cash by the Debtors or Wind Down Estates, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary pursuant to section 365(b)(1)(A) of the Bankruptcy Code to permit the Debtors to assume such executory contract or unexpired lease.

1.29    "*D&O Liability Insurance Policies*" means, collectively, all insurance policies (including any "tail policy") of any of the Debtors for current or former directors', members', managers', and officers' liability.

WEIL:\97629847\2\44444.0009

1.30     "***Debtor***" or "***Debtors***" has the meaning set forth in the introductory paragraph of the Plan.

1.31     "***Debtors in Possession***" means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.32     "***Definitive Documents***" means the documents (including any related orders, agreements, instruments, schedules or exhibits) that are necessary or desirable to implement, or otherwise relate to the Plan, including, but not limited to: (a) the Disclosure Statement; (b) any motion seeking approval of the adequacy of the Disclosure Statement and solicitation of the Plan, (c) the Disclosure Statement Order; (d) the DIP Order; (e) each of the documents comprising the Plan Supplement; (f) the Confirmation Order; and (g) the GUC Recovery Trust Agreement.

1.33     "***DIP Agent***" means "DIP Agent" as defined in the DIP Order.

1.34     "***DIP Claims***" means all Claims held by the DIP Credit Parties on account of, arising under or relating to the DIP Documents or the DIP Order, which for the avoidance of doubt, shall include all DIP Obligations, including the Roll-Up Loans.

1.35     "***DIP Conversion Election***" has the meaning set forth in Section 2.4 of the Plan.

1.36     "***DIP Credit Parties***" means the DIP Agent and the DIP Lenders.

1.37     "***DIP Documents***" means "DIP Documents" as defined in the DIP Order.

1.38     "***DIP Facility***" means "DIP Facility" as defined in the DIP Order.

1.39     "***DIP Lenders***" means "DIP Lenders" as defined in the DIP Order.

1.40     "***DIP Motion***" means the *Motion of Debtors for (I) Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Liens and Provide Superpriority Administrative Expense Status, (D) Grant Adequate Protection, (E) Modify the Automatic Stay; and (F) Schedule a Final Hearing; and (II) Related Relief* (ECF No. 20).

1.41     "***DIP Obligations***" means "DIP Obligations" as defined in the DIP Order.

1.42     "***DIP Order***" means the final order approving the DIP Motion (ECF No. 199).

1.43     "***Disallowed***" means, with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.44     "***Disbursing Agent***" means the Plan Administrator, or any Entity designated by the Plan Administrator, with respect to all Claims other than General Unsecured Claims, and the GUC Recovery Trustee, or any entity designated by the GUC Recovery Trustee, with respect to Allowed General Unsecured Claims.

1.45     "***Disclosure Statement***" means the disclosure statement filed by the Debtors in support of the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code (as may be amended, supplemented, or modified from time to time).

10

1.46    "**_Disclosure Statement Order_**" means the order entered by the Bankruptcy Court (a) finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code and (b) authorizing solicitation of the Plan.

1.47    "**_Disputed_**" means with respect to a Claim or Interest, that (a) is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code; or (b) the Debtors or any parties in interest have interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.  If the Debtors dispute only a portion of a Claim, such Claim shall be deemed Allowed in any amount the Debtors do not dispute, and Disputed as to the balance of such Claim.

1.48    "**_Distribution Record Date_**" means the Effective Date (or as soon as practicable thereafter) or such other date as agreed upon among the Debtors and the Requisite Consenting Creditors, or, with respect to the GUC Recovery Trust Assets, such other date as determined by the GUC Recovery Trustee, or, with respect to the Wind Down Co Assets, the Plan Administrator.

1.49    "**_Effective Date_**" means the date on which all conditions to the effectiveness of the Plan set forth in Article IX hereof have been satisfied or waived in accordance with the terms of the Plan.

1.50    "**_Entity_**" means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any political subdivision thereof, or other person (as defined in section 101(41) of the Bankruptcy Code) or other entity.

1.51    "**_Estate_**" or "**_Estates_**" means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.52    "**_Exculpated Parties_**" means collectively the: (a) Debtors; (b) Reorganized Debtors; (c) Plan Administrator; (d) Wind Down Estates; (e) Consenting Creditors; (f) Prepetition Agent; (g) DIP Credit Parties; (h) Creditors' Committee and each of its members in their capacity as such; (i) GUC Recovery Trustee; (j) UFCW Parties and UFCW International; and (k) with respect to each of the foregoing Entities in clauses (a) through (k), all Related Parties who acted on their behalf in connection with the matters as to which exculpation is provided herein.

1.53    "**_Old Market Acquisition_**" means Old Market Group Acquisition Company.

1.54    "**_Old Market Holdings_**" means Old Market Group Holdings Corp.

1.55    "**_Old Market Paramus_**" means Old Market Paramus LLC.

1.56    "**_Old Market Woodland Park_**" means Old Market Woodland Park LLC.

1.57    "**_Fee Claim_**" means a Claim for professional services rendered or costs incurred on or after the Commencement Date through the Effective Date by professional persons retained by the Debtors or the Creditors' Committee by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, or 503(b) of the Bankruptcy Code in the Chapter 11 Cases.

1.58    "**_Final Order_**" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial,

reargument, or rehearing shall then be pending; or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.59    "*General Unsecured Claim*" means any Claim against the Debtors (other than any Intercompany Claims) as of the Commencement Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court; provided, that a General Unsecured Claim shall not include the Prepetition Loan Deficiency Claims.

1.60    "*Global Settlement*" shall have the meaning ascribed to such term in Section 5.2(b) of the Plan.

1.61    "*GUC Recovery Trust*" means the trust established pursuant to the GUC Recovery Trust Agreement.

1.62    "*GUC Recovery Trust Administrative Contribution Amount*" means $150,000 contributed by the Debtors to the GUC Recovery Trust Assets on or about the Effective Date to administer the GUC Recovery Trust, including any advisor fees.

1.63    "*GUC Recovery Trust Agreement*" means the trust agreement by and among the Debtors and the GUC Recovery Trustee, substantially in the form included in the Plan Supplement and consistent with Section 5.18 of the Plan, which shall be in form and substance reasonably acceptable to the Creditors' Committee and the Debtors.

1.64    "*GUC Recovery Trust Assets*" shall consist of (i) Cash in the amount of $1,500,000 as a carve out of the Prepetition Lenders' collateral; (ii) the GUC Recovery Trust Administrative Contribution Amount; and (iii) proceeds from any Unreleased Avoidance Actions, less any fees and expenses of the Creditors' Committee's advisors in excess of the Creditors' Committee Budget prior to the Effective Date.

1.65    "*GUC Recovery Trust Fees and Expenses*" shall consist of the reasonable expenses (including, without limitation, any taxes imposed on or payable by the GUC Recovery Trust or in respect of the GUC Recovery Trust Assets and professional fees) incurred by the GUC Recovery Trust and any professionals retained by the GUC Recovery Trust and any additional amount determined necessary by the GUC Recovery Trustee to adequately reserve for the operating expenses of the GUC Recovery Trust.

1.66    "*GUC Recovery Trust Interest*" means a non-certificated beneficial interest in the GUC Recovery Trust granted to each holder of an Allowed General Unsecured Claim, which shall entitle such holder to a Pro Rata share in the GUC Recovery Trust Assets in accordance with the GUC Recovery Trust Agreement with other holders of Allowed General Unsecured Claims.

1.67    "*GUC Recovery Trust Net Assets*" means the GUC Recovery Trust Assets less the GUC Recovery Trust Fees and Expenses.

WEIL:\97629847\2\44444.0009

1.68    "*GUC Recovery Trustee*" means the Person selected by the Creditors' Committee to serve as the trustee of the GUC Recovery Trust, and any successor thereto in accordance with the GUC Recovery Trust Agreement.

1.69    "*Holdco Loan Claims*" means any Claims arising from or in connection with the Holdco Loans under the Prepetition Credit Agreement.

1.70    "*Holdco Loans*" means the secured subordinated term loans under the Prepetition Credit Agreement.

1.71    "*Impaired*" means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.72    "*Insured Claims*" means any Claim or portion of a Claim that is, or may be, insured under any of the Debtors' insurance policies.

1.73    "*Intercompany Claim*" means any pre- or postpetition Claim against a Debtor held by another Debtor.

1.74    "*Intercompany Interest*" means an Interest in a Debtor held by another Debtor.  For the avoidance of doubt, an Intercompany Interest shall exclude a Parent Equity Interest.

1.75    "*Interests*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all ordinary shares, common stock, preferred stock, membership interest, partnership interest or other instrument evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, and any share, option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interests in the Debtors that existed immediately before the Effective Date.

1.76    "*KEIP Agreement*" means "KEIP Agreement" as defined in the KEIP/KERP Motion.

1.77    "*KEIP Incentive Award*" means "KEIP Incentive Award" as defined in the KEIP/KERP Motion.

1.78    "*KEIP/KERP Motion*" means the *Motion of Debtors for Entry of an Order Approving Debtors' (I) Key Employee Incentive Program and (II) Key Employee Retention Program* (ECF No. 200).

1.79    "*KEIP/KERP Order*" means the *Order Approving Debtors' (I) Key Employee Incentive Program and (II) Key Employee Retention Program* (ECF No. 444).

1.80    "*KERP Agreement*" means "KERP Agreement" as defined in the KEIP/KERP Motion.

1.81    "*KERP Payments*" means "KERP Payment" as defined in the KEIP/KERP Motion.

1.82    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.83    "*New Board*" means the new board of directors of Reorganized Old Market Holdings.

1.84    "*New Common Stock*" means the shares of common stock, par value $0.01 per share to be issued by Reorganized Old Market Holdings authorized pursuant to the Amended Organizational

WEIL:\97629847\2\44444.0009

Documents of Reorganized Old Market Holdings, and all of which shall be deemed validly issued, fully-paid, and non-assessable.

1.85    "***Net Cash Proceeds***" means (a) all Cash of the Debtors less (b) (i) the amount of Cash necessary to pay holders of Allowed (or reserve for Disputed) DIP Claims, Administrative Expense Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims; (ii) the GUC Recovery Trust Administrative Contribution Amount and $1,500,000, which shall be contributed to the GUC Recovery Trust on the Effective Date; (iii) the UFCW Settlement Payments; (iv) the KEIP Incentive Award and the KERP Payments; and (v) the amount of Cash estimated and reserved by the Plan Administrator to adequately fund the Wind Down in accordance with the Wind Down Budget.

1.86    "***Other Secured Claim***" means a Secured Claim, other than an Administrative Expense Claim, a DIP Claim, a Priority Tax Claim, a Super Senior Secured Claim, a Senior First Out Term Loan Claim, a Senior Last Out Term Loan Claim, or a Holdco Loan Claim.

1.87    "***PACA/PASA Order***" means the *Final Order Authorizing Debtors to (A) Pay Prepetition Claims of Shippers and Miscellaneous Lien Claimants, (B) Confirm Administrative Expense Priority of Undisputed Commencement Date Orders and Satisfy Such Obligations In The Ordinary Course of Business, and (C) Pay PACA/PASA Claims* (ECF No. 238).

1.88    "***Parent Equity Interests***" means any Interest in Old Market Holdings.

1.89    "***Person***" means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other Entity.

1.90    "***Plan***" means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including, without limitation, any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the terms hereof and the Bankruptcy Code.

1.91    "***Plan Administrator***" means a Person or Entity selected by the Debtors and the Requisite Consenting Creditors to serve as plan administrator for each of the Debtors and Wind Down Estates who shall have all powers and authorities as set forth in Section 5.7 of the Plan.

1.92    "***Plan Confirmation Shortfall***" has the meaning set forth in Section 4.3 of the Plan.

1.93    "***Plan Sponsor***" means Special Situations Investing Group, Inc.

1.94    "***Plan Supplement***" means a supplemental appendix to the Plan containing, among other things, forms or term sheets of applicable documents, schedules, and exhibits to the Plan to be filed with the Court, including, but not limited to, the following: (a) Amended Organizational Documents (to the extent such Amended Organizational Documents reflect material changes from the Debtors' existing organizational documents and bylaws); (b) to the extent known, and in the event of a Reorganization Transaction, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (c) GUC Recovery Trust Agreement; (d) Assumption Schedule; and (e) in the event of a Reorganization Transaction, the Reorganized Debtors Exit Facility Term Sheet; provided, that through the Effective Date, the Debtors shall have the right to amend the Plan Supplement and any schedules, exhibits, or amendments thereto, in accordance with the terms of the Plan and the RSA. The Plan Supplement shall be filed with the Bankruptcy Court no later than seven (7) calendar days prior to the deadline to object to

the Plan. The Debtors shall have the right to amend the documents contained in the Plan Supplement through and including the Effective Date in accordance with Article IX of the Plan.

1.95    "***Prepetition Agent***" means Ankura Trust Company, LLC, solely in its capacity as administrative agent and collateral agent under the Prepetition Credit Agreement, and its successors and assigns.

1.96    "***Prepetition Credit Agreement***" means that certain Super Senior Credit Agreement, dated as of August 28, 2018 (and as amended or modified by that certain First Amendment to Super Senior Credit Agreement, dated as of July 29, 2019, that certain Second Amendment to and Extension under Super Senior Credit Agreement, dated as of August 28, 2019, that certain Third Amendment and Limited Waiver to Super Senior Credit Agreement, dated as of October 7, 2019, and that certain Limited Waiver to Super Senior Credit Agreement, dated as of January 8, 2020), among Old Market Acquisition, as the borrower, Old Market Holdings, the Prepetition Agent, and the other lenders party thereto, as amended, modified, or supplemented from time to time prior to the Commencement Date.

1.97    "***Prepetition Credit Documents***" means the "Loans Documents" as defined in the Prepetition Credit Agreement.

1.98    "***Prepetition Lenders***" means "Lenders" as defined in the Prepetition Credit Agreement.

1.99    "***Prepetition Loan Claims***" mean any Claims arising from or in connection with the Prepetition Credit Agreement, including Super Senior Secured Claims, Senior First Out Term Loan Claims, Senior Last Out Term Loan Claims, and Holdco Loan Claims, but excluding Restructuring Expenses.

