UNITED STATES BANKRUPTCY COURT        NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                         :

In re                           :        Chapter 11
                         :

OLD MARKET GROUP HOLDINGS   :
CORP., *et al.*,                 :        Case No. 20-10161 (JLG)
                         :

        Debtors.[1]           :        (Jointly Administered)
                         :
                         :
---------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER
## GRANTING VILLAGE'S MOTION TO ENFORCE THE SALE
## ORDER AGAINST CONTINUATION OF THE KATZMAN ACTION

**A P P E A R A N C E S :**

WOLLMUTH MAHER & DEUTSCH LLP
*Counsel for VSM NY Holdings LLC,*
*VSM NY Distribution LLC and Village*
*Super Market, Inc.*
500 Fifth Avenue
New York, New York 10110
By:    Paul R. DeFilippo, Esq.
        James N. Lawlor, Esq.
        Joseph F. Pacelli, Esq.


METZ LEWIS BRODMAN
MUST O'KEEFE LLC
*Counsel for VSM NY Holdings LLC,*
*VSM NY Distribution LLC and Village*
*Super Market, Inc.*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each of their federal tax identification number, are as follows:  Old Market Bakery LLC (4129); Old Market Broadway LLC (8591); Old Market Chelsea LLC (0288); Old Market Construction Group, LLC (2741); Old Market Douglaston LLC (2650); Old Market East 86th Street LLC (3822); Old Market eCommerce LLC (3081); Old Market Georgetowne LLC (9609); Old Market Greenwich Street LLC (6422); Old Market Group Central Services LLC (7843); Old Market Group Plainview LLC (8643); Old Market Hudson Yards LLC (9331); Old Market Kips Bay LLC (0791); Old Market Store LLC (9240); Old Market Pelham LLC (3119); Old Market Pelham Wines & Spirits LLC (3141); Old Market Red Hook LLC (8813); Old Market Stamford LLC (0738); Old Market Stamford Wines & Spirits LLC (3021); Old Market Staten Island LLC (1732); Old Market Uptown LLC (8719); and Old Market Westbury LLC (6240).  The location of the Wind Down Estates corporate headquarters is 2284 12th Avenue, New York, New York 10027.  Old Market Community Foundation Inc., a charitable organization, owned by Old Market Group Holdings Corp., is not a debtor in these proceedings.

535 Smithfield Street, Suite 800
Pittsburgh, Pennsylvania 15222
<u>By:</u>    Barry I. Friedman, Esq.

DONIGER / BURROUGHS
*Counsel for Ferguson &*
*Katzman Photography, Inc.*
231 Norman Avenue, Suite 413
Brooklyn, New York 11222
<u>By:</u>    Scott Alan Burroughs, Esq.
       Michael D. Steger, Esq.

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
<u>By:</u>    Sunny Singh, Esq.
       Jared R. Friedmann, Esq.

**<u>HON. JAMES L. GARRITY, JR.</u>**
**<u>U.S. BANKRUPTCY JUDGE</u>**

### <u>Introduction</u>[2]

Fairway Marketing Inc. ("**Fairway**") and certain of its affiliates (collectively, the

"**Debtors**") are chapter 11 debtors in this Court.[3]  They formerly operated food stores and a

production and distribution center in the New York metropolitan area. Prior to the Petition Date,

Fairway entered into a License with Ferguson and Katzman Photography, Inc. ("**Katzman**") that

enabled Fairway to incorporate certain of Katzman's copyrighted photographs (defined below as

the Subject Photography) into Store Furnishings and display them in the Debtors' stores.

---

[2]    Capitalized terms not defined shall have the meanings ascribed to them below and in the Debtors' reorganization Plan.  Citations to "ECF No. ___" refer to documents filed on the electronic docket of this bankruptcy case.  Citations to "Doc No. ___" refer to documents filed on the electronic docket of the Copyright Action.

[3]    Under the Village Section 363 Asset Sale, the Debtors sold their trade names to Village. In the wake of the Closing, by Court order, the Debtors changed their corporate name from Fairway to "Old Market" and made corresponding changes to the captions of the Chapter 11 Cases. Order Authorizing and Directing Debtors to Change their Corporate Names and Granting Related Relief [ECF No. 719].

Fairway produced all the Store Furnishings before the License expired on April 19, 2020 but continued to display the Subject Photography in its stores after the License expired.

Post-petition, the Debtors sold substantially all their stores, as going concerns, pursuant to a number of asset sales to different buyers under section 363 of the Bankruptcy Code. One such transaction (the "**Village Section 363 Asset Sale**") is at issue herein. On April 20, 2020 (the day after the License expired), the Court entered an order (the "**Sale Order**"),[4] authorizing the Debtors to sell their production and distribution center (the "**Production and Distribution Center**") and five (5) stores (the "**Stores**"), as going concerns, to VSM NY Holdings LLC, VSM NY Distribution LLC, and Village Super Market, Inc. (collectively, "**Village**"). On the Closing Date, the Debtors were displaying the Store Furnishings in each of the Stores. Since that date, Village has continued to display them in the Stores in the same manner as the Debtors displayed them prior to the Closing.

Katzman contends that Fairway violated the Copyright Act (17 U.S.C. §§ 101, *et seq.*) prior to the Closing by displaying the Store Furnishings in the Stores after the License expired and by transferring the Store Furnishings to Village in the Village Section 363 Asset Sale. It contends that by displaying the Store Furnishings in the Stores, Village is continuing to infringe on its copyrights in the Subject Photography. Katzman sued Fairway, Village, and others in the United States District Court for the Southern District of New York (the "**District Court**"), seeking damages and injunctive relief based on their alleged infringement of Katzman's copyrights in the Subject Photography (the "**Copyright Action**").[5]

---

[4]    Order (I) Approving Asset Purchase Agreement Among the Debtors and Village Super Market, Inc.; (II) Authorizing Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (IV) Granting Related Relief [ECF No. 449].

[5]    *Ferguson and Katzman Photography, Inc. v. Key Food Stores Co-Operative, Inc., et al.*, Case No. 20-08854-VM (S.D.N.Y., Oct. 22, 2020).

The matter before the Court is Village's motion to enforce the terms of the Sale Order and, in doing so, to enjoin Katzman's continued prosecution of the Copyright Action against it.[6] Katzman filed an objection to the Motion.[7] Village filed a reply to the Objection and in further support of the Motion.[8] The Plan Administrator, on behalf of the Debtors, filed a reservation of rights in support of the Motion.[9] The Court conducted two hearings on the Motion.[10] After the second hearing, at the Court's request, Village and Katzman submitted additional briefing on the following issues: (i) whether Village's continued display of the Store Furnishings gives rise to a new claim of copyright infringement; and (ii) if so, whether the Sale Order bars Katzman from asserting it.[11]

For the reasons set forth herein, the Court **GRANTS** the Motion.

## **Jurisdiction**

---

[6]    Motion of VSM NY Holdings LLC, VSM NY Distribution LLC, and Village Super Market, Inc. to Enforce the Sale Order Against Continuation of the Katzman Action [ECF No. 1082] (the "**Motion**").

[7]    Ferguson and Katzman Photography, Inc.'s Objection to Motion to Enforce Sale Order Against Continuation of the Katzman Action [ECF No. 1090] (the "**Objection**").

[8]    Reply of VSM NY Holdings LLC, VSM NY Distribution LLC, and Village Super Market, Inc. to Ferguson and Katzman Photography, Inc.'s Objection to Motion to Enforce the Sale Order Against Continuation of the Katzman Action [ECF No. 1098] (the "**Reply**").

[9]    Plan Administrator's Reservation of Rights with Respect to Ferguson and Katzman Photography, Inc.'s Objection to Motion to Enforce Sale Order Against Continuation of the Katzman Action [ECF No. 1102].

[10]    Transcript of July 8, 2021 Hearing [ECF No. 1114] (the "**July Hr'g Tr.**"); Transcript of November 24, 2021 Hearing [ECF No. 1177] (the "**Nov. Hr'g Tr.**").

[11]    Village briefed these issues first.  Supplemental Brief of VSM NY Holdings LLC, VSM NY Distribution LLC, and Village Supermarket, Inc. Regarding Continuing Copyright Infringement [ECF No. 1202] (the "**Village Supp. Br.**").  Katzman submitted a response to the Village Supp. Br.  Ferguson and Katzman Photography, Inc.'s Supplemental Brief in Opposition to Motion to Enforce Sale Order Against Continuation of the Katzman Action [ECF No. 1207] (the "**Katzman Supp. Br.**").  Village filed a reply to the Katzman Supp. Br.  Second Supplemental Brief of VSM NY Holdings LLC, VSM NY Distribution LLC, and Village Supermarket, Inc. Regarding Continuing Copyright Infringement [ECF No. 1208] (the "**Village Supp. Reply Br.**").

4

The Court has jurisdiction over these matters pursuant to 28 U.S.C §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.).  Under the Sale Order and Plan, this Court retains exclusive jurisdiction to interpret and enforce the Sale Order. *See* Sale Order ¶ 42; Plan § 11.1(j).  This Court has core jurisdiction under 28 U.S.C. § 157(b) to interpret and enforce the Sale Order.  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.)*, 458 F.3d 92, 95 (2d Cir. 2006)  It is of no moment that the dispute is between Katzman and Village—two non-debtors—or that the Plan has been confirmed. *See Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002) (finding post-confirmation jurisdiction over a dispute between non-debtor parties over the effect of a sale order).

