WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq.
Kevin J. Hale, Esq.

*Counsel for VSM NY Holdings LLC, VSM NY
Distribution LLC and Village Super Market, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | Chapter 11 |
| OLD MARKET GROUP HOLDINGS CORP., *et al.*, | Underlying Case No.: 20-10161 (PB) |
| Reorganized Debtors.[1] | Jointly Administrated |
| OLD MARKET GROUP HOLDINGS CORP., | |
| Appellant, | Case No.: 1:22-cv-10934-PKC |
| v. | Honorable P. Kevin Castel |
| 400 WALNUT AVENUE, LLC, | |
| Appellee. | |

**MEMORANDUM OF VSM NY HOLDINGS LLC, VSM NY DISTRIBUTION
LLC AND VILLAGE SUPER MARKET INC, IN OPPOSITION TO
OLD MARKET GROUP HOLDINGS CORP.'S MOTION FOR LEAVE**

---

[1] The Wind Down Estates in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Old Market Bakery LLC (4129); Old Market Broadway LLC (8591); Old Market Chelsea LLC (0288); Old Market Construction Group, LLC (2741); Old Market Douglaston LLC (2650); Old Market East 86th Street LLC (3822); Old Market eCommerce LLC (3081); Old Market Georgetowne LLC (9609); Old Market Greenwich Street LLC (6422); Old Market Central Services LLC (7843); Old Market Group Plainview LLC (8643); Old Market Hudson Yards LLC (9331); Old Market Kips Bay LLC (0791); Old Market Store LLC (9240); Old Market Pelham LLC (3119); Old Market Pelham Wines & Spirits LLC (3141); Old Market Red Hook LLC (8813); Old Market Stamford LLC (0738); Old Market Stamford Wines & Spirits LLC (3021); Old Market Staten Island LLC (1732); Old Market Uptown LLC (8719); and Old Market Westbury LLC (6240). The location of the Wind Down Estates' corporate headquarters is 2284 12th Avenue, New York, New York 10027. Old Market Community Foundation Inc., a charitable organization, owned by Old Market Group Holdings Corp., is not a debtor in these proceedings.

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND .....................................................................................................4

  A.  The Cure Cost Dispute..................................................................................4

  B.  Memorandum and Order Determining Liability..........................................5

  C.  Debtors' Stated Question Presented..............................................................7

ARGUMENT ...........................................................................................................8

  I.  THE COURT SHOULD DENY THE MOTION AS TO ANY
      ISSUE NOT RAISED IN THE QUESTION PRESENTED ...............................8

  II.  DEBTORS CANNOT SATISFY THE HIGH STANDARDS
       TO SUSTAIN AN INTERLOCUTORY APPEAL....................................9

    A.  The Court Should Deny Interlocutory Review ...........................................10

      1.  There Is No Substantial Ground for Difference of Opinion
          Regarding the Order's Holdings .............................................................10

      2.  Immediate Appellate Review Will Not Materially Advance the Ultimate
          Termination of the Litigation..................................................................12

      3.  Debtors Have Not Demonstrated A "Controlling Question of Law" ....................12

      4.  No Exceptional Circumstances Justify Deviating From the
          General Rule Against Interlocutory Appeals.........................................15

    B.  The Court Should Exercise Its Discretion to Decline Interlocutory Review...............16

CONCLUSION......................................................................................................17

# TABLE OF AUTHORITIES

**Case**                                                                                          **Page(s)**

*AboveNet, Inc. v. SBC Telecom, Inc.,*
    2007 U.S. Dist. LEXIS 13561 (S.D.N.Y. Feb. 26, 2007) ................................................. 10-11

*Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Luxembourg) S.A.,*
    2022 U.S. Dist. LEXIS 157708 (S.D.N.Y. Aug. 31, 2022) ................................................... 12

*In re Ambac Fin. Grp.,*
    693 F. Supp. 2d 241 (S.D.N.Y. 2010) ...................................................................... 10

*In re Anderson,*
    550 B.R. 228 (S.D.N.Y. 2016) ............................................................................ 10

*In re Aquatic Dev. Grp., Inc.,*
    196 B.R. 666 (N.D.N.Y. 1996) ............................................................................. 9

*In re Barnett,*
    2016 U.S. Dist. LEXIS 93101 (S.D.N.Y. July 18, 2016) ...................................................... 12

*In re Enron Corp.,*
    2006 U.S. Dist. LEXIS 63223 (S.D.N.Y. Sept. 5, 2006) ................................................. 10, 15

*In re Facebook, Inc.,*
    986 F. Supp. 2d 524 (S.D.N.Y. 2014) ..................................................................... 16

