UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                  )     **NOT FOR PUBLICATION**

In re                                              )

                                                  )     Chapter 11

OLD MARKET GROUP HOLDINGS     )

CORP., *et al*.,                           )     Case No. 20-10161 (PB)

                                                  )

        Debtors.[1]                         )     (Jointly Administered)

------------------------------------------------------------x

## MODIFIED BENCH RULING AND ORDER DENYING
## DEBTORS' MOTION FOR STAY PENDING APPEAL

**APPEARANCES:**

WEIL, GOTSHAL & MANGES LLP
*Counsel for the Plan Administrator*
767 Fifth Avenue
New York, New York 10153
<u>By</u>:    Jared R. Friedmann

ANSELL GRIMM & AARON, PC
*Counsel for 400 Walnut Avenue, LLC*
365 Rifle Camp Road
Woodland Park, NJ 07424
<u>By</u>:    Anthony J. D'Artiglio

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of their federal tax identification number, are as follows: Old Market Bakery LLC (4129); Old Market Broadway LLC (8591); Old Market Chelsea LLC (0288); Old Market Construction Group, LLC (2741); Old Market Douglaston LLC (2650); Old Market East 86th Street LLC (3822); Old Market eCommerce LLC (3081); Old Market Georgetowne LLC (9609); Old Market Greenwich Street LLC (6422); Old Market Group Central Services LLC (7843); Old Market Group Plainview LLC (8643); Old Market Hudson Yards LLC (9331); Old Market Kips Bay LLC (0791); Old Market Store LLC (9240); Old Market Pelham LLC (3119); Old Market Pelham Wines & Spirits LLC (3141); Old Market Red Hook LLC (8813); Old Market Stamford LLC (0738); Old Market Stamford Wines & Spirits LLC (3021); Old Market Staten Island LLC (1732); Old Market Uptown LLC (8719); and Old Market Westbury LLC (6240).

**PHILIP BENTLEY**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Debtors' motion for a stay, pursuant to Bankruptcy Rule 8007(a)(1)(A), of further proceedings in this litigation — a cure claim dispute with their landlord, 400 Walnut Avenue (the "Landlord") — pending their requested interlocutory appeal of the Court's December 13, 2022 memorandum decision, *In re Old Market Grp. Holdings Corp.*, 647 B.R. 104 (Bankr. S.D.N.Y. 2022).[2] That decision ruled against the Debtors as to certain threshold issues (the "Threshold Issues"), which the Debtors had hoped would obviate the need for further discovery or a trial. Following its December 13 decision, the Court directed the parties to resume discovery and proceed toward trial, prompting the Debtors to file this stay motion.

Courts in this circuit consider four factors when deciding whether to grant a stay pending appeal pursuant to Rule 8007:

(1) whether the movant will suffer irreparable injury absent a stay;
(2) whether another party will suffer substantial injury if a stay is issued;
(3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; and
(4) the public interest that may be affected.

*In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016) (citations omitted).

Courts are divided as to whether movant must satisfy all four of these factors, or whether a "sliding scale" analysis should be applied, under which a failure to satisfy one factor can be overcome by a strong showing as to other factors. *See id.* (collecting case law on this issue). Courts that have applied a sliding-scale approach have given the most weight to the first and third factors:

> Likelihood of success and irreparable injury are the most "critical" factors in this analysis, and the showing required under each bears an inversely proportional

---

[2] This decision memorializes, and in a few respects clarifies or expands upon, the bench ruling the Court read into the record on February 1, 2023. Because of its origins as a bench ruling, this decision has a relatively conversational tone.

2

relationship to one another. Where the likelihood of success on the merits is significant, less irreparable harm must be shown, and vice versa. In no case, however, is it "enough that the chance of success be better than negligible," or that there be a mere "possibility of irreparable injury."

*Credit One Bank, N.A. v. Anderson (In re Anderson)*, 560 B.R. 84, 88-89 (S.D.N.Y. 2016) (citations omitted).[3]

A stay pending appeal under Rule 8007 is "the exception, not the rule." *In re Latam Airlines Group S.A.*, No. 20-11254, 2022 WL 2811904, at *2 (Bankr. S.D.N.Y. July 16, 2022) (citations omitted). A party seeking a stay pending appeal bears a heavy burden. *In re Adelphia Comms. Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005).

The Court finds that the Debtors fail to satisfy the requirements for a stay pending appeal. As explained below, all four factors weigh against the grant of a stay.[4]

**1. Irreparable harm**

The Debtors assert only one sort of alleged irreparable harm: the litigation costs they will be required to incur if a stay is not granted.