1.100    "***Prepetition Loan Deficiency Claim***" means the deficiency Claims on account of the indebtedness under the Prepetition Credit Agreement under section 506(a) of the Bankruptcy Code.

1.101    "***Prepetition Secured Loans***" means "Loans" as defined in the Prepetition Credit Agreement.

1.102    "***Priority Non-Tax Claim***" means any Claim other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.103    "***Priority Tax Claim***" means any Secured Claim or unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.104    "***Pro Rata***" means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

1.105    "***Professional Fees Escrow Account***" shall have the meaning given to such term in the DIP Order.

1.106    "***Reinstate***," "***Reinstated***," or "***Reinstatement***" means leaving a Claim Unimpaired under the Plan.

WEIL:\97629847\2\44444.0009

1.107    "*Related Parties*" means with respect to any Exculpated Party or any Released Party, such Entities' predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, all of their respective current and former officers, directors, principals, stockholders (and any fund managers, fiduciaries or other agents of stockholders with any involvement related to the Debtors), members, partners, employees, agents, trustees, advisory board members, advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such persons' respective heirs, executors, estates, servants and nominees, solely to the extent such Persons and Entities acted on the behalf of the Released Parties or Exculpated Parties in connection with the matters as to which releases or exculpation are provided herein.

1.108    "*Released Avoidance Actions*" means Avoidance Actions that are released pursuant to Section 10.6(a) of the Plan against the Released Avoidance Parties.

1.109    "*Released Avoidance Parties*" means holders of (a) Administrative Expense Claims, Priority Non-Tax Claims, and Other Secured Claims who do not object to confirmation of the Plan or assert any Claims against the Released Parties; and (b) General Unsecured Claims who (i) vote to accept the Plan or abstain from voting but do not opt out of the releases in Section 10.6(b) of the Plan; and (ii) who do not object to confirmation of the Plan or assert any Claims against the Released Parties.

1.110    "*Released Parties*" means collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Wind Down Estates; (d) the Consenting Creditors; (e) the Prepetition Agent; (f) the DIP Credit Parties; (g) the Creditors' Committee and each of its members in their capacity as such; (h) the GUC Recovery Trust; (i) Released Avoidance Parties; and (j) Related Parties for each of the foregoing.

1.111    "*Reallocated Amount*" has the meaning set forth in Section 4.3 of the Plan.

1.112    "*Reallocated Amount Shortfall*" has the meaning set forth in Section 4.3 of the Plan.

1.113    "*Reorganization Transaction*" means, collectively, (a) issuance of the New Common Stock; (b) the distribution of the Reallocated Amount to holders of Allowed Senior First Out Term Loan Claims (other than Plan Sponsor) in exchange for 100% of the New Common Stock in accordance with Section 4.3 of the Plan; (c) execution of the Amended Organizational Documents; (d) vesting of the Reorganized Assets in the Reorganized Debtors, in each case, in accordance with the Plan; (e) the Reorganized Debtors Exit Facility, if elected; and (f) the other transactions that the Debtors and the Requisite Term Lenders reasonably determine are necessary or appropriate to implement the foregoing.

1.114    "*Reorganized Assets*" means collectively, (i) the alcoholic beverages license issued to Old Market Paramus LLC by the State of New Jersey pursuant to license number 0246-44-035-006, (ii) the alcoholic beverages inventory owned by Old Market Paramus, (iii) the alcoholic beverages license issued to Old Market Woodland Park by the State of New Jersey pursuant to license number 1616-44-013-007, and (iv) the alcoholic beverages inventory owned by Old Market Woodland Park LLC; (v) the Intercompany Interests in Old Market Acquisition held by Old Market Holdings; (vi) the Intercompany Interests in Old Market Paramus and Old Market Woodland held by Old Market Acquisition; (vii) all other Assets of the Reorganized Debtors primarily related to items (i) through (v), including, without limitation, any books and records, customer lists, and employee information related thereto; and (vi) and any other Assets to be agreed by the Debtors (which may include certain store locations) and Plan Sponsor and to be identified in the Plan Supplement.

1.115    "*Reorganized Debtors*" means Reorganized Old Market Holdings, Reorganized Old Market Acquisition, Reorganized Old Market Paramus, and Reorganized Old Market Woodland Park;

WEIL:\97629847\2\44444.0009

provided that all references to the Reorganized Debtors shall only be applicable upon the Reorganized Equity Plan Election.

1.116    "***Reorganized Equity Plan Election***" means the election by Plan Sponsor required to be made on or prior to the Reorganized Equity Plan Election Date, to proceed with the Reorganization Transaction.

1.117    "***Reorganized Equity Plan Election Date***" means August 15, 2020.

1.118    "***Reorganized Equity Plan Election Notice***" has the meaning set forth in Section 5.5 of the Plan.

1.119    "***Reorganized Debtors Exit Facility***" has the meaning set forth in Section 2.4 of the Plan.

1.120    "***Reorganized Debtors Exit Facility Claims***" has the meaning set forth in Section 2.4 of the Plan.

1.121    "***Reorganized Debtors Exit Facility Documents***" means the agreements and related documents governing the Reorganized Debtors Exit Facility, which shall be in form and substance acceptable to Plan Sponsor and the Debtors.

1.122    "***Reorganized Debtors Exit Facility Term Sheet***" means the exit facility term sheet by and among the Debtors and Plan Sponsor, substantially in the form included in the Plan Supplement and consistent with Section 2.4 of the Plan.

1.123    "***Reorganized Old Market Acquisition***" means Old Market Acquisition, as reorganized pursuant to and under the Plan on or after the Effective Date.

1.124    "***Reorganized Old Market Holdings***" means Old Market Holdings, as reorganized pursuant to and under the Plan on or after the Effective Date.

1.125    "***Reorganized Old Market Paramus***" means Old Market Paramus, as reorganized pursuant to and under the Plan on or after the Effective Date.

1.126    "***Reorganized Old Market Woodland Park***" means Old Market Woodland Park, as reorganized pursuant to and under the Plan on or after the Effective Date.

1.127    "***Requisite Consenting Creditors***" means, as of the date of determination, Consenting Creditors holding at least a majority in aggregate principal amount outstanding of the Prepetition Secured Loans held by all Consenting Creditors as of such date, which shall include each of both Brigade Capital Management and Special Situations Investing Group for so long as such institutions and/or their affiliates are Consenting Creditors.

1.128    "***Restructuring Expenses***" means with respect to (a) the Consenting Creditors, the reasonable and documented fees, costs, and expenses of King & Spalding LLP; and (b) the Prepetition Agent, the reasonable fees, costs, and expenses of (i) the Prepetition Agent and (ii) Davis Polk & Wardwell LLP.

1.129    "***Roll-Up DIP Loans***" means "Roll-Up DIP Loans" as defined in the DIP Order.

WEIL:\97629847\2\44444.0009

1.130    "**RSA**" means that certain restructuring support agreement, dated as of January 22, 2020, by and among the Debtors and the Consenting Creditors (as amended by that first amendment dated February 24, 2020, and as may be further amended, supplemented, or modified from time to time in accordance with the terms thereof) annexed to the *Declaration of Abel Porter Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York* filed on January 23, 2020 (ECF No. 25) as Exhibit B.

1.131    "**Sale Documents**" means the documentation effectuating the Sale Transactions.

1.132    "**Sale Orders**" means one or more orders of the Bankruptcy Court approving the Sale Transactions, including, but not limited to, the *Order (I) Approving Asset Purchase Agreement Among the Debtors and Village Super Market, Inc.; (II) Authorizing Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith; and (IV) Granting Related Relief* (ECF No. 449); the *Order (I) Approving Asset Purchase Agreement Among the Debtors and Seven Seas Georgetowne, LLC; (II) Authorizing Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (IV) Granting Related Relief* (ECF No. 448); and the *Order (I) Approving Asset Purchase Agreement Among the Debtors and Amazon Retail LLC; (II) Authorizing Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (IV) Granting Related Relief* (ECF No. 445).

1.133    "**Sale Transactions**" means one or more sale of the Debtors' assets pursuant to section 363 of the Bankruptcy Code and pursuant to the Sale Orders.

1.134    "**Secured Claim**" means a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) set forth in the Plan, (ii) agreed to by the holder of such Claim and the Debtors, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.135    "**Securities Act**" means the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

1.136    "**Security**" has the meaning set forth in section 101(49) of the Bankruptcy Code.

1.137    "**Senior First Out Term Loan Claims**" means any Claims arising from or in connection with the Senior First Out Term Loans under the Prepetition Credit Agreement.

1.138    "**Senior First Out Term Loans**" means the secured first out term loans under the Prepetition Credit Agreement.

1.139    "**Senior Last Out Term Loan Claims**" means any Claims arising from or in connection with the Senior Last Out Term Loans under the Prepetition Credit Agreement.

1.140    "**Senior Last Out Term Loans**" means the secured last out term loans under the Prepetition Credit Agreement.

1.141    "**Subordinated Securities Claims**" means a Claim subject to subordination under section 510(b) of the Bankruptcy Code.

1.142    "**Super Senior Secured Claims**" means any Claims arising from or in connection with the Super Senior Secured Term Loans and the Super Senior Secured L/C Facility Loans the Prepetition Credit Agreement.

1.143    "**Super Senior Secured L/C Facility Loans**" means the super senior secured credit facility under the Prepetition Credit Agreement.

1.144    "**Super Senior Secured Term Loans**" means the super senior secured delayed draw first out term loans under the Prepetition Credit Agreement.

1.145    "**Tax Code**" means the Internal Revenue Code of 1986, as amended from time to time.

1.146    "**UFCW International**" means the United Food and Commercial Workers International Union.

1.147    "**UFCW Parties**" means the United Food and Commercial Workers Local 1500, the United Food and Commercial Workers Local 371, the United Food and Commercial Workers Local 1262, the United Food and Commercial Workers Local 1500 Pension Fund, the United Food and Commercial Workers Local 1500 Legal Fund, the United Food and Commercial Workers Local 1500 Scholarship Fund, and the United Food and Commercial Workers Local 1500 Welfare Fund.

1.148    "**UFCW Settlement**" means the settlement described in the UFCW Settlement Motion and approved by the Bankruptcy Court pursuant to the UFCW Settlement Order.

1.149    "**UFCW Settlement Motion**" means the *Debtors' Motion for (I) Authorization and Approval of Global Settlement Among Debtors, United Food and Commercial Workers Local 1500, Local 1262, and Local 371, United Food and Commercial Workers Local 1500 Pension Fund, and the UFCW Local 1500 Benefit Funds and (II) Related Relief* (ECF No. 382).

1.150    "**UFCW Settlement Order**" means the order approving the UFCW Settlement Motion and the UFCW Settlement (ECF No. 382).

1.151    "**UFCW Settlement Payments**" means all payments required to be made by the Debtors pursuant to the UFCW Settlement.

1.152    "**UFCW Settlement Term Sheet**" means the term sheet between the Debtors and the UFCW Parties attached as Exhibit 1 to the UFCW Settlement Order.

1.153    "**Unimpaired**" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.154    "**Unreleased Avoidance Actions**" means Avoidance Actions that are not released pursuant to Section 10.6 of the Plan.

1.155    "**U.S. Trustee**" means the United States Trustee for the Southern District of New York.

1.156    "**Voting Deadline**" means the date by which all persons or Entities entitled to vote on the Plan must vote to accept or reject the Plan.

1.157    "**Wind Down**" means the process to wind down, dissolve and liquidate the Estates and distribute any remaining assets in accordance with the Plan.

WEIL:\97629847\2\44444.0009

1.158    "***Wind Down Budget***" means a budget to be agreed between the Debtors and the Requisite Consenting Creditors for the purpose of effectuating the Wind Down as may be modified from time to time.

1.159    "***Wind Down Co***" means, if the Reorganized Equity Plan Election is made, the corporation, limited liability company, or trust existing or created on the Effective Date (including one of the Debtor entities other than any Reorganized Debtor) in accordance with Section 5.7(f) or Section 5.7(g), of the Plan.

1.160    "***Wind Down Co Assets***" means, if the Reorganized Equity Plan Election is made, the assets of the Reorganized Debtors (excluding the Reorganized Assets), including the Intercompany Interests held by Old Market Acquisition (other than the Intercompany Interests in Old Market Paramus and Old Market Woodland Park, which are Reorganized Assets), which assets shall be transferred to and beneficially owned by the Wind Down Co as of the Effective Date to be treated in accordance with the Plan.

1.161    "***Wind Down Estates***" means (i) the Debtors (excluding, if the Reorganized Equity Plan Election is made, the Reorganized Debtors) pursuant to and under the Plan on or after the Effective Date, and (ii) if the Reorganized Equity Plan Election is made, Wind Down Co.

**B.    Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (e) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**C.    Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

**D.    Controlling Document.**

In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement) and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), the Plan (without reference to the Plan Supplement) shall govern and control; provided, that in the event of a conflict between Confirmation Order, on the one hand, and any of

the Plan, the Plan Supplement, the Definitive Documents, or the DIP Order on the other hand, the Confirmation Order shall govern and control in all respects.

E.    **Certain Consent Rights.**

Notwithstanding anything in the Plan to the contrary, any and all consent rights of any of the DIP Credit Parties and the parties to the RSA as set forth in the RSA and the DIP Documents with respect to the form and substance of the Plan, the Plan Supplement, and any Definitive Document, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I hereof) and fully enforceable as if stated in full herein until such time as the RSA (with respect to the parties to the RSA) or the DIP Documents (with respect to the DIP Credit Parties) is terminated in accordance with its terms.

## ARTICLE II    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.

2.1.    *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than a Fee Claim, a DIP Claim, or a Restructuring Expense) shall receive, in full and final satisfaction, settlement, and release of such Claim against the Debtors, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors, Wind Down Estates, or the Plan Administrator, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any course of dealing or agreements governing, instruments evidencing, or other documents relating to such transactions; provided, further, that the Allowed amounts of any 503(b)(9) Claims agreed to by the Debtors or the Plan Administrator shall each be satisfactory to the Requisite Consenting Creditors.