## Background

### The Chapter 11 Cases

On January 23, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "**Chapter 11 Cases**").  As of the Petition Date, the Debtors operated a Production and Distribution Center and fourteen (14) supermarkets across the New York, New Jersey, and Connecticut tri-state area.  They remained in possession and control of their businesses and assets as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code through October 30, 2020, the Effective Date of their Plan.  Prior to the Petition Date, in consultation with an ad hoc group of prepetition lenders (the "**Ad Hoc Group**"), the Debtors developed a strategy for the Chapter 11 Cases that called for them to sell their stores and Production and Distribution Center, together with related inventory,

furniture, fixtures and equipment (collectively, the "**Assets**"), as going concerns. *See* Sales

Procedures Moton ¶¶ 1, 18.[12]

The Stalking Horse Agreement

On January 22, 2020, in furtherance of that strategy, the Debtors entered into an Asset

Purchase Agreement (the "**Stalking Horse Agreement**") with Village (the "**Stalking Horse

Bidder**"), under which the Debtors agreed to sell and Village agreed to purchase the Stores, the

Production and Distribution Center, and other assets, including all inventory, furnishings,

fixtures, and equipment at those locations (the "**Stalking Horse Assets**"), for an aggregate

purchase price of approximately $70 million in cash plus assumption of certain liabilities under

the Stalking Horse Agreement (the "**Stalking Horse Bid**").[13]  Stalking Horse Agreement § 2.3.

Under that agreement, the Debtors reserved the right to solicit higher and better offers for the

Stalking Horse Assets and agreed to provide Village with bid protections, including a break-up

fee (the "**Stalking Horse Bid Protections**").  *Id*. § 5.4(b).  To facilitate auction sales of the

Assets, the Debtors and the Ad Hoc Group developed bidding and auction procedures to govern

the Asset sales (the "**Bidding Procedures**") to permit interested parties to submit bids for (a) all

of the Stalking Horse Assets; (b) certain individual Assets or combinations of Assets included in

the Stalking Horse Assets; or (c) Assets not included in the Stalking Horse Assets, in each case,

subject to the terms and provisions of the Bidding Procedures.  Sales Procedures Motion ¶ 3.

---

[12]    Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sales of Debtors' Assets,
(B) Approving Stalking Horse Bid Protections, (C) Authorizing Designation of Additional Stalking Horse Bidders,
(D) Scheduling Auctions for and Hearings to Approve Sales of Debtors' Assets, (E) Approving Form and Manner of
Notice of Sales, Auctions, and Sale Hearings, (F) Approving Assumption and Assignment Procedures and Form and
Manner of Notice of Assumption and Assignment, and (G) Granting Related Relief; and (II)(A) Authorizing Sale of
Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and
Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief [ECF No. 21] (the
"**Sales Procedures Motion**").

[13]    A copy of the Stalking Horse Agreement is annexed as Exhibit C to the Sales Procedures Motion.

The Post-Petition Asset Sales

On the Petition Date, in furtherance of their strategy in support of the Chapter 11 Cases, the Debtors filed a motion for the entry of an order (a) approving the Bidding Procedures; (b) approving the Stalking Horse Bid Protections for the Stalking Horse Bidder; (c) authorizing the designation of additional stalking horse bidders; (d) scheduling auctions (each an "**Auction**") of the Assets and hearings (each a "**Sale Hearing**") to consider approval of proposed sale transactions; and (e) approving the form and manner of notice of sales of the Assets, the Auctions, and the Sale Hearings.  Sales Procedures Motion at 1-2.

On February 21, 2020, the Court entered the order approving the bidding procedures and notice requirements in connection with the Sales Procedures Motion (the "**Bidding Procedures Order**").[14]  Among other things, that order approved the form of a notice of sale (the "**Sale Notice**") and directed that copies of the Sale Notice be served by first-class mail to the "Sale Notice Parties," which included (i) all persons and entities known by the Debtors to have asserted any lien, claim, encumbrance, or other interest in any Asset (for whom identifying information and addresses were available to the Debtors); and (ii) all of the Debtors' known creditors (for whom identifying information and addresses were available to the Debtors). Bidding Procedures Order ¶¶ 31-34.  It also directed that the Debtors publish the contents of the Sale Notice once in the national edition of *USA Today* and once in the *New York Times*.[15]  *Id.* ¶ 33.

---

[14]   Order (I) Approving (A) Bidding Procedures for Sales of Debtors' Assets, (B) Stalking Horse Bid Protections, (C) Form and Matter of Notice of Sales, Auctions, and Sale Hearings, and (D) Assumption and Assignment Procedures and Form and Manner of Notice of Assumption and Assignment; and (II) Authorizing Designation of Additional Stalking Horse Bidders; (III) Scheduling Auctions and Sale Hearings; and (IV) Granting Related Relief [ECF No. 202].

[15]   The Debtors prepared the Sale Notice pursuant to the Bidding Procedures Order.  Notice Of Sale, Bidding Procedures, Auctions, And Sale Hearings [ECF No. 208].  Among other things, the Sale Notice advises that

On February 22, 2020, the Debtors caused copies of the Sale Notice to be served on the

Sale Notice Parties by first-class mail.[16]

On February 27, 2020, the Debtors published the Sale Notice in *The New York Times* and

the national edition of *USA Today*.[17]

As authorized under the Bidding Procedures Order, the Debtors solicited additional bids

for the Assets. Through that process, a third party topped Village's Stalking Horse Bid, and

other prospective purchasers made competing bids on portions of the remaining Assets. As

contemplated by the Bidding Procedures Order, the Debtors conducted an Auction for their

Assets from March 16 to March 25. As relevant, at the close of the Auction, the Debtors

announced that Village was the successful bidder for the Stalking Horse Assets.[18] On March 25,

---

[T]he Debtors are seeking to sell substantially all of the Assets, including their fourteen (14) operating grocery stores, bakeries, and beer, wine, and liquor stores, their production and distribution center, and all related assets, including, but not limited to, inventory, intellectual property, prepaid expenses, and furniture, fixtures, and equipment.

*Id*. at 2. It specifically addresses the Stalking Horse Bid, as follows:

A binding stalking horse bid (the "Stalking Horse Bid") has been submitted by Village Super Market, Inc. (the "Stalking Horse Bidder"). The Stalking Horse Bidder has executed an asset purchase agreement (the "Stalking Horse Agreement") for the purchase of the Debtors' locations identified on Exhibit A annexed hereto, including the leasehold interests, inventory, furniture, fixtures, and equipment, intellectual property, and other assets related to such locations (the "Stalking Horse Package"). The Stalking Horse Bid is subject to higher or otherwise better offers submitted in accordance with the terms and provisions of the Bidding Procedures.

Assets not included in the Stalking Horse Package are referred to herein as the "Other Assets." A complete list of the locations included in the Other Assets pursuant to the Bidding Procedures is annexed hereto as Exhibit B.

A party may submit a bid for any individual Asset (or combination of Assets) listed on Exhibit A and/or Exhibit B whether or not such Asset is included in the Stalking Horse Package, in each case, in accordance with the terms and provisions of the Bidding Procedures.

*Id.*

[16]    Affidavit Of Service [ECF No. 279].

[17]    Affidavit of Service of Publication [ECF No. 226].

[18]    Notice of Successful Bidders at Global Auction [ECF No. 378].

2020, the Debtors and Village terminated the Stalking Horse Agreement and entered into a new asset purchase agreement. On May 6, 2020, the parties further amended that agreement (as amended, the "**Village APA**").[19]

The Village APA provides for the transfer of assets (the "**Acquired Assets**") from the Debtors to Village, including the leasehold interests in the five Stores, the Production and Distribution Center, furnishings, fixtures, store inventory, equipment, all intellectual property, and other assets used in the operation of the Stores and the Production and Distribution Center. Village APA, Art. I.  As relevant, the Village APA defines the term "Acquired Assets," to include all "Furnishings and Equipment owned by the Sellers and Related to the Business (other than Excluded Furnishings and Equipment)."  *Id.* § 1.1. The agreement further states that:

> "Furnishings and Equipment" means all fixtures, trade fixtures, store models, shelving, and refrigeration equipment owned by Sellers and located at the Stores, including those items listed on Section 1.1 of the Disclosure Schedule under the headings "Furnishings and Equipment".

*Id.*

The Sale Order

On April 14, 2020, the Court conducted a hearing on the Village APA.[20]  On April 20, 2020, the Court entered the Sale Order approving the asset sale to Village (the "**Sale Transaction**").  As relevant, the Sale Order includes findings that the Acquired Assets constitute property of the Debtors' estates (Sale Order ¶ X),[21] and that the Debtors' transfer of the Acquired

---

[19]   Notice of Filing of (I) Amendment to Asset Purchase Agreement Between Debtors and Village Super Market, Inc. and (II) Supply Agreement Between Fairway Group Holdings Corp. and VSM NY Distribution LLC [ECF No. 473].  A copy of the Village APA is attached as Exhibit A to the Sale Order.

[20]   Transcript of April 14, 2020 Hearing [ECF No. 458].

[21]   Paragraph X of the Sale Order states:

> **Acquired Assets are Property of the Estates**. The Acquired Assets constitute property of, and good title is vested in, the Debtors' estates within the meaning of section 541(a) of the Bankruptcy

Assets to Village is legal, valid, and authorized under section 363(f) of the Bankruptcy Code.  *Id.*

¶ V.[22]  The order authorizes the Debtors to sell and transfer the Acquired Assets to Village.  *Id.*

¶¶ 7-12.[23]  It also contains findings that the sale of the Acquired Assets is "free and clear" of any

types of claims or interests, and that Village relied on that finding in entering the Village APA.