*In re Flor,*
    79 F.3d 281 (2d Cir. 1996) ............................................................................... 10

*In re Johns-Manville Corp.,*
    39 B.R. 998 (S.D.N.Y. 1984) .............................................................................. 9

*In re Lehman Bros. Holdings Inc.,*
    2014 U.S. Dist. LEXIS 160533 (S.D.N.Y. June 26, 2014) .................................................... 15

*In re Mazzeo,*
    131 F.3d 295 (2d Cir. 1997) .............................................................................. 14

*In re Williams,*
    579 B.R. 314 (S.D.N.Y. 2016) ............................................................................ 12

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*,

    921 F.2d 21 (2d Cir. 1990) ............................................................................... 9-10

*Koehler v. Bank of Bermuda*,

    101 F.3d 863 (2d Cir. 1996) ................................................................................ 15

*Lehman Bros. Special Fin. Inc. v. BNY Corp. Tr. Servs. Ltd.*

    (In re Lehman Bros. Holdings Inc.), 422 B.R. 403 (S.D.N.Y. 2009) .................... 13

*Manrique v. State Farm Mut. Auto. Ins. Co.*,

    2022 U.S. Dist. LEXIS 116965 (S.D.N.Y. July 1, 2022) ...................................... 15

*Maska U.S., Inc. v. Kansa Gen. Ins. Co.*,

    198 F.3d 74 (2d Cir. 1999) ................................................................................. 8-9

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,

    293 F. Supp. 3d 394 (S.D.N.Y. 2018) .............................................................. 3, 13

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,

    555 U.S. 438 (2009) ........................................................................................ 8, 10

*Prout v. Vladeck*,

    319 F. Supp. 3d 741 (S.D.N.Y. 2018) ................................................................. 16

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,

    2017 U.S. Dist. LEXIS 176149 (S.D.N.Y. Oct. 24, 2017) ........................ 12-13, 14

## Statutes

11 U.S.C. §101(5) ........................................................................................................ 9

11 U.S.C. §363(f) ........................................................................................................ 8

11 U.S.C. §365 ................................................................................................... *passim*

11 U.S.C. §1107(a) ..................................................................................................... 8

28 U.S.C. §158(a)(3) .................................................................................................. 9

28 U.S.C. §1292(b) ........................................................................................... *passim*

Parties-in-interest VSM NY Holdings LLC, VSM NY Distribution LLC and Village Super Market, Inc, (collectively, "Village"), respectfully submit this memorandum of law in opposition to the Plan Administrator's[2] Motion for Leave to Appeal dated December 26, 2022, [ECF 1323] ("Motion"), from the Bankruptcy Court's *Memorandum Decision and Order on Threshold Legal Issues With Respect to 400 Walnut Avenue LLC's Cure Claim*, entered on December 13, 2022 ("Order").

## PRELIMINARY STATEMENT

Debtors' Plan Administrator seeks interlocutory review of a ruling that interpreted oft-utilized Bankruptcy Code provisions permitting a debtor's sale of assets free and clear of all claims against a debtor, including permitting assignment of leases, conditioned on the debtor-seller's cure of all defaults under such leases as a condition of assignment. Those Bankruptcy Code provisions form the foundations of the Sale Order, as defined below, issued by Bankruptcy Judge Garrity and interpreted by Bankruptcy Judge Bentley, that approved the sale to Village of the bulk of Debtors' store assets, and assignment of the leases for the premises from which the stores were operated. One of the leases assigned pursuant to the Sale Order is the Lease underlying the subject dispute, covering the premises known as the "PDC" in the Bronx. The Sale Order required, consistent with Section 365 of the Bankruptcy Code, that Debtors cure all defaults under the leases to be assigned, including the subject Lease, as a condition to assumption and assignment, including paying all amounts to Landlord caused by Debtors' failures to perform the Lease terms, except for lease obligations expressly assumed by Village. Under the controlling documents, Village only assumed liability for one month's pre-bankruptcy rent, and any obligations under the Lease that first arose after Closing of the sale to Village. The Sale Order recognized this in paragraphs 15, 25, 27-28,

---

[2] "Debtors" or "Plan Administrator" as used herein includes the Wind Down Estates and the Plan Administrator for the Wind Down Estates, Old Market Group Holdings Corp. and its affiliates.

and 30 by exonerating Village from all liability for any other claims by Landlord and requiring Debtors to pay all other amounts required to satisfy the statutory requirements. Instead of accepting their responsibility to make whatever payments the Court determines Landlord is entitled to, Debtors seek to foist responsibility for those payments onto Village, which Judge Bentley held was barred by the terms of the APA and Sale Order, the terms of which control over an Assignment and Assumption of Lease ("A&A Agreement") containing the "As-Is" language. Sale Order ¶38.