By itself, the cost of defense is rarely a compelling basis to grant a stay. Indeed, a number of courts have held that the cost of defense is generally not recognized as irreparable harm for purposes of a Rule 8007 stay motion. *See, e.g.*, *Enron Corp. v. MassMutual Life Ins. (In re Enron Corp.)*, No. 01-16034, 2006 WL 2400411, at *2 (Bankr. S.D.N.Y. May 10, 2006)*; Anderson*,

---

[3] Although the court in *Anderson* was applying Bankruptcy Rule 8025, which governs district court decisions on whether to stay their own orders pending appeal to the court of appeals, the court noted that, in this circuit, the standard is the same under Rule 8007. *Anderson*, 560 B.R. at 90.

[4] The background facts relevant to this motion are set forth in detail in the Court's December 13 decision and will not be repeated here.

3

560 B.R. at 92. The Court need not dwell on this legal issue, though, because a factor particular to this case counsels against giving any significant weight to the Debtors' cost of defense.

The Debtors, not the Court, were the architects of the approach the Court has followed with respect to the Threshold Issues — that is, pausing this litigation while the parties briefed and argued, and the Court then decided, these issues. The Debtors proposed this process first to the Landlord and then to the Court, obtaining the agreement of each in turn. And when the Debtors proposed this approach to the Court, at a hearing last summer, they represented that, if the Court ruled against them on the Threshold Issues, the parties would then proceed with discovery and a trial:

> If the Court rules in favor of the PDC Landlord, at that point we would proceed to complete discovery and move forward with whatever else is necessary in terms of an evidentiary hearing. But the goal here is really to try to avoid that discovery, avoid an evidentiary hearing if it turns out that we're correct on this threshold issue.

(Tr. of June 14, 2022 Hearing [ECF No. 1243] at 14.) It seems reasonable to assume that both the Landlord and the Court (Judge James L. Garrity, Jr., who presided over this case until September 2022) took this representation into account in agreeing to the Debtors' proposed approach.

In appropriate circumstances, a party's representation to a court can bind it as a matter of judicial estoppel. Here, the Court need not decide whether the Debtors are judicially estopped. For purposes of this stay motion, it is sufficient to find that, in light of the Debtors' representation that they would proceed with discovery and a trial if the Court ruled against them on the Threshold Issues, the cost to the Debtors of proceeding as they promised is not entitled to much, if any, weight.

4

**2. Harm to another party**

Staying this action pending the Debtors' requested appeal would harm two parties: not only the Landlord, but also Village Supermarkets ("Village"), the buyer of many of the Debtors' assets and the current tenant under this disputed lease. Both parties are entitled to a prompt resolution of this action.

The Debtors argue that the Court should give no weight to any harms the Landlord may suffer from delay, since the Landlord consented to a stay of discovery pending the Court's Threshold Issues ruling. But as just noted, the process to which the Landlord consented included the Debtors' promise that this case would proceed if and when the Court ruled against them on those issues.

The harm to Village requires some context. One of the Debtors' "threshold" arguments is that Village is responsible for all damages to the property, including those that arose prior to the Village asset sale.[5] The Court's December 13 decision rejected that argument on two independent grounds, and the Debtors have chosen not to seek an interlocutory appeal as to either of those findings. Nevertheless, the Debtors retain the right to appeal that part of the decision after entry of a final order. The Landlord, too, could potentially appeal those findings after a final judgment.

As a result, even though the Court has found that Village is not liable to the Landlord for pre-sale damages, Village remains exposed to the possibility of liability — potentially millions of dollars of repairs — until such time as the Court's ruling becomes final and no longer subject to appeal. And the pendency of that claim may cause real harm to Village. The claim is a contingent liability that Village may have to report on its books and may have to disclose to lenders and others,

---

[5] With the parties' consent, Village participated in the briefing and argument of the Threshold Issues, and agreed to be bound by the Court's ruling on these issues, as if it were a party.

and to which it may need to devote legal resources. These harms, too, weigh against the grant of a stay.

**3. Likelihood of success**

I find that the Debtors' likelihood of success in its proposed appeal is extremely low, for several reasons. As a threshold matter, the Debtors face two hurdles, not just one: The District Court would need first to grant their motion for leave and then to rule in the Debtors' favor on the merits. This makes the Debtors' prospects weaker than if they had an immediate right to appeal.

More fundamentally, even if the District Court were to grant leave, the Debtors would still have only a remote chance of success on the issue they seek to appeal. No court has ever adopted the Debtors' novel theory: that a debtor's failure to perform its obligations under a contract or lease is not a default, under Bankruptcy Code § 365(b), unless the debtor has been given notice and an opportunity to cure its breaches.[6] Such a holding would be contrary to the plain meaning of the statutory text, as several courts, including the Ninth Circuit and at least two courts in this District, have held. It would also be contrary to the purposes of Section 365(b). *See In re Old Market Group Holdings Corp.*, 647 B.R. at 115-16.