2.2.    *Fee Claims.*

(a)    All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file and serve on counsel to the Debtors, the U.S. Trustee, the Creditors' Committee, and counsel to the Requisite Consenting Creditors, on or before the date that is forty-five (45) days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Commencement Date through the Effective Date. Objections to any Fee Claims must be filed and served on counsel to the Debtors, the U.S. Trustee, the Creditors' Committee, counsel to the Requisite Consenting Creditors, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the Debtors or the Plan Administrator, as applicable, and the party requesting compensation of a Fee Claim).

(b)    Allowed Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which an order relating to any such Allowed Fee Claim is entered or as soon as reasonably practicable thereafter; or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors, Wind Down Estates, or the Plan Administrator, as applicable. Notwithstanding the foregoing, any Fee Claims that are authorized

to be paid pursuant to any administrative orders entered by the Bankruptcy Court may be paid at the times and in the amounts authorized pursuant to such orders.

(c)     On or about the Effective Date, holders of Fee Claims shall provide a reasonable estimate of unpaid Fee Claims incurred in rendering services before the Effective Date to the Debtors or the Creditors' Committee, as applicable, and the Debtors or Wind Down Estates, as applicable, shall separately escrow such estimated amounts in the Professional Fees Escrow Account for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties. If a holder of a Fee Claim does not provide an estimate, the Debtors, Wind Down Estates, or Plan Administrator, as applicable, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim. The Professional Fee Escrow Account shall be treated as a trust account for the benefit of holders of Fee Claims and otherwise subject to the terms of the DIP Order. When all such Allowed Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, Wind Down Estates without any further action or order of the Bankruptcy Court.

(d)     Wind Down Estates or the Plan Administrator, as applicable, are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3.    ***Priority Tax Claims.***

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, and release of such Allowed Priority Tax Claim, at the sole option of the Debtors, Wind Down Estates, or the Plan Administrator, with the consent of the Requisite Consenting Creditors as applicable, (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; provided, that the Debtors reserve the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium; or (b) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years from and after the Commencement Date.

2.4.    ***DIP Claims.***

On the Effective Date, in full and final satisfaction of the Allowed DIP Claims, to the extent any DIP Obligations remain unpaid and the DIP Documents have not been terminated, the commitments of the DIP Credit Parties under the DIP Documents shall be terminated and DIP Claims shall be paid in full in Cash; provided that Plan Sponsor may, at its option and only if the Reorganized Equity Plan Election is made, (a) convert all or a portion of its outstanding DIP Claims, on a dollar-for-dollar basis, into a new exit financing facility under which the Reorganized Debtors will be the borrower(s) and guarantors (as applicable), on terms mutually acceptable to the Debtors and Plan Sponsor and consistent with the Reorganized Debtors Exit Facility Term Sheet (the "***Reorganized Debtors Exit Facility***," and the Claims thereunder, the "***Reorganized Debtors Exit Facility Claims***") and/or (b) exchange all or a portion of its outstanding DIP Claims for the New Common Stock (the "***DIP Conversion Election***"). The Debtors' and their respective Affiliates' contingent or unliquidated expense reimbursement and indemnity obligations under the DIP Documents, to the extent not paid in full in Cash on the Effective Date or otherwise satisfied by the Debtors and their respective Affiliates in a manner reasonably acceptable to the DIP Agent, shall

survive the Effective Date and shall not be released or discharged pursuant to the Plan or Confirmation Order, notwithstanding any provision hereof or thereof to the contrary.

2.5. **_Restructuring Expenses._**

To the extent that any Restructuring Expenses remain unpaid as of the Business Day prior to the Effective Date, on the Effective Date, Wind Down Estates, or Plan Administrator, as applicable, shall pay in full in Cash any outstanding Restructuring Expenses that are invoiced without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases, and without any requirement for further notice or Bankruptcy Court review or approval. For the avoidance of doubt, any Restructuring Expenses invoiced after the Effective Date shall be paid promptly, but no later than ten (10) business days of receiving an invoice.

## ARTICLE III  CLASSIFICATION OF CLAIMS AND INTERESTS.

3.1. **_Classification in General._**

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

3.2. **_Grouping of Debtors for Convenience Only._**

The Plan groups the Debtors together solely for the purpose of describing treatment of Claims and Interests under this Plan and confirmation of this Plan. Although this Plan applies to all of the Debtors, the Plan constitutes twenty-six (26) distinct chapter 11 plans, one for each Debtor. Each Class of Claims will be deemed to contain sub-classes for each of the Debtors, to the extent applicable for voting and distribution purposes. To the extent there are no Allowed Claims or Interests with respect to a particular Debtor, such Class is deemed to be omitted with respect to such Debtor. Except as otherwise provided herein, to the extent a holder has a Claim that may be asserted against more than one Debtor, the vote of such holder in connection with such Claims shall be counted as a vote of such Claim against each Debtor against which such holder has a Claim. The grouping of the Debtors in this manner shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal Entities, or cause the transfer of any Assets, and, except as otherwise provided by or permitted under this Plan, all Debtors shall continue to exist as separate legal Entities.

3.3. **_Summary of Classification._**

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) deemed to accept or reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

WEIL:\97629847\2\44444.0009

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| 3 | Senior First Out Term Loan Claims | Impaired | Yes |
| 4 | Senior Last Out Term Loan Claims | Impaired | Yes |
| 5 | Holdco Loan Claims | Impaired | Yes |
| 6 | General Unsecured Claims | Impaired | Yes |
| 7 | Intercompany Claims | Impaired | No (Deemed to reject) |
| 8 | Intercompany Interests | Unimpaired | No (Presumed to accept) |
| 9 | Parent Equity Interests | Impaired | No (Deemed to reject) |
| 10 | Subordinated Securities Claims | Impaired | No (Deemed to reject) |

3.4.    ***Special Provision Governing Unimpaired Claims.***

Nothing under the Plan shall affect the rights of the Debtors, Reorganized Debtors, Wind Down Estates, or Plan Administrator, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.5.    ***Elimination of Vacant Classes.***

Any Class of Claims against or Interests in the Debtors that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

3.6.    ***Voting Classes; Presumed Acceptance by Non-Voting Classes.***

If a Class contains Claims eligible to vote and no holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the holders of such Claims in such Class.

3.7.    ***Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code..***

The Debtors shall seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV  TREATMENT OF CLAIMS AND INTERESTS.

4.1.    ***Priority Non-Tax Claims (Class 1).***

(a)    *Classification*:  Class 1 consists of Priority Non-Tax Claims.

WEIL:\97629847\2\44444.0009

(b)    *Treatment*:  Except to the extent that a holder of an Allowed Priority Non-Tax Claim against the Debtors agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement and release of such Allowed Priority Non-Tax Claim, at the sole option of the Debtors, Wind Down Estates, or the Plan Administrator, as applicable:  (i) each such holder shall receive payment in full in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is reasonably practicable; or (ii) such holder shall receive such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired.

(c)    *Voting*:  Class 1 is Unimpaired, and holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

4.2.    ***Other Secured Claims (Class 2).***

(a)    *Classification*:  Class 2 consists of the Other Secured Claims.  To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2 for purposes of voting to accept or reject the Plan and receiving distributions under the Plan.

(b)    *Treatment*: Except to the extent that a holder of an Allowed Other Secured Claim agrees to different treatment, on the later of the Effective Date and the date that is ten (10) Business Days after the date such Other Secured Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Secured Claim will receive, on account and in full satisfaction of such Allowed Claim, at the sole option of the Debtors, Wind Down Estates, or the Plan Administrator, with the consent of the Requisite Consenting Creditors, as applicable:  (i) Cash in an amount equal to the Allowed amount of such Claim; (ii) return of the applicable collateral or the proceeds thereof in satisfaction of the Allowed amount of such Other Secured Claim; or (iii) such other treatment sufficient to render such holder's Allowed Other Secured Claim Unimpaired.

(c)    *Voting*:  Class 2 is Unimpaired, and holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

4.3.    ***Senior First Out Term Loan Claims (Class 3).***

(a)    *Classification*:  Class 3 consists of Senior First Out Term Loan Claims.

(b)    *Allowance*:  The Senior First Out Term Loan Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code against the Debtors in the aggregate principal amount of $ 76.5 million, plus all accrued but unpaid interest, costs, fees, and expenses then outstanding under the Prepetition Credit Agreement on account of the Senior First Out Term Loan Claims.  The Prepetition Agent and the Prepetition Lenders shall not be required to file proofs of Claim on account of any Senior First Out Term Loan Claims.

(c)    *Treatment*: Except to the extent that a holder of an Allowed Senior First Out Term Loan Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for an Allowed Senior First Out Term Loan Claim, each such holder thereof shall receive such holder's Pro Rata share of the Net Cash Proceeds, until all Allowed Senior First Out Term Loan Claims are

25

satisfied in full; provided that (A) upon the Reorganized Equity Plan Election, (i) Plan Sponsor's Pro Rata share of the Net Cash Proceeds distributable to Plan Sponsor on account of its Allowed Senior First Out Term Loan Claims up to $2.75 million (the "**Reallocated Amount**") shall be distributed to the remaining holders of the Allowed Senior First Out Term Loan Claims (other than Plan Sponsor) on a Pro Rata basis (excluding the Claims held by Plan Sponsor from the denominator for purposes of such calculation); (ii) Plan Sponsor shall receive 100% of the New Common Stock; and (iii) the amount of Plan Sponsor's share of the Net Cash Proceeds distributable to Plan Sponsor on account of its Allowed Senior First Out Term Loan Claims exceeding the Reallocated Amount shall be distributed to Plan Sponsor; provided that if the Reallocated Amount is less than $2.75 million, the Cash payable by the Debtors to satisfy DIP Claims in cash in full on the Effective Date in an amount equal to the difference between $2.75 million and the Reallocated Amount (such amount, the "**Reallocated Amount Shortfall**"), shall be distributed to the holders of Allowed Senior First Out Term Loan Claims (other than the Plan Sponsor) in an amount equal to the Reallocated Amount Shortfall; provided further that if the Debtors do not have sufficient cash on hand to make or reserve for distributions to holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Other Secured Claims on the Effective Date in accordance with the terms set forth in the Plan (such amount, the "**Plan Confirmation Shortfall**"), the Plan Sponsor shall be entitled to make a DIP Conversion Election in an amount necessary to cover such Plan Confirmation Shortfall, and the amount of such Plan Confirmation Shortfall shall reduce, on a dollar-for-dollar basis, the Reallocated Amount Shortfall; and (B) if the Reorganized Equity Plan Election is <u>not</u> made, Plan Sponsor's Pro Rata share of the Net Cash Proceeds distributable to Plan Sponsor on account of its Allowed Senior First Out Term Loan Claims in an amount equal to the difference between $2.75 million and the actual amount realized by the Debtors or Wind Down Estates, as applicable, from the liquidation of the Reorganized Assets (to the extent the actual amount realized by the Debtors or Wind Down Estates, as applicable, from the liquidation of the Reorganized Assets is less than $2.75 million) shall be distributed to the remaining holders of the Allowed Senior First Out Term Loan Claims (other than Plan Sponsor) on a Pro Rata basis (excluding the Claims held by Plan Sponsor from the denominator for purposes of such calculation).

(d)     *Voting*: Class 3 is Impaired, and holders of Senior First Out Term Loan Claims are entitled to vote to accept or reject the Plan.

**4.4.     *Senior Last Out Term Loan Claims (Class 4)*.**

(a)     *Classification*: Class 4 consists of Senior Last Out Term Loan Claims.

(b)     *Allowance*: The Senior Last Out Term Loan Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code against the Debtors in the aggregate principal amount of $56.8 million, plus all accrued but unpaid interest, costs, fees, and expenses then outstanding under the Prepetition Credit Agreement on account of the Senior Last Out Term Loan Claims. The Prepetition Agent and the Prepetition Lenders shall not be required to file proofs of Claim on account of any Senior Last Out Term Loan Claims.

(c)     *Treatment*: Except to the extent that a holder of an Allowed Senior Last Out Term Loan Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for an Allowed Senior Last Out Term Loan Claim, each such holder thereof shall receive such holder's Pro Rata share of the Net Cash Proceeds as such holders are entitled to under applicable nonbankruptcy law after the Senior First Out Term Loan Claims are satisfied in full in Cash, until all Allowed Senior Last Out Term Loan Claims are satisfied in full.

(d)     *Voting*: Class 4 is Impaired, and holders of Senior Last Out Term Loan Claims are entitled to vote to accept or reject the Plan.

26

4.5.    *Holdco Loan Claims (Class 5).*

(a)    *Classification*:  Class 5 consists of Holdco Loan Claims.

(b)    *Allowance*:  The Holdco Loan Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code against the Debtors in the aggregate principal amount of $51 million, plus all accrued but unpaid interest, costs, fees, and expenses then outstanding under the Prepetition Credit Agreement on account of the Holdco Loan Claims.  The Prepetition Agent and the Prepetition Lenders shall not be required to file proofs of Claim on account of any Holdco Loan Claims.

(c)    *Treatment*: Except to the extent that a holder of an Allowed Holdco Loan Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for an Allowed Holdco Loan Claim, each such holder thereof shall receive such holder's Pro Rata share of the Net Cash Proceeds as such holders are entitled to under applicable nonbankruptcy law after the Senior Last Out Term Loan Claims are satisfied in full in Cash, until all Allowed Holdco Loan Claims are satisfied in full.

(d)    *Voting*:  Class 5 is Impaired, and holders of Holdco Loan Claims are entitled to vote to accept or reject the Plan.

4.6.    *General Unsecured Claims (Class 6).*

(a)    *Classification*:  Class 6 consists of General Unsecured Claims.

(b)    *Treatment*:  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for an Allowed General Unsecured Claim, each such holder thereof shall receive (i) such holder's Pro Rata share of (x) the GUC Recovery Trust Interests (entitling such holder to a Pro Rata share of the GUC Recovery Trust Net Assets in accordance with the GUC Recovery Trust Agreement); and (y) the Net Cash Proceeds after the Prepetition Loan Claims are satisfied in full in Cash, until all Allowed General Unsecured Claims are satisfied in full; and (ii) if such holder of an Allowed General Unsecured Claim satisfies the requirements to be a Released Avoidance Party, such holder shall be treated as a Released Avoidance Party.