*Id.* ¶¶ P, Q.[24]  Paragraph 13 of the Sale Order gives effect to those findings, *id.* ¶ 13, and

---

Code.  The Debtors are the sole and rightful owners of the Acquired Assets with all right, title, and interest to transfer and convey the Acquired Assets to the Buyer, and no other Person has any ownership right, title, or interests therein.

Sale Order ¶ X.

[22]    Paragraph V of the Sale Order states:

**Validity of Transfer**.  As of the Closing and payment of the Purchase Price, the transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets, and will vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets, free and clear of all Claims.  The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

*Id.* ¶ V.

[23]    Paragraph 7 of the Sale Order states:

Pursuant to sections 105(a), 363(b), and 365 of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives and officers, are authorized and empowered, without further order of the Court, to take any and all actions necessary or appropriate to: (i) consummate and close the Sale Transaction pursuant to and in accordance with the terms and conditions of the Purchase Agreement; (ii) transfer and assign all right, title, and interest in and to all Acquired Assets, property, licenses, and rights to be conveyed in accordance with the terms and conditions of the Purchase Agreement; and (iii) execute and deliver, perform under, consummate, and implement the Purchase Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale Transaction, including any Related Agreements, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement and such other ancillary documents.  The Acquired Assets shall be sold, assigned, conveyed, and transferred to the Buyer, and upon the Closing, such transfer shall (a) be valid, legal, binding, and effective; and (b) vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets.

*Id.* ¶ 7.

[24]    Paragraphs P and Q of the Sale Order state, as follows:

**Free and Clear Sale**.  The Debtors may sell the Acquired Assets free and clear of all liens, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), rights, liabilities, encumbrances, and other interests of any kind or nature whatsoever against the Debtors or the Acquired Assets, including, without limitation, any debts arising under or out of, in

paragraph 14 states that "[t]he holders of Interests or Claims who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code." *Id.* ¶ 14.  Paragraph 18

---

connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims, or claims for Taxes of or against the Debtors, any claims under, or trusts or liens created by, [the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. §§ 499, *et seq.*) or any similar state laws] or [the Packers and Stockyards Act (7 U.S.C. §§ 181 *et seq.*) or any similar state laws] and any derivative, vicarious, transferee or successor liability claims, rights or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory, or possession, or the District of Columbia), whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether known or unknown, and whether imposed by agreement, understanding, law, equity, or otherwise arising under or out of, in connection with, or in any way related to the Debtors, the Debtors' interests in the Acquired Assets, the operation of the Debtors' business before the effective time of the Closing pursuant to the Purchase Agreement, or the transfer of the Debtors' interests in the Acquired Assets to the Buyer, and all Excluded Liabilities (collectively, excluding any Assumed Liabilities, the "Claims"), because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code have been satisfied; <u>provided that</u> nothing herein shall be deemed, or construed as, a ruling or determination by this Court that the Assumed Liabilities encumber the Acquired Assets.  Without limiting the generality of the foregoing, "Claims" shall include any and all liabilities or obligations whatsoever arising under or out of, in connection with, or in any way relating to: (i) any of the employee benefit plans, including any Claims related to unpaid contributions or current or potential withdrawal or termination liability; (ii) any of the Debtors' collective bargaining agreements; (iii) the Worker Adjustment and Retraining Notification Act of 1988; or (iv) any of the Debtors' current and former employees.  Those holders of Claims who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Claims who did object that have an interest in the Acquired Assets could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claim pursuant to section 363(f)(5) of the Bankruptcy Code or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, therefore, are adequately protected by having their Claims that constitute interests in the Acquired Assets, if any, attach solely to the proceeds of the Sale Transaction ultimately attributable to the property in which they have an interest, in the same order of priority and with the same validity, force, and effect that such holders had prior to the Sale Transaction, subject to any defenses of the Debtors.

*Id.* ¶ P.

**Buyer's Reliance on Free and Clear Sale**. The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Acquired Assets was not free and clear of all Interests and Claims, or if the Buyer would, or in the future could, be liable for any such Interests or Claims, including, as applicable, certain liabilities related to the Business that will not be assumed by the Buyer, as described in the Purchase Agreement. A sale of the Acquired Assets other than one free and clear of all Interests and Claims would adversely impact the Debtors, their estates, and their creditors, and would yield substantially less value for the Debtors' estates, with less certainty than provided under the Sale Transaction.

*Id.* ¶ Q.

addresses post-Closing matters.  It provides that "[f]ollowing the Closing, no holder of any

Interest or Claim shall interfere with Buyer's title or quiet use and enjoyment of the Acquired

Assets based on or related to any such Interest or Claim or based on any actions that the Debtor

may take in these chapter 11 cases."  *Id.* ¶ 18.  Finally, as relevant, the Sale Order includes a

finding that Village has no successor or derivative liability arising from the Debtors' pre-closing

activities.  *See id.* ¶ K.[25]  The order also contains an injunction (the "**Sale Order Injunction**")

barring any holder of a Claim or Interest from suing Village with regard to the Acquired Assets.

*See id.* ¶ 15.[26]

---

[25]    Paragraph K of the Sale Order states:

> **No Successor or Other Derivative Liability**. By consummating the Sale Transaction pursuant to
> the Purchase Agreement (including operating certain Stores under the Debtors' trade names and in
> the Debtors' former premises, and offering employment to certain of the Sellers' employees):
> (i) Buyer is not a mere continuation of any Seller or any other Debtor or any Debtor's estate, and
> there is no continuity, no common identity, and no continuity of enterprise between Buyer and any
> Debtor; (ii) Buyer is not a successor to any Debtor or any Debtor's estate by reason of any theory
> of law or equity, and the Sale Transaction does not amount to a consolidation, merger, or *de facto*
> merger of Buyer and the Debtors; and (iii) neither Buyer nor any of its successors, assigns, members,
> partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for
> any obligation or liability of any Debtor (or any Affiliates thereof) and/or any Debtor's estate,
> including any obligation under any collective bargaining agreement or labor practice agreement of
> the Debtors.  The sale and transfer of the Acquired Assets to the Buyer, including the assumption
> by the Debtors and assignment, transfer, and/or sale to the Buyer of the Transferred Contracts, will
> not subject the Buyer to any liability (including any successor liability) with respect to the operation
> of the Debtors' business prior to the Closing or by reason of such transfer, except that, upon the
> Closing, the Buyer shall become liable for the applicable Assumed Liabilities.

*Id.* ¶ K.

[26]    Paragraph 15 of Sale Order states:

> Except to the extent included in Assumed Liabilities or Permitted Liens, or to enforce the Purchase
> Agreement, all persons and entities (and their respective successors and assigns), including all
> lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities,
> governmental units, lenders, parties to executory contracts and unexpired leases, contract
> Counterparties, customers, licensors, litigation claimants, employees and former employees, dealers
> and sale representatives, pension plans, labor unions, trade creditors, and any other creditors holding
> Interests or Claims against the Debtors or the Acquired Assets (whether known or unknown, legal
> or equitable, matured or unmatured, contingent or non- contingent, liquidated or unliquidated,
> asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter
> 11 cases, whether imposed by agreement, understanding, law, equity, or otherwise), arising under
> or out of, in connection with, or in any way relating to, the Debtors, the transfer of the Acquired
> Assets to Buyer, or the Acquired Assets or the Debtors' businesses prior to the Closing Date, hereby

12

On May 13, 2020 (the "**Closing Date**"), the Debtors and Village closed the Sale

Transaction (the "**Closing**").[27]

The Plan Confirmation

On October 5, 2020, the Court entered the Confirmation Order[28] confirming the Debtors'

reorganization Plan.[29]  The Effective Date of the Plan occurred on October 30, 2020.[30]  As

relevant to the Motion, the Confirmation Order calls for Administrative Expense Claims to be

"filed with the Bankruptcy Court and served on the Debtors or Plan Administrator . . . the Claims

---

are forever barred, estopped, and permanently enjoined from asserting any Interests or Claims
relating to the Acquired Assets or the transfer of the Acquired Assets against Buyer or its successors,
designees, assigns, or property, or the Acquired Assets transferred to Buyer, including, without
limitation, taking any of the following actions with respect to or based on any Interest or Claim
relating to the Acquired Assets or the transfer of the Acquired Assets to Buyer (other than Assumed
Liabilities): (a) commencing or continuing in any manner any action or other proceeding against
Buyer or its successors or assigns, assets or properties; (b) enforcing, attaching, collecting, or
recovering in any manner any judgment, award, decree, or order against Buyer or its successors or
assigns, assets, or properties; (c) creating, perfecting, or enforcing any Interest or Claims against
Buyer, its successors or assigns, assets or properties; (d) asserting an Interest or Claims as a setoff,
right of subrogation, or recoupment of any kind against any obligation due Buyer or its successors
or assigns; (e) commencing or continuing any action in any manner or place that does not comply,
or is inconsistent, with the provisions of this Sale Order or the agreements or actions contemplated
or taken in respect thereof; (f) interfering with, preventing, restricting, prohibiting, or otherwise
enjoining the consummation of the Sale Transaction; or (g) enforcing any provision of any
Transferred Contract that prohibits, restricts, or conditions, or which purports to terminate or
modify, or permits a party other than the Debtors to terminate or modify, any such Transferred
Contract, or any right or obligation under such Transferred Contract, because of the assumption and
assignment of such Transferred Contract by the Sellers to the Buyer. No such persons or entities
shall assert or pursue against Buyer or its successors or assigns any such Interest or Claim.

*Id*. ¶ 15.