As a preliminary matter, the "Question Presented" section of the Motion only presents the issue of whether pre-Closing contingent, unliquidated or unmatured claims against Debtors held by Landlord require cure under Section 365 of the Bankruptcy Code as a condition to assignment of the Lease ("Default Issue"). The Motion itself, however, raises arguments implicating the free and clear transfer of assets to Village ("As-Is Issue"), as well as arguments previously abandoned. Notably, Debtors cite no authorities as to the As-Is Issue at all, seemingly confirming that they do not seek interlocutory review of that aspect of the Order given the lack of any assertion of a substantial ground for difference of opinion on that issue.

As to the merits, Debtors do not meet the standard for leave. Interlocutory appeals are only permitted where a movant demonstrates that (i) the order to be appealed presents a controlling question of law, (ii) there is a substantial ground for difference of opinion as to the controlling question, and (iii) immediate appeal would materially advance the ultimate termination of the litigation. Even where the requirements are met, interlocutory appeals are only granted if there are exceptional circumstances justifying immediate review. Debtors demonstrate none of the foregoing.

20-10161-pb    Doc 1331    Filed 01/09/23    Entered 01/09/23 23:51:31    Main Document
Pg 7 of 22

The Motion fails to present a controlling issue of law, as the consideration of the Default Issue does not involve purely legal issues. Rather, to understand the Default Issue, this Court would be required to review the Lease and the multiple pleadings filed by Landlord, Debtors and Village on the issues concerning Landlord's cure claims under the Lease, as well as the APA, Sale Order and other documents generated as part of the sale. And an appeal would require this Court to examine and reject the Bankruptcy Court's finding (Order 12) that Landlord did in fact give Debtors a notice demanding repairs under the Lease on March 9, 2020, which was more than 30 days before the Closing, thereby satisfying the notice requirements under the Lease on which Debtors base their argument of "no default". Consideration of the Bankruptcy Court's factual findings is a far cry from the pure question of law required for an interlocutory appeal. *See McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 399 (S.D.N.Y. 2018).

Debtors cannot satisfy the second element of a substantial ground for difference of opinion either. They do not assert that the dispute over the Default Issue is one of first impression. Moreover, the few cases cited in their argument regarding the Default Issue establish no substantial ground for a difference of opinion as to the Order's logical holdings.

As to the third element, a ruling in Debtors' favor on any or all issues will not end the litigation. If this Court reverses the Order only as to the Default Issue (the only issue for which Debtors properly seek interlocutory review) Landlord may later appeal the Bankruptcy Court's ruling on the As-Is Issue. And the record in this case reveals that further litigation between Landlord and Debtors in the context of the Cure Claims will be necessary to adjudicate the remainder of Landlord's claims for damages related to outstanding fees for Fire Department of New York summonses for violations, an outstanding water bill, and Landlord's attorneys' fees.

3

Moreover, even if Debtors could meet the standard for interlocutory review, this Court should exercise its discretion and decline. The Motion fails to show the exceptional circumstances required for an interlocutory appeal and should be rejected.

## BACKGROUND

### A.    The Cure Cost Dispute

On January 23, 2020, Debtors filed their Chapter 11 Petitions, together with the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sales of Debtors' Assets, et al*. On February 21, 2020, Debtors filed a Notice of Cure Costs of Unexpired Leases ("Cure Notice").

On March 4, 2020, Landlord filed an initial objection and later an amended objection on March 9th [ECF 262, 283] ("Amended Objection"), which, more than 30 days prior to entry of the Sale Order and the Closing, provided notice to Debtors of its cure obligation.

After Village was announced as the successful bidder, Debtors and Village entered into an Asset Purchase Agreement, which was later amended on May 6, 2020 [ECF 473] (as amended, "APA"). The Bankruptcy Court approved the APA in an Order entered on April 20, 2020 [ECF 449] ("Sale Order"). The Sale Order is expressly made binding on Landlord, who appeared in defense of its rights prior to entry. The Sale Order holds the assets are sold free and clear of all Claims against Debtors that existed as of the Closing Date, and bars Landlord from asserting any such Claims against Village, with Claims broadly defined to include contingent, unliquidated or disputed Claims held by any creditor, including Landlord.