Lacking support for their position in either the case law or the text of the Bankruptcy Code, the Debtors give principal emphasis to a policy argument — but one that cannot survive even brief scrutiny. (Notably, while the Debtors make this policy argument in the very first paragraph of their District Court brief seeking leave to appeal, they make no mention of it in any of the briefs they

---

[6] The Debtors' contention that their theory is supported by *In re Metromedia Fiber Network, Inc.*, 335 B.R. 41 (Bankr. S.D.N.Y 2005), *aff'd sub nom. Abovenet, Inc. v. SBC Telecom, Inc.*, 2007 WL 636602 (S.D.N.Y. Feb. 26, 2007), turns the truth on its head, as the Court's December 13 decision explains. *See In re Old Market Group Holdings Corp.*, 647 B.R. at 115 & n.7. The three other cases cited by the Debtors on this point are simply inapposite, as the Landlord's counsel argued at the stay hearing.

6

have filed in this Court.) The Debtors seek to persuade the District Court that the Court's December 13 ruling will wreak havoc with bankruptcy practice:

> *The Bankruptcy Court's Order set an almost impossibly high bar* for any debtor in a chapter 11 proceeding that wishes to assume and assign a contract or lease under Section 365 of the Bankruptcy Code: *Before assigning the contract or lease, the debtor must first completely perform any and all of its ongoing obligations under the contract or lease*, even if the contract or lease sets no deadline for performing those ongoing obligations and the assignee agrees to assume all of the debtors' obligations under the contract or lease. *But by definition, debtors in chapter 11 proceedings are unable to perform their obligations under their existing agreements*. (That is precisely why debtors enter bankruptcy in the first place.) . . . [M]ost debtors will be unable to surmount the high bar the Bankruptcy Court set for them . . . .

Br. in Supp. of Mot. for Leave to Appeal [S.D.N.Y. Appeal ECF No. 3] at 1 (emphasis added); *see also id.* at 2 (the December 13 ruling "creates a nearly insurmountable impediment to the assumption and assignment of the contract"); *id.* at 7 (the decision has "sweeping negative implications for bankruptcy cases in which debtors sell their businesses to third-party buyers").

These are strong claims, which would raise serious appeal issues if they had any basis. But they do not:

- The threshold contention — that "[b]efore assigning the contract or lease, the debtor must first completely perform any and all of its ongoing obligations under the contract or lease" — is simply untrue, as this case illustrates. The Debtors assigned the PDC warehouse lease to Village in May 2020, at the closing of the Village sale. Two months before that closing, the Landlord filed its cure objection, claiming that the Debtors had failed to make more than $2 million in needed repairs. No-one has claimed that the Debtors were required to make any of those repairs *at that time*. Instead, the Debtors put in escrow the $2 million-plus dollars that the Landlord demanded, and the

7

upcoming trial in this action will determine the extent of the Debtors' liability for those repairs.

- The Debtors' next contention — "by definition, debtors in chapter 11 proceedings are unable to perform their obligations under their existing agreements" — is highly misleading. As every bankruptcy lawyer knows, the Bankruptcy Code allows a debtor to pick and choose among its ongoing ("executory") contracts and leases — to reject the unprofitable ones, while assuming, and if it wishes, assigning, the ones it thinks are worth preserving. The debtor is required to perform its obligations only under those contracts or leases that it chooses to assume. Thus, the reason the Debtors are required to make repairs under their lease with the Landlord is that the Debtors chose to assume this lease and to assign it (that is, to sell it for millions of dollars) to Village.

At oral argument on this motion, the Court repeatedly asked Debtors' counsel to explain what he views as the "impossibly high bar" or "insurmountable impediment" the Debtors supposedly face as a result of the December 13 decision. Counsel gave no clear response to this question (at least, none the Court could understand). As far as the Court can tell, the only problem its ruling has created for the Debtors is one they have no right to complain about: To the extent the Landlord proves the existence of damages for which the Debtors are responsible, the Debtors will be required to compensate the Landlord for those damages, out of the escrow they created for this very purpose at the time of the sale.

**4. Public interest**

Finally, the public interest also weighs against the grant of a stay, for two reasons. First, this case has been languishing for years. It is time to bring it to resolution, without further delay. Second, there is a public interest in holding the Debtors to their representation to the Court,

8

discussed above, that discovery would proceed in the event the Court ruled against them on the Threshold Issues.

## Conclusion

For the foregoing reasons, the Debtors' motion to stay further proceedings pending its requested interlocutory appeal is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 3, 2023
      New York, New York

                                        **/s/ Philip Bentley**
                                        UNITED STATES BANKRUPTCY JUDGE