For the avoidance of doubt, a holder of a Prepetition Loan Deficiency Claim shall not receive distributions in accordance with this Section 4.5(b) and such claims are waived.

(c)    *Voting*:  Class 6 is Impaired, and holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.7.    *Intercompany Claims (Class 7).*

(a)    *Classification*:  Class 7 consists of Intercompany Claims.

(b)    *Treatment*:  On or after the Effective Date, all Intercompany Claims will be cancelled and not entitled to distribution or any recovery under the Plan.

(c)    *Voting*: Class 7 is Impaired, and holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

WEIL:\97629847\2\44444.0009

4.8.    *Intercompany Interests (Class 8).*

(a)    *Classification*:  Class 8 consists of Intercompany Interests.

(b)    *Treatment:*  On or after the Effective Date, all Intercompany Interests shall be cancelled, reinstated, or receive such other treatment as determined by the Debtors and the Requisite Consenting Creditors, in their respective reasonable discretion; <u>provided</u>, that holders of Intercompany Interests shall not receive Cash on account of such Intercompany Interests.

(c)    *Voting:*  Class 8 is Unimpaired, and holders of Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Interests.

4.9.    *Parent Equity Interests (Class 9).*

(a)    *Classification*:  Class 9 consists of Parent Equity Interests.

(b)    *Treatment*:  Except to the extent that a holder of Parent Equity Interests agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for Parent Equity Interests, each such holder thereof shall receive:

(i)    **If the Reorganized Equity Plan Election is made**, all Parent Equity Interests shall be deemed cancelled without further action by or order of the Bankruptcy Court, and shall be of no further force or effect, whether surrendered for cancellation or not.

(ii)    **If the Reorganized Equity Plan Election is <u>not</u> made**:

(1)    On the Effective Date, all Parent Equity Interests shall be cancelled and one share of Old Market Holdings common stock (the "**Holdings Single Share**") shall be issued to the Plan Administrator to hold in trust as custodian for the benefit of the former holders of Old Market Holdings common stock and preferred stock consistent with their former relative priority and economic entitlements.  The Holdings Single Share shall be recorded on the books and records maintained by the Plan Administrator;

(2)    Each former holder of a Parent Equity Interest (through their interest in the Holdings Single Share, as applicable) shall neither receive nor retain any property of the Estate or direct interest in property of the Estate on account of such Parent Equity Interest; provided, that in the event that all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each former holder of a Parent Equity Interest may receive its share of any remaining assets of Old Market Holdings consistent with such holder's rights of payment existing immediately prior to the Commencement Date.  Unless otherwise determined by the Plan Administrator, on the date that Old Market Holdings' Chapter 11 Case is closed in accordance with Section 5.15 of the Plan, the Holdings Single Share issued on the Effective Date shall be deemed cancelled and of no further force and effect; provided that such cancellation does not adversely impact the Debtors' Estates; and

(3)    The continuing rights of former holders of Parent Equity Interests (including through their interest in Holdings Single Share or otherwise) shall be

WEIL:\97629847\2\44444.0009

nontransferable except by operation of law, or, subject to the Plan Administrator's consent, for administrative transfers where the ultimate beneficiary has not changed.

(c)      *Voting*: Class 9 is Impaired, and holders of Parent Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Parent Equity Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Parent Equity Interests.

### 4.10.   *Subordinated Securities Claims (Class 10).*

(a)      *Classification*: Class 10 consists of Subordinated Securities Claims.

(b)      *Treatment*: Holders of Subordinated Securities Claims shall not receive or retain any property under the Plan on account of such Subordinated Securities Claims. On the Effective Date, all Subordinated Securities Claims shall be deemed cancelled without further action by or order of the Bankruptcy Court, and shall be of no further force and effect, whether surrendered for cancellation or otherwise.

(c)      *Voting*: Class 10 is Impaired, and the holders of Subordinated Securities Claims are conclusively deemed to have rejected the Plan. Therefore, holders of Subordinated Securities Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders of Subordinated Securities Claims will not be solicited.

## ARTICLE V    MEANS FOR IMPLEMENTATION.

### 5.1.   *No Substantive Consolidation.*

The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor. The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan, subject to the terms of the Global Settlement set forth in Section 5.3(b) of the Plan.

### 5.2.   *Incorporation of UFCW Settlement.*

The terms and conditions of the UFCW Settlement are incorporated in the Plan as if fully set forth herein, and shall by binding on the Debtors, Wind Down Estates, the GUC Recovery Trust, and all other parties in interest, to the extent applicable.

### 5.3.   *Compromise and Settlement of Claims, Interests, and Controversies.*

(a)      Pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan and the Global Settlement shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Claim or Interest or any distribution to be made on account of an Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

29

(b)      The treatment provided for hereunder to Allowed General Unsecured Claims, incorporates and reflects a proposed compromise and settlement by and among the Debtors, the Creditors' Committee, and the Consenting Creditors (the "*Global Settlement*").  The following constitutes the provisions and conditions of the Global Settlement:

(i)      On the Effective Date, and solely for purposes of distributions from the GUC Recovery Trust:  (1) all General Unsecured Claims against each of the Debtors shall be deemed merged or treated as liabilities of the GUC Recovery Trust to the extent Allowed; (2) all General Unsecured Claim guaranties by a Debtor of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any General Unsecured Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several General Unsecured Claim against any of the Debtors shall be deemed to be one obligation of the GUC Recovery Trust; (3) each and every General Unsecured Claim filed in any of the Chapter 11 Cases shall be treated as filed against the consolidated Debtors and shall be treated as one General Unsecured Claim against and obligation of the GUC Recovery Trust.  For the avoidance of doubt, for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors, Reorganized Debtors, and Wind Down Estates shall be treated as separate entities so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may not be set off against the liabilities of any of the other Debtors.  Such substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate structures of Wind Down Estates or the Reorganized Debtors.  Moreover, such substantive consolidation shall not affect any subordination provisions set forth in any agreement relating to any General Unsecured Claim or the ability of the GUC Recovery Trustee to seek to have any General Unsecured Claim subordinated in accordance with any contractual rights or equitable principles.

(ii)      On the Effective Date, the GUC Recovery Trust shall be established in accordance with Section 5.18 of the Plan and shall be governed and administered in accordance with the GUC Recovery Trust Agreement.

(iii)      On the Effective Date, the Debtors and the Estates shall transfer the GUC Recovery Trust Assets to the GUC Recovery Trust, free and clear of all Liens, charges, Claims, encumbrances, and interests for the benefit of the holders of Allowed General Unsecured Claims.  In accordance with Section 1141 of the Bankruptcy Code, all of the GUC Recovery Trust Assets, as well as the rights and powers of the Debtors' Estates applicable to the GUC Recovery Trust Assets, shall vest in the GUC Recovery Trust, for the benefit of the holders of Allowed General Unsecured Claims.

(iv)      On the Effective Date, the Debtors and their Estates waive the right to prosecute any Avoidance Actions against the Released Avoidance Parties.  Any Unreleased Avoidance Actions shall be transferred to the GUC Recovery Trust; provided that the Wind Down Estates and the Plan Administrator shall retain and may prosecute objections pursuant to section 502(d) of the Bankruptcy Code against any party that is not a Released Avoidance Party with respect to any Administrative Expense Claim, Priority Non-Tax Claim, or Secured Claim asserted by such parties.  For the avoidance of doubt, Causes of Action arising under section 542 or section 549 of the Bankruptcy Code shall remain property of the Debtors or the Wind Down Estates and are not transferred to the GUC Recovery Trust.

(v)      The GUC Recovery Trustee shall determine whether to enforce, settle, release, or compromise Unreleased Avoidance Actions (or decline to do any of the foregoing).    The Wind Down Estates, the Reorganized Debtors, and the Plan Administrator, as applicable, shall not be subject to any claims or counterclaims of the GUC Recovery Trust, including with respect to the Unreleased Avoidance Actions.

(vi)      On the Effective Date, all Prepetition Loan Deficiency Claims on account of Allowed Senior First Out Term Loan Claims, Allowed Senior Last Out Term Loan Claims, and the Holdco Loan Claims shall be waived and released and shall not participate in any distributions from the GUC Recovery Trust.

(vii)      The Creditors' Committee shall be subject to the Creditors' Committee Budget.

(viii)      On the Effective Date, the Challenge Deadline (as defined in the DIP Order) shall be deemed expired with respect to the Creditors' Committee.

(ix)      As a condition precedent to consummation of the Global Settlement, the Creditors' Committee shall not object to or take any other action that is inconsistent with or that would reasonably be expected to prevent, interfere with, delay, or impede the confirmation and consummation of the Plan or approval of the Global Settlement.

### 5.4. *Sources of Consideration for Plan Distributions.*

The Wind Down Estates shall fund distributions and satisfy applicable Allowed Claims and Allowed Interests under the Plan using Cash on hand and any Cash generated from the liquidating of the Debtors' remaining Assets.

The GUC Recovery Trust shall fund distributions and satisfy Allowed General Unsecured Claims using GUC Recovery Trust Assets.

### 5.5. *Reorganized Equity Plan Election Notice*

Unless extended by the Debtors, on August 15, 2020 (the "**Reorganized Equity Plan Election Date**"), Plan Sponsor shall deliver a notice (the "**Reorganized Equity Plan Election Notice**") to the Debtors if Plan Sponsor wishes to make the Reorganized Equity Plan Election and consummate the Reorganization Transaction.  If Plan Sponsor does not deliver a Reorganized Equity Plan Election Notice by the Reorganized Equity Plan Election Date, the Reorganization Transaction shall not be pursued.

### 5.6. *Reorganization Transaction.*

If the Reorganized Equity Plan Election is made, the Debtors shall implement the Reorganization Transaction as set forth herein.

(a)      *Authorization and Issuance of New Plan Securities*.

(i)      On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, are authorized to issue or cause to be issued and shall issue the New Common Stock in accordance with the terms of the Plan and the Amended Organizational Documents without the need for any further corporate or stockholder action.  All of the

WEIL:\97629847\2\44444.0009

New Common Stock issuable under the Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable.

(ii)    The distribution of the New Common Stock pursuant to the Plan may be made by means of book-entry registration on the books of a transfer agent for shares of New Common Stock or by means of book-entry exchange through the facilities of a transfer agent reasonably satisfactory to the Debtors, in accordance with the customary practices of such agent, as and to the extent practicable.

(b)    *Continued Corporate Existence*.

(i)    The Reorganized Debtors shall continue to exist after the Effective Date as a private company in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the Amended Organizational Documents unless otherwise determined in accordance with Section 5.9 of the Plan.  After the Effective Date, the continued existence of Wind Down Estates shall be separate from the Reorganized Debtors.

(ii)    On or after the Effective Date, the Reorganized Debtors may take such action that may be necessary or appropriate as permitted by applicable law and the Reorganized Debtors' Amended Organizational Documents, as the Reorganized Debtors may determine is reasonable and appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate the Plan.

(c)    *Vesting of Reorganized Assets.*

(i)    In accordance with Section 10.1 of the Plan, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all of the Reorganized Assets shall vest free and clear of all Claims, Liens, encumbrances, charges, and other interests in the Reorganized Debtors, and all other Assets of the Reorganized Debtors, including rights of settlement, and other Causes of Action, shall be transferred to and vest with Wind Down Co to satisfy Claims in accordance with the Plan.

(ii)    The Wind Down Co shall receive the Wind Down Co Assets, and such receipt of assets shall be exempt from any stamp or other similar tax pursuant to section 1146(a) of the Bankruptcy Code.  The Reorganized Debtors shall have no reversionary or further interest in or with respect to the Wind Down Co Assets upon the transfer of the Wind Down Co Assets.

(d)    *Officers and Board of Directors*.

(i)    Upon the Effective Date, the New Board shall consist of a director or directors to be selected by Plan Sponsor.  The identities of the director(s) and officers of the Reorganized Debtors, to the extent known, shall be disclosed prior to the Confirmation Hearing in accordance with section 1129(a)(5) of the Bankruptcy Code.

(ii)    Except to the extent that a member of the board of directors or managers, as applicable, of a Debtor continues to serve as a director or manager of such Debtor on and after the Effective Date, the members of the board of directors or managers of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director

WEIL:\97629847\2\44444.0009

or manager will be deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date.

(e)     ***Reorganized Debtors Exit Facility.***

(i)     On the Effective Date, subject to the Reorganized Equity Plan Election and in accordance with Section 2.4 of the Plan, the Reorganized Debtors shall enter into the Reorganized Debtors Exit Facility.  Confirmation of the Plan shall be deemed approval and authorization of the Reorganized Debtors to execute all transactions contemplated by the Reorganized Debtors Facility Documents, and to take all actions and undertakings and incur all obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein.

5.7.     ***Wind Down and Dissolution of the Debtors.***

(a)     On the Effective Date, the Plan Administrator shall be appointed as the Plan Administrator for each of the Debtors after the Effective Date for the purpose of conducting the Wind Down and shall succeed to such powers as would have been applicable to the Debtors' officers, directors, and equityholders, and the Debtors shall be authorized to be (and upon the conclusion of the Wind Down, shall be) dissolved by the Plan Administrator.  The Plan Administrator shall act for each of the Debtors in the same capacity and shall have the same rights and powers as are applicable to a manager, managing member, board of managers, board of directors or equivalent governing body, as applicable, and to officers, subject to the provisions hereof (and all certificates of formation and limited liability company agreements and certificates of incorporation or by-laws, or equivalent governing documents and all other related documents (including membership agreements, stockholders agreements, or similar instruments), as applicable, are deemed amended pursuant to the Plan to permit and authorize the same).  From and after the Effective Date, the Plan Administrator shall be the sole representative of and shall act for each of the Debtors and the Wind Down Estates with the authority set forth in this Section 5.7.  For the avoidance of doubt, notwithstanding anything in this paragraph or the Plan, the Plan Administrator shall not have any rights to direct dissolution of, or otherwise manage the affairs or business of, the Reorganized Debtors.