27    Disclosure Statement for Joint Chapter 11 Plan of Fairway Group Holdings Corp. and its Affiliated Debtors
[ECF No. 679] (the "**Disclosure Statement**") §§ I.A, IV.G.

28    Order Confirming Joint Chapter 11 Plan of Old Market Group Holdings Corp. and Its Affiliated Debtors [ECF
No. 806] (the "**Confirmation Order**").

29    Joint Chapter 11 Plan of Old Market Group Holdings Corp. and Its Affiliated Debtors [ECF No. 767] (the
"**Plan**").  The Court approved the Disclosure Statement accompanying the Plan on August 14, 2020.  Order (I)
Approving Disclosure Statement; (II) Establishing Notice and Objections Procedures for Confirmation of the Plan;
(III) Approving Solicitation Packages and Procedures for Distribution Thereof; (IV) Approving the Forms of Ballots
and Establishing Procedures for Voting on the Plan; and (V) Granting Related Relief [ECF No. 686].

30    Notice of Occurrence of Effective Date [ECF No. 843] ¶ 4.

and Noticing Agent, and the U.S. Trustee within thirty-five (35) days from the date of service of

notice of the entry of [the] Confirmation Order." Confirmation Order ¶ 13. It further provides

that the failure to file a timely Administrative Expense Claim "**SHALL RESULT IN SUCH**

**CLAIM BEING FOREVER BARRED AND DISCHARGED**." *Id*. Section 10.5 of the Plan

contains the Plan Injunction provisions. Section 10.5(a) states:

> Upon entry of the Confirmation Order, all holders of Claims and Interests and other
> parties in interest, along with their respective present or former employees, agents,
> officers, directors, principals, and affiliates, shall be enjoined from taking any
> actions to interfere with the implementation or consummation of the Plan in relation
> to any Claim extinguished, discharged, or released pursuant to the Plan.

Plan § 10.5(a). The Plan Injunction further provides, in part, that:

> [A]ll Entities who have held, hold, or may hold Claims against or Interests in the
> Debtors . . . are permanently enjoined, on and after the Effective Date, solely with
> respect to any Claims, Interests, and Causes of Action that will be or are
> extinguished, discharged, or released pursuant to the Plan from (i) commencing,
> conducting, or continuing in any manner, directly or indirectly, any suit, action, or
> other proceeding of any kind . . . against or affecting the Debtors, the Reorganized
> Debtors, Wind Down Estates, or the GUC Recovery Trust.

*Id.* § 10.5(b). Finally, section 10.5(d) of the Plan states that "[t]he injunctions in this Section

10.5 shall extend to any successors of the Debtors (including the Wind Down Estates), the

Reorganized Debtors, and their respective property and interests in property." *Id.* § 10.5(d). The

Debtors caused the Confirmation Order Notice and Administrative Expense Claims Bar Date[31] to

be published in the *New York Times* on October 12, 2020.[32] The notice advises that:

> HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS THAT ARE
> REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR
> PAYMENT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS BY THAT
> DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM

---

[31]    Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of Old Market Group Holdings Corp. and
(II) Administrative Expense Claims Bar Date [ECF No. 811] (the "**Confirmation Order Notice and
Administrative Expense Claims Bar Date**").

[32]    Affidavit of Service of Publication [ECF No. 816].

14

ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS AGAINST THE
DEBTORS OR THEIR PROPERTY, AND SUCH ADMINISTRATIVE CLAIMS
SHALL BE DEEMED DISCHARGED AS OF THE EFFECTIVE DATE.

Confirmation Order Notice and Administrative Expense Claims Bar Date ¶ 5.

The Katzman License

As part of a pricing estimate for the creation of 30 photographs (the "**Subject
Photography**"), in April 2018, Katzman, as Licensor, and Fairway, as Licensee, entered into a
copyright license agreement (the "**License**").  Katzman Decl. ¶ 4.[33]  The License is a two-year
"Unlimited" and "Non-Exclusive" license that permitted Fairway to use the Subject Photography
during the term of the License to create "Unlimited Media, Excluding Broadcast." License at 2.
Under the License, the term "Unlimited Non-Exclusive" means "the [Licensee] shall be able to
use the photographs described on the invoice for [the Licensee's] purposes of advertising and
promotion as often as desired, but they shall not hold the copyright or transfer rights to any
others.  [The Licensee] may keep one original of each photograph and shall retain all out-takes."
*Id.* at 5, Terms & Conditions ¶ 14.  There is no dispute that the License gave Fairway the right to
reproduce the Subject Photography and incorporate it into decorations/furnishings for its stores.
During the term of the License, Fairway reproduced the Subject Photography to create physical
store displays in the nature of posters and "wraps," essentially large, sometimes wall-sized
sections of wallpaper that are physically affixed to the walls or windows of the store building as
décor (the "**Store Furnishings**").  Fairway created its Store Furnishings while the License was in
effect and displayed them in the Stores through the Closing.

The Copyright Action

---

[33]   Declaration of Mark Katzman [ECF No. 1090-1] (the "**Katzman Decl.**").  A copy of the License is annexed as
Exhibit 1 [ECF No. 1090-2] to the Katzman Declaration.

By its terms, the License terminated prior to the Closing Date. Katzman maintains that Fairway's display and transfer of the Subject Photography after the License terminated infringed on its copyrights in the Subject Photography. It also contends that Village's continued display of such photography infringes on its copyrights.

On August 11, 2020 (after entry of the Sale Order, but prior to the entry of the Confirmation Order), Paula Gren, as Katzman's agent, sent an email to Maureen Page of Fairway. In her email, Ms. Gren advised that she had recently learned that Fairway was displaying the Subject Photography in its stores, notwithstanding that the Debtors' right to use the photography expired on April 19, 2020. Katzman Decl., Ex. 2. Among other things, Ms. Gren advised that she would "welcome a discussion at [Ms. Page's] earliest [convenience] to talk through the situation" and asked Ms. Page to contact her "at [her] earliest." *Id.* That evening, the email was returned to Ms. Gren as "Undelivered Mail Return to Sender." *Id.* Katzman made no further effort to contact Fairway regarding its alleged copyright infringement.

On October 22, 2020, Katzman initiated the Copyright Action in the District Court against Fairway, Village and other entities that purchased Assets from the Debtors at the Auction (collectively, the "**Defendants**"). Without limitation, in support of the complaint (the "**Copyright Complaint**") as it relates to Village,[34] Katzman asserts that the Subject Photography is "registered with the Copyright Office" and that Village's continued display of the Store Furnishings violates its copyrights, since Village has no license to display the Subject Photography. *See* Copyright Complaint ¶¶ 15-18, 22-24. Katzman seeks damages occasioned by Village's alleged infringement of its copyrights and an injunction barring Village from its

---

[34] Plaintiff's Complaint For Copyright Infringement, Case No. 20-08854-VM [Doc. No. 1].

continued use of the photography.  *See id.* at 7.  Katzman served the Copyright Complaint on the

Debtors and Village on November 6[35] and November 10, 2020,[36] respectively.

Enforcement of the Plan Injunction

      Village and the Debtors filed answers to the Copyright Complaint on December 11 and

28, 2020, respectively.  On January 22, 2021, counsel to the Debtors, Village, Katzman and one

other defendant submitted a "Joint Letter – Case Management Plan" to the District Court.[37]  In

the District Court Joint Letter, among other things, the Debtors asserted that the Plaintiff's claims

against them were barred by this Court's Confirmation Order Notice and Administrative Expense

Claims Bar Date and that prosecution of the Copyright Action against them violated the Plan

Injunction issued by this Court with the Confirmation Order.  District Court Joint Letter § A.2.

The Debtors requested the District Court to hold all claims in the action in abeyance and stay

discovery pending a ruling from this Court on a motion to enforce the Plan Injunction, which

they would promptly file.  *Id*. § C.  On January 26, 2021, the District Court granted the request.[38]

      On February 24, 2021, the Plan Administrator filed a motion in the Chapter 11 Cases (the

"**Injunction Motion**") seeking to enforce the Plan Injunction and Confirmation Order and

thereby barring continued prosecution of the Copyright Action against the Debtors.[39]  Katzman

filed the Copyright Complaint on October 22, 2020. It did not serve the Debtors with the

complaint until early November.  The claims alleged in the Copyright Complaint against Fairway

---

[35]    Affidavit of Service, Case No. 20-08854-VM [Doc. No. 15].

[36]    Affidavit of Service, Case No. 20-08854-VM [Doc. No. 16].

[37]    Joint Letter - Case Management Plan, Case No. 20-08854-VM [Doc. No. 34] (the "**District Court Joint Letter**").

[38]    Civil Case Management Plan and Scheduling Order, Case No. 20-08854-VM [Doc. No. 36].

[39]    Motion of Plan Administrator to Enforce the Plan Injunction and Confirmation Order [ECF No. 991].

arose prior to the Plan's Effective Date.  In support of the Injunction Motion, the Plan

Administrator asserted that: (i) the Debtors had no knowledge of Katzman's claims or its alleged

status as a creditor in the Chapter 11 Cases until they were served with the Copyright Complaint;

and (ii) Katzman was an unknown creditor who received notice of the Plan (and the

Administrative Expense Claims Bar Date) and the Confirmation Order, by publication.  *See*

Injunction Motion ¶¶ 18-20.  Katzman failed to file an administrative expense claim in the case.

*Id.* ¶ 20.  The Plan Administrator contended that, as a consequence, the claims alleged against

Fairway in the Copyright Action were discharged in the Chapter 11 Cases and Katzman was

enjoined by the Plan Injunction and Confirmation Order from suing the Debtors in that action.