On January 15, 2021, Landlord filed the Motion to Compel Debtors to Pay Cure Costs [ECF 947] ("Motion to Compel"). Debtors filed opposition on April 30, 2021 [ECF 1046], which argued that Village is liable for Landlord's Cure Costs, reasserting that position in a letter filed on

May 17, 2022.  ECF 1234.  On May 24, 2022, Village filed a response, noting that the Plan

Administrator's position ignores explicit provisions of the Sale Order.  ECF 1236.  The Bankruptcy

Court entered a Scheduling Order on July 3, 2022 identifying two disputed issues:  "[First] whether

as a result of repairs allegedly necessary…at the time Fairway assigned the Lease to Village under

the Sale Order and Village APA, Landlord could demonstrate that it suffered any actual or

hypothetical damages thereby entitling it to recover cure costs ('Damages Issue')....  [Second,

interpretation of the "as is, where is" clause of the Village APA ... ('As-Is Issue')]."

On July 14, 2022, Village filed its statement [ECF 1255], followed by Landlord's statement

filed on July 28, 2022 [ECF 1263], and Debtors' statement filed on August 18, 2022 [ECF 1268].

On August 26, 2022, Village filed a reply [ECF 1270] to address new arguments raised by Debtors.

On September 1, 2022, Landlord moved to allow the filing of a sur-reply [ECF 1272],

which Debtors opposed [ECF 1276].  The Bankruptcy Court held oral argument on November 9,

2022, and reserved decision.  On November 14, 2022, Landlord filed a letter confirming it does

not seek to recover twice on any one specific defect in the PDC property.  ECF 1310.

### B.    Memorandum and Order Determining Liability

On December 13, 2022, the Bankruptcy Court entered the Order, which identified the

threshold issues:

> [F]irst, that any repairs [Debtors] may have been required to make are now the
> responsibility of Village, the new tenant ....  According to the Debtors, the Landlord
> can compel Village to make all such repairs, and therefore the Landlord has
> suffered no pecuniary harm and has no cure claim under...§ 365(b) [As-Is Issue].
> Second, the Debtors contend that none of their repair obligations ripened into
> defaults under the lease, and therefore none are defaults requiring cure under
> Section 365(b), because the Landlord supposedly failed to serve the Debtors with a
> demand or notice of the need to make these repairs prior to the filing of its cure
> claim [Default Issue].

Order 2-3.  The court found "Debtors' threshold arguments to be without merit."  *Id.* at 3.

The As-Is Issue impacts Village's potential liability for having assumed a lease in a bankruptcy sale.  The Bankruptcy Court held that the "extensive" free and clear provisions, which Debtors agreed to "contained in the sale order insulate Village from liability for all claims for pre-sale defects, and this protection is not contingent on Landlord having demanded repairs prior to the filing of its cure claim."  *Id.*  The court also acknowledged that

> Village's responsibility for cure costs would be limited to one month's rent, a sum that Village paid at closing.  Consistent with this limitation, the Sale Order specifically shielded Village from any liability to counterparties, including the Landlord, for cure claims or pre-sale defaults of any sort[.]

*Id.* at 5-6.  The court found that the free and clear provisions adequately shield Village from the liability Debtors seek to foist upon it and that

> [i]n light of these free-and-clear provisions, the "as is" provisions of the APA and the A&A Agreement cannot be read to make Village responsible for defective conditions that arose before the sale.... [and do] not...impose any affirmative repair obligation on Village…. [T]his narrower construction is the most natural reading of the "as is" provisions...[and] harmonizes these provisions with the APA's unambiguous free-and-clear provisions, as settled contract interpretation principles require.

*Id.* at 10-11.  The decision also recognized the Sale Order's "conflicts clause" provided that the Order supersedes all other documents and governs in the event of a conflict with the APA and A&A Agreement (Sale Order ¶38), and that "the provisions of the Lease, including its ongoing-repair provision, are trumped by the [APA]."  *Id.* at 11.  The Bankruptcy Court ultimately held:

> For these reasons, the Court finds that, to the extent repairs were needed at the time of the Village sale, *a claim for those repairs existed under the Sale Order's free and clear provisions*, and those provisions shield Village from any liability on account of that claim.  Thus, contrary to the Debtors' contention, the Landlord's only recourse for any defective conditions that existed at the time of the sale is to recover on its cure claim against the Debtors.

*Id.* at 13 (emphasis added).  Importantly, the Motion does not contend that the court's interpretation of the Sale Order, the APA and the other closing documents were in error, and Debtors' arguments

that Village has somehow received a windfall by obtaining the benefit of its bargain should be rejected. Mot. 2.

As to the Default Issue, the Bankruptcy Court stated that

[T]he lack of any prior demand [does not] make the required repairs any less a default that must be cured under Section 365. Both the text and the purposes of that section compel the conclusion that the statutory term 'default' means any failure to perform under the assumed contract or lease, regardless of the definition of default contained in that contract or lease.