(b)     The Plan Administrator shall have the authority and right on behalf of each of the Wind Down Estates, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:  (a) implement the Wind Down as expeditiously as reasonably possible and administer the liquidation, dissolution, sale and/or abandoning or similar action of the Debtors and their Estates and any assets held by the Wind Down Estates after the Effective Date;  (b) except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors, other than with respect to General Unsecured Claims;  (c) make distributions to holders of Allowed Claims in accordance with the Plan, other than with respect to holders of Allowed General Unsecured Claims;  (d) prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Debtors (other than with respect to the Unreleased Avoidance Actions);  (e) create and fund, as necessary, any reserves required under the Plan, including for Disputed Claims and other such reserves as the Plan Administrator deems necessary and appropriate to carry out the provisions of the Plan;  (f) retain professionals to assist in performing its duties under the Plan;  (g) maintain the books, records, and accounts of the Debtors;  (h) complete and file, as necessary, all final or otherwise required federal, state, and local tax returns and other tax reports for the Debtors or Wind Down Estates;  (i) represent the interests of each Debtor, its Estates, or the Wind Down before any taxing authority in all matters including, without

limitations, any action, suit, proceeding, appeal or audit; and (j) perform other duties and functions that are consistent with the implementation of the Plan or required by the Bankruptcy Code.

(c)  Each of the Wind Down Estates (but, if the Reorganized Equity Plan Election is made, excluding the Reorganized Debtors) shall indemnify and hold harmless the Plan Administrator solely in its capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of the Plan Administrator's gross negligence, willful misconduct, or criminal conduct.

(d)  The Plan Administrator shall represent the Wind Down Estates and shall have the right to retain the services of attorneys, accountants, and other professionals that the Plan Administrator determines, in its sole discretion, are necessary to assist the Plan Administrator in performing his or her duties.  The Plan Administrator shall pay the reasonable fees and expenses of such professionals without further order of the Bankruptcy Court.  Any and all reasonable and documented costs and expenses incurred by the Plan Administrator in connection with the Wind Down shall be paid from the funds of the Wind Down Estates.  The Plan Administrator shall be compensated and reimbursed for reasonable costs and expenses as set forth in the Plan Supplement.

(e)  Subject to Section 6.3(b) of the Plan, the Debtors shall make an initial distribution on the Effective Date and thereafter, the Plan Administrator shall, in an expeditious but orderly manner, make timely distributions pursuant to the Plan and the Confirmation Order.

(f)  If the Reorganized Equity Plan Election is made, on the Effective Date, Wind Down Co shall be formed.  Unless the Wind Down Co is formed as a trust in accordance with Section 5.7(g), one new equity interest (the "**Single Share**") in the Wind Down Co shall be issued to the Plan Administrator, which shall hold such equity interest in trust as custodian for the benefit of all Holders of Allowed Claims of Wind Down Co.  The Single Share shall be recorded on the books and records maintained by the Plan Administrator.

(g)  If the Reorganized Equity Plan Election is made, and in the event that Wind Down Co is formed as a trust, it will be structured and intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684 and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code to the Holders of Allowed Claims receiving interests in Wind Down Co, consistent with the terms of the Plan.  In such event, the Wind Down Co will be governed by provisions substantially similar to those set forth with respect to the GUC Recovery Trust in Section 5.17 of the Plan, with the Plan Administrator acting as the trustee.

(h)  The Plan Administrator shall effectuate the Wind Down in accordance with the Wind Down Budget.

(i)  The Plan Administrator shall be authorized to file on behalf of the Debtors and any non-Debtor subsidiaries (but, if the Reorganized Equity Plan Election is made, not the Reorganized Debtors), certificates of dissolution and any and all other corporate and company documents necessary to effectuate the Wind Down without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, the board of directors, or board of directors or similar governing body of the Debtors.

(j)  The PACA/PASA Order will continue in effect after the Effective Date and the Wind Down Estates must continue to comply therewith.

WEIL:\97629847\2\44444.0009

(k)      All directors and officers of the dissolved Debtors shall be deemed to have resigned in their capacity as of the Effective Date.

5.8.    ***Employee Matters.***

(a)      The KEIP Incentive Awards and KERP Payments, if applicable, shall be paid in Cash as Allowed Administrative Expense Claims.  Distributions of the KEIP Incentive Awards shall be deemed to be distributions made to holders of Allowed Senior First Out Term Loan Claims in accordance with Section 4.3 of the Plan and the KEIP/KERP Order.  The Debtors shall assume and honor all KEIP Agreements and honor all KERP Agreements.

5.9.    ***Effectuating Documents; Further Transactions.***

(a)      On or as soon as practicable after the Effective Date, the Reorganized Debtors, Wind Down Estates, or the Plan Administrator, or the GUC Recovery Trust, or GUC Recovery Trustee, as applicable, may take such actions as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Global Settlement, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, transition services, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may determine; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution and the Amended Organizational Documents pursuant to applicable state law; (iv) the issuance of securities, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order, or rule; (v) the execution, delivery, or filing of contracts, instruments, releases, and other agreements to effectuate and implement the distribution of the GUC Recovery Trust Interests and the New Common Stock (if applicable) to be issued pursuant hereto without the need for any approvals, authorizations, actions, or consents; and (vi) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law or to reincorporate in another jurisdiction.

(b)      Each officer, manager, or member of the board of directors of the Debtors is (and each officer, manager, or member of the board of directors of the Reorganized Debtors, Wind Down Estates, and the Plan Administrator, as applicable, shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors or Wind Down Estates, as applicable, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including, without limitation, any action by the stockholders or directors or managers of the Debtors, the Reorganized Debtors, or the Wind Down Estates) except for those expressly required pursuant to the Plan.

(c)      The Debtors shall be authorized to implement the Plan, including the Global Settlement, the creation of the GUC Recovery Trust, and, if the Reorganized Equity Plan Election is made, the Reorganization Transaction, in the manner most tax efficient to the Reorganized Debtors or Wind Down Estates, as determined by the Debtors in their business judgment, given the totality of the circumstances.

(d)      All matters provided for herein involving the corporate structure of the Debtors, Reorganized Debtors, or Wind Down Estates, to the extent applicable, or any corporate or related action required by the Debtors, Reorganized Debtors, or Wind Down Estates in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, or directors or managers of the Debtors, Reorganized Debtors, or Wind Down Estates, and with like effect as though such action had been taken unanimously by the stockholders, members, directors, managers, or officers, as applicable, of the Debtors, Reorganized Debtors, or Wind Down Estates.

5.10.    ***Securities Law Exemptions.***

(a)      If the Reorganized Equity Plan Election is made, the offer, issuance, and distribution of the New Common Stock to Plan Sponsor pursuant to Section 4.3 of this Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code without further act or action by any Entity, from registration under (i) the Securities Act, and all rules and regulations promulgated thereunder and (ii) any state or local law requiring registration for the offer, issuance, or distribution of securities.  However, because Plan Sponsor will be deemed an "underwriter" (as defined in section 1145(b) of the Bankruptcy Code) with respect to such securities, Plan Sponsor may not resell the securities without registration, or an available resale exemption, under the Securities Act or other federal, state or local securities laws.

5.11.    ***Cancellation of Existing Securities and Agreements.***

(a)      Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts or unexpired leases that shall be assumed by the Wind Down Estates or the Reorganized Debtors, on the Effective Date, all agreements, instruments, and other documents evidencing or issued pursuant to the Prepetition Credit Agreement, or any indebtedness or other obligations thereunder, and any Interest, and any rights of any holder in respect thereof, shall be deemed cancelled, discharged, and of no force or effect, and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.

(b)      On the Effective Date, all commercial paper shall be cancelled and discharged and of no further force and effect, except that, notwithstanding such cancellation and discharge, the Prepetition Credit Documents shall continue in effect solely to the extent necessary to (i) allow the holders of such Claims to receive distributions under the Plan; (ii) allow the Debtors, the Wind Down Estates, the Plan Administer, and the Prepetition Agent, to make post-Effective Date distributions or take such other action pursuant to the Plan on account of such Claims and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims; (iii) allow holders of Claims to retain their respective rights and obligations vis-à-vis other holders of Claims pursuant to any applicable loan documents; (iv) allow the Prepetition Agent to enforce its rights, claims, and interests vis-à-vis any party other than the Debtors, including any rights with respect to priority of payment and/or to exercise charging liens; (v) preserve any rights of the Prepetition Agent to payment of fees, expenses, and indemnification obligations as against any money or property distributable to lenders under the Prepetition Credit Agreement including any rights to priority of payment and/or to exercise charging liens; (vi) allow the Prepetition Agent to enforce any obligations owed to it under the Plan; (vii) allow the Prepetition Agent to exercise rights and obligations relating to the interests of lenders under the Prepetition Credit Agreement; (viii) permit the Prepetition Agent to perform any function necessary to effectuate the foregoing; and (ix) allow the Prepetition Agent to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court relating to the Prepetition Credit Agreement; provided, that nothing in this Section 5.11 shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan; provided however, that notwithstanding anything to the contrary herein, the expense reimbursement

WEIL:\97629847\2\44444.0009

and indemnity obligations of the Debtors under the Prepetition Credit Agreement shall survive the termination thereof and shall not be discharged or released pursuant to the Plan or the Confirmation Order.

(c)     Except for the foregoing, subsequent to the performance by the Prepetition Agent of its obligations pursuant to the Plan, the Prepetition Agent and its agents shall be relieved of all further duties and responsibilities related to the Prepetition Credit Agreement.

(d)     Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in the Plan shall be deemed null and void and shall be of no force and effect. Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any executory contract or lease to the extent such executory contract or lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court or hereunder.

5.12.   *Cancellation of Liens.*

Except as otherwise specifically provided herein, upon the payment in full in Cash of a Secured Claim, any Lien securing a Secured Claim that is paid in full, in Cash, shall be deemed released, and the holder of such Other Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Debtors or Plan Administrator, as applicable, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Debtors or Plan Administrator, as applicable.

5.13.   *Subordination Agreements.*

Pursuant to section 510(a) of the Bankruptcy Code, all subordination agreements governing Claims or Interests shall be enforced in accordance with such agreements' terms.

5.14.   *Nonconsensual Confirmation.*

The Debtors intend to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code as to any Classes that reject or are deemed to reject the Plan.

5.15.   *Closing of Chapter 11 Cases.*

After an Estate has been fully administered, the Wind Down Estates or the Plan Administrator shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) in accordance with the Bankruptcy Code and Bankruptcy Rules.

5.16.   *Notice of Effective Date.*

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

5.17.   *Separability.*

Notwithstanding the combination of the separate plans for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor.

WEIL:\97629847\2\44444.0009

Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more Debtors, it may still, subject to the consent of the applicable Debtors, confirm the Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

5.18.    ***GUC Recovery Trust.***

(a)    *Creation and Governance of the GUC Recovery Trust*.  On the Effective Date, the Debtors shall transfer the GUC Recovery Trust Assets to the GUC Recovery Trust and the Debtors and the GUC Recovery Trustee shall execute the GUC Recovery Trust Agreement and shall take all steps necessary to establish the GUC Recovery Trust in accordance with the Plan and the beneficial interests therein.  In the event of any conflict between the terms of the Plan and the terms of the GUC Recovery Trust Agreement, the terms of the Plan shall govern.  Additionally, on the Effective Date, the Debtors shall transfer and shall be deemed to transfer to the GUC Recovery Trust all of their rights, title and interest in and to all of the GUC Recovery Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the GUC Recovery Trust Assets shall automatically vest in the GUC Recovery Trust free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax.  The GUC Recovery Trustee shall be the exclusive administrator of the assets of the GUC Recovery Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the GUC Recovery Trustee's duties under the GUC Recovery Trust Agreement.  The GUC Recovery Trust shall be governed by the GUC Recovery Trust Agreement and administered by the GUC Recovery Trustee.  The powers, rights, and responsibilities of the GUC Recovery Trustee shall be specified in the GUC Recovery Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this Section 5.18.  The GUC Recovery Trustee shall hold and distribute the GUC Recovery Trust Assets in accordance with the provisions of the Plan and the GUC Recovery Trust Agreement.  Other rights and duties of the GUC Recovery Trustee shall be as set forth in the GUC Recovery Trust Agreement.  After the Effective Date, the Debtors, the Wind Down Estates, and the Reorganized Debtors shall have no interest in the GUC Recovery Trust Assets except as set forth in the GUC Recovery Trust Agreement.

(b)    *GUC Recovery Trustee and GUC Recovery Trust Agreement*.  The GUC Recovery Trust Agreement generally will provide for, among other things:  (i) the transfer of the GUC Recovery Trust Assets to the GUC Recovery Trust; (ii) the payment of certain reasonable expenses of the GUC Recovery Trust from the GUC Recovery Trust Assets; and (iii) distributions to holders of Allowed General Unsecured Claims, as provided herein and in the GUC Recovery Trust Agreement.  The GUC Recovery Trust Agreement may include reasonable and customary provisions that allow for indemnification by the GUC Recovery Trust.  Any such indemnification shall be the sole responsibility of the GUC Recovery Trust and payable solely from the GUC Recovery Trust Assets.  The GUC Recovery Trustee shall be responsible for all decisions and duties with respect to the GUC Recovery Trust and the GUC Recovery Trust Assets, except as otherwise provided in the GUC Recovery Trust Agreement.

(c)    *Cooperation of Wind Down Estates*.  Subject to subsection (d) of this Section 5.18, the Debtors, Wind Down Estates, or Plan Administrator, as applicable, upon reasonable notice, shall reasonably cooperate with the GUC Recovery Trustee in the administration of the GUC Recovery Trust, including by providing reasonable access to pertinent documents, including books and records, to the extent the Debtors, Wind Down Estates, or Plan Administrator, as applicable, have such information and/or documents, to the GUC Recovery Trustee sufficient to enable the GUC Recovery Trustee to perform its duties hereunder.  The Debtors, Wind Down Estates, and the Plan Administrator shall reasonably cooperate with the GUC Recovery Trustee in the administration of the GUC Recovery Trust, including, by providing reasonable access to documents and current officers and directors with respect to contesting, settling, compromising, reconciling, and objecting to General Unsecured Claims, provided that, in each case, the

WEIL:\97629847\2\44444.0009

GUC Recovery Trust agrees upon request to reimburse reasonable out-of-pocket expenses for preservation of documents, copying or similar expenses. The collection, review, and preservation of documents for any investigation or litigation by the GUC Recovery Trustee shall be at the expense of the GUC Recovery Trust.