*Id.*

   Katzman did not respond to the Injunction Motion.  It is undisputed that the Plan

Administrator served the Injunction Motion on Katzman and its counsel of record in the

Copyright Action—who is also Katzman's counsel of record herein.  On April 28, 2021, the

Court granted the Injunction Motion.[40]  By stipulation dated May 13, 2021, Katzman dismissed

the Debtors from the Copyright Action.[41]

Stay of the Copyright Action Against Village

   By letter dated June 25, 2021 (the "**June 25 Letter**"),[42] Village notified the District Court

that this Court had "[determined] that [Fairway] could not be named as a party to the [Copyright

Action]," and that it had filed the Motion in this Court seeking a "similar order holding that

[40]   Order Granting Motion of Plan Administrator to Enforce the Plan Injunction and Confirmation Order [ECF No. 1044] (the "**Injunction Order**").

[41]   Stipulation To Dismiss Defendant Old Market Group Holdings Corp. (f/k/a Fairway Group Holdings Corp.), Case No. 20-08854-VM [Doc. No. 40].

[42]   Letter to Hon. Victor Marrero, United States District Court Judge from Barry I. Friedman, Esq., as counsel to Village, dated June 25, 2021, Case No. 20-08854-VM [Doc. No. 42].

Plaintiff has no claim against [Village] in light of its 'free and clear' order." June 25 Letter at 1.

Village advised that if granted, the Motion "will be dispositive of the instant matter, as all

remaining [D]efendants will be similarly situated as having purchased the assets of Fairway 'free

and clear.'" *Id.* It requested the District Court "to stay the instant matter pending the decision of

the Bankruptcy Court as a matter of judicial and financial efficiency." *Id.* By letter dated June

29, 2021 (the "**June 29 Letter**"),[43] Katzman opposed the request for a stay of the Copyright

Action. *See generally* June 29 Letter. By a Decision and Order dated July 14, 2021,[44] the

District Court granted the request for a stay of the Copyright Action and directed the parties "to

inform the Court within three days of issuance of the relevant decision from the Bankruptcy

Court." District Court Decision and Order at 6.

<h3 style="text-align:center">The Motion and Opposition</h3>

Village contends it is entitled to an order enforcing the Sale Order to enjoin the Copyright

Action because: (1) the Store Furnishings, containing the Subject Photography, are Acquired

Assets as defined under the Sale Order, Motion ¶¶ 19-24; (2) Village obtained the Acquired

Assets free and clear of any claim by Katzman, *id.* ¶¶ 25-34; and (3) Katzman had constructive

notice of the Sale Order and is deemed to have consented to it by failing to timely oppose it, *id.*

¶¶ 35-36. Village further contends that if it infringed Katzman's copyright, it is a "continuing,"

not a "new" infringement and, thus, it is not actionable under the terms of the Sale Order. *See*

Village Supp. Br. at 2-4. In other words, it maintains the Copyright Action is squarely barred by

the Sale Order Injunction, which bars any claimholder from bringing any claims against Village

---

[43] Letter Hon. Victor Marrero, United States District Court Judge from Scott Alan Burroughs, Esq., as counsel to Katzman, dated June 29, 2021, Case No. 20-08854-VM [Doc. No. 41].

[44] Decision and Order, dated July 14, 2021, Case No. 20-08854-VM [Doc. No. 43] (the "**District Court Decision and Order**").

"in any way relating to . . . the Acquired Assets or the Debtors' businesses prior to the Closing Date." Sale Order ¶ 15. Village contends that because it has maintained and displayed the Store Furnishings in the same manner and place as they were used by the Debtors, it has not committed any actionable "new" infringement that is outside the bounds of the Sale Order Injunction. *See generally* Village Supp. Br.

In the Objection, Katzman contends: (i) Katzman maintains ownership of the copyright of the Subject Photography, Objection ¶ 17; (ii) Fairway had no right to transfer the copyright through the Village APA, *id*. ¶¶ 18-23; (iii) the Sale Order did not transfer such rights to Village, *id*. ¶¶ 24-28, and holding otherwise would exceed the scope of the License, *id*. ¶ 29; (iv) the "first sale doctrine" under copyright law is inapplicable, *id*. ¶¶ 30-38; (v) Katzman cannot be deemed to have consented to the Sale Order because he was entitled to actual notice of the sale, not merely publication notice, *id*. ¶¶ 42-44; (vi) Katzman's failure to file a claim against the Subject Photography constitutes excusable neglect, *id*. ¶¶ 45-52; and (vii) even assuming *arguendo* that the Sale Order enjoins Katzman's claims for infringement that accrued pre-Closing, Village had committed "new" infringement outside the scope of the Sale Order Injunction, *see id*. ¶¶ 39-41. In other words, Katzman contends that a separate infringement accrues every time a customer views its work in the Stores and, thus, gives rise to claims that were not extinguished under the Sale Order. *See* Katzman Supp. Br. at 3.

The Court finds that the Store Furnishings are Acquired Assets under the Sale Order and that Village obtained them free and clear of Katzman's claims of copyright infringement, including those it asserts in the Copyright Action. *See* 11 U.S.C. § 363(f); Sale Order ¶ 15. The Court finds as such because, *inter alia*, Katzman failed to object to the Injunction Motion and, thus, failed to challenge the Debtors' contention that he was an unknown creditor entitled only to

publication notice, not actual notice, of the Confirmation Order.  Because the Court granted the

Injunction Motion, it necessarily found that publication notice was sufficient to bind Katzman to

the Plan Injunction and enjoin him from pursuing the Copyright Action—*i.e.*, the proceeding of a

claim "in any way relating to" the Debtors and the Acquired Assets.  *See* Sale Order ¶ 15.  The

Court finds that this logic applies equally vis-à-vis Kaztman's copyright infringement claims

against Village.  To the extent Katzman's copyright in the Subject Photography was infringed,

that claim commenced pre-Closing and, therefore, does not form an independent cause of action

against Village.  The Court finds that any claim for infringement Katzman holds against Village

is barred by the Sale Order, which enjoins all claims "in any way relating to . . . the Acquired

Assets or the Debtors' businesses prior to the Closing Date."  *Id*.

      These findings are discussed below.

## **Discussion**

### Applicable Legal Standard

      Under section 363 of the Bankruptcy Code, the debtor has the right to "use, sell, or lease,

other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  The

definition of "property of the estate" is broad, and it includes "all legal and equitable interests of

the debtor . . . as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Therefore, property

of the estate encompasses both a debtor's tangible and intangible property, including "the

debtor's intellectual property, such as interests in patents, trademarks and copyrights." *United

States v. Inslaw, Inc.*, 932 F.2d 1467, 1471 (D.C. Cir. 1991).

      Section 363 also allows the debtor to sell property of the estate "free and clear of any

interest in such property" provided:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of
> such interest; (2) such entity consents; (3) such interest is a lien and the price at

which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  "Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met." *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992) (citing 2 Collier on Bankruptcy ¶ 363.07 (15th ed.)).

The term "interests" is not defined by the Bankruptcy Code.  But courts generally take a broad approach, finding "interests" includes "other obligations that may flow from ownership of the property." *See, e.g.*, *Ind. State Police Pension Tr. v. Chrysler LLC (In re Chrysler LLC)*, 576 F.3d 108, 124 (2d Cir. 2009), *vacated as moot*, 592 F.3d 370 (2d Cir. 2010).  Therefore, "[t]he dominant interpretation is that § 363(f) can be used to sell property free and clear of claims that could otherwise be assertable against the buyer of the assets under the common law doctrine of successor liability." *Id.* (citing George W. Kuney, *Misinterpreting Bankruptcy Code Section 363(f) and Undermining the Chapter 11 Process*, 76 Am. Bankr. L.J. 235, 267 (2002)).  For instance, courts have interpreted "free and clear" language to foreclose product liability for vehicles produced by the debtor, employment discrimination claims, and personal injury claims from the transport of toxic materials. *Id.* at 124-26 (collecting cases).

"In [a] contested matter to enforce [a] [s]ale [o]rder and related agreements, the Court's role is to serve as a gatekeeper to determine whether the claims asserted against [a buyer] are barred by a [s]ale [o]rder." *In re Old Carco LLC*, 593 B.R. 182, 189 (Bankr. S.D.N.Y. 2018) (barring claims, in part, on grounds that they are enjoined under terms of the sale order).  "'[T]ruly independent' claims, that is, those based solely on [the buyer's] post-Closing, wrongful conduct, are not barred by a section 363 sale order." *Id.* (quoting *In re Motors Liquidation Co.*,

568 B.R. 217, 230 (Bankr. S.D.N.Y. 2017)).  Courts assessing motions to enforce sale orders

apply basic tenets of contractual construction to determine whether claims are enjoined under the

language of a sale order.  *See, e.g.*, *id.* at 190-92 (enforcing sale order to enjoin claims barred by

unambiguous provisions of the sale order).

<u>Whether the Store Furnishings Containing the Subject Photography Are Acquired Assets</u>

The Court begins its analysis by addressing a threshold question: do the Store

Furnishings that Village continued to display after acquiring the Stores constitute Acquired

Assets under the Village APA?  For the reasons set forth below, the Court finds the Store

Furnishings are Acquired Assets.