*Id.* at 3. The court held that Debtors' argument that no claim for repairs existed under the Sale Order failed for two reasons: (1) The elements under paragraph 19(a)(4) of the Lease to trigger an Event of Default, as defined therein, were satisfied by Landlord's filing of the Amended Objection, and (2) the text of Section 365(b)(1) compelled a finding that a "default" exists under that Bankruptcy Code section, even where a default would not exist under any relevant contracts. *Id.* at 16. The court cited multiple cases for the proposition that "default" under Section 365(b)(1) had to be given its "plain and ordinary meaning," *i.e.*, "the failure to perform or fulfill some obligation or duty imposed by law or contract." *Id.* The Bankruptcy Court noted that the purpose of Section 365(b)(1), to reduce the burden on counterparties imposed by the section, is better served when a broader range of "defaults" can be enforced against a debtor, to prevent debtors from receiving windfalls while leaving counterparties without recourse. *Id.* at 17-18.

## C.    <u>Debtors' Stated Question Presented</u>

Debtors' Question Presented only raises challenges to the Default Issue. The Motion is procedurally problematic, however, as it appears to advocate for reversal as to the As-Is Issue and other legal arguments Debtors abandoned. For example, the Motion makes assertions regarding the effects of the Sale Order's free and clear provisions, as well as Village's responsibilities under the APA's As-Is clause. Mot. 8-10. Debtors also appear to argue that Landlord waived its right

to demand cure by failing to demand repairs prior to filing the Amended Objection, which counsel

confirmed had been dropped at an earlier hearing.  *See* Mot. 10 n.3; Order 7 n.5.  Consequently,

Village is compelled to address all such issues to protect the record.

## ARGUMENT

## I.    THE COURT SHOULD DENY THE MOTION AS TO ANY ISSUE NOT RAISED IN THE QUESTION PRESENTED.

Sections 363 and 365 of the Bankruptcy Code are the principal statutory bases used by

Debtors to effectuate free and clear sales of their assets as a going concern, and thereby maximize

the value of those assets for the benefit of their creditors.  Those provisions allow assets to be sold

free and clear of all claims of creditors, including liens and unsecured claims.  11 U.S.C. §363(f).

Section 365 allows executory contracts and unexpired leases to be assigned to purchasers, even in

the face of provisions restricting assignment of such contracts.  11 U.S.C. §365(f)(1).  However, a

debtor[3] may only an assign a contract or lease if it first assumes such contract or lease, 11 U.S.C.

§365(f)(2)(A), and a debtor may not assume a defaulted contract unless it cures such defaults and

compensates the counterparty for monetary loss resulting from such defaults.   11 U.S.C.

§365(b)(1).  Debtors utilized both provisions in the sale to Village.

Debtors' Question Presented identified only the Default Issue as grounds for its requested

appeal.  Issues not identified in the Questions Presented are not appropriate for consideration on

appeal.  *See Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009) (refusing to

address issues "outside the scope of the question presented").

In addition, arguments waived below, either by failure to advance them or through express

waiver, cannot be considered on appeal.  *See Maska U.S., Inc. v. Kansa Gen. Ins. Co*., 198 F.3d

---

[3] "Trustee" as used in Sections 363 and 365 includes a Chapter 11 case debtor.  11 U.S.C. 1107(a).

74, 79-80 (2d Cir. 1999) (appellate court finding no reason to revive an abandoned argument that

the party "explicit[ly] and repeated[ly] disclaime[d]").  Here, Debtors have apparently resurrected

at least one abandoned argument–that Landlord missed its opportunity to claim defaults against

Debtors as it never took steps to establish a breach or default under the Lease before the Cure

Notice was filed, while in the very same footnote Debtors argue that Landlord still has the right to

demand Village make repairs pursuant to the lease's no-waiver clause.

Notwithstanding the foregoing, the Court should limit its consideration to the single issue

raised by the Question Presented.

## II.    DEBTORS CANNOT SATISFY THE HIGH
## STANDARDS TO SUSTAIN AN INTERLOCUTORY APPEAL.

Debtors implicitly concede that the Order is a non-final, interlocutory order.  Both statute

and case law forbid the piecemeal review that Debtors now seek.

While 28 U.S.C. § 158(a)(3) grants a limited right to appeal non-final bankruptcy court

orders, "[t]he Bankruptcy Code and Rules do not provide a standard for evaluating the merits of a

motion for leave to appeal an interlocutory order," but courts "apply, by analogy, the standards set

forth in 28 U.S.C. § 1292(b) governing the appealability of interlocutory decisions of district court

judges" to determine whether to permit interlocutory appeals under Section 158(a)(3).  *In re*

*Aquatic Dev. Grp., Inc.*, 196 B.R. 666, 669 (N.D.N.Y. 1996); *see also In re Johns-Manville Corp*.,

39 B.R. 998, 998-99 (S.D.N.Y. 1984).  Debtors must demonstrate all three elements to succeed:

(1) The "order involves a controlling question of law;" (2) "there is a substantial ground for

difference of opinion" on the legal question presented; and (3) "an immediate appeal from the

order may materially advance the ultimate termination of the litigation...."  28 U.S.C. § 1292(b).