(d)     *Preservation of Privilege*.  The Debtors or Wind Down Estates, as applicable, and the GUC Recovery Trust shall enter into a common interest agreement whereby the Debtors will be able to share documents, information or communications (whether written or oral) relating to the GUC Recovery Trust Assets. The GUC Recovery Trust shall seek to preserve and protect all applicable privileges attaching to any such documents, information, or communications.  The GUC Recovery Trustee's receipt of such documents, information or communications shall not constitute a waiver of any privilege.  All privileges shall remain in the control of the Debtors, Wind Down Estates or Plan Administrator, as applicable, and the Debtors, Wind Down Estates or Plan Administrator, as applicable, retain the right to waive their own privileges.

(e)     *GUC Recovery Trust Assets*.  From and after the Effective Date, the GUC Recovery Trustee, in accordance with section 1123(b)(3) of the Bankruptcy Code, and on behalf of the GUC Recovery Trust, shall serve as a representative of the Estates, solely for purposes of carrying out the GUC Recovery Trustee's duties under the GUC Recovery Trust Agreement.

(f)     *GUC Recovery Trust Fees and Expenses*.  From and after the Effective Date, the GUC Recovery Trustee, on behalf of the GUC Recovery Trust, shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the GUC Recovery Trust Fees and Expenses from the GUC Recovery Trust Assets.  The GUC Recovery Trustee is authorized to allocate such expenses (including, without limitation, any taxes imposed on or payable by the GUC Recovery Trust or in respect of the GUC Recovery Trust Assets and professional fees) to, and pay them from, the GUC Recovery Trust Assets, as the GUC Recovery Trustee may determine in good faith is fair (such as based upon the GUC Recovery Trustee's good faith determination of the nature or purpose of the fee or expense, the relative amount of General Unsecured Claims, the relative estimated value of the GUC Recovery Trust Assets or such other matters as the GUC Recovery Trustee deems relevant); provided that the GUC Recovery Trustee (i) shall reasonably attribute the expenses (including, without limitation, any taxes imposed on or payable by the GUC Recovery Trust or in respect of the GUC Recovery Trust Assets and professional fees) of the liquidation, defense or resolution of General Unsecured Claims to the GUC Recovery Trust Assets and pay them therefrom, and (ii) shall reasonably attribute the expenses (including, without limitation, any taxes imposed on or payable by the GUC Recovery Trust or in respect of the GUC Recovery Trust Assets and professional fees) of calculating, disseminating and administering distributions (*e.g.*, accounting and mailing costs) on General Unsecured Claims to the GUC Recovery Trust Assets and pay them therefrom.  The Reorganized Debtors and the Wind Down Estates shall not be responsible for any costs, fees, or expenses of the GUC Recovery Trust.

(g)     *Tax Treatment*.  In furtherance of this Section 5.18 of the Plan, (i) the GUC Recovery Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code to the holders of General Unsecured Claims, consistent with the terms of the Plan; (ii) the sole purpose of the GUC Recovery Trust shall be the liquidation and distribution of the GUC Recovery Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of General Unsecured Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (iii) all parties (including, without limitation, the Debtors, the Estates, holders of Allowed General Unsecured Claims receiving interests in the GUC Recovery Trust, and the GUC Recovery Trustee) shall report consistently with such treatment; (iv) all parties (including, without limitation, the Debtors, the Estates, holders of Allowed General Unsecured Claims receiving interests in the GUC Recovery Trust, and

39

the GUC Recovery Trustee) shall report consistently with the valuation of the GUC Recovery Trust Assets transferred to the GUC Recovery Trust as determined by the GUC Recovery Trustee (or its designee); (v) the GUC Recovery Trustee shall be responsible for filing all applicable tax returns for the GUC Recovery Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); and (vi) the GUC Recovery Trustee shall annually send to each holder of an interest in the GUC Recovery Trust a separate statement regarding the receipts and expenditures of the trust as relevant for U.S. federal income tax purposes. Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the GUC Recovery Trustee of a private letter ruling if the GUC Recovery Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the GUC Recovery Trustee), the GUC Recovery Trustee may timely elect to (i) treat any portion of the GUC Recovery Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including, without limitation, the Debtors, the Estates, holders of Allowed General Unsecured Claims receiving interests in the GUC Recovery Trust, and the GUC Recovery Trustee) shall report for United States federal, state, and local income tax purposes consistently with the foregoing. The GUC Recovery Trustee may request an expedited determination of taxes of the GUC Recovery Trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the GUC Recovery Trust for all taxable periods through the dissolution of the GUC Recovery Trust.

(h)    *Non-Transferability of GUC Recovery Trust Interests*.  Any and all GUC Recovery Trust Interests shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law.  In addition, any and all GUC Recovery Trust Interests will not constitute "securities" and will not be registered pursuant to the Securities Act or any applicable state or local securities law. However, if it should be determined that any such interests constitute "securities," the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied and the offer, issuance and distribution under the Plan of the GUC Recovery Trust Interests will be exempt from registration under the Securities Act and all applicable state and local securities laws and regulations.

(i)    *Dissolution of the GUC Recovery Trust*.  The GUC Recovery Trustee and the GUC Recovery Trust shall be discharged or dissolved, as the case may be, at such time as all distributions required to be made by the GUC Recovery Trustee under the Plan have been made.  Upon dissolution of the GUC Recovery Trust, any remaining GUC Recovery Trust Assets shall be distributed to holders of Allowed General Unsecured Claims in accordance with the Plan and the GUC Recovery Trust Agreement, as appropriate.

(j)    *Single Satisfaction of Allowed General Unsecured Claims*.  Notwithstanding anything to the contrary herein, in no event shall holders of Allowed General Unsecured Claims recover more than the full amount of their Allowed General Unsecured Claims from the GUC Recovery Trust.

## ARTICLE VI  DISTRIBUTIONS.

6.1.    **Distributions Generally.**

The Disbursing Agents shall make all distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

6.2.    *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed for purposes of determining whether a holder of such a Claim or Interest is a record holder entitled to distributions under the Plan, and there shall be no further changes in the record holders or the permitted designees of any such Claims or Interests.  The Debtors, Wind Down Estates, the Plan Administrator, or the GUC Recovery Trustee, as applicable, shall have no obligation to recognize any transfer or designation of such Claims or Interests occurring after the close of business on the Distribution Record Date.  Any such assigning Prepetition Lender shall immediately turn over any such assigned distributed funds to any such assignee Prepetition Lender immediately upon receipt from the Disbursing Agent and otherwise in accordance with such written agreement.  In addition, with respect to payment of any Cure Amounts or assumption disputes, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.  For the avoidance of doubt, all distributions made pursuant to the Plan on account of the Prepetition Loan Claims shall be made by the Disbursing Agent to, or at the direction of, the Prepetition Agent, for further distribution to holders of Prepetition Loan Claims, in accordance with the Plan and the Confirmation Order, subject to and in accordance with the terms of the Prepetition Credit Agreement, including, without limitation, subject to the application of the charging lien of the Prepetition Agent for payment of any unpaid fees and expenses.

6.3.    *Date of Distributions.*

(a)    Except as otherwise provided in the Plan or in the GUC Recovery Trust Agreement, any distributions and deliveries to be made under the Plan shall be made on the Effective Date, as and when Claims are Allowed in the sole discretion of the Plan Administrator or GUC Recovery Trustee, or as otherwise determined in accordance with the Plan, including, without limitation, the treatment provisions of Article IV of the Plan, or as soon as practicable thereafter; provided, that the Wind Down Estates, the Plan Administrator, or the GUC Recovery Trustee, as applicable, shall from time to time announce subsequent distribution dates to the extent they determine them to be appropriate.

(b)    The Plan Administrator shall reserve an amount sufficient to pay holders of Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Non-Priority Tax Claims, and Disputed Other Secured Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims.  After the resolution of Disputed Claims, the Plan Administrator shall treat any amounts that were reserved for such Disputed Claims that do not become Allowed Claims as Net Cash Proceeds.

6.4.    *Disbursing Agent.*

All distributions under this Plan shall be made by the Disbursing Agent on and after the Effective Date as provided herein.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  The Wind Down Estates or Plan Administrator shall use all commercially reasonable efforts to provide the Disbursing Agent (if other than the Plan Administrator) with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the Debtors', or Wind Down Estates', as applicable, books and records.  The Wind Down Estates or Plan Administrator shall cooperate in good faith with the applicable Disbursing Agent (if other than the Plan Administrator) to comply with the reporting and withholding requirements outlined in Section 6.19 of the Plan.

41

6.5.    ***Rights and Powers of Disbursing Agent.***

(a)    From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, holders of Claims against and Interests in the Debtors and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.  No holder of a Claim or Interest or other party in interest shall have or pursue any claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making distributions in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.

(b)    The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (ii) make all distributions contemplated hereby; and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

6.6.    ***Expenses of Disbursing Agent.***

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the Disbursing Agent acting in such capacity (including reasonable documented attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash; provided, that the fees and expenses incurred by the GUC Recovery Trustee shall be paid solely from the GUC Recovery Trust Assets in accordance with the GUC Recovery Trust Agreement.

6.7.    ***No Postpetition Interest on Claims.***

Except as otherwise provided in the Plan, the Confirmation Order, the DIP Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code (including postpetition interest in accordance with sections 506(b) and 726(a)(5) of the Bankruptcy Code), interest shall not accrue or be paid on any Claims on or after the Commencement Date; provided, that if interest is payable pursuant to the preceding sentence, interest shall accrue at the federal judgment rate pursuant to 28 U.S.C. § 1961 on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid through the date of payment.

6.8.    ***Delivery of Distributions.***

(a)    Subject to Bankruptcy Rule 9010, all distributions to any holder or permitted designee, as applicable, of an Allowed Claim or Interest shall be made to a Disbursing Agent, who shall transmit such distribution to the applicable holders or permitted designees of Allowed Claims or Interests on behalf of the Debtors.  In the event that any distribution to any holder or permitted designee is returned as undeliverable, no further distributions shall be made to such holder or such permitted designee unless and until such Disbursing Agent is notified in writing of such holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest.  Nothing herein shall require the Disbursing Agent to attempt to locate holders or permitted designees, as applicable, of undeliverable

WEIL:\97629847\2\44444.0009

distributions and, if located, assist such holders or permitted designees, as applicable, in complying with Section 6.14 of the Plan.

(b)    Notwithstanding the foregoing, all distributions of Cash on account of Prepetition Loan Claims, if any, shall be deposited with the Prepetition Agent for distribution to holders of Prepetition Loan Claims in accordance with the terms of the Prepetition Credit Agreement. All distributions other than of Cash on account of Prepetition Loan Claims, if any, may, with the consent of the Prepetition Agent, be made by the Disbursing Agent directly to holders of Prepetition Loan Claims in accordance with the terms of the Plan and the Prepetition Credit Agreement. To the extent the Prepetition Agent effectuates, or is requested to effectuate, any distributions hereunder, the Prepetition Agent shall be deemed a "Disbursing Agent" for purposes of the Plan.

(c)    As soon as reasonably practicable after the Confirmation Order is entered, the DIP Agent shall provide to counsel to the Debtors a list of all holders of DIP Claims as of such date and such additional information as may be reasonably requested by counsel to the Debtors or the Disbursing Agent to make distributions under the Plan. All distributions to holders of DIP Claims shall be governed by the DIP Documents and the DIP Order and shall be made to each holder of an Allowed DIP Claim or such holder's authorized designee for purposes of distributions to be made hereunder. All reasonable and documented fees and expenses of the DIP Agent incurred after the Effective Date as part of this Section 6.8 shall be paid by the Debtors or Wind Down Estates, as applicable.

6.9.    ***Distributions after Effective Date.***

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.10.    ***Unclaimed Property.***

Undeliverable distributions shall remain in the possession of the Debtors, Wind Down Estates, or GUC Recovery Trust, as applicable, until such time as a distribution becomes deliverable or holder accepts distribution, or such distribution reverts back to the Debtors, Wind Down Estates, or GUC Recovery Trust, as applicable, and shall not be supplemented with any interest, dividends, or other accruals of any kind. Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of one hundred and twenty (120) days from the applicable date of distribution. After such date, all unclaimed property or interest in property shall revert to and vest in Wind Down Estates, or GUC Recovery Trust, as applicable, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

6.11.    ***Time Bar to Cash Payments.***

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall immediately and irrevocably revert to the Wind Down Estates (or GUC Recovery Trust in the case of checks issued by the GUC Recovery Trust), and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Requests for re-issuance of any check prior to the expiration of the one hundred and twenty (120) day period from the date of issuance shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.

6.12.    *Manner of Payment under Plan.*

Except as otherwise specifically provided in the Plan, at the option of the Debtors, Wind Down Estates, the Plan Administrator, or the GUC Recovery Trustee, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

6.13.    *Satisfaction of Claims.*

Except as otherwise specifically provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

6.14.    *Minimum Cash Distributions.*

The Disbursing Agent shall not be required to make any distribution of Cash less than One Hundred Dollars ($100) to any holder of an Allowed Claim; provided, that if any distribution is not made pursuant to this Section 6.14, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

6.15.    *Setoffs and Recoupments.*

The Debtors, or Wind Down Estates, as applicable, or such entity's designee (including, without limitation, the Disbursing Agent) may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors or Wind Down Estates may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law (other than the released Causes of Action in favor of the Released Parties); <u>provided</u>, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or Wind Down Estate, or its successor of any claims, rights, or Causes of Action that a Debtor or Wind Down Estate, or its successor or assign may possess against the holder of such Claim (other than the released Causes of Action in favor of the Released Parties).

6.16.    *Allocation of Distributions between Principal and Interest.*

Except as otherwise required by law (as reasonably determined by Wind Down Estates or Plan Administrator, as applicable), distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

6.17.    *No Distribution in Excess of Amount of Allowed Claim.*

Except as provided in Section 6.7 of the Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

6.18.    *Distributions Free and Clear.*

Except as provided herein, any distributions under the Plan shall be free and clear of and Liens, Claims, and encumbrances, and no other entity, including the Debtors or the Plan Administrator, shall have any interest, legal, beneficial, or otherwise, in Assets transferred pursuant to the Plan.