Village contends that under the Sale Order, the Debtors conveyed to Village the Acquired

Assets, which include the Stores and the Store Furnishings.  Motion ¶ 19.  It alleges that as a

consequence, it is "statutorily entitled to continue to display [the Store Furnishings] without

liability."  *Id.*  It says that is so because at the time of the sale to Village—irrespective of any

alleged violation of Katzman's copyrights—the Debtors owned all the rights, title, and interests

in the Store Furnishings under the terms of the Sale Order.  *Id.* ¶¶ 22, 24 ("The Sale Order

provides Village with the right to enjoy its purchased assets free and clear of all Claims and

Interests, including those of Katzman.").  Further, Village maintains that even if Katzman had a

claim to the Subject Photography, the Store Furnishings are derivative works of the Subject

Photography to which Katzman has no claim.  *Id.* ¶ 22.  It says that is so because the Store

Furnishings are composed of the Subject Photography, as well as text overlay modifications

created by the Debtors.  *Id.* ¶ 22; Katzman Decl., Ex. 3.

Katzman's contentions principally focus on the License and its copyrights in the Subject

Photography. It contends that the Sale Order did not transfer the License, nor could it, because

23

the License expired before the Debtors sold the Acquired Assets to Village.  *See* Objection

¶¶ 18-23. It also maintains that Village's ownership of the Store Furnishings in no way grants

Village any ownership of the copyright in the Subject Photography. *Id.* ¶ 25. Katzman says that

is so because Katzman never authorized the transfer of the copyright and Village's only basis to

display the Subject Photography was via the License that expired on April 19, 2020. *Id.* ¶ 19.

Further, Katzman contends that even if the License was active, the License—a non-exclusive

intellectual property license—may not be assigned by a licensee under copyright law and, thus,

may not be assumed in the course of bankruptcy proceedings.  *See id.* ¶¶ 21-22. Katzman frames

these arguments by distinguishing ownership of a *copy* of a protected work from ownership of a

*copyright* (and the ensuing exclusive rights, including the right to public display).  *See id.* ¶ 24.

It contends that, at best, Village owns the former under the Sale Order and, thus, violates

Katzman's copyrights in the Subject Photography by continuing to publicly display it in the

Stores on the Store Furnishings.  *See id.* ¶¶ 24-28.  Put differently, Katzman contends that the

Sale Order—which makes no mention of a right to public display of copyrighted material—did

not authorize the transfer of Katzman's copyrights because the Debtors never owned them in the

first place.  *See id.* ¶ 26.  And, it contends, a debtor may not transfer something it does not own

under a bankruptcy sale.  *Id.*

   The parties agree that the Store Furnishings—*i.e.*, the physical store displays that

incorporate the Subject Photography—are Acquired Assets and, thus, were transferred from the

Debtors to Village under the terms of the Sale Order.  *See* Reply ¶ 1.  It is undisputed that

Katzman never transferred its copyright in the Subject Photography to the Debtors (or Village)

and that the License was not an Acquired Asset.  *See* Nov. Hr'g Tr., 6:18-21.  Instead, Katzman

granted the Debtors a non-exclusive license to the Subject Photography that expired as of April

19, 2020—before the parties executed the Village APA.  Katzman Decl., ¶ 4; Objection ¶ 18.

The Court finds that the Store Furnishings are Acquired Assets transferred to Village

under the Sale Order.  The Village APA, approved by the Sale Order, expressly provides for the

transfer of the Acquired Assets, which include, *inter alia*, "Furnishings and Fixtures."  Village

APA § 1.1.  The Village APA defines Furnishings and Fixtures to include "all fixtures . . . [and]

store models . . . owned by the Sellers and located at the Stores."  *Id.*  Under the License, the

Debtors combined the Subject Photography with text interfaces into physical wraps they affixed

to interior and exterior walls throughout the Stores.  The resulting Store Furnishings clearly

constitute Furnishings and Fixtures under the Village APA.  In approving the Village APA, the

Court finds that it authorized the transfer of the Store Furnishings to Village.  *See, e.g.*, Sale

Order ¶ V ("As of the Closing . . . the transfer of the Acquired Assets to the Buyer will be a

valid, legal, and effective transfer of the Acquired Assets.").

Whether the Sale Order Prohibits Katzman from
<u>Bringing Pre-Closing Claims Related to the Acquired Assets</u>

The Court must next determine if Village may permissibly display the Store Furnishings

in the Stores even though it has no License to display the Subject Photography and does not

otherwise own the copyright in the Subject Photography.  The Court finds that it may do so

because Village acquired the Store Furnishings free and clear of all claims, including Katzman's

infringement claims pending in the Copyright Action.  This conclusion rests on two findings.

First, the Court finds that Katzman received constitutionally adequate publication notice of the

Sale Notice and Confirmation Order, which informed it of the Debtors' plan to sell the Acquired

Assets and later informed it of the sale to Village.  Second, the broad language of the Sale Order

is unambiguous and bars Katzman's copyright claims against Village—at least to the extent they

25

accrued before the Closing.  That is because the Sale Order approved the Debtors' transfer of the

Acquired Assets to Village free and clear of all "Interests or Claims . . . in any way relating to

the Debtors . . . or the Acquired Assets."  Sale Order ¶ 15.  The Court finds it appropriate to

enforce the Sale Order with respect to Katzman's claims based on alleged infringement that

accrued before the Closing.  These findings are set forth below; the Court's conclusion with

respect to claims that accrued post-Closing, if any, are set forth in the following section.

As a preliminary manner, the Court finds that Katzman's Objection does not address the

crux of the parties' dispute over the Store Furnishings.  Katzman contends that it owns the

copyright to the Subject Photography, and that the Sale Order could not transfer the Debtors'

then-expired License.  *See, e.g.*, Objection ¶¶ 17-29.  But Village's contention that it may

permissibly display the Store Furnishings in the Stores rests elsewhere.  It does not maintain it

holds a license in or a copyright of the Subject Photography.  Its arguments do not rest on

copyright law.  Instead, it contends that its right to display the Store Furnishings rests on the Sale

Order and section 363(f) of the Bankruptcy Code.  *See* Nov. 2021 Hr'g Tr., 6:12-7:5.  It

maintains that section 363(f), as applied through the Sale Order, strips Katzman and other

claimholders of the right to assert claims "in any way relating to . . . the Acquired Assets or the

Debtor's businesses prior to the Closing date."[45]  Sale Order ¶ 15.

---

[45]    Village relies on *Bryant v. Gordon* to contend that the transferee in a bankruptcy sale cannot lawfully obtain the right to public display of a protected work if the transferor did not first possess that right.  483 F. Supp. 2d 605, 612 (N.D. Ill. 2007).  In *Bryant*, the court found that a bankruptcy sale conveyed to the buyer only the title to merchandise bearing copyrighted images, not the right to continue to display those copyrighted images on the website also included in the sale.  *Id.* at 610-12.  The court reached this holding notwithstanding that the purchaser acquired "[a]ll of Seller's tangible and intangible personal property of any kind" "free and clear of . . . claims of interest."  *Id.* at 611.  Katzman maintains that *Bryant* mandates the Court hold that, like the purchaser in *Bryant*, Village too cannot continue to display the Store Furnishings because the Sale Order does not (and could not) expressly indicate that the Debtors transferred any of Katzman's exclusive rights in the Subject Photography.  *See* Objection ¶ 26.  But Village correctly contends that the alleged infringement in *Bryant* is of a different kind than Katzman claims here.  *See* Reply ¶ 9.  In *Bryant*, the purchaser claimed it acquired the right to "display[] the [copyrighted images] on the website" it purchased as part of the bankruptcy sale.  483 F. Supp. 2d at 613.  But, for the reasons discussed below, the exclusive right to display copyrighted material online implicates "communicat[ion]" between a server and browser such that each view of protected material on a website may accrue

26

The Court finds the broad language of the Sale Order enjoins Katzman from pursuing claims of copyright infringement for any claims that accrued before the Closing of the Village APA. This comports with the plain language of section 363(f), under which the Court approved the Sale Order. *See id*. at 1. Under section 363(f), a debtor-in-possession "may sell property . . . free and clear of ***any*** interest in such property" provided, *inter alia*, that such interest holders consent. 11 U.S.C. § 363(f)(2) (emphasis added). Further, the Sale Order's provisions unambiguously give effect to this broad statutory authority by releasing any claims Katzman may have for copyright infringement that accrued before the Closing. As detailed above, the Sale Order states, *inter alia*:

> As of the Closing and payment of the Purchase Price, the transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets, and will vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets, free and clear of all Claims.

Sale Order ¶ V (Validity of Transfer). It adds that the Debtors have sold the Acquired Assets:

> free and clear of all liens, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), rights, liabilities, encumbrances, and other interests of any kind or nature whatsoever against the Debtors or the Acquired Assets.

*Id*. ¶ P (Free and Clear Sale). In addition, the Sale Order explicitly (and broadly) addresses the types of claims barred under the Sale Order:

> [A]ll persons and entities (and their respective successors and assigns) . . . holding Interests or Claims against the Debtors or the Acquired Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or

---

new claims of infringement. *See* 17 U.S.C. § 101 (defining public "display" of a work); *APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489, 489-99 (finding new display right infringement accrued each time a user visited copyrighted material on NASA.com because online display occurred when the website "stor[ed] thumbnail versions of copyrighted images on its server and communicat[ed] those images to its users.") (citing *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1155-61 (9th Cir. 2007)). That logic does not translate to Village's physical display of the Store Furnishings containing the Subject Photography for the reasons set forth below. *See infra* (discussion of *APL*).

subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity, or otherwise), ***arising under or out of, in connection with, or in any way relating to, the Debtors, the transfer of the Acquired Assets to Buyer, or the Acquired Assets or the Debtors' businesses prior to the Closing Date, hereby are forever barred, estopped, and permanently enjoined from asserting any Interests or Claims relating to the Acquired Assets or the transfer of the Acquired Assets against Buyer*** or its successors, designees, assigns, or property, or the Acquired Assets transferred to Buyer, including, without limitation, taking any of the following actions with respect to or based on any Interest or Claim relating to the Acquired Assets or the transfer of the Acquired Assets to Buyer (other than Assumed Liabilities): (a) commencing or continuing in any manner any action or other proceeding against Buyer or its successors or assigns, assets or properties[.]