Even where a movant demonstrates that all three criteria exist, leave will still only be

granted if "exceptional circumstances [will] justify a departure from the basic policy of postponing

9

appellate review until after the entry of a final judgment." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990) (citation omitted); *see also In re Enron Corp.*, 2006 U.S. Dist. LEXIS 63223, at *16-17 (S.D.N.Y. Sept. 5, 2006) (interlocutory appeals are disfavored and only warranted upon showing of "exceptional circumstances"). For the reasons set forth below, the Motion fails to meet the requisite three elements and exceptional circumstances.

> ### A.    The Court Should Deny Interlocutory Review
>
> #### 1.    There Is No Substantial Ground for Difference of Opinion Regarding the Order's Holdings

Section 1292(b)'s "substantial grounds for a difference of opinion" prong is met when either "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *In re Anderson*, 550 B.R. 228, 238 (S.D.N.Y. 2016). The district court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute.'" *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (emphasis in original). "A mere claim that a … decision was incorrect does not suffice to establish substantial ground for a difference of opinion." *In re Ambac Fin. Grp.*, 693 F. Supp. 2d 241, 285 n.6 (S.D.N.Y. 2010).

Debtors tacitly admit in their Motion that the Order raises no question of first impression. Rather, Debtors claim there is "conflicting authority" as to the Bankruptcy Court's conclusion that the Lease was in default within the meaning of Section 365(b)(1)(a). Mot. 9. And while the Motion contends, in conclusory fashion, that the conflicting authority gives rise to substantial grounds for a difference of opinion, Debtors do nothing more than simply disagree with the court's application of the law. In so doing, they fail to meet the high standards required. Indeed, in *AboveNet, Inc. v. SBC Telecom, Inc.*, cited by Judge Bentley, the court characterized debtors'

argument that no default could exist because of a lack of notice as "frivolous." 2007 U.S. Dist. LEXIS 13561, at *3 (S.D.N.Y. Feb. 26, 2007).

Notably, the cases Debtors cite to demonstrate a conflicting authority are focused only on the Default Issue. No case they cite attempts to point out any conflicting authority related to the As-Is Issue, the Bankruptcy Court's interpretation of same or the free and clear provisions of the APA and Sale Order. Therefore, to the extent that there is an attempt to have this Court hear the As-Issue Issue, the Motion should be denied. *See* Mot. 9-11.

The arguments with respect to the Default Issue are insufficient to meet Debtors' burden of showing a "substantial" dispute. One of Judge Bentley's conclusions that a default existed is his finding that the Lease's notice provisions were satisfied by Landlord's Amended Objection alerting Debtors to claims for unperformed repairs. Order 12.[4] In addition to the Debtors' contrary argument being legally frivolous, in the words of the *AboveNet* Court, Judge Bentley's finding is not seriously challenged by Debtors. Thus, there is no substantial basis for a difference of opinion as to whether a default existed at the time of the sale. Similarly, Debtors have made no effort to identify the basis for a difference of opinion with respect to the Bankruptcy Court's definition of the term default, as the failure to fulfill an obligation, consistent with most dictionary definitions of that term. The Lease indisputably obligates tenant to make certain repairs, the tenant does not claim it made those repairs, and, thus, under the dictionary definition a default existed.

The Order lays out at pages 13-18 the extensive case law supporting Judge Bentley's conclusions. While the Debtors may disagree with those conclusions, none of the disagreements warrant interrupting the normal progress of this matter in order to adjudicate issues on appeal

---

[4] In assessing Debtors' argument that no default within the meaning of Section 365 existed, Judge Bentley held that Debtors received adequate notice and "both of the elements required for an Event of Default to arise under the Lease appear to have been satisfied at the time of the sale." Order 12.

prematurely. Dissatisfied litigants like Debtors "may not utilize §1292(b) as a means for securing early resolution of disputes concerning whether the [Bankruptcy Court] properly applied the law to the facts." *In re Barnett*, 2016 U.S. Dist. LEXIS 93101, at *10 (S.D.N.Y. July 18, 2016). Therefore, the request for leave should be denied.