44

6.19.    *Withholding and Reporting Requirements.*

(a)    *Withholding Rights.*  In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  The Prepetition Agent, Plan Administrator, DIP Agent, GUC Recovery Trustee, Wind Down Estates, Reorganized Debtors, or such other Entity designated thereby, as applicable, shall be authorized to take any actions that they determine, in their reasonable discretion, to be necessary or appropriate to comply with such withholding and reporting requirements, including withholding distributions pending receipt of information necessary to facilitate such issuances or distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  In the case of a non-Cash distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)    *Forms.*  Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Entity designated by the Reorganized Debtors, Wind Down Estates, or GUC Recovery Trustee (which Entity shall subsequently deliver to the Disbursing Agent any applicable Internal Revenue Service Form W-8 or Form W-9 or other tax information received) an appropriate Internal Revenue Service Form W-9 or (if the payee is a foreign Entity) Form W-8, and any other reasonably requested tax information.  If such request is made by the Reorganized Debtors, Wind Down Estates, Disbursing Agent, or such other Entity designated by the Reorganized Debtors, Wind Down Estates, or Disbursing Agent and the holder fails to comply before the earlier of (i) the date that is one hundred and eighty (180) days after the request is made and (ii) the date that is one hundred and eighty (180) days after the date of distribution, the amount of any such distribution shall irrevocably revert to the Wind Down Estates, and any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Reorganized Debtors, Wind Down Estates, or such entity's respective property.  If such request is made by the GUC Recovery Trustee, or such other Entity designated by the GUC Recovery Trustee, and the holder fails to comply within ninety (90) days after the request is made, the amount of any such distribution shall irrevocably revert to the GUC Recovery Trust and any General Unsecured Claim in respect of such distribution shall be discharged and forever barred from assertion against the GUC Recovery Trustee, GUC Recovery Trust, or the property of each of them.

## ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS.

7.1.    *Objections to Claims.*

The Debtors, Wind Down Estates, Plan Administrator, or the GUC Recovery Trustee, as applicable, shall exclusively be entitled to object to Claims.  After the Effective Date, the Wind Down Estates, Plan Administrator, or GUC Recovery Trustee, as applicable, shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim to which they may object, except with

respect to any Claim that is Allowed. Any objections to proofs of Claim shall be served and filed on or before the later of (a) ninety (90) days after the Effective Date, and (b) on such later date as ordered by the Bankruptcy Court for cause. The expiration of such period shall not limit or affect the Debtors', Wind Down Estates', Plan Administrators', or GUC Recovery Trustee's, as applicable, rights to dispute Claims asserted in the ordinary course of business other than through a proof of Claim.

7.2. **Resolution of Disputed Administrative Expenses and Disputed Claims.**

On and after the Effective Date, (a) the Debtors, Wind Down Estates, or the Plan Administrator, as applicable, shall have the exclusive authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims (other than General Unsecured Claims) without approval of the Bankruptcy Court, other than with respect to Fee Claims; and (b) upon the creation of the GUC Recovery Trust, the GUC Recovery Trustee shall have the exclusive authority to compromise, settle, otherwise resolve, or withdraw any objections to General Unsecured Claims without approval of the Bankruptcy Court. The Debtors, Wind Down Estates, or Plan Administrator, as applicable, and the GUC Recovery Trustee shall cooperate with respect to any objections to Claims that seek to convert Claims into General Unsecured Claims, or convert General Unsecured Claims into other senior Claims, and, in each case, the rights and defenses of the Debtors, Wind Down Estates, Plan Administrator, or the GUC Recovery Trustee, as applicable, to any such objections are fully preserved.

7.3. **Payments and Distributions with Respect to Disputed Claims.**

Notwithstanding anything herein to the contrary, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.4. **Distributions after Allowance.**

After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder thereof shall be entitled to distributions, if any, to which such holder is then entitled as provided in this Plan, without interest, as provided in Section 7.9 of the Plan. Such distributions shall be made in accordance with Section 6.3 of the Plan.

7.5. **Disallowance of Claims.**

All proofs of Claim filed on account of an indemnification obligation to a current or former director, officer, or employee shall be deemed satisfied and expunged from the claims register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

7.6. **Estimation of Claims.**

The Debtors, Wind Down Estates, Plan Administrator, or the GUC Recovery Trustee as to General Unsecured Claims may (a) determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Claims in the Bankruptcy Court and (b) at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the

WEIL:\97629847\2\44444.0009

Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors, Wind Down Estates, the Plan Administrator, or the GUC Recovery Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim; provided, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

7.7.    *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

7.8.    *Claim Resolution Procedures Cumulative.*

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

7.9.    *Interest.*

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest that accrued thereon from and after the Effective Date, except as provided in Section 6.7 of the Plan.

7.10.    *Insured Claims.*

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies.  To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Court.

## ARTICLE VIII            EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

8.1.    *General Treatment.*

(a)    As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; (iv) is identified in Section 8.4 of the Plan; (v) is a KEIP Agreement or a KERP Agreement; or (vi) is identified for assumption on the Assumption Schedule included in the Plan Supplement.

(b)    Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Reorganized Debtors or Wind Down Estates, as applicable,

WEIL:\97629847\2\44444.0009

have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases. Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Reorganized Debtors, or Wind Down Estates, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

8.2.    ***Determination of Assumption Disputes and Deemed Consent.***

(a)    Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree. The Debtors or Wind Down Estates, as applicable, shall satisfy all Cure Amounts with the Sale Transaction proceeds.

(b)    The Debtors shall file, as part of the Plan Supplement, the Assumption Schedule. At least ten (10) days before the deadline to object to confirmation of the Plan, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any). **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.** Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or any Wind Down Estate, under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or Wind Down Estates, as applicable. Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in this Section 8.2(b), shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

(c)    If there is an Assumption Dispute pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective, provided, that the Debtors or Wind Down Estates, as applicable, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)    To the extent an Assumption Dispute relates solely to the Cure Amount, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of the Assumption Dispute; provided, that the Debtors or Wind Down Estates reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the non-Debtor party to such executory contract or unexpired lease (or such smaller amount as may be fixed or

estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the applicable Wind Down Estate).

(e)       Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease. Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired lease.

8.3.    *Rejection Damages Claims.*

**In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified and treated in Class 6 (General Unsecured Claims). Such Claim shall be forever barred and shall not be enforceable against the Debtors, Reorganized Debtors, Wind Down Estates, the GUC Recovery Trust, or their respective Estates, properties or interests in property as agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors or Wind Down Estates, as applicable, by the later of (i) thirty (30) days after the filing and service of the notice of the occurrence of the Effective Date; and (ii) thirty (30) days after entry of an Order rejecting such contract or lease if such contract or lease is the subject of a pending Assumption Dispute.**

8.4.    *Insurance Policies.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice, or claim objection, and any other document related to any of the foregoing, and any other order of the Bankruptcy Court: on the Effective Date (i) all insurance policies issued or providing coverage to the Debtors shall (subject to the applicable insurer's right to object to such a designation) be assumed in their entirety by the Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code, and coverage for defense costs and indemnification under the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in the D&O Liability Insurance Policies, and Wind Down Estates, or Plan Administrator, as applicable, shall remain liable in full for any and all now existing or hereinafter arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under such insurance policies, without the need or requirement for an insurer to file a proof of Claim, Administrative Expense Claim or objection to any cure amount; (ii) nothing shall alter or modify the terms and conditions of and/or any rights, obligations, benefits, claims, rights to payments, or recoveries under the insurance policies without the express written consent of the applicable insurer; and (iii) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (a) claimants with valid workers' compensation claims or direct action claims against an insurer under applicable nonbankruptcy law to proceed with their claims; (b) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (I) workers' compensation claims, (II) claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (III) all costs in relation to each of the foregoing; and (c) the insurers to cancel any insurance policies, and take other actions relating thereto, to the extent

permissible under applicable non-bankruptcy law, and in accordance with the terms of the insurance policies.

    8.5.    ***Intellectual Property Licenses and Agreements.***

        Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, all intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Debtors, Wind Down Estates, and Reorganized Debtors, as applicable and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtors in accordance with Section 8.1 of the Plan.  Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in Wind Down Estates and Reorganized Debtors, as applicable, and Wind Down Estates and Reorganized Debtors, as applicable, may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

    8.6.    ***Tax Agreements.***

        Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, any tax sharing agreements to which the Debtors are a party (of which the principal purpose is the allocation of taxes) in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and, to the extent the Debtors determine (in their sole discretion) such agreements are beneficial to the Debtors, shall be assumed by the Debtors, Wind Down Estates, and Reorganized Debtors, as applicable and shall continue in full force and effect thereafter in accordance with their respective terms, unless any such tax sharing agreement (of which the principal purpose is the allocation of taxes) otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtors in accordance with Section 8.1 of the Plan.  Unless otherwise noted hereunder, all other tax sharing agreements to which the Debtors are a party (of which the principal purpose is the allocation of taxes) shall vest in Wind Down Estates or Reorganized Debtors, as applicable, and Wind Down Estates and Reorganized Debtors, as applicable, may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

    8.7.    ***Assignment.***

        To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect with respect to any assignment pursuant to the Plan.

WEIL:\97629847\2\44444.0009

8.8.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

8.9.    *Reservation of Rights.*

(a)    The Debtors may amend the Assumption Schedule and any cure notice until the Business Day immediately prior to the commencement of the Confirmation Hearing in order to (i) add, delete, or reclassify any executory contract or unexpired lease or amend a proposed assumption or assumption and assignment and/or (ii) amend the proposed Cure Amount; provided, that if the Confirmation Hearing is adjourned for a period of more than two (2) consecutive calendar days, the Debtors' right to amend such schedules and notices shall be extended to the Business Day immediately prior to the adjourned date of the Confirmation Hearing, with such extension applying in the case of any and all subsequent adjournments of the Confirmation Hearing.  The Debtors shall provide notice of such amendment to any affected counterparty as soon as reasonably practicable.

(b)    Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an executory contract or unexpired lease or that the Debtors, or Wind Down Estates, or their respective affiliates have any liability thereunder.

(c)    Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors and Wind Down Estates, under any executory or non-executory contract or any unexpired or expired lease.

(d)    Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, Wind Down Estates, as applicable, under any executory or non-executory contract or any unexpired or expired lease.

## ARTICLE IX  CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE.

9.1.    *Conditions Precedent to Confirmation of Plan.*

The following are conditions precedent to confirmation of the Plan:

(a)    the Disclosure Statement Order shall have been entered;

(b)    the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed;

(c)    the RSA shall not have been terminated and shall be in full force and effect; and

(d)    to the extent the DIP Obligations have not been fully satisfied prior to the Confirmation Date, the DIP Order and the DIP Documents shall be in full force and effect in accordance

51

with the terms thereof, and no event of default shall be continuing thereunder or occur as a result of entry of the Confirmation Order.

9.2.    ***Conditions Precedent to Effective Date.***

(a)    The following are conditions precedent to the Effective Date of the Plan:

(i)    the Confirmation Order shall have been entered and shall be in full force and effect and no stay thereof shall be in effect;

(ii)    to the extent the DIP Obligations have not been fully satisfied prior to the Confirmation Date, an event of default under the DIP Documents shall not be continuing and an acceleration of the obligations or termination of the DIP Lenders' commitments under the DIP Facility shall not have occurred;

(iii)    the GUC Recovery Trust Agreement shall have been executed and the GUC Recovery Trust shall have received cash in the aggregate amount of $1,650,000 on account of the GUC Recovery Trust Assets;

(iv)    all actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and binding on all parties thereto and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

(v)    all governmental approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

(vi)    the RSA shall not have been terminated and shall be in full force and effect; and

(vii)    all accrued and unpaid Restructuring Expenses shall have been paid in Cash, to the extent invoiced at least two (2) business days prior to the Effective Date.

(b)    Notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously upon the completion of the applicable conditions precedent to the Effective Date; provided, that to the extent a condition precedent (a "***Prerequisite Condition***") may be required to occur prior to another condition precedent (a "***Subsequent Condition***") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to a Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

9.3.    ***Waiver of Conditions Precedent.***

(a)    Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action. Each of the conditions precedent in Section 9.1 and Section 9.2 of the Plan may be waived in writing by the Debtors with the

WEIL:\97629847\2\44444.0009

reasonable consent of (i) the Requisite Consenting Creditors; and (ii) solely with respect to the condition set forth in Sections 9.1(d) and 9.2(a)(ii) of the Plan, the DIP Agent (to the extent any DIP Claims are outstanding on the Effective Date), in each case without leave of or order of the Bankruptcy Court and such consent not to be unreasonably withheld; provided, that any such consent provided by the DIP Agent shall solely be for purposes of this Article IX and shall not otherwise limit, restrict or impair any rights or remedies of any DIP Credit Party under the DIP Documents.  If the Plan is confirmed for fewer than all of the Debtors as provided for in Section 5.17 of the Plan, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur as to such Debtors.  Notwithstanding anything to the contrary herein, Sections 9.2(a)(i) or 9.2(a)(iii) shall not be waived without the prior written consent of the Creditors' Committee.

(b)    The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

9.4.    ***Effect of Failure of a Condition.***

If the conditions listed in Section 9.2 of the Plan are not satisfied or waived in accordance with Section 9.3 of the Plan on or before the first Business Day that is more than one hundred and eighty (180) days after the date on which the Confirmation Order is entered or by such later date as set forth by the Debtors in a notice filed with the Bankruptcy Court prior to the expiration of such period, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims by or against or any Interests in the Debtors, (b) prejudice in any manner the rights of any Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, the Requisite Consenting Creditors, or any other Entity.