*Id.* ¶ 15 (emphasis added).  Further, the Sale Order declaims Village from any successor or derivative liability of the Debtors or their estates:

By consummating the Sale Transaction pursuant to the Purchase Agreement (including operating certain Stores under the Debtors' trade names and in the Debtors' former premises, and offering employment to certain of the Sellers' employees): (i) Buyer is not a mere continuation of any Seller or any other Debtor or any Debtor's estate, and there is no continuity, no common identity, and no continuity of enterprise between Buyer and any Debtor; (ii) Buyer is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger, or de facto merger of Buyer and the Debtors; and (iii) neither Buyer nor any of its successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any obligation or liability of any Debtor[.]

*Id.* ¶ K.

The Court finds that, collectively, these provisions bar Katzman's copyright infringement claims to the extent they accrued pre-Closing.  There is no ambiguity in these and other related provisions in the Sale Order, and Katzman has not demonstrated (or even alleged) anything to the contrary.  Accordingly, the Court sees no reason to depart from the plain meaning of the

Village APA and the Sale Order, which enjoins Katzman's claims in the Copyright Action to the

extent they accrued pre-Closing.  *See In re Old Carco LLC*, 593 B.R. at 190–91 (enjoining

claims when the party challenging the sale order fails to identify any ambiguous provision); *see*

*also Selective Ins. Co. of Am. v. Cnty. Of Rensselaer*, 26 N.Y.3d 649, 655 (2016) ("Therefore, if

a contract 'on its face is reasonably susceptible of only one meaning, a court is not free to alter

the contract to reflect its personal notions of fairness and equity.'" (quoting *Greenfield v. Philles*

*Records*, 98 N.Y. 562, 569 (2002)).

        The Court further finds that the Sale Order, including these provisions enjoining the

Copyright Action, comports with section 363(f) of the Bankruptcy Code because Katzman

repeatedly consented to the bankruptcy sale process.  *See* 11 U.S.C. § 363(f).

        In effect, Katzman provided multiple layers of implicit consent to the Debtors' sale

process and resulting outcomes, including the Sale Notice, Confirmation Order, Sale Order and

the Injunction Motion.  At multiple junctions, Katzman could have, but failed to, object to

receiving publication notice of relevant deadlines, object to the Debtors' sale, or otherwise

attempt to enforce its copyright claims before the Court approved the "free and clear" sale of the

Acquired Assets.  Because Katzman failed to do so, the Court finds it is barred from continuing

the Copyright Action against Village with respect to claims that accrued pre-Closing.

        First, Katzman implicitly consented to the Bidding Procedures Order by failing to file any

objection or otherwise respond.  That order and the Sales Procedures Motion explicitly indicated

that the Debtors planned to sell "substantially all of [their] assets," including, *inter alia*,

"intellectual property" and "fixtures."  Sales Procedures Motion at 1-2; Bidding Procedures

Order at 1-2.  The Debtors indicated their intention to enter into a bankruptcy sale on January 23,

2020, and the Court entered the Bidding Procedures Order on February 21, 2020—near the

conclusion of the Debtors' two-year License under which it had certain rights to utilize and display the Subject Photography.  The Debtors published the contents of the Sale Notice on February 27, 2020.  The Sale Notice, like the related motion and order, indicated that the Debtors intended to sell "substantially all" of their assets, including their "fixtures."  Sale Notice at 2. The Sale Notice also explicitly provided instructions for objecting to the Sale Transaction, "including any objection to the sale of any Assets free and clear of liens, claims, interests, and incumbrances pursuant to section 363(f) of the Bankruptcy Code."  *Id.*  It further noted in bold, capitalized, and conspicuous language that the failure to object "**SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, SALE ORDERS, [AND] THE PROPOSED SALE TRANSACTIONS**."  *Id.*at 3.

In granting the Bidding Procedures Order, the court authorized the Debtors' proposed methods of notice of their asset sale, including publication notice for unknown creditors, as "contain[ing] the type of information required under the . . . Bankruptcy Code, Bankruptcy Rules, and Local Rules."  Bidding Procedures Order ¶ 31.  Given the prior approval—and the terms of the Sale Notice—the Court finds no reason to depart from the Bidding Procedures Order, including its approval of notice by publication.  Under the plain language of the Bidding Procedures Order, Katzman's failure to object to the Sales Transaction after receiving Court-approved notice bars him from now challenging the Motion and continuing the Copyright Action against Village.

Second, even though Katzman contends it is a known, rather than unknown, creditor, Objection ¶ 44, Katzman failed to raise this argument at a time when it was aware of the Injunction Motion—*i.e.*, a claim for relief that mirrors the relief Village now seeks against Katzman.  The Debtors grounded the Injunction Motion on the fact that Katzman was an

unknown creditor and thus was entitled only to constructive notice of the Confirmation Order

and bar date. *See* Injunction Motion ¶ 20. The Debtors published the Confirmation Order Notice

and Administrative Expense Claims Bar Date in the *New York Times* on October 12, 2020. Like

the Sale Notice, it expressly set forth claimants' consequences for failing to object to the

Debtors' bankruptcy sale process. The Confirmation Order includes the claims bar date

(November 6, 2020) and conspicuously explains that "FAILURE TO FILE AND SERVE SUCH

PROOF OF CLAIM TIMELY AND PROPERLY IN ACCORDANCE WITH THE BAR DATE

ORDER SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND

DISCHARGED." Confirmation Order Notice and Administrative Expense Claims Bar Date ¶ 4.

Accordingly, in the Injunction Motion, the Debtors contended that by failing to file a

claim, Katzman was barred from continuing the Copyright Action against the Debtors given that

the Sale Order expressly precluded such action. *See* Injunction Motion ¶¶ 20-21. The Court

agreed and issued the Injunction Order, which required Katzman to dismiss all claims in the

Copyright Action against the Debtors. That finding is relevant here. It is undisputed that

Katzman failed to timely file a claim by the requisite bar date. Katzman contends, however, that

due process concerns dictate that it should have received actual notice, not merely publication

notice, of the Confirmation Order. Objection ¶¶ 43-44. It says that is so because by October 12,

2020—*i.e.*, when the Debtors provided notice of the Confirmation Order—the Debtors: (i) had

directly corresponded with Katzman; (ii) were aware of the terms of the License and that it had

expired; and (iii) knew they were continuing to display Katzman's work without the legal right

to do so. *See id.* ¶ 44.

The Court finds that Katzman's argument misconstrues the relevant timeline of events.

As the Debtors contended in the Injunction Motion, Katzman had not yet commenced the

Copyright Action when the Debtors published the Confirmation Order Notice on October 12,

2020.  Katzman did not file the Copyright Complaint until October 22, 2020—seventeen days

later.  Injunction Motion ¶ 18.  And Katzman did not serve the complaint until November.

Injunction Motion ¶ 18.  While Katzman attempted to contact the Debtors before filing the

Copyright Action and before the Debtors published the Confirmation Order Notice, there is no

evidence in the record that the Debtors received or were otherwise aware of that communication.

Indeed, Katzman itself admits that it received no response to its August 2020 e-mail—a

communication that, on its face, was marked "undelivered" to the Debtors.  *See* Katzman Decl. ¶

5; *id*., Ex. 2.  Accordingly, there is no basis to find that the Debtors violated Katzman's due

process by failing to provide it actual notice of the Confirmation Order.  *See Gillispie v.

Wilmington Trust Co. (In re Motors Liquidation Co.)*, 576 B.R. 761, 773 (Bankr. S.D.N.Y.

2017), *aff'd*, 599 B.R. 706 (S.D.N.Y. 2019) ("If the creditor is 'unknown' to the debtor . . .

constructive notice is generally sufficient."); *In re BGI, Inc.*, 476 B.R. 812, 820 (Bankr. S.D.N.Y.

2012) ("For unknown creditors, constructive notice, such as notice by publication, will suffice.").

But more importantly, even assuming *arguendo* that Katzman could demonstrate that it

should have received actual notice of the Confirmation Order, Katzman failed to raise this

argument in response to the Injunction Motion—a claim for relief expressly predicated on

Katzman being entitled to no more than publication notice of the Confirmation Order.  *See*

Injunction Motion ¶ 20 ("As an unknown creditor, then, Katzman was entitled only to

constructive notice of the Confirmation Order and the Administrative Expense Claims Bar Date,

which it received on October 12, 2020 via the New York Times publication").  It is undisputed

that the Plan Administrator served the Injunction Motion on Katzman and its counsel of record in

the Copyright Action, who is also Katzman's counsel of record here.  Indeed, the District Court

Joint Letter—jointly submitted to the District Court by Katzman and the Debtors—put Katzman

on notice of the Inunction Motion even earlier (before the Debtors filed it). *See* District Court

Joint Letter at 2. Yet Katzman did not argue in response to the Injunction Motion, as it does

here, that it was entitled to actual notice of the Debtors' bankruptcy sale. Indeed, it failed to

respond to the Injunction Motion at all.