**2.    Immediate Appellate Review Order Will Not Materially
Advance the Ultimate Termination of the Litigation**

The contention that the litigation will immediately terminate if this Court finds that the Bankruptcy Court was in error in its determination of the Motion is an overoptimistic assessment, since Landlord has made claims for other amounts unrelated to repairs, including two FDNY summonses for fire code violations, an outstanding water bill, and Landlord's attorney's fees for litigating this action. *See* Mot. to Compel 15-17. Because of these outstanding issues, reversal will not obviate the need for a trial or other dispositive motion practice as Debtors suggest.

**3.    Debtors Have Not Demonstrated
A "Controlling Question of Law"**

The Motion correctly states that "the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." Mot. 5 (citing *Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Luxembourg) S.A.*, 2022 U.S. Dist. LEXIS 157708, at *18 (S.D.N.Y. Aug. 31, 2022)). However, Debtors fail to present such an issue.

Both the dispute over the As-Is and Default Issues are not controlling questions of law. Mot. 5. Rather, they involve factual analyses – such as a careful review of the Lease, prior filings, and an understanding of the facts surrounding the defaults and notices sent and received during the case. Indeed, the Bankruptcy Court's conclusion that a default existed prior to entry of the Sale Order, which is central to the Default Issue, is a factual determination to be assessed under the "clearly erroneous" standard of review. *See In re Williams,* 579 B.R. 314, 320 (S.D.N.Y. 2016). "[M]ixed questions of law and fact are not appropriate for interlocutory review." *Sec. Inv.*

12

*Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2017 U.S. Dist. LEXIS 176149, at *9 (S.D.N.Y. Oct. 24, 2017).

An appeal from the Order will require this Court to perform "the same careful study of the record" that was undertaken by the Bankruptcy Court.  *See Lehman Bros. Special Fin. Inc. v. BNY Corp. Tr. Servs. Ltd. (In re Lehman Bros. Holdings Inc.)*, 422 B.R. 403, 407 (S.D.N.Y. 2009); *McGraw-Hill*, 293 F. Supp. 3d at 399 ("a question of law 'must refer to a 'pure' question of law that the reviewing court 'could decide quickly and cleanly without having to study the record'") (citation omitted)).  Debtors' characterization of the issue as stated in its "Question Presented" omits an essential step in the process.  Mot. 6.  Because the Bankruptcy Court found that a default for purposes of Section 365 did exist, this Court will be required to review the fact-bound determinations of whether a present default existed.  In concluding that a default did exist, the Bankruptcy Court weighed a record that covered substantial activity.  Upsetting that finding requires far more than a determination of a clean legal issue.

Nor is there a substantial basis for disagreement with the Bankruptcy Court's conclusion that default existed.  Debtors place great reliance on the language of the A&A Agreement.  However, as the Bankruptcy Court pointed out, that document is subordinate to the Sale Order (Sale Order ¶38), which effectively shields Village from any liability for conditions that existed as of the time of Closing.  Further, the A&A Agreement is only operative between Debtors and Village and create no rights in Landlord.  As all amounts that Landlord seeks from Debtors arise from conditions that existed as of Closing, none of the amounts sought by Landlord here are the responsibility of Village.  Debtors make no showing that Judge Bentley's reading of the Sale Order was error warranting an interlocutory appeal.

Debtors' arguments regarding the remaining issues are equally lacking as to a controlling issue as it will require this Court "to study the record."  For example, Debtors argue that the Bankruptcy Court acknowledged "there could not have been any defaults relating to repair obligations under the terms of the Lease until at least *thirty days after* Landlord filed its [Amended] Objection demanding that Fairway remedy those future defaults."  Mot. 6.  However, the court reviewed the factual record and found that, even *if* such a notice was necessary to create an "Event of Default" as defined by the Lease, such notice was given by the Amended Objection more than thirty days before the sale was consummated.  Order 12.

Reviewing the record regarding the issue of what constitutes a "claim"–a term that the APA provided was the same as the expansive definition established in Section 101(5)–reveals that the Bankruptcy Court applied the matter's facts to the statutory definition.  Below, Debtors argued for the first time at the November 9, 2022 hearing that Landlord's repair claims were not even "claims" covered by the free-and-clear provisions.  Order 12.  The Bankruptcy Court correctly rejected the argument as the "claim" against Debtors had already arisen regardless of whether Landlord gave formal notice of its demand or not, and Debtors' counsel admitted that the repair obligation arose whenever repairs were required, not just when demanded.  Order 12.[5]

Should this Court grant leave, it will have to review the same factual record regarding the interpretation of the APA, the Lease, and the facts surrounding the Amended Objection.  Thus, the Court will be required to engage with questions of fact, or with mixed questions of law and fact, which are not are not appropriate for interlocutory review.  *See Sec. Inv.*, 2017 U.S. Dist. LEXIS 176149, at *9.