**ARTICLE X    EFFECT OF CONFIRMATION OF PLAN.**

10.1.    ***Vesting of Assets.***

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, (i) if the Reorganized Equity Plan Election is made, all of the Reorganized Assets shall vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests except as provided pursuant to the Plan, the Confirmation Order, and the GUC Recovery Trust Agreement; (ii) if the Reorganized Equity Plan Election is made, all of the Wind Down Co Assets shall be transferred to Wind Down Co free and clear of all Claims, Liens, encumbrances, charges, and other interests except as provided pursuant to the Plan, the Confirmation Order, and the GUC Recovery Trust Agreement; and (iii) all remaining property of the Debtors' Estates (other than the Reorganized Assets, if the Reorganized Equity Plan Election is made) shall vest in the Wind Down Estates free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to the Plan, the Confirmation Order, and the GUC Recovery Trust Agreement.  On and after the Effective Date, the Reorganized Debtors and Wind Down Estates, as applicable, may take any action, including, without limitation, the operation of their businesses; the use, acquisition, sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein.  Without limiting the foregoing, Wind Down Estates may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

WEIL:\97629847\2\44444.0009

10.2. *Binding Effect.*

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders were (a) Impaired or Unimpaired under the Plan; (b) presumed to accept or deemed to reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) received any distribution under the Plan.

10.3. *Discharge of Claims and Termination of Interests.*

If the Reorganized Equity Plan Election is made, except as otherwise expressly provided under the Plan, upon the date that all distributions under the Plan have been made, (i) in consideration for such distributions, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Reorganized Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interest, rights, and liabilities that arose prior to the Effective Date and (ii) all such holders shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtors against the Reorganized Debtors, or any of their Assets or property, whether or not such holder has filed a proof of Claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date. For the avoidance of doubt, holders of all Claims, including Administrative Expense Claims, Priority Tax asserting, Priority Non-Tax Claims, and Other Secured Claims shall by forever barred and prohibited from asserting such Claims against the Reorganized Debtors and shall be limited to prosecution of such Claims against the Wind Down Estates or GUC Recovery Trust, as applicable.

10.4. *Term of Injunctions or Stays.*

Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.5. *Injunction.*

(a)    **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.**

(b)    **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Plan Administrator and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any**

suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Reorganized Debtors, Wind Down Estates, or the GUC Recovery Trust, or the property of any of the Debtors, the Reorganized Debtors, the Wind Down Estates, or the GUC Recovery Trust; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, the Wind Down Estates, or the GUC Recovery Trust, or the property of any of the Debtors, the Reorganized Debtors, the Wind Down Estates, or the GUC Recovery Trust; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Reorganized Debtors, the Wind Down Estates, or the GUC Recovery Trust or the property of any of the Debtors, the Reorganized Debtors, the Wind Down Estates, or the GUC Recovery Trust; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, the Reorganized Debtors, the Wind Down Estates, or the GUC Recovery Trust or against property or interests in property of any of the Debtors, the Reorganized Debtors, the Wind Down Estates, or the GUC Recovery Trust, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(c)    By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section 10.5.

(d)    The injunctions in this Section 10.5 shall extend to any successors of the Debtors (including the Wind Down Estates), the Reorganized Debtors, and their respective property and interests in property.

10.6.    *Releases.*

(a)    **Estate Releases**.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Definitive Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the implementation of the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties shall be deemed forever released and discharged, to the maximum extent permitted by law, by the Debtors, the Reorganized Debtors, and their Estates, Wind Down Estates, and the GUC Recovery Trust, from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, or the Estates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising prior to the Effective Date from, in whole or in part, the Debtors, the Chapter 11 Cases, the pre- and postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the RSA, the Plan (including the Plan Supplement), the Sale Documents, Prepetition Credit Documents, and the

DIP Documents, or any related agreements, instruments, and other documents (including the Definitive Documents), the DIP Order, the Sale Orders, and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; **provided**, that the Released Avoidance Parties shall only be released pursuant to this Section 10.6(a) on account of Avoidance Actions that have been or could be brought against such parties; **provided, further**, that nothing in this Section 10.6(a) shall be construed to release the Released Parties from gross negligence, willful misconduct, or intentional fraud as determined by a Final Order.  The Debtors, the Reorganized Debtors, and their Estates, the Wind Down Estates, and the GUC Recovery Trust shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 10.6(a) against each of the Released Parties.

(b)    **Third-Party Releases**.

As of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect or become effective after the Effective Date; (ii) defend against any objections to Claims that may be asserted under the Plan; or (iii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever, released, and discharged by:

(i)    the holders of Claims who vote to accept the Plan;

(ii)    the Consenting Creditors;

(iii)    the Released Avoidance Parties;

(iv)    the Creditors' Committee and each of its members in their capacity as such;

(v)    each of the Released Parties (other than the Debtors, Wind Down Estates, the GUC Recovery Trust, and the Reorganized Debtors); and

(vi)    with respect to any Entity in the foregoing clauses (i) through (v), such Entity's (x) predecessors, successors, and assigns, (y) subsidiaries, affiliates, managed accounts or funds, managed or controlled by such Entity and (z) all Persons entitled to assert Claims through or on behalf of such Entities with respect to the matters for which the releasing entities are providing releases.

in each case, from any and all Claims, Interests, or Causes of Action whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or arising prior to the Effective Date from, in whole or in part, the Debtors, the restructuring, the Chapter 11 Cases, the pre- and postpetition marketing and sale process, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual

56

arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Plan (including the Plan Supplement), the RSA, the Definitive Documents, the Sale Documents, Prepetition Credit Documents, the DIP Order, the Sale Orders, the DIP Documents, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; **provided**, that nothing in this Section 10.6(b) shall be construed to release the Released Parties from any gross negligence, willful misconduct, or intentional fraud as determined by a Final Order. The Persons and Entities in (i) through (vi) of this Section 10.6(b) shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 10.6(b) against each of the Released Parties.

(c)    Notwithstanding anything to the contrary herein, nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.

10.7.  *Exculpation.*

**To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any conduct occurring on or after the Commencement Date in connection with or arising out of the filing and administration of the Chapter 11 Cases, the postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security or asset of the Debtors; the negotiation and pursuit of the DIP Facility, Disclosure Statement, the RSA, Sale Transactions, UFCW Settlement including the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation, and consummation thereof, the Reorganization Transaction, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the DIP Documents; the administration of the Plan or the property to be distributed under the Plan; the issuance of Securities under or in connection with the Plan; or the transactions in furtherance of any of the foregoing; except for gross negligence, fraud, or willful misconduct, as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

10.8.  *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors (or the GUC Recovery Trustee, solely with respect to Allowed General Unsecured Claims) reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

10.9.  *Retention of Causes of Action/Reservation of Rights.*

Except as otherwise provided in Sections 10.5, 10.6, and 10.7 of the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or

WEIL:\97629847\2\44444.0009

equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of their Estates or itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtors including Unreleased Avoidance Actions.  The Wind Down Estates shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.  Notwithstanding the foregoing, the Debtors, the Reorganized Debtors, and the Wind Down Estates, as applicable, shall not retain any Claims or Causes of Action released pursuant to the Plan against the Released Parties or the Unreleased Avoidance Actions transferred to the GUC Recovery Trust.

10.10. ***Solicitation of Plan.***

As of and subject to the occurrence of the Confirmation Date:  (i) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; and (ii) the Debtors and each of their respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

10.11. ***Corporate and Limited Liability Company Action.***

Upon the Effective Date, all actions contemplated by the Plan (whether to occur before, on, or after the Effective Date) shall be deemed authorized and approved in all respects, in each case, in accordance with and subject to the terms hereof.  All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors, Wind Down Estates, or the Reorganized Debtors, and any corporate or limited liability company action required by the Debtors, Wind Down Estates, or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, directors, managers, or officers of the Debtors, Wind Down Estates, or the Reorganized Debtors.  On or (as applicable) before the Effective Date, the authorized officers of the Debtors, Wind Down Estates, or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Wind Down Estates or Reorganized Debtors, as applicable, including, but not limited to: (i) the Amended Organizational Documents; (ii) the GUC Recovery Trust Agreement; and (iii) any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Section 10.11 shall be effective notwithstanding any requirements under non-bankruptcy law.

WEIL:\97629847\2\44444.0009

## ARTICLE XI  RETENTION OF JURISDICTION.

11.1.    *Retention of Jurisdiction.*

On and after the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases, including Assumption Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)    to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan, including, cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely paid;

(d)    to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)    to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)    to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)    to hear and determine all Fee Claims and Restructuring Expenses;

(i)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, the Global Settlement, or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)    to hear and determine disputes arising in connection with the Sale Orders and Sale Transactions, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)    to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

WEIL:\97629847\2\44444.0009

(l)      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any Disputed Claims for taxes or requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)      to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

(o)      to resolve disputes concerning Disputed Claims or the administration thereof;

(p)      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)      to enter one or more final decrees closing the Chapter 11 Cases;

(r)      to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located;

(s)      to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, or any bar date established in the Chapter 11 Cases, or any deadline for responding or objection to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(t)      hear and determine matters or disputes arising from, or in connection with, the Amended Organizational Documents, including with respect to the appointment of a successor Plan Administrator in the event of the Plan Administrator's death, disability, dissolution, or removal;

(u)      hear and determine all disputes involving the Wind Down Budget;

(v)      to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors or the GUC Recovery Trustee pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory; and

(w)      to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in sections 502 or 503 of the Bankruptcy Code, other than defenses or limits that are asserted under non-bankruptcy law pursuant to section 502(b)(1) of the Bankruptcy Code.

11.2.    ***Courts of Competent Jurisdiction.***

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII MISCELLANEOUS PROVISIONS.

12.1.    *Payment of Statutory Fees.*

On the Effective Date and thereafter as may be required, the Wind Down Estates shall pay all fees incurred pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Debtors' cases, or until such time as a final decree is entered closing the Debtors' cases, a Final Order converting the Debtors' cases to cases under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing the Debtors' cases is entered.

12.2.    *Substantial Consummation of the Plan.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.3.    *Plan Supplement.*

The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Documents included in the Plan Supplement will be posted at the website of the Debtors' notice, claims, and solicitation agent.

12.4.    *Request for Expedited Determination of Taxes.*

The Debtors and the Wind Down Estates, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Commencement Date through the Effective Date, and, in the case of the Wind Down Estates, through dissolution of the Wind Down Estates.

12.5.    *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents pursuant to, in implementation of or as contemplated in the Plan, (b) the creation of any Lien, mortgage, deed of trust, or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of or as contemplated in the Plan (whether to one or more of the Reorganized Debtors, the Wind Down Estates, the GUC Recovery Trust or otherwise), and (d) the issuance, renewal, modification, or securing of indebtedness  by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

12.6.    *Amendments.*

(a)    *Plan Modifications*.    Subject to the terms of the RSA and all consent rights contained therein, (i) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, modify, or supplement the Plan (i) prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan and subject to the reasonable consent of the Requisite Consenting Creditors, the Debtors may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.  Any such amendment or modification pursuant to this paragraph or otherwise shall be reasonably acceptable to the Requisite Consenting Creditors and the Creditors' Committee.

(b)    *Other Amendments*.    Subject to the terms of the RSA, before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement, after consulting with the Requisite Consenting Creditors and the Creditors' Committee, without further order or approval of the Bankruptcy Court.

12.7.    ***Effectuating Documents and Further Transactions.***

Each of the officers, managers, or members of the Reorganized Debtors and Wind Down Estates, as applicable is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

12.8.    ***Revocation or Withdrawal of Plan.***

Subject to the terms of the RSA, the Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date.  If the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the Debtors or any other Entity; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission of any sort by the Debtors, any Consenting Creditors, or any other Entity.  This provision shall have no impact on the rights of the Consenting Creditors or the Debtors, as set forth in the RSA, in respect of any such revocation or withdrawal.

12.9.    ***Dissolution of Creditors' Committee.***

On the Effective Date, the Creditors' Committee shall dissolve and, on the Effective Date, each member (including each officer, director, employee, or agent thereof) of the Creditors' Committee and each professional retained by the Creditors' Committee shall be released and discharged from all rights, duties, responsibilities, and obligations arising from, or related to, the Debtors, their membership on the

Creditors' Committee, the Plan, or the Chapter 11 Cases, except with respect to any matters concerning any Fee Claims held or asserted by any professional retained by the Creditors' Committee.

### 12.10. *Severability of Plan Provisions.*

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors with the reasonable consent of the Requisite Consenting Creditors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors, Wind Down Estates, or the Reorganized Debtors (as the case may be), and (c) nonseverable and mutually dependent.

### 12.11. *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof; <u>provided</u>, however, that corporate or entity governance matters relating to any Debtors, Wind Down Estates, or Reorganized Debtors shall be governed by the laws of the state of incorporation or organization of the applicable Debtors, Wind Down Estates, or Reorganized Debtors.

### 12.12. *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.13. *Dates of Actions to Implement the Plan.*

In the event that any payment or act under the Plan is required to be made or performed on a date that is on a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 12.14. *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns, including, without limitation, the Wind Down Estates and the Reorganized Debtors.

WEIL:\97629847\2\44444.0009

12.15.   *Deemed Acts.*

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

12.16.   *Successor and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

12.17.   *Entire Agreement.*

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

12.18.   *Exhibits to Plan.*

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

12.19.   *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)   If to the Debtors or the Wind Down Estates:

Old Market Group Holdings Corp.
2284 12th Avenue
New York, NY 10027
Attn: Nathalie Augustin, Esq.
Email: nathalie.augustin@oldmarketco.com

-and-

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn:   Ray C. Schrock, P.C.
        Sunny Singh, Esq.
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  ray.schrock@weil.com
        sunny.singh@weil.com

64

(b)    If to the Consenting Creditors, Plan Sponsor, or the Reorganized Debtors:

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
Attn: W. Austin Jowers, Esq.
        Michael R. Handler, Esq
Email:  ajowers@kslaw.com
        mhandler@kslaw.com

(c)    If to the Prepetition Agent or the DIP Agent:

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Attn: Eli J. Vonnegut, Esq.
        Christian Fischer, Esq
Email:  eli.vonnegut@davispolk.com
        christian.fischer@davispolk.com

After the Effective Date, the Debtors and the Wind Down Estates, as applicable, have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors, the Reorganized Debtors, and Wind Down Estates, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated:   September 24, 2020

**OLD MARKET GROUP HOLDINGS CORP. on behalf of itself and each of the other Debtors**

By:    /s/  Michael Nowlan
        Name:  Michael Nowlan
        Title:   Chief Restructuring Officer