Accordingly, the Court finds that the law of the case doctrine bars Katzman from raising

this argument now. As Village contends, in granting the Injunction Motion, the Court

necessarily found that publication notice was sufficient to bind Katzman to the Confirmation

Order and, thus, dictated that the Plan Injunction, including the terms of the Sale Order, barred

Katzman from continuing the Copyright Action against the Debtors. Motion ¶ 12. The Court

finds no basis to revisit that finding here in assessing the Motion, in which Village seeks the

same relief on similar facts.[46] *See De Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("The

law of the case doctrine commands that 'when a court has ruled on an issue, that decision should

generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and

compelling reasons militate otherwise.'" (quoting *United States v. Quintieri*, 306 F.3d 1217,

1225 (2d Cir. 2002))). Katzman has submitted no evidence to the Court that justifies deviation

from the Court's order granting the Injunction Motion. *See* July Hr'g Tr., 12:4-10.

The Court finds that Katzman received adequate notice of the Sale Order and

Confirmation Order, and therefore is found to have consented to their terms, including Village's

---

[46]    Katzman contends that its failure to timely file a proof of claim against the Debtors is the result of excusable
neglect. Objection ¶¶ 45-52. Katzman contends that under that doctrine, it had good reason for failing to file a
claim before the Administrative Expense Claims Bar Date, including *inter alia*, that it attempted to resolve its
dispute with the Debtors pre-litigation and only learned of Village's alleged infringement after the License expired
in April 2020. *See id.* ¶ 51. Village contends that excusable neglect is not applicable to the Motion because
Katzman does not seek to file a late proof of claim, but rather seeks to continue to prosecute the Copyright Action
against Village. Reply ¶ 26. The Court agrees. Further, whether Katzman has good reason for failing to file a claim
in accordance with the terms of the Sale Order has no bearing on its failure to challenge the Inunction Motion, of
which Katzman undisputedly received actual notice.

"free and clear" acquisition of the Store Furnishings and the estoppel of its copyright claims. *See*

Sale Order ¶¶ 15, 18 ("Following the Closing, no holder of any Interest or Claim shall interfere

with the Buyer's title to or quiet use and enjoyment of the Acquired Assets . . . ."). Section

363(f) of the Bankruptcy Code requires nothing more. Based on the above, the Court grants the

Motion to the extent it seeks to enjoin Katzman's claims against Village that accrued before the

Closing Date.

Whether Village's Continued Display of Store
Furnishings Gives Rise to New Infringement Claims

As set forth above, the Court finds that the broad language of the Sale Order extinguished

Katzman's claims concerning copyright infringement that accrued before the Closing of the

Village APA. Katzman contends, however, that Village's continued display of the Store

Furnishings constitutes new infringing actions that accrued post-Closing and, thus, cannot be

prohibited by the Sale Order. Objection ¶ 41. It claims that is so because a section 363 sale

cannot insulate a purchaser from claims that arise after the sale. *Id.* ¶ 39 (citing *In re Old Carco*

*LLC*, 593 B.R. 182 (Bankr. S.D.N.Y. 2018) (noting that a sale free and clear does not insulate a

purchaser from liability for post-sale conduct even though the product was manufactured and

sold before the sale's closing)); *see Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)*,

829 F.3d 135, 157 (2d Cir. 2016) (noting that a section 363 sale order cannot bar a claim that

arises from post-sale wrongful conduct.). Accordingly, Katzman maintains that the Motion

cannot extinguish the Copyright Action to the extent it asserts infringement claims against

Village that accrued after the Closing Date.

The resolution of this issue turns on whether Village's display of the Store Furnishings

constitutes newly accrued infringement claims, or a continuation of the same, enjoined claims

that accrued pre-Closing. Under copyright law, claims accrue when an infringing act occurs.

34

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670-71 (2014). "Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occur[red]." *Id.* at 671. For the reasons set forth below, the Court finds that Village's display of the Store Furnishings does not give rise to a separate claim and, thus, does not give rise to unextinguished infringement claims. For this reason, the Court grants the Motion in full.

As a threshold matter, the Court finds that Katzman's infringement claims against Village for continued display of the Store Furnishings are enjoined under the Sale Order for the same reason as its pre-Closing claims—subject only to whether Village's continued display constitutes newly accrued claims. That is the case because the Objection is still predicated on the argument that Village is exploiting Katzman's copyrights in the Subject Photography by displaying the Store Furnishings—an intellectual property right that Village admits was never part of the Acquired Assets and not a basis for its relief in the Motion. *See supra* (explaining that Village's claim for relief rests on section 363(f) of the Bankruptcy Code and the Sale Order, not any claim to the License or the copyright in the Subject Photography).

Village contends that it is merely displaying the Store Furnishings in the same way and the precise locations the Debtors did—acts they contend are not independent acts of infringement. Reply ¶ 21. Village also contends that the protections of the Sale Order are not limited to the pre-Closing use of the Store Furnishings because, *inter alia*, it is entitled to the quiet enjoyment of the Store Furnishings. *Id.* ¶ 19 (citing Sale Order ¶ 18). Village's second argument misreads the Sale Order. The Court finds that post-Closing infringement, if any—*i.e.*, separately accrued infringing acts committed by Village after the Closing Date—is not enjoined by the terms of the Sale Order. Under its plain language, the Sale Order only enjoins claims that

35

accrued before the Closing. *See, e.g.*, Sale Order ¶ 15 (noting that "all persons and entities . . . in any way relating to, the Debtors, the transfer of the Acquired Assets to Buyer, or the Acquired Assets or the Debtors' businesses ***prior to the Closing Date***, hereby are forever barred, estopped, and permanently enjoined from asserting any Interests or Claims") (emphasis added); *see also id*. ¶ P ("the Debtors may sell the Acquired Assets free and clear of all liens [and] claims . . . arising under or out of, in connection with, or in any way related to the Debtors, the Debtors' interests in the Acquired Assets, [or] ***the operation of the Debtors' business before the effective time of the Closing*** pursuant to the Purchase Agreement, or the transfer of the Debtors' interests in the Acquired Assets . . . .") (emphasis added). This interpretation also comports with the principle that a bankruptcy sale under section 363(f) of the Bankruptcy Code cannot bar claims that arise after the sale. *See Motors Liquidation*, 829 F.3d at 156.

The Court, however, agrees with Village that its display of the Store Furnishings in the same way as the Debtors fails to give rise to a claim that accrued after the Closing Date—*i.e.*, a claim that is not enjoined by the Sale Order. The Court finds this is so because Katzman fails to cite case law to the contrary. Katzman relies solely on *APL* to argue that each time a customer views the Store Furnishings containing the Subject Photography at the Stores, Village has violated Katzman's display rights anew under 17 U.S.C. § 101 *et seq*. *See* Katzman Supp. Br. at 3. As such, Katzman contends that the Copyright Action is not enjoined under the Sale Order because customers in the Stores continue to see the Store Furnishings. *Id*. But *APL* does not support that principle as applied here.

Copyright holders have a right to public display under 17 USC § 101, which states:

> To perform or display a work 'publicly' means—

> (1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or
>
> (2) to transmit or **_otherwise communicate_** a performance or display of the work to a place specified by clause (1) or to the public, **_by means of any device or process_**, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

17 USC § 101 (emphasis added).  The court in *APL* assessed a claim that NASA violated a photographer's exclusive right to display when it posted his copyrighted work (microscopic imagery) on NASA's website.  144 Fed. Cl. at 492.  In assessing the limitations period, the court found that each individual computer user's access to the photography fit within the statutory definition of "display" under 17 U.S.C. § 101 and, thus, constituted a separate infringement of the right to display.  *Id*. at 498-99.  The court said that is so because each time a user accessed NASA.com, his access caused NASA.com to "communicate" the image to the user.  *Id.*; 17 USC § 101.

Village's continuing display of the physical Store Furnishings containing the Subject Photography cannot fit within *APL*'s reliance on the "transmit or otherwise communicate" prong of public display under 17 USC § 101.  Here, display must instead fall within the first definition of "display" under 17 USC § 101, whereby the Store Furnishings are displayed by physical placement within the Stores—*i.e.*, a "place open to the public."  *See* 17 USC § 101.  Unlike in *APL*, here, there is no constant "communicat[ion]" between a server and a computer and, thus, no new, independent infringing act.  In other words, as Village contends, there is no basis to expand *APL* to "tangible objects."[47]  Village Second Supp. Br. at 2.

---

[47]    Moreover, even in cases concerning online display, courts have rejected *APL*'s reasoning.  *See Color Image Apparel, Inc. v. Jaeschke*, No. 21-cv-07187, 2022 WL 2643476, at *2-3 (C.D. Cal June 7, 2022) (finding that the

Further, on analogous facts, cases that consider "new" versus "continuing" infringement of exclusive rights weigh against finding separately accruing acts of infringement. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 701 (9th Cir. 2008) (finding that infringer's use of copyrighted garment hangtags—affixed to different items across multiple months—constitutes a single, "ongoing infringement[] of the same kind," not "many separate and distinct infringements."). If in *Poof Apparel*, manipulating and moving the infringing hang tags on to different articles of clothing did not cause separate and distinct infringements, Village's continued use of the Store Furnishings in the same way as the Debtors cannot then command a different result.

Accordingly, the Court finds that Katzman has only alleged, at best, a continuing infringement that accrued before the Sale Order went effective. Those claims are enjoined by the Sale Order for the reasons set forth above.

### Conclusion

Based on the foregoing, the Court GRANTS the Motion.

IT IS SO ORDERED.

Dated: September 21, 2022
New York, NY

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

---

only infringing act occurred when defendant uploaded copywritten photos to his Instagram account and rejecting notion that each day they remained posted was a separate infringing act).