---

[5] Claims that require a future event to occur before they become a debtor's legal duty are still claims under Section 101(5).  *See In re Mazzeo*, 131 F.3d 295, 303 (2d Cir. 1997).

### 4.    No Exceptional Circumstances Justify Deviating
### From the General Rule Against Interlocutory Appeals

Even when all three requirements under Section 1292(b) are satisfied, "interlocutory appeals from bankruptcy courts' decisions are disfavored in the Second Circuit [and are]...warranted only when the movant demonstrates the existence of exceptional circumstances...." *Enron*, 2006 U.S. Dist. LEXIS 63223, at \*16-17 (internal quotations and citations omitted).  As this Court has previously held, "federal practice strongly disfavors discretionary interlocutory appeals [as they] prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions." *In re Lehman Bros. Holdings Inc.*, 2014 U.S. Dist. LEXIS 160533, at \*4 (S.D.N.Y. June 26, 2014).

"Exceptional" cases are those where an immediate appeal would avoid "protracted litigation." *Koehler v. Bank of Bermuda*, 101 F.3d 863, 865-66 (2d Cir. 1996).  Section 1292(b) is "aimed at is the 'big' and expensive case where an unusual amount of time and money may be expended in the pre-trial phases of the case or where the trial itself is likely to be long and costly." *Manrique v. State Farm Mut. Auto. Ins*. Co., 2022 U.S. Dist. LEXIS 116965, at \*10 (S.D.N.Y. July 1, 2022) (citation omitted).  Just because a case may be complicated to litigate, does not mean that exceptional circumstances exist to justify an appeal. *Id.* at \*15 (no exceptional circumstances where the movants argued that a class action is by definition "timely and costly").  A case with narrow focus is also not the kind that justifies a finding of exceptional circumstances. *Lehman Bros.*, 2014 U.S. Dist. LEXIS 160533, at \*8-9 (no exceptional circumstances in a case with a potential $26 million payout where the "remaining proceedings before the bankruptcy court [were] focused on a single, discrete issue and would not require prolonged pretrial and trial efforts.").

15

This case is not likely to be the kind of protracted litigation contemplated by Section 1292(b) or the case law and will not result in a "long and costly trial" or the expenditure of an "unusual" amount of time and money in the pretrial phases. Rather, this case focuses on narrow, discrete factual disputes that can be effectively litigated, through trial if necessary, without prolonged pretrial and trial efforts. Further, granting an appeal would result in the type of piecemeal and duplicative litigation that Congress sought to prevent and would delay conclusion of the entire matter. *See Prout v. Vladeck*, 319 F. Supp. 3d 741, 746 (S.D.N.Y. 2018).

**B.** **The Court Should Exercise Its Discretion to Decline Interlocutory Review**

Even where statutory requirements are met and exceptional circumstances are present, the Court retains discretion to decline the appeal to mitigate docket congestion and avoid "the system-wide costs and benefits of allowing the appeal." *In re Facebook, Inc.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014). Without dispute, the issues in the Motion are basic and well-understood bankruptcy matters that bankruptcy courts often consider and decide on a daily basis. This Court should exercise its discretion to deny the Motion as an appeal would needlessly delay the trial court's efforts to move the case to conclusion.

## **CONCLUSION**

Village respectfully submits that Motion for Leave to Appeal should be denied, or in the

alternative, limited to only an appeal of the Default Issue.


Dated: New York, New York
        January 9, 2023

                                        Respectfully submitted,

                                        WOLLMUTH MAHER & DEUTSCH LLP

                                         _/s/ Paul R. DeFilippo_____
                                        Paul R. DeFilippo
                                        James N. Lawlor
                                        Joseph F. Pacelli
                                        Kevin J. Hale
                                        500 Fifth Avenue
                                        New York, New York 10110
                                        Telephone:  (212) 382-3300
                                        Facsimile:   (212) 382-0050

                                        *Attorneys for VSM NY Holdings LLC, VSM NY*
                                        *Distribution LLC and Village Super Market, Inc.*

# CERTIFICATE OF COMPLIANCE

This Opposition complies with the type-volume limit of Fed. R. Bankr. P. 8013(f)(3)(A) because, excluding the parts of the document excepted by Fed. R. Bankr. P. 8015(g), this document contains 5,200 words.

Dated: New York, New York
       January 9, 2023

Respectfully submitted,

WOLLMUTH MAHER & DEUTSCH LLP

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo
James N. Lawlor
Joseph F. Pacelli
Kevin J. Hale
500 Fifth Avenue
New York, New York 10110
Telephone:  (212) 382-3300
Facsimile:   (212) 382-0050

*Attorneys for VSM NY Holdings LLC, VSM NY Distribution LLC and Village Super Market, Inc.*